## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAMUEL KATZ, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>   v.<br><br>LIBERTY POWER CORP., LLC, LIBERTY POWER HOLDINGS, LLC, Delaware limited liability companies, DAVID HERNANDEZ and ALBERTO DAIRE, individuals,<br><br>          Defendants. | No.<br><br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiff Samuel Katz ("Plaintiff") makes this complaint against Defendants Liberty Power Corp., LLC and Liberty Power Holdings, LLC (collectively "Liberty Power"), David Hernandez, Alberto Daire (collectively, "Defendants"). Plaintiff's allegations as to his own actions are based on personal knowledge. The other allegations are based on his counsel's investigation, and information and belief.

### Introduction

1.    Plaintiff, individually and as a class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") for unsolicited telemarketing calls made by or on behalf of Defendants.  Plaintiff, individually, and for class members, seeks an injunction and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

### Parties

2.    Plaintiff Samuel Katz is a natural person.  Mr. Katz was a resident of Bellingham, Massachusetts at all times during the events alleged in this Complaint.  At all relevant times

Plaintiff Katz was the user, subscriber, owner, and possessor of the residential telephone number at issue.

3.      Liberty Power Corp, LLC ("Corp") is a limited liability company duly organized under the laws of the State of Delaware with a principal place of business located at 2100 West Cypress Creek Road, Suite 130, Fort Lauderdale, Florida.

4.      Liberty Power Holdings, LLC ("Holdings") is a limited liability company duly organized under the laws of the State of Delaware with a principal place of business located at the same address as Corp.

5.      David Hernandez ("Hernandez") is an individual residing in Florida. On information and belief, he is one of the managers for both Corp and Holdings, and is a part owner of Corp and Holdings.

6.      Alberto Daire ("Daire") is an individual residing in Florida. On information and belief, he is one of the managers for both Corp and Holdings, and is a part owner of Corp and Holdings.

7.      Plaintiff is informed and believes and based thereon alleges that all defendants were at all relevant times acting as actual agents, conspirators, ostensible agents, partners and/or joint venturers and employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-defendants; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contradiction with the other allegations.

8.      Whenever this complaint refers to any act of Defendants, the allegations shall be deemed to mean the act of those defendants named in the particular cause of action, and each of them, acting individually, jointly and severally, unless otherwise alleged.

**Jurisdiction and Venue**

9.      The Court has federal subject matter jurisdiction under 47 U.S.C. § 227. *Cf. Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012).

10.     This Court has personal jurisdiction over Liberty Power under Mass. Gen. Laws ch. 223A, § 3, because it does business in the Commonwealth of Massachusetts (including obtaining licensing with the Commonwealth to provide electricity to customers in Massachusetts), and because the wrongful acts alleged in this Complaint were committed in and/or caused injury in the Commonwealth of Massachusetts.

11.     Venue is also proper before this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**The Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227**

12.     In 1991, Congress enacted the TCPA, in response to a growing number of consumer complaints regarding certain telemarketing practices.  Congress found that "automated and prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call," and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from the nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2 (10-13) (Dec. 20, 1991), *codified* at 47 U.S.C. § 227. *See also Mims v. Arrow Fin. Services, L.L.C.*, 565 U.S. 368, 132 S. Ct. 740, 744, 181 L. Ed. 2d 881 (2012) ("The Act bans certain practices invasive of privacy").

13.     The TCPA makes it unlawful for any person to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party, unless the call is initiated for emergency purposes.  47 U.S.C. § 227(b)(1)(B).

14.     The TCPA also makes it unlawful for any entity to make more than one call in a 12-month period to any number that is registered with the National Do-Not-Call Registry.  *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

15.     The National Do-Not-Call Registry allows residential telephone subscribers to register their telephone numbers with the Registry to indicate their desire not to receive telephone solicitations at those numbers.  *See* 47 C.F.R. § 64.1200(c)(2).  A listing of the Registry "must be honored indefinitely or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

16.     The Federal Communications Commission ("FCC") has promulgated regulations under the TCPA which also require that sellers and telemarketers maintain an "internal do-not-call list" ("IDNC" list) — i.e., a "list of persons who request not to receive telemarketing calls made by or on behalf of that [seller]" — and further prohibits sellers from "initiat[ing] any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls by or on behalf of that person or entity[.]" 47 C.F.R. § 64.1200(d). Cf. 47 U.S.C. § 227(b)(1).

17.     The FCC's regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995). The FCC reiterated this principle in 2013, when it explained that "a seller …. may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 (2013).

**Factual Allegations Regarding the Liberty Power's Telemarketing Activities**

18.     Liberty Power uses telemarketers to solicit potential residential customers in several states to purchase Liberty Power's products and services through aggressive, outbound telemarketing campaigns. These telemarketing campaigns are conducted for the benefit of and on behalf of Liberty Power.

19.     Liberty Power and its agents use pre-recorded and/or artificial voices to make telephone calls to consumers *en masse* to promote and market Liberty Power's products and services.

20.     Liberty Power and its agents call consumers with whom they have no prior relationship and who did not provide consent for Liberty Power or its agents to call them.

21.     Liberty Power and its agents systemically fail to obtain consent before placing calls to potential customers, including Plaintiff and the Class Members (as defined below).

22.     Liberty Power and its agents make repeated and unwanted calls to consumers whose telephones service numbers are listed on the National Do Not Call Registry. Consumers place their phone numbers on the National Do Not Call Registry for the express purpose of avoiding unwanted telemarketing calls like those alleged here.

23.      The outgoing telephone numbers used by Liberty Power and its agents include local area-code numbers, but the numbers are misleading and inaccurate—calls to the outgoing telephone numbers used by Liberty Power and its agents typically do not connect to any telephone line.

24.     Liberty Power and its agents systemically fail to honor Plaintiff and Class Members' requests to be placed on Liberty Powers' internal Do Not Call List.

25.     By making these robocalls, and ignoring the national Do-Not-Call registry and Do Not Call requests, Liberty Power has caused Plaintiff and Class Members actual injury and harm, including the aggravation, nuisance, and invasion of privacy that results from the receipt of unsolicited and harassing telephone calls.

26.     Liberty Power controls the manner and method of their agent's telemarketing campaigns.

27.     Liberty Power provides the agents with lists of prospective consumers to call and requires their agents to call only the telephone numbers provided by Liberty Power.

28.     Liberty Power instructs the agents on the dates and times to place telemarketing calls on behalf of Liberty Power.

29.     Liberty Power provides the agents with telemarketing scripts and requires strict adherence to these scripts.

30.     Liberty Power requires the agents to advise prospective customers that they are calling on behalf of Liberty Power.

31.     Liberty Power requires the agents to have a certain number of full-time agents engaged on Liberty Power's outbound calling campaigns.

32.      Liberty Power prohibits the agents from hiring subcontractors to telemarket for Liberty Power without Liberty Power's prior written approval.

33.     Liberty Power trains and coaches the agents' employees on strict adherence to Liberty Power's telemarketing scripts and all other aspects of the telemarketing campaigns.

34.     Liberty Power trains and certifies the employees of its agents soliciting on its behalf. This training involves extensive scripting and coaching on script adherence.

35.     Liberty Power restricts its agents to selling its products and services in geographical territories assigned by Liberty Power.

36.     Liberty Power requires its agents to provide them with the names of any customers who were interested in purchasing electricity from Liberty Power on a daily basis. Liberty Power requires its agents to provide, among other information, the account name, utility name and account number, kWh rate, service address, billing address, and name of the person authorized to sign a contract on the customer's behalf.

37.     Liberty Power knew or should have known that its agents were violating the TCPA. Liberty Power has the right to perform unannounced audit visits of its agents to assure with the TCPA.

38.     Liberty Power requires agents to record all telephone solicitations.

39.     Liberty Power has the right to monitor its agents' telemarketing activities to assure adherence to its telemarketing scripts and compliance with Liberty Power's telemarketing rules and policies. Liberty Power had the right to terminate the agents for noncompliance.

40.     Liberty Power conducts evaluations of active employees of the agents who perform telemarketing of Liberty Power's services/products. Liberty Power monitors these

6

employees' calls on a weekly basis, and reserves the right to address violations of its rules and policies in real-time with both the agent and their employees. Liberty Power also conducts weekly analysis of all of its agents to review quality assurance scores and determine whether the agents adhered to Liberty Power's "best practices".

41.     Liberty Power requires its agents to promptly notify Liberty Power and permanently remove any individual who has engaged in fraudulent or deceptive solicitation, or who violated any state or federal law or regulation. Such notification must include the nature of the violation and customers that may be impacted.

42.     Liberty Power also reserved the right to suspend or terminate its relationships with its agents for non-compliance with TCPA rules and regulations.

43.     Liberty Power requires the agents to sign and comply with its telemarketing rules and policies, which included scripts controlling the wording that the agents must use in calls made on Liberty Power's behalf. Liberty Power reserved the right to terminate agents in the event that the agents violated its telemarketing policies or deviated from its scripts.

44.     In recent years, Liberty Power's telemarketing practices have been the subject of numerous consumer complaints and increased regulatory scrutiny. Liberty Power knew or should have known that its agents were violating the TCPA from the vast number of consumer and state regulatory complaints and investigations regarding Liberty Power's unsolicited telemarketing practices.

45.     Liberty Power knew or should have known that the agents systemically violate the TCPA because of its strict telemarketing rules and policies, including Liberty Power's ability to audit and perform quality controls, its weekly call audits, and the fact that Liberty Power itself supplied the list of numbers that its agents called.

46.     Nonetheless, Liberty Power and the agents made, and continue to make, these telemarketing calls to individuals nationwide without their prior written express consent to do so.

47.     Liberty Power also ratified the agents' conduct by accepting the benefits of the calls, including but not limited to the acceptance of customers generated by these calls, despite being aware that these calls were unsolicited and made in violation of the TCPA.

48.     Liberty Power's agents were, at all relevant times, acting as actual agents, conspirators, ostensible agents, partners and/or joint venturers and employees of Liberty Power, and the acts alleged herein occurred within the course and scope of said agency, employment, partnership, joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of Liberty Power.

49.     Each of these allegations are "alternative" theories of liability whenever not doing so would result in a contradiction with the other allegations.

### Plaintiff Samuel Katz's Individual Allegations

50.     On or about August 16, 2003, Mr. Katz's residential telephone number (508) 966-XXXX was placed on the National Do-Not-Call Registry. Despite this, Mr. Katz received unsolicited calls by or on behalf of Liberty Power promoting Liberty Power's products and/or services on the following dates and times:

|   | Call Date and Time | Calling Number |
|---|---|---|
| 1 | 9/8/2016 12:17:11 | (508) 202-1270 Framingham MA |
| 2 | 9/8/2016 12:23:44 | (508) 202-1270 Framingham MA |
| 3 | 9/8/2016 12:23:46 | (508) 202-1270 Framingham MA |
| 4 | 9/8/2016 12:23:51 | (508) 202-1270 |
| 5 | 9/8/2016 12:29:45 | (508) 202-1270 Framingham MA |
| 6 | 9/8/2016 12:35:56 | (508) 202-1270 Framingham MA |
| 8 | 9/8/2016 12:36:19 | (508) 202-1270 |
| 9 | 9/23/2016 15:42:58 | (508)-202-1270 |
| 10 | 9/27/2016 16:24:47 | (508) 202-1270 |
| 11 | 10/3/2016 13:27:28 | (508) 202-1270 Framingham MA |
| 12 | 10/3/2016 13:29:24 | Anonymous |
| 13 | 10/14/2016 16:45:21 | (508) 202-1270 Framingham MA |
| 14 | 10/14/2016 16:45:51 | (508) 202-1270 |

51.     There may be additional calls made by or on behalf of Liberty Power and Plaintiff reserves the right to identify such additional calls.

52.     While the caller ID identified above belongs to Liberty Power and/or its agents and reflect local Massachusetts area codes, calls to these telephone numbers do not connect to any telephone.

53.     Several of these calls used an artificial or prerecorded voice to deliver a message, including calls that started with a message that stated "Press 1 to save on your electricity bill," or words to that effect.

54.     In one of these calls, Mr. Katz advised Liberty Power's caller that his telephone number was registered with the National Do Not Call Registry, that he did not consent to the calls, and asked to be placed on Liberty Power's Do Not Call list. The caller advised Mr. Katz would have to purchase Liberty Power's services to get on Liberty Power's Do Not Call list and to stop getting calls. The caller in this call stated he was calling from Liberty Power, solicited Mr. Katz to enroll in Liberty Power's electricity program, and provided Liberty Power's telephone number (866-769-3799).

55.     In another of these calls, Mr. Katz asked for a copy of Liberty Power's Do Not Call Policy, and the caller responded he did not have a copy; the caller hung up when Mr. Katz then asked if Liberty Power had a Do Not Call list. Again, the caller in this call solicited Mr. Katz to enroll in Liberty Power's electricity program, and provided Liberty Power's telephone number (866-769-3799).

56.     Plaintiff never gave Liberty Power or its agents his prior express consent to call him.

57.     None of Liberty Power's calls to Plaintiff were for emergency purposes or were exempted by the FCC's rules or orders.

58.     These calls damaged and harmed Plaintiff. Plaintiff found these repeated unsolicited calls to be intrusive and harassing, as they diverted attention away from his daily activities. Plaintiff put his telephone numbers on the national Do-Not-Call registry specifically to avoid telemarketing calls.

59.     On or about January 5, 2018, Liberty Power's in-house counsel informed Mr.

Katz that Liberty Power had two individual owners, and that every dollar that goes into Liberty

Power goes into their wallets, so that every dollar that comes out of Liberty Power comes out

their wallets, or words to that effect. On information and belief, Katz alleges Hernandez and

Daire are the two individuals referenced by Liberty Power's in-house counsel.

### Class Certification Allegations

60.     **Class Definitions:** Plaintiff brings this Complaint against Defendants, pursuant to

Federal Rule of Civil Procedure 23, on behalf of himself and the following Classes:

> **Artificial/Prerecorded Voice Class:** All persons in the United
> States who received one or more telemarketing calls to their
> residential telephone number by or on behalf of Liberty Power,
> that were made using an artificial or prerecorded voice, from four
> years prior to the date Plaintiff first filed his complaint in this
> action through the date the Court certifies the class.
>
> **National Do Not Call Class ("National DNC Class"):** All
> persons in the United States whose residential (wireless or
> landline) telephone number was registered with the national Do-
> Not-Call registry for at least thirty days prior to receiving at least
> two telemarketing calls by or on behalf of Liberty Power to such
> number within any 12-month period at any time from four years
> prior to the date Plaintiff first filed his complaint in this action
> through the date the Court certifies the class.
>
> **Internal Do Not Call Class ("Internal DNC Class"):** All persons
> in the United States who received at least two telemarketing calls
> to their residential (wireless or landline) telephone number by or
> on behalf of Liberty Power within any 12-month period at any time
> from four years prior to the date Plaintiff first filed his complaint in
> this action through the date the Court certifies the class.

61.     Excluded from the classes are any entity in which Defendants have a controlling

interest or which has a controlling interest in Defendants, and Defendants' agents, legal

representatives, predecessors, successors, assigns, and employees.  Also excluded from the

classes are the judge and staff to whom this case is assigned, and any member of the judge's

immediate family. Plaintiffs reserve the right to revise the class definitions based on facts learned

during discovery.

62.     **Class Numerosity:** The exact number of members of each class is unknown and

is not available to Plaintiff at this time, but such information is readily ascertainable by

Defendants and their agents' call records and customer relations management databases. The classes are so numerous that joinder of all members is impractical. Plaintiff alleges that there are more than 40 members of each Class.

63.     **Class Commonality:** Plaintiff and class members experiences receiving calls by or on behalf of Liberty Power are common. They received multiple, incessant, uninvited calls that included a prerecorded message/artificial voice for the purposes of marketing Liberty Power's products or services.  The calls were made irrespective to whether Plaintiff and class members were on the National Do Not Call Registry and their requests that the calls cease.

64.     In addition, common questions of fact and law exist as to all members of the classes and predominate over the questions affecting only individual members of the classes. Identification of the individuals who qualify as a member of the classes will be sufficient to establish liability to the class member. The predominant common questions include:

a.     Whether Defendants and/or their agents used an "artificial or prerecorded voice" when placing calls, as such terms are defined or understood under the TCPA and applicable FCC regulations and orders;

c.     Whether Defendants are vicariously liable for their agents' calls.

d.     Whether Defendants and/or their agents had written prior express consent to call class members;

e.     Whether Defendants and/or their agents made telephone calls to members of the National DNC Class whose telephone numbers were registered with the national Do-Not-Call registry;

f.     Whether Defendants and/or their agents instituted procedures and minimum standards prescribed by 47 C.F.R. § 64.1200(d) for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity;

h.     Whether Plaintiff and class members are entitled to damages, including whether Defendants' violations were performed willfully or knowingly such that Plaintiff and class members are entitled to treble damages;

j.     Whether Plaintiff and class members are entitled to injunctive relief for violations of their privacy and attorney's fees and costs.

65.     **Typicality:** Plaintiff's claims are typical of the claims of the other members of the classes. Plaintiff is not different in any relevant way from any other member of the classes, and the relief he seeks is common to each class.

66.     **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the other members of the classes: Mr. Katz's interests do not conflict with the interests of the other class members. Plaintiff has retained counsel competent and experienced in complex class actions, including class actions arising under the Telephone Consumer Protection Act and other consumer protection laws, and they intend to prosecute this action vigorously.

67.     **Predominance and Superiority:** The classes alleged in this Complaint are appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual member of the classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. It would be virtually impossible for class members to individually obtain effective relief from Defendants' misconduct. Even if class members themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, class actions present far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

68.     **Generally Applicable Policies:** This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each class a whole. The policies of the Defendants challenged herein apply and affect members of each class uniformly, and Plaintiff's challenge of these policies hinges on Defendants' conduct, not on facts or law applicable only to Plaintiff.

69.     **Injunctive Relief is Appropriate:** Based on information and belief, Defendants continue to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendants' conduct and to prevent irreparable harm to Plaintiff and class members for which they have no adequate remedy at law.

## FIRST CLAIM FOR RELIEF

### Violation of the TCPA Against Corp and Holding

### by Plaintiff, Individually, and on Behalf of the Artificial/Prerecorded Voice Class

70.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of himself and the members of the Artificial/Prerecorded Voice Class.

71.     The TCPA prohibits certain uses of telecommunication equipment that would interfere with telephone service subscribers' privacy and/or property rights with respect to their telephone. In particular, the TPCA makes it unlawful for any person:

> to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B).

47 U.S.C. § 227(b)(1)(B).

72.     The TCPA provides telephone service subscribers a private right of action for injunctive relief and statutory damages for violations of 47 U.S.C. § 227(b) or "regulations prescribed under" 47 U.S.C. § 227(b) "to enjoin such a violation" and/or to recover actual damages or "$500 in damages for each such violation," as well as treble damages where the "court finds that the defendant willfully or knowingly violated [47 U.S.C. § 227(b).]" 47 U.S.C. § 227(b)(3).

73.     Liberty Power and its agents also utilized artificial and/or prerecorded voice messages in calls to residential telephones of Plaintiff and Artificial/Prerecorded Voice Class members.

74.     Liberty Power and its agents do not and did not obtain legally effective prior express consent to call the Artificial/Prerecorded Voice Class members' residential telephone numbers.

75.     Liberty Power and its agents violated 47 U.S.C. § 227(b)(1)(A)(iii) by placing telephone calls to the residential telephone numbers of Plaintiff and the other members of the Artificial/Prerecorded Voice Class using an artificial or prerecorded voice without their prior express written consent.

76.     Liberty Power willfully violated 47 U.S.C. § 227(b)(1)(A)(iii) because it knew that Plaintiff and the other Artificial/Prerecorded Voice Class members had not given prior express consent to receive calls made using an artificial, and/or prerecorded voice and that Liberty Power and its agents used these methods to call the residential telephone numbers of Plaintiff and the other Artificial/Prerecorded Voice Class members.

77.     Plaintiff, individually, and on behalf of the other members of the Artificial/Prerecorded Voice Class, seeks to recover statutory damages (including treble damages for willful violations), as well as injunctive and equitable relief under 47 U.S.C. § 227(b)(3) against Liberty Power.

## SECOND CLAIM FOR RELIEF

### Violations of the TCPA Against Corp and Holding

### by Plaintiff, Individually and on Behalf of the National DNC Class

78.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of himself and members of the National DNC Class.

79.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations

prescribed under this subsection [i.e., 47 C.F.R. § 64.1200(c)(2)] may" bring an action for injunctive relief and statutory damages of $500 per violation. 47 U.S.C. § 227(c)(3). 47 C.F.R. § 64.1200(c)(2) provides that "[n]o person or entity shall initiate any telephone solicitation" to a "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(e) extends the privacy protection in subsection 64.1200(c) to wireless telephone numbers.

80.     Liberty Power and its agents violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to wireless and residential telephone subscribers such as Plaintiff and the other National DNC Class members.

81.     Liberty Power did not have an established business relationship with Plaintiff and class members.

82.     Liberty Power and its agents made more than one unsolicited telephone call to Plaintiff and members of the class within a 12-month period without their prior express consent to receive such calls. Plaintiff and members of the National DNC Class never provided any form of consent to receive telephone calls from Liberty Power and/or Liberty Power does not have any legally effective evidence of consent to place telemarketing calls to them.

83.     Plaintiff and the other members of the National DNC Class have a claim against Liberty Power because Plaintiff and the other members of the National DNC Class received more than one telephone call within a 12-month period made by or on behalf of the Liberty Power in violation of 47 C.F.R. § 64.1200. As a result of the conduct of Liberty Power and its agents, Plaintiff and the class suffered actual damages and have a claim for $500 in statutory damages for each such violation of 47 C.F.R. § 64.1200, and injunctive relief. 47 U.S.C. § 227(c)(5).

84.     Liberty Power willfully violated 47 C.F.R. § 64.1200(c). Liberty Power knew Plaintiff and the other National DNC Class members had not given prior express consent to receive calls, and that many of the calls made by Liberty Power and its agents were received by individuals on the national do not call registry.

85.     Plaintiff, individually, and on behalf of the other members of the National DNC

Class, seeks to recover statutory damages (including treble damages for willful violations), as

well as injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Liberty Power.

### THIRD CLAIM FOR RELIEF

### Violations of the TCPA, 47 U.S.C. § 227

### Against Corp and Holding

### by Plaintiff Individually and on Behalf of the Internal DNC Class

86.     Plaintiff hereby incorporates by reference the allegations contained in all

preceding paragraphs of this complaint. Plaintiff asserts these claims on behalf of himself and

members of the Internal DNC Class.

87.     47 C.F.R. § 64.1200(d) provides that "[n]o person or entity shall initiate any call

for telemarketing purposes to a residential telephone subscriber unless such person or entity has

instituted procedures for maintaining a list of persons who request not to receive telemarketing

calls made by or on behalf of that person or entity. The procedures instituted must meet the

following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have
> a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of
> telemarketing must be informed and trained in the existence and use of the do-not-call
> list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for
> telemarketing purposes (or on whose behalf such a call is made) receives a request from a
> residential telephone subscriber not to receive calls from that person or entity, the person
> or entity must record the request and place the subscriber's name, if provided, and
> telephone number on the do-not-call list at the time the request is made. Persons or
> entities making calls for telemarketing purposes (or on whose behalf such calls are made)
> must honor a residential subscriber's do-not-call request within a reasonable time from
> the date such request is made. This period may not exceed thirty days from the date of
> such request. . . .
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for
> telemarketing purposes must provide the called party with the name of the individual

16

caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised."

88.     The TCPA creates a private right of action for injunctive and monetary relief for any "person who has received more than one telephone call within any 12–month period by or on behalf of the same entity in violation of [e.g., 47 C.F.R. § 64.1200(d).]" 47 U.S.C. § 227(c)(5). *See also* 47 C.F.R. § 64.1200(d)(3) (liability for company specific DNC list violations).

89.     Liberty Power did not institute minimum procedures required under 47 C.F.R. § 64.1200(d); Liberty Power consistently fail to honor the requests of Plaintiff and other individuals to stop calling, and specifically to place their name and telephone number on Liberty Power's internal do not call list and to otherwise maintain an adequate do not call policy required under 47 C.F.R. § 64.1200(d).

90.     Liberty Power and its agents violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephones of Plaintiff and members of the class without instituting minimum procedures required under 47 C.F.R. § 64.1200(d).

91.     Liberty Power willfully violated 47 C.F.R. § 64.1200(d).  Liberty Power knew that it and its agents failed to institute minimum procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of Liberty Power and that they repeatedly ignored and/or refused to honor Plaintiff and class members' requests to be placed on a company DNC list.

92.     Plaintiff, individually, and on behalf of the other members of the Internal DNC Class, seeks to recover statutory damages (including treble damages for willful violations), as well as injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Liberty Power.

**FOURTH CLAIM FOR RELIEF**

**Constructive Fraudulent Transfers under Fla. Stat. § 726.105(1)(a)**

**Against All Defendants by Plaintiff**

**Individually and on Behalf of the All Classes**

93.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiff asserts these claims on behalf of himself and members of each Class alleged in this complaint.

94.     Citing the facts alleged in paragraph 59, Plaintiff alleges that Liberty Power regularly and continuously transfers its assets (including its profits) to its owners or others ("Transfers"). On information and belief, Liberty Power's assets exist and are maintained in Florida, and the Transfers primarily occur within Florida. These Transfers qualify as fraudulent transfers under Florida's Uniform Fraudulent Transfer Act ("UFTA") (as well as the corresponding UFTA of any other state which might conceivably apply), and Plaintiff seeks to recoup and recover the assets involved in the Transfers.

95.     These Transfers may take the form of dividends, loans, release of loans, wages, payment of expenses, or any other compensation to the owners, assignment of liens, debts, or accounts receivables held by Liberty Power, or Liberty Power's acceptance of any sort of lien or other encumbrance to its owners' benefit, or any and every other form of payment. The Transfers also include indirect payments to the benefit of Liberty Power's owners—for example, payments to spendthrift trusts, gifts (or other payments without reasonably equivalent value) to their children or relatives, or to nominally exempt assets in owners' names or for their benefits. All these Transfers fit within the Florida UFTA's broad definition of "transfer." *See* Fla. Stat. § 726.102(14) ("every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance").

96.     Under the Florida UFTA's definitions, Liberty Power's liability on the TCPA claims of Plaintiff and the other class members alleged above constitutes a "debt," Plaintiff and

the other class members are "creditors" of Liberty Power, and Liberty Power is a "debtor" in relation to Plaintiff and the other class members. *See* Fla. Stat. § 726.102(5), (6), (7).

97.     In 2014, Liberty Power reported it had nearly 200,000 customers—it is reasonable to infer Liberty Power's telemarketing activity is very significant from this large customer base. It is further reasonable to infer from Plaintiff's experience with Liberty Power's telemarketing that Liberty Power's corresponding TCPA liability is equally significant. The potential liability for large-scale TCPA litigation is frequently massive. *Cf. United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 982 (C.D. Ill. 2017) (awarding $280 million in TCPA case after significant reductions from face value of statutory penalties). Plaintiff alleges on information and belief that Liberty Power and its agents routinely violate the TCPA on a massive scale, and their total liability on the class TCPA claims alleged above significantly exceeds Liberty Power's assets. Plaintiff alleges on information and belief that Liberty Power has been insolvent (under the definition of Florida Statute section 726.103) throughout the entire class period.

98.     Hence, Transfers of Liberty Power's assets alleged above inevitably reduce the total amount of assets available to satisfy a judgment in favor of Plaintiff and the other class members. The Transfers have injured and threaten to injure Plaintiff and the other class members by impairing or prejudicing (or threatening to do so) their ability to collect a class judgment and/or settlement which covers the total value of the TCPA claims asserted against the Defendants in this Complaint.

99.     On information and belief, Plaintiff alleges Liberty Power's owners expressly organized and operate Corp and Holding to convey the impression and pretense they are "bankruptcy remote," so that once Liberty Power Transfers its assets to its owners, those assets are no longer available to satisfy Liberty Power's liability. Indeed, during the class period, Liberty Power has faced several significant and material class action lawsuits and regulatory investigations or actions which have threatened its financial viability. Plaintiff further alleges on information and belief that Liberty Power's owners know that Liberty Power regularly and routinely violates the TCPA in the course of operating its business, so that Liberty Power's TCPA liability dwarfs its profits. Nonetheless, consistent with the allegations in paragraph 59,

Liberty Power routinely and regularly Transfers every dollar in profit to its owners—the owners deliberately keep Liberty Power very thinly capitalized. On information and belief, this inadequate capitalization has created financial problems for Liberty Power, including problems attracting and retaining employees. Liberty Power has not received reasonably equivalent value for the Transfers: as a matter of law, Liberty Power does not receive value for payment of profits (or any other return on equity) to its owners. Finally, Liberty Power has been insolvent (or, at least, its assets are unreasonably small in relation to its TCPA liability) throughout the class period. In short, the circumstances indicate that Liberty Power and its owners intended the Transfers "to hinder, delay, or defraud any creditor" of Liberty Power. *See* Fla. Stat. § 726.105(1)(a). The Transfers are fraudulent under the Florida UFTA's actual fraud prong.

100.    Plaintiff, individually, and on behalf of the other members of the classes, seeks injunctive and equitable relief including enjoining fraudulent Transfers, and avoidance and restitution of all Transfers found to be fraudulent, attachment of assets, appointment of a receiver, and imposition of a constructive trust under Florida Statute 726.108.

### FIFTH CLAIM FOR RELIEF

### Constructive Fraudulent Transfers under Fla. Stat. §§ 726.105(1)(b), 726.106

### Against All Defendants by Plaintiff

### Individually and on Behalf of the All Classes

101.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiff asserts these claims on behalf of himself and members of each class alleged in this complaint.

102.    Consistent with paragraphs in the Fourth Claim above, Plaintiff alleges that Liberty Power has made Transfers to its owners throughout the class period. Liberty Power has not received reasonably equivalent value for the Transfers: as a matter of law, Liberty Power does not receive value for payment of profits (or any other return on equity) to its owners. The Transfers did not preserve or increase the net worth of Liberty Power, and were not for fair market value of the assets transferred. Finally, Liberty Power has been insolvent (or, at least, its

assets are unreasonably small in relation to its TCPA liability) throughout the class period. The Transfers are fraudulent under the Florida UFTA's constructive fraud prong. *See* Fla. Stat. §§ 726.105(1)(b), 726.106.

103.    Plaintiff, individually, and on behalf of the other members of the classes, seeks injunctive and equitable relief including enjoining fraudulent Transfers, and avoidance and restitution of all Transfers found to be fraudulent, attachment of assets, appointment of a receiver, and imposition of a constructive trust under Florida Statute 726.108.

## Prayer for Relief

WHEREFORE, Plaintiff prays that the Court enter judgment and orders in their favor and against Defendants as follows:

a.    An order certifying the classes, directing that this case proceed as a class action, and appointing Plaintiff and his counsel to represent the classes;

b.    Judgment against Defendants, and in favor of Plaintiff and the other class members in the amount of $1,500 per violation of the TCPA as proven at trial;

c.    Equitable and injunctive relief, including injunctions enjoining further violations of the TCPA;

d.    Injunctive and equitable relief including enjoining fraudulent transfers, and avoidance and restitution of fraudulent transfers, attachment of assets, appointment of a receiver, and imposition of a constructive trust under Florida Statute 726.108;

e.    And such other and further relief as this Court may deem appropriate.


Respectfully Submitted:


Dated: March 16, 2018                    By:    /s/*John F. Fink*
                                                John L. Fink, Esq.
                                                jfink@westborolawyer.com
                                                FINK LAW OFFICE
                                                18 Lyman St., Suite 208
                                                J&N Professional Building
                                                Westborough, Massachusetts  01581
                                                Telephone:  (508) 433-0529

David C. Parisi (*pro hac vice to be filed*)
dcparisi@parisihavens.com
Suzanne Havens Beckman (*pro hac vice to be filed*)
shavensbeckman@parisihavens.com
PARISI & HAVENS LLP
Santa Monica, CA   90405
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Yitzchak H. Lieberman (*pro hac vice to be filed*)
ylieberman@parasmoliebermanlaw.com
Grace E. Parasmo (*pro hac vice to be filed*)
gparasmo@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone: (844) 200-5623
Facsimile:  (877) 501-3346

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.


Dated: March 16, 2018                    By:_____/s/*John F. Fink*_____
                                                  John F. Fink

                                          John L. Fink, Esq.
                                          jfink@westborolawyer.com
                                          FINK LAW OFFICE
                                          18 Lyman St., Suite 208
                                          J&N Professional Building
                                          Westborough, Massachusetts  01581
                                          Telephone:  (508) 433-0529

                                          David C. Parisi (*pro hac vice to be filed*)
                                          dcparisi@parisihavens.com
                                          Suzanne Havens Beckman (*pro hac vice to be filed*)
                                          shavensbeckman@parisihavens.com
                                          PARISI & HAVENS LLP
                                          Santa Monica, CA  90405
                                          Telephone: (818) 990-1299
                                          Facsimile: (818) 501-7852

                                          Yitzchak H. Lieberman (*pro hac vice to be filed*)
                                          ylieberman@parasmoliebermanlaw.com
                                          Grace E. Parasmo (*pro hac vice to be filed*)
                                          gparasmo@parasmoliebermanlaw.com
                                          PARASMO LIEBERMAN LAW
                                          7400 Hollywood Blvd, #505
                                          Los Angeles, CA 90046
                                          Telephone: (844) 200-5623
                                          Facsimile:  (877) 501-3346