# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAMUEL KATZ, ALEXANDER BRAURMAN, LYNNE RHODES, individually, and on their own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LIBERTY POWER CORP., LLC, LIBERTY POWER HOLDINGS, LLC, Delaware limited liability companies,<br><br>Defendants. | No. 1:18-cv-10506<br><br>**PLAINTIFFS' MEMORANDUM SUPPORTING THEIR MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT** |
| LIBERTY POWER CORP., LLC, and LIBERTY POWER HOLDINGS, LLC,<br><br>Third-Party Plaintiffs,<br><br>v.<br><br>MEZZI MARKETING, LLC,<br><br>Third-Party Defendant. | |

# TABLE OF CONTENTS

I.  Consistent with First Circuit Law, Plaintiffs Move to Amend Before—Rather Than After—the Court Considers the Arguments in the Motion to Dismiss ............................. 1

II. On This Record, Rule 15 Requires Leave to Amend ......................................................... 1

A.  There Is No Prejudice or Undue Delay ................................................................. 2

B.  There Is No Repeated Failure to Cure by Prior Amendments or Bad Faith .......... 6

C.  The Proposed SAC Is Not Futile ........................................................................... 7

1.  Rhodes Has Standing to Assert the Claims Alleged in the Complaint ....... 8

2.  Katz Has More Than One Residential Telephone Number ....................... 8

3.  Katz and Braurman Have Standing to Assert Claims for Injunctive Relief ........................................................................................................... 9

a.  The Motion Is Moot Because Rhodes Has Standing ..................... 9

b.  Katz and Braurman Allege Standing for Injunctive Relief ........... 10

c.  Defendants' Internal Do-Not-Call List Does Not Moot Katz and Braurman's Claims for Injunctive Relief ...................................... 12

d.  Katz and Braurman Have Standing as Class Representatives ...... 13

4.  The Court Has Jurisdiction and Venue Over Braurman's Claims ............ 14

a.  Braurman's Claims Relate to Massachusetts ............................... 14

b.  The Court Likewise Has Venue Over Braurman's Claims ........... 18

c.  If the Court Disagrees, It Should Transfer Braurman's Case ....... 18

5.  The SAC Sufficiently Alleges Defendants' Role Under Rule 8(a) .......... 19

a.  The SAC Alleges Details About the Defendants' Relationship ... 19

b.  The SAC Properly Alleges Defendants Acted Together .............. 20

c.  Discovery Is Appropriate if More Details Were Required .......... 23

6.  The TCPA Does Not Violate the First Amendment, Because It Serves Compelling Government Interests .......................................................... 24

a.  Defendants' Rule 5.1 Notice Is Defective .................................... 24

b.  Under First Circuit Jurisprudence, the TCPA Is Content Neutral, and Subject to Intermediate Scrutiny ............................. 25

c.  Every Other Post-*Reed* Case to Address the Issue Holds That the TCPA Survives Strict Scrutiny ............................................... 27

d.  Equal Protection Analysis Reaches the Same Result .................. 30

e.  Even if Unconstitutional, the 2015 Amendment Should Simply Be Severed ................................................................................... 30

7.    The SAC Properly Alleges Uniform Fraudulent Transfer Act Claims..... 31

    a.    Rule 9(b) Does Not Apply to Constructive Transfer Claims........ 32

    b.    The SAC Alleges Constructive Fraudulent Transfer Claims........ 33

    c.    The SAC Alleges Actual Fraudulent Transfer Claims ................ 34

    d.    Discovery Is Appropriate If More Details Are Required.............. 37

8.    Plaintiffs Do Not Have to Name Mezzi as a Defendant .......................... 38

III.    Conclusion .................................................................................................................. 41

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*A.J. Props., LLC v. Stanley Black & Decker, Inc.*,
   No. 11-10835, 2013 WL 4046329 (D. Mass. Aug. 7, 2013) ...................................... 4

*ACA Fin. Guar. Corp. v. Advest, Inc.*,
   512 F.3d 46 (1st Cir. 2008) ....................................................................................... 6

*ACA Int'l v. Fed. Commc'ns Comm'n*,
   885 F.3d 687 (D.C. Cir. 2018) .................................................................................. 8

*Aguiar v. Russo*,
   No. 09-10353, 2009 WL 1137916 (D. Mass. Apr. 28, 2009) .................................. 25

*Alaska Airlines, Inc. v. Brock*,
   480 U.S. 678 (1987) ................................................................................................. 31

*Am. Ass'n of Political Consultants v. Sessions*,
   2018 WL 1474075 (E.D.N.C. 2018) ........................................................... 27, 28, 30

*Am. Civil Liberties Union of Massachusetts v. U.S. Conference of Catholic
   Bishops*,
   705 F.3d 44 (1st Cir. 2013) ................................................................................. 12, 13

*Atuahene v. City of Hartford*,
   10 Fed. App'x 33 (2d Cir. May 31, 2001) .............................................................. 20

*Austin v. Unarco Indus., Inc.*,
   705 F.2d 1 (1st Cir. 1983) .................................................................................. 39, 40

*Azza v. Grp. Voyagers, Inc.*,
   No. 16-11981, 2018 WL 1513559 (D. Mass. Mar. 27, 2018) ................................. 23

*Bagheri v. Galligan*,
   160 F. App'x 4 (1st Cir. 2005) ................................................................................ 22

*Bank v. Caribbean Cruise Line, Inc.*,
   No. 12-584, 2014 WL 1883586 (E.D.N.Y. May 12, 2014) ..................................... 12

*Bd. of Trustees of State Univ. of New York v. Fox*,
   492 U.S. 469 (1989) ................................................................................................. 28

*Beeck v. Aquaslide 'N' Dive Corp.*,
   562 F.2d 537 (8th Cir. 1977) .................................................................. 3

*Benitez-Allende v. Alcan Aluminio*,
   857 F. 2d 26 (1st Cir. 1988) ................................................................... 2

*In re Bernard L. Madoff Inv. Sec. LLC*,
   445 B.R. 206 (Bankr. S.D.N.Y. 2011)................................................... 32

*Blacksmith Invs., LLC v. Cives Steel Co.*,
   228 F.R.D. 66 (D. Mass. 2005) .............................................................. 41

*Brickman v. Facebook, Inc.*,
   230 F. Supp. 3d 1036, 1046 (N.D. Cal. 2017) ................................ 27, 28, 29, 30

*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*,
   137 S. Ct. 1773 (2017) ..................................................... 14, 15, 16, 17

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ............................................................................. 17

*C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*,
   771 F.3d 59 (1st Cir. 2014)................................................................... 17

*Calvi v. Knox Cty.*,
   470 F.3d 422 (1st Cir. 2006).................................................................. 22

*Carmona v. Toledo*,
   215 F.3d 124 (1st Cir. 2000) ................................................................... 2

*Carter v. Newland*,
   441 F. Supp. 2d 208 (D. Mass. 2006) .................................................... 22

*Charest v. Fed. Nat. Mortg. Ass'n*,
   9 F. Supp. 3d 114, 134 (D. Mass. 2014) ......................................... 39, 40

*Chassen v. Fid. Nat. Fin., Inc.*,
   No. 09-291, 2009 WL 4508581 (D.N.J. Nov. 16, 2009)........................ 39

*Christopher v. Mount Snow, Ltd.*,
   No. 95-10352, 1996 WL 590738 (D. Mass. Sept. 24, 1996) .................. 17

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ............................................................................... 12

*Clark v. Cmty. for Creative Non-Violence*,
   468 U.S. 288 (1984) ............................................................................. 26

*Coltrane v. Lappin*,
　885 F. Supp. 2d 228 (D.D.C. 2012) ...................................................... 18

*In re Comprehensive Power, Inc.*,
　578 B.R. 14 (Bankr. D. Mass. 2017) .................................................... 37

*Cota v. U.S. Bank Nat'l Ass'n*,
　No. 15-486, 2016 WL 922784 (D. Me. Mar. 10, 2016) ......................... 21

*Cty. of Riverside v. McLaughlin*,
　500 U.S. 44 (1991) ................................................................................ 14

*United States ex rel. D'Agostino v. EV3, Inc.*,
　802 F.3d 188 (1st Cir. 2015) ............................................................... 6, 7

*Davimos v. Halle*,
　No. 13-225, 2013 WL 5353005 (D. Me. Sept. 24, 2013) ...................... 32, 34, 35, 36

*De Prins v. Michaeles*,
　189 F. Supp. 3d 209, 216 (D. Mass. 2016) ........................................... 34

*Decarvalho v. Telford*,
　No. 17-11224, 2017 WL 3668411 (D. Mass. Aug. 24, 2017) ................ 23

*Doe v. Exxon Mobil Corp.*,
　69 F. Supp. 3d 75, 102 (D.D.C. 2014) .................................................. 40

*e.,g., Ott v. Mortg. Inv'rs Corp. of Ohio*,
　65 F. Supp. 3d 1046, 1057 (D. Or. 2014) .............................................. 17

*Echavarria v. Roach*,
　No. 16-11118-ADB, 2017 WL 3928270 (D. Mass. Sept. 7, 2017) ......... 23

*Oklahoma ex rel Edmondson v. Pope*,
　516 F.3d 1214 (10th Cir. 2008) ............................................................ 25

*Egan v. Tenet Health Care*,
　193 F. Supp. 3d 73, 87 (D. Mass. 2016) ................................................. 7

*In re El Comandante Mgmt. Co., LLC*,
　388 B.R. 469 (D.P.R. 2008) .................................................................. 32, 34, 38

*Energizer Brands, LLC v. Procter & Gamble Co.*,
　No. 16-223, 2016 WL 2894708 (E.D. Mo. May 18, 2016) ..................... 22

*Erickson v. Pardus*,
　551 U.S. 89 (2007) ................................................................................ 19

*Exec. Leasing Corp. v. Banco Popular de Puerto Rico,*
48 F.3d 66 (1st Cir. 1995) ................................................................ 4, 5

*Fabio v. Diversified Consultants, Inc.,*
No. 13-00524, 2014 WL 713104 (W.D. Wis. Feb. 25, 2014) ................................. 15

*FDIC v. Anchor Props.,*
13 F.3d 27 (1st Cir. 1994) ................................................................ 35

*Fed. Home Loan Bank of Boston v. Moody's Corp.,*
821 F.3d 102 (1st Cir. 2016) ............................................................. 18

*In re Fin. Res. Mortg., Inc.,*
454 B.R. 6 (Bankr. D.N.H. 2011) ........................................................ 32

*Fisher v. Kadant, Inc.,*
No. 07-12375, 2008 WL 11389384 (D. Mass. Nov. 19, 2008), aff'd, 589
F.3d 505 (1st Cir. 2009) ................................................................ 23

*Fisher v. MJ Christensen Jewelers, LLC,*
No. 15-00358, 2018 WL 1175215 (D. Nev. Mar. 6, 2018) ................................... 12

*Flaherty v. Knapik,*
999 F. Supp. 2d 323 (D. Mass. 2014) .................................................... 28

*Foman v. Davis,*
371 U.S. 178 (1962) .................................................................. 2, 6

*Forum Fin. Grp. Liab. Co. v. President, Fellows of Harvard Coll.,*
173 F. Supp. 2d 72 (D. Me. 2001) ....................................................... 39

*Gallion v. Charter Comms. Inc.,*
287 F. Supp. 3d 920, 929 (C.D. Cal. 2018) ........................................ 27, 28, 30

*Garcia v. Carrion,*
No. 09-1507, 2010 WL 3662593 (D.P.R. Aug. 11, 2010) .................................... 36

*Gerstein v. Pugh,*
420 U.S. 103 (1975) ................................................................ 13, 14

*Glassman v. Computervision Corp.,*
90 F.3d 617 (1st Cir. 1996) ........................................................... 2, 7

*GMO Tr. ex rel. GMO Emerging Country Debt Fund v. ICAP plc,* No. 12-
10293, 2012 WL 5197545 (D. Mass. Oct. 18, 2012) ....................................... 21

*Greenberg v. Mynczywor,*
  667 F. Supp. 901 (D.N.H. 1987) ........................................................................ 3, 4

*Greenley v. Laborers' Int'l Union of N. Am.,*
  271 F. Supp. 3d 1128, 1150 (D. Minn. 2017) ................................................. 27, 28

*Gresham v. Swanson,*
  866 F.3d 853 (8th Cir. 2017) ................................................................................ 26

*Griffith v. ContextMedia, Inc.,*
  235 F. Supp. 3d 1032, 1035 (N.D. Ill. 2016) ....................................................... 12

*Guest-Tek Interactive Entm't Inc. v. Pullen,*
  731 F. Supp. 2d 80 (D. Mass. 2010) ...................................................................... 2

*Hageman v. Signal L.P. Gas, Inc.,*
  486 F.2d 479 (6th Cir.1973) ................................................................................... 3

*Hamilton v. Partners Healthcare Sys., Inc.,*
  879 F.3d 407 (1st Cir. 2018) .................................................................................. 6

*Hamilton v. Voxeo Corp.,*
  No. 07-404, 2009 WL 1868541 (S.D. Ohio June 25, 2009) .................................... 12

*Hannon v. Beard,*
  524 F.3d 275 (1st Cir. 2008) ................................................................................. 16

*Hochendoner v. Genzyme Corp.,*
  823 F.3d 724 (1st Cir. 2016) ................................................................................. 10

*Holmes Grp., Inc. v. RPS Prod., Inc.,*
  No. 03-40146, 2010 WL 7867756 (D. Mass. June 25, 2010) ................................. 36

*Holt v. Facebook, Inc.,*
  240 F. Supp. 3d 1021, 1033 (N.D. Cal. 2017) ........................................... 27, 28, 31

*Houlton Citizens' Coal. v. Town of Houlton,*
  175 F.3d 178 (1st Cir. 1999) ................................................................................... 9

*Howell v. Advantage Payroll Servs., Inc.,*
  No. 16-438, 2017 WL 782881 (D. Me. Feb. 28, 2017) ........................................... 36

*Hudak v. Berkley Grp., Inc.,*
  No. 13-00089, 2014 WL 354676 (D. Conn. Jan. 23, 2014) .................................... 21

*In re Huggard,*
  510 B.R. 668 (Bankr. D. Mass. 2014) ..................................................................... 5

*Hurn v. Ret. Fund Tr. of Plumbing, Heating & Piping Indus. of S. Cal.*,
   648 F.2d 1252 (9th Cir. 1981) .................................................................. 3

*In re Indrescom Sec. Tech. Inc.*,
   559 B.R. 305 (Bankr. D.P.R. 2016) ........................................... 32, 36, 37

*Isaac v. Harvard Univ.*,
   769 F.2d 817 (1st Cir. 1985) .................................................................. 3

*In re James River Coal Co.*,
   360 B.R. 139 (Bankr. E.D. Va. 2007) .................................................... 38

*Johansen v. Liberty Mut. Grp., Inc.*,
   No. 15-12920, 2016 WL 7173753 (D. Mass. Dec. 8, 2016) .................... 13

*Jones v. United States*,
   No. 09-106, 2011 WL 386955 (E.D.N.C. Feb. 3, 2011) ......................... 25

*Karle v. Sw. Credit Sys.*,
   No. 14-30058, 2015 WL 5025449 (D. Mass. June 22, 2015) ................. 24

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 (1984) ............................................................................... 17

*KG Urban Enters., LLC v. Patrick*,
   969 F. Supp. 2d 52 (D. Mass. 2013) ...................................................... 13

*Klunder v. Brown Univ.*,
   778 F.3d 24 (1st Cir. 2015) ..................................................................... 3

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
   571 F.3d 672 (7th Cir. 2009) ................................................................... 9

*La Casse v. Aurora Loan Servs., LLC*,
   No. 15-11672, 2016 WL 4535338 (D. Mass. Aug. 30, 2016) ................. 22

*Lary v. Trinity Physician Fin. & Ins. Servs.*,
   780 F.3d 1101 (11th Cir. 2015) .............................................................. 12

*Lemieux v. City of Holyoke*,
   641 F. Supp. 2d 60 (D. Mass. 2009) ........................................................ 4

*Leyse v. Bank of Am. Nat. Ass'n*,
   804 F.3d 316 (3d Cir. 2015) .................................................................... 8

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................... 11

*March v. Mills,*
867 F.3d 46 (1st Cir. 2017)............................................................. 25, 26

*Massachusetts v. EPA,*
549 U.S. 497 (2007) ............................................................................. 11

*In re McCarn's Allstate Fin., Inc.,*
326 B.R. 843 (Bankr. M.D. Fla. 2005) .................................................. 31

*Mejia v. Time Warner Cable Inc.,*
No. 15-6445, 2017 WL 3278926 (S.D.N.Y. Aug. 1, 2017) .................. 12, 27, 28, 30

*Mey v. Venture Data, LLC,*
245 F. Supp. 3d 771, 792 (N.D.W. Va. 2017) ....................................... 26

*Meyer v. Portfolio Recovery Assocs., LLC,*
707 F.3d 1036 (9th Cir. 2012) ............................................................. 11

*In re Miller,*
188 B.R. 302 (Bankr. M.D. Fla. 1995) ................................................. 37

*Montalvo-Huertas v. Rivera-Cruz,*
885 F.2d 971 (1st Cir. 1989)............................................................... 6, 9

*Morales v. Chadbourne,*
996 F. Supp. 2d 19 (D.R.I. 2014) ......................................................... 11

*Moser v. FCC,*
46 F.3d 970 (9th Cir. 1995) ........................................................... 29, 31

*Murphy v. Newport Waterfront Landing, Inc.,*
806 F. Supp. 322 (D.R.I. 1992) ............................................................ 40

*Neufeld v. Neufeld,*
910 F. Supp. 977 (S.D.N.Y. 1996) ....................................................... 18

*New England Data Servs., Inc. v. Becher,*
829 F.2d 286 (1st Cir. 1987)................................................................ 37

*Nikitine v. Wilmington Tr. Co.,*
715 F.3d 388 (1st Cir. 2013) ................................................................. 6

*Norwood Co-op. Bank v. Gibbs,*
No. 10-11647, 2012 WL 4094328 (D. Mass. Sept. 13, 2012) ................ 31

*Nottingham v. Gen. Am. Commc'ns Corp.,*
811 F.2d 873 (5th Cir. 1987) .............................................................. 40

*U.S. ex rel. Nowak v. Medtronic, Inc.*,
    806 F. Supp. 2d 310 (D. Mass. 2011) ................................................................. 37

*Nowak v. Tak How Invs., Ltd.*,
    94 F.3d 708 (1st Cir. 1996) ................................................................................ 16

*Nuzzo v. O'Brien*,
    No. 17-10297, 2018 WL 615665 (D. Mass. Jan. 29, 2018) .................................. 22

*O'Leary v. New Hampshire Boring, Inc.*,
    323 F.R.D. 122 (D. Mass. 2018) ........................................................................... 4

*In re Old Naples Sec., Inc.*,
    343 B.R. 310 (Bankr. M.D. Fla. 2006) ............................................................... 31

*Omran v. United States*,
    No. 1:14-CV-13881, 2016 WL 4158556 (D. Mass. June 22, 2016) ...................... 18

*In re Osage Expl. Co.*,
    104 F.R.D. 45 (S.D.N.Y. 1984) ............................................................................. 4

*Osorio v. State Farm Bank, F.S.B.*,
    746 F.3d 1242 (11th Cir. 2014) ............................................................................ 8

*Pacamor Bearings, Inc. v. Minebea Co.*,
    892 F. Supp. 347 (D.N.H. 1995) .................................................................. 3, 4, 5

*Parchman v. SLM Corp.*,
    896 F.3d 728 (6th Cir. 2018) ................................................................................ 8

*In re Parmalat Sec. Litig.*,
    375 F. Supp. 2d 278 (S.D.N.Y. 2005) ................................................................ 22

*Patriotic Veterans, Inc. v. State of Indiana*,
    177 F.Supp.3d 1120, 1125 (S.D. Ind. 2016) ...................................................... 26

*Patriotic Veterans, Inc. v. Zoeller*,
    845 F.3d 303 (7th Cir. 2017) .............................................................................. 26

*In re Payton Const. Corp.*,
    399 B.R. 352 (Bankr. D. Mass. 2009)........................................................... 32, 34

*Pearson v. First NH Mortg. Corp.*,
    200 F.3d 30 (1st Cir. 1999)................................................................................. 36

*Pena-Borrero v. Estremeda*,
    365 F.3d 7 (1st Cir. 2004)................................................................................... 21

*Pendley v. Komori Printing Mach. Co.*,
No. 89-0420, 1990 WL 17152 (D.R.I. Feb. 8, 1990) ................................................ 3

*Perlmutter v. Shatzer*,
102 F.R.D. 245 (D. Mass. 1984) ............................................................................ 6

*Picker Int'l, Inc. v. Leavitt*,
128 F.R.D. 3 (D. Mass. 1989) ............................................................................... 2

*Piro v. Exergen Corp.*,
No. 15-11834, 2016 WL 1255630 (D. Mass. Mar. 29, 2016)................................... 13

*Posadas de Puerto Rico Assocs. v. Tourism Co. of Puerto Rico*,
478 U.S. 328 (1986) .............................................................................................. 30

*Pujol v. Shearson American Exp., Inc.*,
877 F.2d 132 (1st Cir. 1989)............................................................................ 39, 40

*Rappa v. New Castle Cty.*,
18 F.3d 1043 (3d Cir. 1994)................................................................................... 31

*Reed v. Town of Gilbert, Ariz.*,
135 S. Ct. 2218 (2015) ..................................................................................... 25, 26

*Reno v. Am. Civil Liberties Union*,
521 U.S. 844 (1997) .............................................................................................. 27

*Rocchigiani v. World Boxing Council, Inc.*,
139 F. Supp. 2d 440 (S.D.N.Y. 2001) .................................................................... 40

*Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*,
869 F. Supp. 152 (S.D.N.Y. 1994) ......................................................................... 18

*Rodi v. S. New England Sch. of Law*,
389 F.3d 5 (1st Cir. 2004)................................................................................ 36, 37

*Romani v. Shearson Lehman Hutton*,
929 F.2d 875 (1st Cir. 1991)................................................................................. 36

*In the Matter of Rules and Regulations Implementing the Telephone
Consumer Protection Act of 1991, 2003 Report and Order*,
18 FCC Rcd. 14014 (July 3, 2003).......................................................................... 9

*In the Matter of Rules and Regulations Implementing the Telephone
Consumer Protection Act of 1991, 2015 Report and Order*,
30 FCC Rcd. 7961 ¶¶73-74 (July 10, 2015) .............................................. 8, 29, 38

*Saldivar v. Racine*,
     818 F.3d 14 (1st Cir. 2016) ............................................................................. 19, 23

*Santiago v. WHM Carib, LLC*,
     126 F. Supp. 3d 211, 214 (D.P.R. 2015) ................................................................ 3

*Savoy v. White*,
     139 F.R.D. 265 (D. Mass. 1991) ............................................................................ 7

*Sawtelle v. Farrell*,
     70 F.3d 1381 (1st Cir. 1995) ................................................................................ 16

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*,
     742 F.2d 786 (3d Cir. 1984) ................................................................................. 34

*Sliwa v. Bright House Networks, LLC*,
     No. 16-235, 2018 WL 1531913 (M.D. Fla. Mar. 29, 2018) ............................. 30, 31

*Snyder v. Ocwen Loan Servicing, LLC*,
     258 F. Supp. 3d 893, 901 (N.D. Ill. 2017) ............................................................ 14

*Soppet v. Enhanced Recovery Co., LLC*,
     679 F.3d 637 (7th Cir. 2012) ................................................................................. 8

*Speakman v. Allmerica Fin. Life Ins.*,
     367 F. Supp. 2d 122 (D. Mass. 2005) ................................................................... 23

*StockFood Am., Inc. v. Pearson Educ., Inc.*,
     No. 12- 124, 2012 WL 5986791 (D. Me. Nov. 29, 2012) ......................................... 3

*Stone v. Winter Enters., P.C.*,
     No. 12-465, 2012 WL 6155606 (D.N.J. Dec. 11, 2012) ......................................... 22

*Subsalve USA Corp. v. Watson Mfg., Inc.*,
     462 F.3d 41 (1st Cir. 2006) ................................................................................... 19

*Sweeney v. Keystone Provident Life Ins. Co.*,
     578 F. Supp. 31 (D. Mass. 1983) ............................................................................ 5

*Taliaferro v. City of Kansas City*,
     128 F.R.D. 675 (D. Kan.1989) ............................................................................... 3

*Temple v. Synthes Corp.*,
     498 U.S. 5 (1990) ................................................................................................. 39

*Texas v. Am. Blastfax, Inc.*,
     121 F. Supp. 2d 1085 (W.D. Tex. 2000) ............................................................... 30

*Tiernan v. Blyth, Eastman, Dillon & Co.*,
719 F.2d 1 (1st Cir. 1983) ............................................................................ 5

*Torres v. Nat'l Ass'n of Underwater Instructors (NAUI)*,
928 F. Supp. 134 (D.P.R. 1996) ................................................................ 40

*Troncoso v. Middlesex Sheriff's Office*,
No. 18-10110, 2018 WL 1783801 (D. Mass. Apr. 13, 2018) .................................. 20

*In re Tronox Inc.*,
429 B.R. 73 (Bankr. S.D.N.Y. 2010) .......................................................... 32

*Turner Broad. Sys., Inc. v. FCC*,
520 U.S. 180 (1997) .................................................................................. 29

*United States Parole Comm'n v. Geraghty*,
445 U.S. 388 (1980) .................................................................................. 14

*United States v. Booker*,
543 U.S. 220 (2005) .................................................................................. 31

*United States v. Mueffelman*,
327 F. Supp. 2d 79 (D. Mass. 2004) ........................................................... 31

*United States v. Playboy Entertainment Group, Inc.*,
529 U.S. 803 (2000) ............................................................................ 28, 29

*Vaello-Carmona v. Siemens Med. Sols. USA, Inc.*,
781 F.3d 1 (1st Cir. 2015) .......................................................................... 8

*Van Bergen v. State of Minn.*,
59 F.3d 1541 (8th Cir. 1995) .................................................................... 26

*Connor B. ex rel. Vigurs v. Patrick*,
771 F. Supp. 2d 142 (D. Mass. 2011) .................................................... 11, 12

*W Holding Co. v. AIG Insur. Co.*,
943 F. Supp. 2d 313 (D.P.R. 2013) ........................................................... 35

*Walden v. Fiore*,
571 U.S. 277 (2014) .................................................................................. 18

*Ward v. Rock Against Racism*,
491 U.S. 781 (1989) .................................................................................. 26

*Watchtower Bible & Tract Soc'y of New York, Inc. v. Municipality of San Juan*,
   773 F.3d 1 (1st Cir. 2014) ................................................................. 41

*Weber v. Sanborn*,
   526 F. Supp. 2d 135 (D. Mass. 2007) ................................................ 4

*Williams-Yulee v. Fla. Bar*,
   135 S. Ct. 1656 (2015) ....................................................................... 28

*Zond, Inc. v. Fujitsu Semiconductor Ltd.*,
   990 F. Supp. 2d 50 (D. Mass. 2014) ..................................... 21, 22, 24

**State Cases**

*Edwards v. Emperor's Garden Rest.*,
   122 Nev. 317, 130 P.3d 1280 (2006) ................................................ 12

*Gen. Elec. Co. v. Chuly Int'l, LLC*,
   118 So. 3d 325 (Fla. Dist. Ct. App. 2013) ....................................... 37

*Yaralli v. Am. Reprographics Co., LLC*,
   165 So. 3d 785 (Fla. Dist. Ct. App. 2015) ....................................... 36

**Federal Statutes**

28 U.S.C. § 1391(b)(1) ............................................................................. 18

28 U.S.C. § 1391(b)(2) ............................................................................. 18

28 U.S.C. § 1391(c)(2) ............................................................................. 18

28 U.S.C. § 1631 ................................................................................. 18, 19

47 U.S.C. § 227(b)(1)(A)(iii) ............................................................ 24, 30

47 U.S.C. § 227(b)(1)(B) ................................................................... 24, 25

47 U.S.C. § 608 ......................................................................................... 31

Bankruptcy Code § 548 ........................................................................... 31

Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(12),
   105 Stat. 2394-95 (1991) ................................................................... 29

**State Statutes**

Fla. Stat. § 726.105 .................................................................................. 31

Fla. Stat. § 726.105(1)(a) ............................................................................................ 36

Fla. Stat. § 726.105(2) ................................................................................................. 37

Fla. Stat. § 726.105(2)(a) ............................................................................................ 35

**Rules**

Fed. R. Civ. P. 5.1 ................................................................................................. 24, 25

Fed. R. Civ. P. 5.1(a) ................................................................................................... 24

Fed. R. Civ. P. 8 ................................................................................................... 21, 22

Fed. R. Civ. P. 8(a) ............................................................................................... *passim*

Fed. R. Civ. P. 9(b) ............................................................................................... *passim*

Fed. R. Civ. P. 12 ......................................................................................................... 7

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 7

Fed. R. Civ. P. 15 ................................................................................................. 1, 2, 4

Fed. R. Civ. P. 15(a) ......................................................................................... 1, 2, 3, 7

Fed. R. Civ. P. 15(a)(1) .................................................................................................. 6

Fed. R. Civ. P. 15(a)(2) ......................................................................................... 1, 2, 7

Fed. R. Civ. P. 19 ........................................................................................... 38, 39, 40

Fed. R. Civ. P. 19(a) ................................................................................................... 40

Fed. R. Civ. P. 23(b)(2) ............................................................................................... 12

**Regulations**

47 C.F.R. § 64.1200(d)(3) ............................................................................................ 13

**Constitutional Provisions**

First Amendment ................................................................................... 24, 25, 28, 30

Fifth Amendment ........................................................................................................ 17

## Other Authorities

14D Charles Alan Wright & Arthur R. Miller, Federal Practice &
      Procedure § 3826 (4th ed. 2018) ............................................................. 18

5A Charles Alan Wright & Arthur R. Miller, Federal Practice and
      Procedure § 1298 (3d ed. 2018) .............................................................. 38

6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
      § 1487 (3d ed. 2018) ................................................................................. 4

7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
      § 1623 (3rd ed. 2013) ............................................................................... 39

*GMO Tr. ex rel. GMO Emerging Country Debt Fund v. ICAP plc*, No. 12-
      10293 ........................................................................................................ 21

*In the Matter of the Joint Petition filed by DISH Network, LLC, the United*
      *States of America, and the States of California, Illinois, North Carolina,*
      *and Ohio for Declaratory Ruling Concerning the Telephone Consumer*
      *Protection Act (TCPA) Rules*, 28 FCC Rcd. 6574 (May 9, 2013) ........................... 38

Plaintiffs Samuel Katz, Lynne Rhodes, and Alexander Braurman (collectively, "Plaintiffs") hereby submit their Motion for an order granting Plaintiffs leave to file their Second Amended Complaint ("SAC") against Defendants Liberty Power Corp., LLC and Liberty Power Holdings, LLC ("Defendants") under Rule 15(a)(2).

## I. Consistent with First Circuit Law, Plaintiffs Move to Amend Before—Rather Than After—the Court Considers the Arguments in the Motion to Dismiss

On March 16, 2018, Plaintiffs filed their original Complaint. (ECF No. 1.) On June 25, 2018, Defendants filed a motion to partially dismiss the Complaint—particularly Katz's claims for injunctive relief. (ECF No. 26.) On July 16, 2018, Plaintiffs filed their First Amended Complaint ("FAC"). (ECF No. 34.) On August 3, 2016, Defendants filed a thirty-five page motion to dismiss ("Def's Mot"). (ECF No. 56.)

Plaintiffs strongly believe the FAC is entirely sufficient to resisting the challenge in the motion to dismiss. After reviewing the motion to dismiss, Plaintiffs have determined that amending certain allegations would clarify the record for the Court's decision on the arguments raised in the motion to dismiss. (ECF No. 77 ¶¶4, 6.) Plaintiffs move to amend before testing the various arguments in Defendants' motion to dismiss.

## II. On This Record, Rule 15 Requires Leave to Amend

A party amending under Rule 15(a)(2) may do so "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Defendants here have declined to consent to Plaintiffs amending their complaint. (Preston Decl. ¶4.) The Supreme Court's admonished that Rule 15 favors and presumes amendment:

> Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. . . . In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

> amendment, futility of amendment, etc.—the leave sought should, as the rules
> require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962). Consistent with this admonition, amendment under

Rule 15(a)(2) is a matter of the Court's discretion, but the scope of that discretion is limited.[1]

"Leave to amend under Rule 15 'is freely given when justice so requires' absent an adequate

basis to deny amendment such as futility, bad faith, undue delay or a dilatory motive." *Guest-Tek*

*Interactive Entm't Inc. v. Pullen*, 731 F. Supp. 2d 80, 92-93 (D. Mass. 2010) (citing, e.g., *Foman*

*v. Davis*, 371 U.S. 178, 182 (1962)). And the First Circuit "will not affirm [such] denial unless

there appears to be an adequate reason for the denial . . ." *Carmona v. Toledo*, 215 F.3d 124, 136

(1st Cir. 2000) (citation omitted).[2] As set forth below, none of the factors identified out in *Foman*

provides an adequate basis to deny Plaintiffs leave to file their second amended complaint.

### A.    There Is No Prejudice or Undue Delay

When Plaintiffs asked, Defendants would not provide any basis for contending Plaintiffs'

proposed amendment would cause prejudice or undue delay. (Preston Decl. ¶5.) Given the record

of the parties' meet and confer, it would be disingenuous for Defendants to claim prejudice or

undue delay now. (*Id*.) In any event, Plaintiffs seek a reply brief to the extent Defendants raise

arguments Plaintiffs were not able to address in their opening brief.

Prejudice is "the most frequent reason for denying leave to amend." *Picker Int'l, Inc. v.*

*Leavitt*, 128 F.R.D. 3, 6 (D. Mass. 1989). Defendants bear the burden of proving prejudice on

this Motion: "the burden is upon the opposing party to assert and demonstrate that it will be

---

[1]  "The policy of Rule 15(a) in liberally permitting amendments to facilitate determination of claims on the merits circumscribes the exercise of the trial court's discretion; thus unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Benitez-Allende v. Alcan Aluminio do Brasil, S.A.*, 857 F. 2d 26, 36 (1st Cir. 1988) (citations, punctuation omitted)

[2]  "Unless there appears to be an adequate reason for the denial of leave to amend (e.g., undue delay, bad faith, dilatory motive, futility of amendment, prejudice), we will not affirm it." *Glassman v. Computervision Corp.*, 90 F.3d 617, 622 (1st Cir. 1996) (citation omitted).

substantially prejudiced by the proposed amendment and its mere statement that prejudice will result if the amendment is allowed is not sufficient reason for denying leave to amend." *Pendley v. Komori Printing Mach. Co.*, No. 89-0420, 1990 WL 17152, *3 (D.R.I. Feb. 8, 1990) (citing *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir.1973)). *See also StockFood Am., Inc. v. Pearson Educ., Inc.*, No. 12- 124, 2012 WL 5986791, *9 (D. Me. Nov. 29, 2012) (citing *Taliaferro v. City of Kansas City*, 128 F.R.D. 675, 678 (D. Kan.1989) for proposition that "party opposing amendment has the burden of showing prejudice").[3]

Defendants have no evidence of cognizable prejudice. Prejudice typically "takes the form of additional, prolonged discovery and a postponement of trial," as well as belated, significant changes to the issues material to litigation. *Klunder v. Brown Univ.*, 778 F.3d 24, 34 (1st Cir. 2015).[4] This case is at an early stage: trial and class certification are not on the horizon, the amendments mostly provide more detailed allegations, and the parties have just started with discovery. Indeed, there are no case management deadlines yet, and the amendments do not change the discovery needed (which Defendants have broadly resisted discovery in any event).[5]

---

[3]   *See Hurn v. Ret. Fund Tr. of Plumbing, Heating & Piping Indus. of S. Cal.*, 648 F.2d 1252, 1254 (9th Cir. 1981) ("[b]ald assertions of prejudice cannot overcome the strong policy reflected in Rule 15(a)"); *Taliaferro*, 128 F.R.D. at 678 (citing *Beeck v. Aquaslide 'N' Dive Corp.*, 562 F.2d 537, 540 (8th Cir. 1977) for proposition that "party opposing the amendment of the pleadings has the burden of showing prejudice").

[4]   *See Isaac v. Harvard Univ.*, 769 F.2d 817, 829 (1st Cir. 1985) (finding prejudice where amendment "would have been required [defendant] to develop evidence of oral representations which occurred 13 years before . . . proposed amended complaint was filed," and "new claims [would] 'very materially change the nature of the complaint'"; citation omitted); *Pacamor Bearings, Inc. v. Minebea Co.*, 892 F. Supp. 347, 354 (D.N.H. 1995) (denying amendment where addition of new claims "would require discovery into matters that were not previously part of this action and that such discovery is likely to further delay these proceedings," and might "also require the parties to obtain additional experts").

[5]   *See Santiago v. WHM Carib, LLC*, 126 F. Supp. 3d 211, 214 (D.P.R. 2015) (no prejudice where amendment filed within case management order to amend, within eight months of litigation commencing, proposed amendments did not "substantially change" claims but "merely augment[ed]" them); *Greenberg v. Mynczywor*, 667 F. Supp. 901, 905 (D.N.H.

The fact that the second amended complaint sharpens Plaintiffs' arguments against the motion to dismiss does not constitute prejudice.[6] Nor does prejudice cover the lost value of prior litigation work caused by amendment; prejudice under Rule 15 only cover the cost of litigation work that the amendment may require in the future.[7] Prior proceedings—including Defendants' prior motion to dismiss the original complaint— do not amount to future prejudice.

In the First Circuit, the analyses for prejudice and undue delay overlap. *See Weber v. Sanborn*, 526 F. Supp. 2d 135, 142, 143 (D. Mass. 2007) ("facts of each case determine whether undue delay is sufficiently prejudicial . . . to warrant a denial of leave to amend"). Hence, "the longer a party delays in bringing an amendment, the less prejudice an opposing party must show to justify denying leave to amend." *Id*. at 143 (First Circuit cases affirming denial of amendment for undue delay "generally involve the prospect of additional discovery or other significant burden on the non-moving party"; collecting cases).[8] At some point, the passage of time becomes "undue delay" and shifts the burden to the movant. *See Greenberg v. Mynczywor*, 667 F. Supp.

---

1987) ("defendants will suffer no prejudice by the granting of leave to amend because the amendments here sought raise no new issues").

[6] *See O'Leary v. New Hampshire Boring, Inc.*, 323 F.R.D. 122, 128 (D. Mass. 2018) (fact that amendment would require "proposed defendants . . . to actively litigate the case . . . is not prejudice"); *In re Osage Expl. Co.,* 104 F.R.D. 45, 49 (S.D.N.Y. 1984) ("fact that [amendment] might increase defendants' exposure to potential liability was not the type of prejudice that warranted denial of leave to amend the complaint"; citations omitted). *See also* 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1487 (3d ed. 2018) (courts should not deny "otherwise proper complaint simply because that amendment may increase defendant's potential liability").

[7] *See A.J. Props., LLC v. Stanley Black & Decker, Inc.*, No. 11-10835, 2013 WL 4046329, *2 (D. Mass. Aug. 7, 2013) (rejecting argument that amendment would prejudice plaintiff by "nullify[ing] the time and money spent over the past year and a half," because court could not "see how it unfairly prejudices plaintiff going forward"); *Lemieux v. City of Holyoke*, 641 F. Supp. 2d 60, 63 (D. Mass. 2009) (only prejudice cognizable under Rule 15 is "prospective," not "retroactive";  fact that plaintiffs would not have agreed to enter into prior settlement negotiations if they had known about amendment did not weigh against amendment under Rule 15).

[8] *See also Pacamor Bearings*, 892 F. Supp. at 354 ("'[t]he further along a case is toward trial, the greater the threat of prejudice and delay when new claims are belatedly added'"; quoting *Exec. Leasing Corp. v. Banco Popular de Puerto Rico*, 48 F.3d 66, 71 (1st Cir. 1995)).

901, 905 (D.N.H. 1987) ("if considerable delay has occurred, the burden shifts to the movant to show a valid reason for the Court to excuse the delay").[9] Plaintiffs seek to amend a little over six months after the start of the case, and as soon as they reasonably could do so, in light of Defendants' motion to dismiss. (ECF Nos. 1, 56.) This is not undue delay.[10]

Plaintiffs have been diligent with respect to the proposed amendment. Defendants did not disclose the arguments in the motion dismiss until they filed it on August 3. (Preston Decl. ¶3.) Since Defendants filed their motion to dismiss, Plaintiffs have (1) filed their motion to compel native format production; (2) their reply brief regarding preservation; (3) their opposition to Defendants' second motion for bifurcation; (4) their reply brief on the native format issue; (5) their response to Defendants' privilege log letter; and (6) their motion for protective order to address Defendants' overbroad subpoenas to Verizon, Google, and Vonage. (*Id.* ¶6. *See also* ECF Nos. 64, 71, 74, 81, 86, 88.) In addition, Plaintiffs' counsel also filed a motion to compel Mezzi Marketing LLC ("Mezzi") to comply with their subpoena, and the same attorneys filed a motion for protective order to prevent Defendants' harassment of Plaintiff's spouse. (Preston Decl. ¶6.) Plaintiffs' counsel has also met and conferred with Defendants on August 17, August 22, August 31, September 19 and October 3 to address immediate demands for various discovery, and have catered to some of those demands (including preparing a privilege log). (*Id.*) The foregoing work meant that Plaintiffs' counsel were not immediately available to prepare the

---

[9]   *See also Tiernan v. Blyth, Eastman, Dillon & Co.*, 719 F.2d 1, 4 (1st Cir. 1983) (affirming denial of amendment for undue delay shortly before trial where additional claims "may well have affected defendants' planned trial strategy and tactics"); *Pacamor Bearings*, 892 F. Supp. at 354 ("'[t]he further amount of time to have passed, the greater the threat of prejudice and delay when new claims are belatedly added'"; quoting *Exec. Leasing Corp. v. Banco Popular de Puerto Rico*, 48 F.3d 66, 71 (1st Cir. 1995)).

[10]   *Cf. Sweeney v. Keystone Provident Life Ins. Co.*, 578 F. Supp. 31, 34 (D. Mass. 1983) ("Nine months is not an inordinate amount of time to have passed, even [without] any adequate explanation for the delay"); *In re Huggard*, 510 B.R. 668, 674 (Bankr. D. Mass. 2014) ("No cognizable prejudice to the Debtor would result from allowing an amendment at this juncture—the Court has yet to even conduct the pre-trial conference").

SAC and this motion, which is a valid reason for delay. (*Id*.)

### B.    There Is No Repeated Failure to Cure by Prior Amendments or Bad Faith

There is no repeated failure to cure deficiencies in Plaintiffs' complaint, or bad faith.

Plaintiffs have not sought leave to amend before, they filed the FAC "as a matter of course"

under Rule 15(a)(1): thus, there could be no "repeated failure to cure deficiencies by

amendments previously allowed." *Foman*, 371 U.S. at 182. (*Cf*. ECF No. 34 *with Perlmutter v.*

*Shatzer*, 102 F.R.D. 245, 248 (D. Mass. 1984) (where party never requested leave to amend and

therefore never "had the opportunity to previously 'fail to cure' any deficiencies," factor did not

weigh against amendment)).) A single prior amendment does not justify refusal to amend here.[11]

Likewise, there are repeated failure to cure deficiencies. Plaintiffs proofed the FAC

against whatever ostensible deficiencies in the original complaint Defendants alleged.

Defendants sought to dismiss the claims for injunctive relief in Plaintiffs' original complaint

(ECF No. 26), but do not dispute Rhodes has standing to bring such a claim. (Def.s' Mot. 10-11.)

Hence, Plaintiffs' FAC (let alone the SAC) could not have been subject to dismissal on this

ground, after the addition of Rhodes.[12] (FAC ¶¶94-95.)

The First Circuit disfavors parties' testing the adequacy of their pleadings on a

dispositive motion, where amendment might clarify the issues or correct the record.[13] Plaintiffs'

---

[11]   *Cf. United States ex rel. D'Agostino v. EV3, Inc.*, 802 F.3d 188, 194-195 (1st Cir. 2015) ("number and nature of prior amendments to a complaint" are relevant to leave to amend; citation omitted); *Nikitine v. Wilmington Tr. Co.*, 715 F.3d 388, 390 (1st Cir. 2013) ("prior opportunity to amend is one data point to be taken into account [and] does not have a talismanic significance").

[12]   "Where coplaintiffs have a shared stake in the litigation . . . the finding that one has standing to sue renders it superfluous to adjudicate the other plaintiffs' standing." *Montalvo-Huertas v. Rivera-Cruz*, 885 F.2d 971, 976 (1st Cir. 1989).

[13]   *See Hamilton v. Partners Healthcare Sys., Inc.*, 879 F.3d 407, 415 (1st Cir. 2018) (affirming refusal to amend where plaintiffs "treat[ed] [extant complaint] as a risk-free trial balloon"); *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 57 (1st Cir. 2008) ("Plaintiffs may not . . . deliberately wait in the wings . . . with another amendment to a complaint should the court

efforts to clarify the record prior to adjudication of Defendants' motion reflect good faith compliance with prevailing First Circuit law. Filing an amended complaint as "an attempt to forestall ruling on a [dispositive] motion . . . may evidence bad faith," but there are no grounds for such inference where the plaintiff "merely attempt[s] to cure [a] prior deficiency" in a claim made before the dispositive motion. *Savoy v. White*, 139 F.R.D. 265, 269 (D. Mass. 1991).[14] Plaintiffs have consistently sought and received appropriate extensions on their opposition, and alerted Defendants and the Court that they intended to file the SAC well in advance of their deadline for the motion to dismiss. (ECF Nos. 62, 63, 77, 78.)

### C.     The Proposed SAC Is Not Futile

Finally, the proposed SAC is not futile. Futility tests whether a proposed amended "complaint failed to meet the pleading standards of Rule 12(b)(6). There is no practical difference, in terms of review, between a denial of a motion to amend based on futility and the grant of a motion to dismiss for failure to state a claim." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996) (review for futility "applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion").

Plaintiffs met and conferred with Defendants about narrowing the scope of the arguments on this motion in light of the changes in the SAC, but Defendants have declined to do so. (Preston Decl. ¶4.) Hence, Plaintiffs address all of the arguments in Defendants' motion to dismiss below.

---

hold the [existing] complaint was insufficient"); *Egan v. Tenet Health Care*, 193 F. Supp. 3d 73, 87 (D. Mass. 2016) ("it is not appropriate to allow a plaintiff to use a Rule 12 motion to dismiss as a vehicle to identify deficiencies in the complaint so that the plaintiff can then make corrections with the benefit of hindsight and the court's analysis").

[14]   *Cf. D'Agostino*, 802 F.3d at 194-195 (fact that plaintiff "sought to amend only a few days before his opposition to the dismissal motions was due does not justify a different result," "Rule 15(a)'s leave freely given standard" would not change, even if "attempt[] to torpedo [court's] briefing schedule" was "proper factor in its Rule 15(a)(2) calculus").

1.      **Rhodes Has Standing to Assert the Claims Alleged in the Complaint**

Defendants claim Rhodes has no TCPA claims for calls to her father's telephone number

(508-540-XXXX) because she "was not the 'called party' with a legally protected interest under

the TCPA." (Def.s' Mot. 5.) Rhodes lived with her father at his house while he had dementia,

and she answered Defendants' calls. (SAC ¶¶87-93; FAC ¶¶82-89.) Rhodes is a "called party"

under these facts, whether or not she was Defendants' intended recipient—Defendants are

simply wrong on this point of law.[15] And even if she did not have standing in her own right,

Rhodes will serve as the executrix of her father's estate and independently has standing to bring

claims that are the property of her father's estate.[16] (SAC ¶87.)

Rhodes also alleges a call to her cellular telephone at 617-962-XXXX. (SAC ¶100; FAC

¶93.) Defendants do not contest Rhodes's standing for calls to this number. (Def.s' Mot. 6 n.5.)

2.      **Katz Has More Than One Residential Telephone Number**

Defendants attempt to manufacture a contradiction by citing a declaration from Katz in

another case that "his residential number is actually (978) 877-XXXX," not the (508) 966-

XXXX number alleged in the complaint. (Def.s' Mot. 4.) In fact, Defendants know perfectly

---

[15]  The FCC has defined a "called party" to include a "non-subscriber customary user of a
telephone number," "the person whose privacy is interrupted by unwanted calls." *In the
Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of
1991*, *2015 Report and Order*, 30 FCC Rcd. 7961 ¶¶73-74 (July 10, 2015) ("2015 Order").
The D.C. Circuit recently held the 2015 Order's interpretation of "called party" was
permissible, *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 706 (D.C. Cir. 2018), and
it is consistent with every other Court of Appeal to consider the issue, *see Soppet v.
Enhanced Recovery Co., LLC*, 679 F.3d 637, 640 (7th Cir. 2012) ("called party" means
"person who answers the call" or subscriber; rejecting argument that "called party" is limited
to "intended recipient"; followed by *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242,
1251-52 (11th Cir. 2014); *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 326 (3d Cir. 2015)
(TCPA protects "regular user of the phone line who occupies the residence")).

[16]  *See Parchman v. SLM Corp.*, 896 F.3d 728, 741 (6th Cir. 2018) ("claims under the TCPA do
survive a plaintiff's death"); *Vaello-Carmona v. Siemens Med. Sols. USA, Inc.*, 781 F.3d 1, 6
(1st Cir. 2015) ("When a cause of action arises from a federal statute, we generally apply
federal law to determine whether that claim survives the plaintiff's death").

well that (1) both numbers are Katz's residential numbers, (2) that Katz ported his (978) 877-

XXXX to Google Voice (after he got a new telephone number) so that people with that number

"would still be able to contact" him, and (3) that Katz had the 508-966-XXXX landline to ensure

he could reliably call 911.[17] (Preston Decl. ¶15, Aug. 31, 2018 ECF No. 74-1.)

### 3. Katz and Braurman Have Standing to Assert Claims for Injunctive Relief

Defendants argue that Katz and Braurman cannot seek injunctive relief because Katz has

not alleged he received a call from Liberty Power for over 18 months, he is on the National DNC

list, and Defendants' internal DNC list since March 29, 2017, and "Braurman is in essentially the

same position." (Def.s' Mot. 7.)

#### a. The Motion Is Moot Because Rhodes Has Standing

Defendants' arguments here fail at the outset because Defendants do not dispute Rhodes

has standing to seek injunctive relief for the June 20, 2018 call she alleges. (*Cf.* Def.s' Mot. 10-

11 *with* SAC ¶¶100-101; FAC ¶¶94-95.) This inquiry ends when Defendants fail to dispute that

Rhodes has standing to seek injunctive relief: "[w]here coplaintiffs have a shared stake in the

litigation . . . the finding that one has standing to sue renders it superfluous to adjudicate the

other plaintiffs' standing." *Montalvo-Huertas v. Rivera-Cruz*, 885 F.2d 971, 976 (1st Cir.

1989).[18] Likewise, Defendants also ask the Court to dismiss Katz and Braurman's claims "with

---

[17] The TCPA protects for more than one residential telephone line. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 2003 Report and Order*, 18 FCC Rcd. 14014, 14038, ¶35 (July 3, 2003) ("2003 Order") (nothing in TCPA "suggest[s] that only a customer's 'primary residential telephone service' was all that Congress sought to protect through the TCPA").

[18] *See also Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 676-77 (7th Cir. 2009) (rejecting challenge to two class members' standing because, even if the challenge was meritorious "that left one named plaintiff with standing, and one is all that is necessary"); *Houlton Citizens' Coal. v. Town of Houlton*, 175 F.3d 178, 183 (1st Cir. 1999) ("when one of several co-parties (all of whom make similar arguments) has standing, an appellate court need not verify the independent standing of the others"; citations omitted).

prejudice." (Def.s' Mot. 7.) Again, this is legally a nonstarter: "dismissal for lack of Article III standing must operate without prejudice." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 736 (1st Cir. 2016) (collecting cases).

### b.    Katz and Braurman Allege Standing for Injunctive Relief

In any event, all the Plaintiffs allege they are exposed to further calls because their personal information is included in the lead lists that Defendants circulate to their telemarketers, and that Defendants do not have effective do-not-call policies. (*See* SAC ¶¶31, 34, 61-62, 76-78, 87-95, 115, 146. *See also* FAC ¶¶26, 56-57, 71-73, 82-89, 130; ECF No. 34-1.) Defendants—or their telemarketers—told Plaintiffs they would continue to call until Plaintiffs agreed to purchase electricity from Liberty Power. (SAC ¶¶61, 93; FAC ¶¶56, 87.) Plaintiffs further allege Defendants' conduct is ongoing, and show complaints about unwanted Liberty Power calls as late as April 2018 (and the FTC's FOIA response was dated May 11). (SAC ¶¶70, 80-81, 100; FAC ¶¶65, 75-76, 89, 94; Ex. 1 to SAC; ECF No. 34-1 (Ex. 1 to FAC).) Some of these complaints reflect that Defendants will continue calling over long periods of time. (ECF No. 34-1, Row 147 ("I've asked them to take my number off their list. They agree to do it but three years later...they are still calling"). *See also id.*, Rows 64, 139.) Finally, Defendants' agents used spoofed telephone numbers, and do not initially disclose they are calling on Defendants' behalf—so Plaintiffs are not in a position to necessarily know if they have since been called by Defendants' telemarketers. (SAC ¶¶30, 58-70, 74-82, 96; FAC ¶¶25, 53-65, 69-76, 90.) Likewise, Plaintiffs face ongoing and continuous harm because Defendants' continued operations means Plaintiffs must continually screen their calls to avoid answering unwanted telemarketing calls. (*See* SAC ¶¶71, 85, 105.)

At the pleading stage, these allegations are sufficient for Plaintiffs to pursue injunctive

relief. In the context of standing for injunctive relief, "'at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Connor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d 142, 151 (D. Mass. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). The SAC contains facts—continued exposure to calls from Defendants' agents—sufficient to allege standing for injunctive relief. "'Even a small probability of injury is sufficient to create a case or controversy—to take a suit out of the category of hypothetical,'" and suffices to "survive a motion to dismiss an injunctive claim based on the assertion of lack of standing . . ." *Morales v. Chadbourne*, 996 F. Supp. 2d 19, 37 (D.R.I. 2014) (quoting *Massachusetts v. EPA*, 549 U.S. 497, 525 n. 23 (2007)). Notably, Defendants persist in their claim there is nothing wrong with their current telemarketing practices generally, or their existing do-not-call practices specifically—despite the weight of the evidence to the contrary. (*Cf.* ECF No. 34-1; SAC ¶¶159-60 *with Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1045 (9th Cir. 2012) (affirming preliminary injunction where defendant "did not acknowledge the wrongful nature of its conduct" and "would have continued to violate the TCPA if an injunction had not been issued," even though it "assured the court it would stop calling [Plaintiff] without making any assurance regarding other [class] members")).[19]

Courts have rejected premature efforts to foreclose injunctive relief on TCPA claims at the pleading stage:

> [B]ecause Plaintiffs have not yet been able to take discovery into Time Warner's systems and procedures, it would be premature for the Court to determine that Time Warner has adequately foreclosed the possibility of future violations. . . . Further discovery may reveal that Time Warner has, in fact, taken steps to ensure

---

[19]   *Cf. Morales*, 996 F. Supp. 2d at 38 (plaintiff had standing for injunctive relief where defendants' agents "told her that this could happen to her again").

> that future violations will not occur, rendering injunctive relief unnecessary, but
> the Court cannot [conclude] so at this juncture.

*Mejia v. Time Warner Cable Inc.*, No. 15-6445, 2017 WL 3278926, *11 (S.D.N.Y. Aug. 1,

2017). *See Griffith v. ContextMedia, Inc.*, 235 F. Supp. 3d 1032, 1035 (N.D. Ill. 2016) (denying

motion to dismiss injunctive relief in TCPA case; "plaintiff's allegations—particularly those

directed to her months-long efforts to stop defendants' unwanted texts—are sufficient to entitle

her to develop the factual record as to whether injunctive relief is appropriate").[20] In contrast,

each of Defendants' cases concern the *plaintiffs* affirmatively moving for injunctive relief, with

the full opportunity to present a complete factual record.[21] Here, Defendants move to dismiss and

have resisted providing class-wide discovery, including information about their internal systems

and policies, and the full details about their relationships with their telemarketers. (*See* ECF No.

66 (second motion for bifurcation).)

### c.   Defendants' Internal Do-Not-Call List Does Not Moot Katz and Braurman's Claims for Injunctive Relief

Defendants submit declarations that Katz and Braurman are on Defendants' internal do-

not-call list. (Def.s' Mot. 10-11.) Defendants' argument here invokes the voluntary cessation

rule, where "the defendant voluntary ceases the challenged practice," thereby allegedly "mooting

the plaintiff's case." *Am. Civil Liberties Union of Massachusetts v. U.S. Conference of Catholic*

---

[20]   "Defendants' arguments may have greater force if, after discovery, it becomes clear that a named Plaintiff cannot link the harm he or she suffered to a particular action or inaction by [Defendants]. In response to a threshold motion to dismiss, however, such a finding would be premature." *Connor B.*, 771 F. Supp. 2d at 152.

[21]   *Cf. City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) (plaintiff's motion for injunctive relief); *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101 (11th Cir. 2015) (same); *Bank v. Caribbean Cruise Line, Inc.*, No. 12-584, 2014 WL 1883586 (E.D.N.Y. May 12, 2014) (same); *Hamilton v. Voxeo Corp.*, No. 07-404, 2009 WL 1868541 (S.D. Ohio June 25, 2009) (same); *Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 130 P.3d 1280 (2006) (same). *See also Fisher v. MJ Christensen Jewelers, LLC*, No. 15-00358, 2018 WL 1175215, *6 (D. Nev. Mar. 6, 2018) (rejecting class certification under Rule 23(b)(2) because, e.g., it found "Plaintiff has not shown a need for injunctive relief").

*Bishops*, 705 F.3d 44, 54 (1st Cir. 2013). Under the rule, "voluntary cessation of challenged conduct does not ordinarily render a case moot unless the defendant meets the 'formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *KG Urban Enters., LLC v. Patrick*, 969 F. Supp. 2d 52, 56 (D. Mass. 2013).[22] The rule serves to "avoid a manipulative litigant immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and then reinstating it immediately after." *Catholic Bishops*, 705 F.3d at 54-55. Here, Defendants rely heavily on the efficacy of their internal do-not-call policy, and the record is replete with evidence that policy is not effective.[23] (*See* SAC ¶¶31, 34, 61-62, 76-78, 87-95, 115, 146. *See also* FAC ¶¶26, 56-57, 71-73, 82-89, 130; ECF No. 34-1.) Defendants did not meet the heavy burden of mootness here.

### d.     Katz and Braurman Have Standing as Class Representatives

As set forth above, the record demonstrates Katz and Braurman have standing for injunctive relief. But even if they had lost standing as *individuals*, they would retain standing as class representatives because Defendants' TCPA violations are "capable of repetition, yet evading review." *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975). Defendants only make a genuine effort to ensure their telemarketers stop calling leads on their lead lists *after* the lead escalates their complaint. On these facts, Katz and Braurman's injunctive relief "'are so

---

[22]   This Court has held that a TCPA plaintiff's claims are not moot even where defendants offered to stipulate to certain injunctive relief, where the plaintiff had "not received all of the relief he seeks." *See Johansen v. Liberty Mut. Grp., Inc.*, No. 15-12920, 2016 WL 7173753, *4 (D. Mass. Dec. 8, 2016) (quoting *Piro v. Exergen Corp.*, No. 15-11834, 2016 WL 1255630, *6 (D. Mass. Mar. 29, 2016) that "[o]pen questions as to the adequacy of Exergen's self-designed corrective measures preclude the Court from concluding, as a matter of law, that Exergen has addressed the Named Plaintiffs and the Putative Class Members' injury in full").

[23]   Indeed, Defendants added Katz and Braurman to the list five and 20 months, respectively, after the last calls they alleged in the complaint. This delay alone suggests a defective policy. 47 C.F.R. § 64.1200(d)(3) (do-not-call request must be honored "within a reasonable time from the date such request is made," which "may not exceed thirty days from the date of such request").

inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires.'" *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991) (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 399 (1980); citing *Gerstein*, 420 U.S. at 110 n.11)). Without the recognition that defendants can manipulate standing, defendants "could evade prospective injunctive relief simply by . . . by ceasing the alleged violations with respect to plaintiffs who step forward." *Snyder v. Ocwen Loan Servicing, LLC*, 258 F. Supp. 3d 893, 901 (N.D. Ill. 2017) (following *Gerstein*, 420 U.S. at 110 n.11). *Snyder* granted an injunction in a TCPA case where one of the class representatives continued to receive calls after the original complaint was filed, even though neither class representative "face[d] a current threat of receiving calls . . . that violate the TCPA" by the time of the injunction. *Id.* 900, 901 (noting "other members of the proposed class continued to receive phone calls" after the defendants stopped calling the class representatives).[24]

### 4.   The Court Has Jurisdiction and Venue Over Braurman's Claims

Defendants argue the Court does not have jurisdiction or venue over Braurman's claims. (Def.s' Mot. 11-15.) Braurman addresses jurisdiction and venue separately below.

### a.   Braurman's Claims Relate to Massachusetts

Defendants contend Braurman's claims "have no connection to whatever activities Defendants undertook with respect to Massachusetts and must be dismissed." (Def.s' Mot. 13 (citing *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017).) *Bristol-Myers* is not any sort of sea change in jurisdiction, but merely the "straightforward application in this case of settled principles of personal jurisdiction."

---

[24]   Again, Ms. Rhodes alleges she received telemarketing calls which violated the TCPA after Plaintiffs filed their initial complaint. (SAC ¶100.)

*Bristol-Myers*, 137 S. Ct. at 1783. Hence, *Bristol-Myers* recognized "three conditions for the exercise of specific jurisdiction": (1) "purposefully avail[ment]" by the defendants "within the forum State": (2) "the plaintiff's claim must . . . relate to the defendant's forum conduct"; and (3) "the exercise of jurisdiction must be reasonable under the circumstances." *Id.* at 1785-86 (citations, punctuation omitted). As in *Bristol-Myers*, Defendants only challenge the second element, relatedness.

The record belies Defendants' conclusion Braurman's claims have no connection to Massachusetts. Braurman received calls from (508) 523-6101, a Massachusetts area code, with a Caller ID "Cell Phone MA." (SAC ¶¶73, 79-80. *See* FAC ¶¶68, 74-75.) At this point, there is nothing at all in the record to rebut the inference that Braurman received a call from Massachusetts, which would satisfy the relatedness element.[25] *See Fabio v. Diversified Consultants, Inc.*, No. 13-00524, 2014 WL 713104, *3, *4 (W.D. Wis. Feb. 25, 2014) (Minnesota plaintiff received calls from defendant headquartered in Florida: relatedness element met where "defendant selected Wisconsin as the staging ground for its collection calls to plaintiff" and calls from Wisconsin "which form the basis of [plaintiff's] claims"). But even if these calls spoofed the (508) 523-6101 telephone number, the most reasonable inference from that would be that the calls to Braurman were part of a telemarketing campaign aimed at potential customers in Massachusetts. There are three complaints to the FTC by Massachusetts residents who also received calls from (508) 523-6101 around the same time frame as Braurman.

---

[25]  Defendants assert "the alleged 'spoofed' number calls to Braurman did not originate from Massachusetts, but from Illinois." (Def.s' Mot. 13 (citing FAC ¶¶74-75).) Paragraphs 74 and 75 of the FAC do not support this statement. Instead, Defendants appear to be referring to an interrogatory response regarding *calls from an entirely different number, (508) 202-1270.* (ECF No. 67-2 at 25-29.) Indeed, that interrogatory response actually disproves Defendants contention that the calls at issue came from Illinois: the cited passage concerns an Illinois-based VoIP provider which stated in response to a subpoena that neither it nor its customers called Katz from the 1270 number. (*Id.* at 29.)

(*See* SAC ¶80.) And the record reflects other instances where Defendants' telemarketing calls were directed at Massachusetts residents, but reached residents of other states.[26] The "relatedness test" is a "flexible, relaxed standard," *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1995), which "focuses on the nexus between the plaintiff's *claim* and the defendant's contacts with the forum state, not on the relationship between the plaintiff and defendant." *Hannon v. Beard*, 524 F.3d 275, 283 (1st Cir. 2008). Braurman's claims satisfy the relatedness test because they arise from the same set of Massachusetts contacts as the other Plaintiffs.[27]

Plaintiffs further allege the Defendants are intricately involved in their agents' telemarketing activities, and are derivatively liable for those activities. (SAC ¶¶23-55. See also FAC ¶¶18-50.) Indeed, Defendants' contract with Mezzi Marketing LLC assigned Massachusetts and Connecticut to Mezzi as exclusive territories—to the extent Defendants claim Mezzi called Braurman, those calls were part of a telemarketing campaign targeting Massachusetts. (ECF 28-1 ¶2.07.) *Bristol-Myers* dealt with an entirely different record—there was no causal link between the distributors' activities in California, and the plaintiffs' claims.[28] The fact that Defendants' agents directed their calls to Massachusetts resident is sufficient to support specific

---

[26]   There is other evidence consistent with Defendants' Massachusetts-directed marketing reaching customers outside of Massachusetts. One former Massachusetts resident complained of telemarketing calls from Liberty Power, which stated the recipient "qualify[ied] for a rebate because [she was] an Eversource customer," but the recipient lived in Texas. (*See* ECF No. 34-1, Row 235 (calls to former Eversource customer; "Eversource is an electric company I used in MA and I have lived in Austin since August 2015.")) Eversource operates in Massachusetts, but not in Texas. The logical implication is that Defendants targeted Massachusetts residents, but reached a Texas resident instead.

[27]   When a foreign corporation directly targets residents in an ongoing effort to further a business relationship, and achieves its purpose, it may not necessarily be unreasonable to subject that corporation to forum jurisdiction when the efforts lead to a tortious result." *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 715 (1st Cir. 1996) (construing relatedness element of specific jurisdiction).

[28]   *Cf. Bristol-Myers*, 137 S. Ct. at 1783 (plaintiffs "adduced no evidence to show [who] distributed [drug] to the pharmacies that dispensed it to them," failed to allege defendant "engaged in relevant acts together with [distributor] in California," or that defendant was "derivatively liable for [distributor's] conduct in California").

jurisdiction—even if those calls inadvertently reached Braurman, residing in New Jersey. *See*, *e.,g.*, *Ott v. Mortg. Inv'rs Corp. of Ohio*, 65 F. Supp. 3d 1046, 1057 (D. Or. 2014) (telemarketing campaign directed at forum sufficient basis for specific jurisdiction); *Christopher v. Mount Snow, Ltd.*, No. 95-10352, 1996 WL 590738, *3 (D. Mass. Sept. 24, 1996) (advertising directed at Massachusetts sufficiently related to injury in Vermont to satisfy relatedness requirement for specific jurisdiction).

With Defendants only challenge the relatedness element of specific jurisdiction, the Court does not need to address the purposeful availment or reasonableness elements, or personal jurisdiction over Katz and Rhodes's claims. Hence, Defendants do not avoid personal jurisdiction by claiming calls intended for a Massachusetts resident are too fortuitous to support specific jurisdiction.[29] Likewise, the Court does not need to resolve whether *Bristol Myers* applies to a class action (as opposed to a mass action), whether it applies in federal court (as opposed to state court) and whether it applies to federal question claims (as opposed to state law claims). These questions need not be decided here as Braurman adequately alleges that his claims arise out of Defendants contacts' with Massachusetts.[30]

---

[29]   *Cf. Bristol-Myers*, 137 S. Ct. at 1783-84 (since [Bristol-Myers] concerns the due process limits on the exercise of specific jurisdiction by a State, [it left] open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court").

[30]   Fortuity is only a factor in the purposeful availment element of specific jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ("'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts"). Defendants' operation of a retail electricity business in this state, and their maintenance of a license to operate that business with Massachusetts, makes purposeful availment a foregone conclusion. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984) ("regular monthly sales of thousands of magazines cannot by any stretch of the imagination be characterized as random, isolated, or fortuitous"). Plaintiffs do not need to show their claims relate to these contacts with Massachusetts to satisfy the purposeful availment test. *See C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 67 (1st Cir. 2014) ("purposeful availment inquiry is focused on contacts

### b.      The Court Likewise Has Venue Over Braurman's Claims

Defendants dispute venue over Braurman's claims. (Def.s' Mot. 14.) Defendants start with the factual premise that the calls to Braurman "did not originate in Massachusetts." (*Id.*) Again, there is no evidence to support this premise. Indeed, the record indicates the calls Braurman received were at least part of a telemarketing campaign directed at Massachusetts, if it did not in fact originate from Massachusetts. Thus, venue is proper "a substantial part of the events or omissions giving rise to [Braurman's] claim occurred" in Massachusetts. 28 U.S.C. § 1391(b)(2). Further, venue would be proper under section 1391(b)(1) because Defendants are subject to jurisdiction on Braurman's claims in Massachusetts.[31] Finally, the Court can apply pendent venue because venue is uncontested with respect to the other Plaintiffs' claims, and efficiency favors allocating a single venue to adjudicate all their cases.[32]

### c.      If the Court Disagrees, It Should Transfer Braurman's Case

In any event, to the extent that the Court finds it lack jurisdiction and venue, it should transfer Braurman's case to the District of New Jersey under 28 U.S.C. § 1631. *See Fed. Home Loan Bank of Boston v. Moody's Corp.*, 821 F.3d 102, 119 (1st Cir. 2016) (28 U.S.C. § 1631

---

between the defendant and the forum state, not between the defendant and the plaintiff"; citing *Walden v. Fiore*, 571 U.S. 277, 284 (2014)).

[31] *See* 28 U.S.C. § 1391(b)(1), (c)(2) (venue properly laid against corporate defendants in "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question"). Plaintiffs do not need to allege venue under 28 U.S.C. § 1391(b)(1). *See* 14D Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3826 (4th ed. 2018) ("plaintiff is not required to include allegations showing that venue is proper"); *Neufeld v. Neufeld*, 910 F. Supp. 977, 986 (S.D.N.Y. 1996) (venue could be properly laid under "venue provision plaintiffs overlooked in the Complaint"); *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 869 F. Supp. 152, 154 (S.D.N.Y. 1994) ("plaintiff need not include in his complaint an allegation showing proper venue").

[32] *See Omran v. United States*, No. 1:14-CV-13881, 2016 WL 4158556, at *7 (D. Mass. June 22, 2016) (under "'pendent venue, federal courts may exercise their discretion to hear claims as to which venue is lacking if those claims arise out of a common nucleus of operative facts as the claims that are appropriately venued and the interests of judicial economy are furthered by hearing the claims together'"; quoting *Coltrane v. Lappin*, 885 F. Supp. 2d 228, 234 (D.D.C. 2012)).

provides courts "shall" transfer cases where court finds "want of jurisdiction," including lack of personal jurisdiction). The Court has made meaningful rulings relevant to Braurman's claims. (*See* ECF No. 82, 83.) Braurman intends to litigate his claims here, or in New Jersey, and there is no valid basis for this progress as to Braurman's claims to be lost. In the First Circuit, the presumption is in favor of transfer under section 1631 rather than dismissal.[33]

### 5.   The SAC Sufficiently Alleges Defendants' Role Under Rule 8(a)

Defendants complain the FAC does not sufficiently differentiate the Defendants' conduct. (Def.s' Mot. 15-18.) As set forth below, the FAC adequately complied with Rule 8(a)'s liberal requirements: "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citation, punctuation omitted). A complaint "must merely be plausible on its face" to survive a motion to dismiss. *Saldivar v. Racine*, 818 F.3d 14, 23 (1st Cir. 2016) (same). Further, "on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson*, 551 U.S. at 94 (same). The SAC exceeds these minimal standards.

### a.   The SAC Alleges Details About the Defendants' Relationship

Still, Plaintiffs seek leave to file an amended complaint that provides significantly more information and detail about the relationship between the two Defendants, in an abundance of caution and mindful that the First Circuit favors amendment rather than "testing" pleadings. The

---

[33]   *See also Subsalve USA Corp. v. Watson Mfg., Inc.*, 462 F.3d 41, 43 (1st Cir. 2006) (28 U.S.C. § 1631 provides authorizes "court that lacks jurisdiction" to transfer action, "subject to a rebuttable presumption in favor of [] transfer"; cited, followed by *W. Inv. Total Return Fund Ltd. v. Bremner*, 762 F. Supp. 2d 339, 341 (D. Mass. 2011) (transfer for lack of personal jurisdiction under 28 U.S.C. § 1631; "there is a rebuttable presumption in favor of transfer")).

SAC alleges that Liberty Power Corp., LLC ("Corp.") and Liberty Power Holdings, LLC ("Holding") are two parts of a joint enterprise with common marketing, common offices, a common website, email server, telephone number, and common management. (SAC ¶7.) The SAC alleges the specific role Defendants play in this joint enterprise: Holdings contracts to sell consumers electricity and holds and maintains the state licenses to do so, while Corp. is the ultimate parent of Holdings, and operates the enterprise's business. (*Id*. ¶¶8-10.) In particular, Corp. and Holdings have common, or at least overlapping, officers, employees, and agents. (*Id*. ¶¶7, 10.) Corp. is responsible for contracting with the telemarketers that procure Holdings' customers: an illustrative example is Holdings' contract with Mezzi which was actually signed by Corp.'s Vice President and General Counsel. (*Id*. ¶11.)

### b.     The SAC Properly Alleges Defendants Acted Together

The SAC alleges that Defendants acted together to use telemarketers to call Plaintiffs and the other class members, to exercise control over the telemarketers, and to ratify the telemarketers' conduct by accepting the contracts they generated. (*Id*. ¶¶23-55; FAC ¶¶18-50.) Likewise, the SAC alleges both Defendants have made—and threaten to continue to make—transfers to their Corp.'s owners, timed to coincide with Defendants' tax year or tax filings, in order to strip out assets from Defendants where those assets would be exposed to liability from regulators and class actions. (SAC ¶¶152-53; 157-162. *See also* FAC ¶¶136; 140.) Defendants cite cases for the proposition that Rule 8(a) does not permit Plaintiffs to "simply refer to the defendants collectively *where it cannot be reasonable inferred that all the defendants engaged in the alleged misconduct*." *Troncoso v. Middlesex Sheriff's Office*, No. 18-10110, 2018 WL 1783801, *4 (D. Mass. Apr. 13, 2018) (citing *Atuahene v. City of Hartford*, 10 Fed. App'x 33, 34 (2d Cir. May 31, 2001); italics added). But as *Troncoso* reflects, the rule articulated by

Defendants does not prohibit Plaintiffs from alleging that Defendants acted in concert:

> Whilst a pleading, group or otherwise, must be sufficiently clear to put the defendants on notice as to "who did what to whom, when, where and why", . . . group pleadings are not, prima facie, excluded by Rule 8(a). At the motion to dismiss stage a complaint generally will only be dismissed where it is "entirely implausible" or impossible for the grouped defendants to have acted as alleged.

*Zond, Inc. v. Fujitsu Semiconductor Ltd.*, 990 F. Supp. 2d 50, 53 (D. Mass. 2014) (citations omitted). Thus, an allegation that "Fujitsu" is "directly infringing, willfully infringing, and inducing the infringement of, the patents-in-suit" is "facially plausible—it is not impossible for both Fujitsu USA and Fujitsu Ltd. to have engaged in each of the acts alleged by Zond." *Id*. Likewise, allegations that defendants have collectively violated the TCPA are proper:

> The complaint clearly alleges that the two defendants acted jointly in violation of the TCPA by causing calls to be made to plaintiff's phone. Prior to discovery, plaintiff need not explain the details of each defendant's role in the planning, funding, and executing defendants' alleged joint telemarketing scheme. Nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant.

*Hudak v. Berkley Grp., Inc.*, No. 13-00089, 2014 WL 354676, *4 (D. Conn. Jan. 23, 2014) (rejecting argument "that plaintiff impermissibly lump[ed] [defendants] together, making it unclear which defendants are alleged to have committed which wrongs"). This is consistent with First Circuit law—all Plaintiffs need to provide is fair notice of their claims, and their claims are that Defendants acted collectively to violate the TCPA.[34] The SAC's allegations are consistent

---

[34] *See Pena-Borrero v. Estremeda*, 365 F.3d 7, 13, 14 (1st Cir. 2004) (rejecting argument that "allegations fail to attribute specific acts to either defendant"; "allegation that 'codefendants found the court papers but ignored them completely' is properly attributable to each of the officers on the scene" and provided "fair notice" to defendants); *Cota v. U.S. Bank Nat'l Ass'n*, No. 15-486, 2016 WL 922784, *6 (D. Me. Mar. 10, 2016) (rejecting argument that complaint was improper group pleading that "fail[ed] to delineate the particular allegedly wrongful acts of each Defendant," where complaint alleged most actions that were the basis of complaint "were taken by 'Defendants' collectively" and it was "plausible that each Defendant engaged in the actions attributed to 'Defendants' in the Complaint"; quoting *Zond*, 990 F. Supp. 2d at 53); *GMO Tr. ex rel. GMO Emerging Country Debt Fund v. ICAP*

with other cases that reject the contention that allegations that defendants acted collectively are
somehow improper.[35]

Defendants' cases are not to the contrary. One simply restated the general pleading Rule
8(a) requirement, and did not touch on group pleadings.[36] Others reject group pleadings where it
was not reasonable to infer that the defendants acted together.[37] The remaining cases deal with

_plc_, No. 12-10293, 2012 WL 5197545, *8 (D. Mass. Oct. 18, 2012) (defendant "cannot claim
that the complaint leaves it with insufficient notice of the claim against it," where complaint gave
"clear notice of the central allegation: that [defendant] was the counterparty [to
contract]" and allegations against other defendants was "fairly generic, but not so vague that
[it could] claim it lacks sufficient notice of the claim" where complaint alleged other
defendant "worked as [part of] a unified front in their trading activities"; cited by _Zond_, 990
F. Supp. 2d at 53); _Carter v. Newland_, 441 F. Supp. 2d 208, 213-14 (D. Mass. 2006)
("[a]lthough each defendant may not be apprised of [the] specific allegations against him/her,
the general nature of the claims against [medical defendants] is described": "cruel and
unusual punishment" by failing to treat plaintiff).

[35] _See Energizer Brands, LLC v. Procter & Gamble Co._, No. 16-223, 2016 WL 2894708, *2
(E.D. Mo. May 18, 2016) ("A complaint relying on group pleading is sufficient where it sets
forth allegations that would establish the basis for holding the individual defendants liable";
quoting _Cota_, 2016 WL 922784, at *6, _Hudak_, 2014 WL 354676, at *4; collecting other
cases); _Stone v. Winter Enters., P.C._, No. 12-465, 2012 WL 6155606, *3 (D.N.J. Dec. 11,
2012) (rejecting argument that complaint did not make "any specific factual allegation"
against group of defendants, where complaint alleged "all five Defendants 'operate a dental
practice'" and had "common ownership and management, common business practices,
common finances, and a common website," the corporate defendants were "three separate
business entities that operate in concert with each other"); _In re Parmalat Sec. Litig._, 375 F.
Supp. 2d 278, 288-89 (S.D.N.Y. 2005) (rejecting argument that complaint improperly
referred to groups of defendants by single name and "failing to make clear which alleged
actions are attributed to which entities" where "it is clear from the complaint that plaintiffs
attribute the alleged misrepresentations and omissions to the Italian entities and that they sue
the other [defendants] on vicarious liability theories").

[36] _See Calvi v. Knox Cty._, 470 F.3d 422, 430 (1st Cir. 2006) (general pleading standard on Rule
8; complaint failed to allege "false arrest claim against Smith and failure to intervene claims
against McLaughlin and Gracie" asserted in opposition to motion to dismiss).

[37] _See La Casse v. Aurora Loan Servs., LLC_, No. 15-11672, 2016 WL 4535338, *8 (D. Mass.
Aug. 30, 2016) (wrongful foreclosure complaint against mortgage, mortgage servicers, and
unknown employees; complaint violated Rule 8 "by asserting this claim collectively against
all Defendants, when it cannot be reasonably inferred that all Defendants were involved").
_See also Bagheri v. Galligan_, 160 F. App'x 4, 5 (1st Cir. 2005) (plaintiff did not distinguish
between "federal official and four employees of the Massachusetts Office of Child Care
Services"); _Nuzzo v. O'Brien_, No. 17-10297, 2018 WL 615665, *1-2 (D. Mass. Jan. 29,
2018) (wrongful foreclosure complaint failed to distinguish between mortgagee, different

conclusory allegations supporting vicarious liability; the SAC's allegations about the

Defendants' relationship is far from conclusory.[38]

### c.      Discovery Is Appropriate if More Details Were Required

Of course, Defendants can always demand more details that attribute specific actions to

Corp. or Holdings. But most of this information is in Defendants' exclusive control: indeed, even

Defendants may not be able to attribute specific acts to Corp. or Holdings except in retrospect.

As the SAC alleges, "Defendants' operations are so intertwined that it is often impossible to

definitively attribute the acts of their personnel to Corp. or Holdings." (SAC ¶11.) Under these

circumstances, the SAC's allegations are sufficient. Where "a material part of the information

needed is likely to be within the defendant's control, some latitude may be appropriate in

applying the plausibility standard. . . . In such cases, we have said that it is reasonable to expect

that modest discovery may provide the missing link" to proceed with the case. *Saldivar v.*

*Racine*, 818 F.3d 14, 23 (1st Cir. 2016) (citations, punctuation omitted).[39] To the extent that

---

mortgage servicers, and Fannie Mae, and did not allege a viable cause of action in any
event); *Decarvalho v. Telford*, No. 17-11224, 2017 WL 3668411, *1 (D. Mass. Aug. 24,
2017) (complaint for false imprisonment and malicious prosecution failed to attribute
individual conduct to "Plymouth County prosecutor, the Massachusetts State Police and ten
state troopers; the Brockton Police Department and two police detectives; the FBI and an FBI
special agent; the City of Brockton, Plymouth County and an unnamed defendant").

[38]    *See Azza v. Grp. Voyagers, Inc.*, No. 16-11981, 2018 WL 1513559, *2 (D. Mass. Mar. 27,
2018) ("complaint was "devoid of any non-conclusory factual allegation that [tour] bus was
either controlled or operated by either [travel agents and tour operators]"); *Fisher v. Kadant,
Inc.*, No. 07-12375, 2008 WL 11389384, *1 (D. Mass. Nov. 19, 2008), aff'd, 589 F.3d 505
(1st Cir. 2009) (complaint against manufacturer, manufacturer's parent, and manufacturer's
successor could not allege veil piercing claim against parent with "conclusory allegations";
citing *Speakman v. Allmerica Fin. Life Ins.*, 367 F. Supp. 2d 122, 142 (D. Mass. 2005)
("corporation's parents, subsidiaries, and other affiliates are not liable for the actions of the
corporation under Chapter 93A unless they played an active role in the alleged wrongful
conduct")).

[39]    *See also Echavarria v. Roach*, No. 16-11118-ADB, 2017 WL 3928270, *3, *4 (D. Mass.
Sept. 7, 2017) (where "Plaintiff asserts he is unable to know, without further discovery,
which Defendant committed or participated in which particular act" courts "allow[]
comparable allegations to proceed to discovery"; "where a plaintiff's inability to identify

---

Defendants demand still more detail (especially details that are in their exclusive control),

Plaintiffs are entitled to additional discovery.

### 6.   The TCPA Does Not Violate the First Amendment, Because It Serves Compelling Government Interests

Defendants' First Amendment challenge to the TCPA fails. (*Cf.* Def.s' Mot. 18-26.)

While Defendants concede that every court to consider a First Amendment challenge to the

TCPA has rejected it, they fail to provide any basis for the Court to sweep aside the delicate

balance that Congress struck under the TCPA. (Def.s' Mot. 24.)

### a.   Defendants' Rule 5.1 Notice Is Defective

Defendants' Rule 5.1 notice only discusses 47 U.S.C. § 227(b)(1)(A)(iii), but the motion

to dismiss only discusses 227(b)(1)(B).[40] (*Cf.* ECF No. 59 *with* Def.s' Mot. 21-26.) There is a

meaningful difference in this distinction. TCPA section 227(b)(1)(A)(iii) covers essentially any

autodialer or prerecorded call to a cellular telephone. However, the FCC has already

categorically "exempt[ed] debt-collection calls from [TCPA] § 227(b)(1)(B)." *Karle v. Sw.*

*Credit Sys.*, No. 14-30058, 2015 WL 5025449, *5 (D. Mass. June 22, 2015) (citations omitted).

Hence, the statutory exemption for *government* debt collection calls under section 227(b)(1)(B)

is superfluous under the current state of the law. In the interest of expediency, Plaintiffs assume

Defendants challenge both provisions.

Nonetheless, "Rule 5.1(a) requires a precise identification of the constitutional issue

---

which defendants committed which specific acts is due in part to defendants' alleged
misconduct, courts tend to read the complaint more generously"); *Zond*, 990 F. Supp. 2d at
53 ("determining the exact operations of the Fujitsu corporate group . . . requires corporate
structure information that is not readily available to the public," and it is "illogical to allow
Fujitsu potentially to escape liability because of its ability to keep its corporate structure
confidential").

[40]   The FAC only alleged a claim under 47 U.S.C. § 227(b)(1)(B). (FAC ¶¶110-17.) The SAC
alleges claims under both 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B). (SAC
¶¶116-33.)

being raised," and Defendants' notice is defective. *Aguiar v. Russo*, No. 09-10353, 2009 WL
1137916, *3 (D. Mass. Apr. 28, 2009). Failure to provide proper notice under Rule 5.1 can be
addressed any number of ways, but without proper notice, a district court's order on a
constitutional issue can be vacated and remanded. *Oklahoma ex rel Edmondson v. Pope*, 516
F.3d 1214, 1215-16 (10th Cir. 2008); *Jones v. United States*, No. 09-106, 2011 WL 386955, *5
(E.D.N.C. Feb. 3, 2011) (collecting cases).

### b.   Under First Circuit Jurisprudence, the TCPA Is Content Neutral, and Subject to Intermediate Scrutiny

Defendants urge that the 2015 TCPA amendments which provide exceptions for
"pursuant to the collection of a debt owed to or guaranteed by the United States" renders the
TCPA a content-based restriction. (Def.s' Mot. 21-22 (quoting 47 U.S.C. § 227(b)(1)(B).) This is
wrong: calls to third parties to locate student loan debtors, or prerecorded calls directing student
loan debtors to call the debt collector, would qualify under 47 U.S.C. § 227(b)(1)(B)'s
government-debt exemption, but the content of these calls is indistinguishable from calls related
to a private debt. Hence, the TCPA's 2015 government-debt collection exemption does not—
cannot—depend entirely on content. Prevailing First Circuit law construes *Reed v. Town of
Gilbert, Ariz.*, 135 S. Ct. 2218 (2015) narrowly. In *March v. Mills*, 867 F.3d 46 (1st Cir. 2017),
the First Circuit upheld a statute that prohibited making noise (1) that could be heard within a
building with (2) the intent to disrupt services in such building against a First Amendment
challenge. *March* recognized that the sign ordinance at issue in *Reed* "'depend[ed] entirely on
the communicative content of the sign.'" *March*, 867 F.3d at 58 (quoting *Reed*, 135 S. Ct. at
2227; emphasis in *March*). *March* distinguished the noise statute from the sign ordinance in
*Reed*: "while the restriction is 'entirely depend[ent]' on the noisemaker's disruptive 'purpose' in
making noise, the restriction is not entirely dependent—as was the ordinance at issue in *Reed*—

on the noise's 'communicative content.'" *Id.*

The TCPA is also content-neutral, because its exemptions "'are based on the relationship of the speaker and recipient of the message rather than the content of the message.'" *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 792 (N.D.W. Va. 2017) (quoting *Patriotic Veterans, Inc. v. State of Indiana*, 177 F.Supp.3d 1120, 1125 (S.D. Ind. 2016)). The result in *Mey* is more consistent with *March*. The government-debt collection TCPA exemption on which Defendants rely depends at least in part on the purpose of the call and the speaker and recipients' relationship ("pursuant to the collection of a debt owed to or guaranteed by the United States"), rather than the call's content. Under *March*, the government-debt exemption is content neutral.[41] *Mey* is also consistent with other Circuit decisions analyzing similar exemptions in anti-robocall statutes.[42]

---

[41] *Cf. Reed*, 135 S. Ct. at 2222 ("Speech regulation is content based if a law applies to particular speech *because* of the topic discussed or the idea or message expressed"; citations omitted; italics added) with *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) ("regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. . . . Government regulation of expressive activity is content neutral so long as it is '*justified* without reference to the content of the regulated speech'"; quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984); italics in *Ward*; other citations omitted).

[42] *Patriotic Veterans, Inc. v. Zoeller*, 845 F.3d 303, 305, 306 (7th Cir. 2017) (exemptions to Indiana anti-robocall statute "depend on the relation between the caller and the recipient, not on what the caller proposes to say"; "Preventing automated messages to persons who don't want their peace and quiet disturbed is a valid time, place, and manner restriction. . . . Because Indiana does not discriminate by content—the statute determines who may be called, not what message may be conveyed—these decisions have not been called into question by Reed"); *Van Bergen v. State of Minn.*, 59 F.3d 1541, 1550, 1551 (8th Cir. 1995) (statute prohibiting pre-recorded calls was "content-neutral" notwithstanding various exemptions "based on relationship rather than content": "All callers, whatever the content of their messages may be, must have . . . consent . . . to deliver an ADAD message . . . exempted groups are defined by their relationship to the caller, not by the content of their messages"). *See also Gresham v. Swanson*, 866 F.3d 853, 856 (8th Cir. 2017) (distinguishing "content-based restrictions in *Reed*" from consent-based exemptions in *Van Bergen*, anti-robocall statute generally remained constitutional post-*Reed*).

### c.     Every Other Post-*Reed* Case to Address the Issue Holds That the TCPA Survives Strict Scrutiny

Conversely, the bulk of post-*Reed* cases addressing the First Amendment's application to the TCPA have upheld the TCPA under strict scrutiny. These courts have reached a consensus that "the TCPA serves a compelling government interest in promoting residential privacy." *Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036, 1046 (N.D. Cal. 2017).[43] These cases also found that the TCPA is narrowly tailored to promote that interest. *Id*. at 1048.[44]

Defendants argue that the TCPA is overinclusive because someone must want their calls (otherwise why would Defendants invest so much effort making calls?) and the TCPA cannot be narrowly tailored because it is "opt in" (i.e., it requires consent) rather than "opt out" (a do-not-call system). (Def.s' Mot. 23-26.) "The Supreme Court has explained that '[l]ess restrictive alternatives must be *at least as effective* in achieving the legitimate purpose that statute was enacted to serve.'" *Brickman*, 230 F. Supp. 3d at 1048 (*Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 874 (1997); italics in *Brickman*).[45] Every case to consider the question has held that "[d]o-not-call lists would also not be a plausible less restrictive alternative because placing the burden on consumers to opt-out . . . would obviously not be as effective in achieving residential

---

[43]     *See Am. Ass'n of Political Consultants v. Sessions,* 2018 WL 1474075, at *4 (E.D.N.C. 2018) ("protecting the well-being, tranquility, and privacy of the individual's residence is a compelling state interest and that the TCPA auto-dialing ban furthers that compelling interest"; citations omitted); *Gallion v. Charter Comms. Inc.*, 287 F. Supp. 3d 920, 929 (C.D. Cal. 2018) (same); *Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1150 (D. Minn. 2017) ("TCPA serves a compelling government interest in promoting and protecting residential privacy"; same); *Mejia*, 2017 WL 3278926, at *16 (same). *See also Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021, 1033 (N.D. Cal. 2017).

[44]     *See Political Consultants*, 2018 WL 1474075, at *7; *Gallion*, 287 F. Supp. 3d at 929-31; *Greenley*, 271 F. Supp. 3d at 1150-51; *Mejia*, 2017 WL 3278926, at *16-17; *Holt*, 240 F. Supp. 3d at 1032-34.

[45]     *See Political Consultants*, 2018 WL 1474075, at *7 (quoting same passage from *Brickman*); *Gallion*, 287 F. Supp. 3d at 930 (same); *Greenley*, 271 F. Supp. 3d at 1151 (same); *Holt*, 240 F. Supp. 3d at 1034.

privacy." *Id*. at 1049.[46]

Defendants cite *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803 (2000) for the proposition that because an opt-out regime is less restrictive, it is the only regime that survives strict scrutiny. (Def.s' Mot. 24-26.) At the outset, strict scrutiny requires neither perfect tailoring or tailoring to Defendants' satisfaction. "The First Amendment requires that [content-based restrictions] be narrowly tailored, not that [they] be *perfectly tailored*." *Williams-Yulee v. Fla. Bar*, 135 S. Ct. 1656, 1671 (2015) (citation, punctuation omitted; italics added).[47] "The impossibility of perfect tailoring is especially apparent when the State's compelling interest is as intangible as public confidence in the integrity of the judiciary"—or, for that matter, intangible interests of residential and cellular telephone users' privacy under the TCPA. *Id*.[48]

Second, *Playboy* is inapposite because channel-blocking  effectively enforced the cable subscribers' preferences to receive or reject different content: there was a perfect technological fix as the alternative to overbroad regulation. *Cf*. *Playboy*, 529 U.S. at 815 ("There is, moreover, a key difference between cable television and the broadcasting media, which is the point on which this case turns: Cable systems have the capacity to block unwanted channels on a

---

[46]  *See Political Consultants*, 2018 WL 1474075, at *7 (quoting same passage from *Brickman*); *Gallion*, 287 F. Supp. 3d at 931 (quoting *Brickman* passage above, *Meija infra*); *Greenley*, 271 F. Supp. 3d at 1151 (quoting passage from *Holt*, *Brickman* above); *Mejia*, 2017 WL 3278926, at *16 (do not call list does not "fully foreclose the possibility that autodialer or prerecorded voice calls will be made to non-consenting consumers . . . and thus may not sufficiently further Congress's compelling interests in privacy . . . Court is unwilling to let perfect tailoring be the enemy of narrow tailoring"); *Holt*, 240 F. Supp. 3d at 1034 (quoting *Brickman* passage above).

[47]  *See Political Consultants*, 2018 WL 1474075, at *5 (quoting, following passage from *Williams-Yulee*, 135 S. Ct. at 1671); *Gallion*, 287 F. Supp. 3d at 929 (same); *Mejia*, 2017 WL 3278926, at *17 (same). *See also Bd. of Trustees of State Univ. of New York v. Fox*, 492 U.S. 469, 480 (1989) ("narrowly tailored" requirement does not require speech restriction to be "absolutely the least severe that will achieve the desired end," but rather "a fit that is not necessarily perfect, but reasonable").

[48]  *See Flaherty v. Knapik*, 999 F. Supp. 2d 323, 338-39 (D. Mass. 2014) (narrowly-tailored "restriction need not be the least discriminatory alternative available, it can only burden speech tied to the stated ends"; cited Def.s' Mot. 23).

household-by-household basis"). There is no such comparison here to a do-not-call list, which

humans must enforce *post hoc*. Indeed, the record reflects many complaints about Defendants'

calls, even though their telephone numbers are already on the do-not-call list. For its part,

Congress explicitly found that the TCPA was the only way to protect these privacy interests.[49]

The Court should defer to Congress's findings on this point. *Cf. Turner Broad. Sys., Inc. v. FCC*,

520 U.S. 180, 195 (1997) ("[w]e owe Congress' findings deference in part because the institution

is far better equipped than the judiciary to amass and evaluate the vast amounts of data bearing

upon legislative questions"; citation, punctuation omitted; collecting cases). *See also Moser v.*

*FCC*, 46 F.3d 970, 974 (9th Cir. 1995) (reversing ruling that 47 U.S.C. § 227(b)(1)(B) was

unconstitutional which "did not give sufficient weight" to "extensive findings" by Congress

about "consumer concerns about telephone solicitation," especially "automated calls").

Third, *Playboy* is inapposite because it concerned a completely different regulation

(restricting adult cable channels during the daytime hours) with completely different state

interests (restricting children's access to adult programming). *Playboy*, 529 U.S. at 806, 811. It is

hard to believe *Playboy* would have found opting out to be an acceptable alternative if, for

example, the statute at issue prevented cable companies from intruding on residential privacy by

displaying particular channels without their viewers' consent. *Id.* at 812 (statute restricted

"communication between speakers and willing adult listeners"). *Cf. Brickman*, 230 F. Supp. 3d at

---

[49]   *See* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(12), 105 Stat.
2394-95 (1991) ("Congress finds that . . . [b]anning such automated or prerecorded telephone
calls to the home, except when the receiving party consents to receiving the call . . . is the
only effective means of protecting telephone consumers from this nuisance and privacy
invasion") (cited by *Brickman*, 230 F. Supp. 3d at 1045-46). The record suggests these
privacy concerns have not diminished, but have grown instead. *See also In the Matter of*
*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 2015*
*Report and Order*, 30 FCC Rcd. 7961, 7963, ¶1 (July 10, 2015) ("Month after month,
unwanted robocalls and texts, both telemarketing and informational, top the list of consumer
complaints received by the Commission").

1046 ("TCPA does not restrict individuals from receiving any content they want to receive").

### d.    Equal Protection Analysis Reaches the Same Result

Defendants reference the Equal Protection clause in passing. (Def.s' Mot. 18.) This challenge fails on the same grounds as their First Amendment challenge. "If there is a sufficient 'fit' between the legislature's means and ends to satisfy the concerns of the First Amendment, the same 'fit' is surely adequate under the applicable 'rational basis' equal protection analysis." *Posadas de Puerto Rico Assocs. v. Tourism Co. of Puerto Rico*, 478 U.S. 328, 344 n.9 (1986) (quoted, followed by *Texas v. Am. Blastfax, Inc.*, 121 F. Supp. 2d 1085, 1093 (W.D. Tex. 2000)). The TCPA does not involve any "fundamental right or suspect class," so if the TCPA fits state interests sufficient for review under the First Amendment, it survives review under the Equal Protection clause as well.[50] Indeed, courts have recognized that the TCPA's government debt exemption serves compelling interests related to government finances.[51]

### e.    Even if Unconstitutional, the 2015 Amendment Should Simply Be Severed

Finally, even if the 2015 amendment rendered the TCPA unconstitutional, the remedy is to simply sever the government-debt collection exemption. *See Sliwa v. Bright House Networks, LLC*, No. 16-235, 2018 WL 1531913, *5-6 (M.D. Fla. Mar. 29, 2018) (rejecting First Amendment challenge to TCPA section 227(b)(1)(A)(iii) because remedy would be to sever unconstitutional exemption); *Brickman*, 230 F. Supp. 3d at 1047 (court "would not deem the entire TCPA to be unconstitutional because the exception would be severable from the remainder

---

[50]   *Texas*, 121 F. Supp. 2d at 1093 (where court found "a reasonable fit exists between the TCPA's identified interests and the means used to protect these interests" for "First Amendment purposes," "same analysis is sufficient to satisfy equal protection rationality review").

[51]   *See Political Consultants*, 2018 WL 1474075, at *6 ("TCPA's government-debt exception is a narrow exception that furthers a compelling interest"); *Mejia*, 2017 WL 3278926, at *16 ("federal government's interest in collecting debts owed to it supports the finding of a particularly compelling interest"; quoted by *Gallion*, 287 F. Supp. 3d at 930).

of the statute"; cited, followed by *Holt*, 240 F. Supp. 3d at 1034 n.4). The Communications Act, which encompasses the TCPA, contains an severability provision (47 U.S.C. § 608), but even without this "there can be no doubt that Congress would have enacted the remainder of the anti-robocall provision, irrespective of the constitutional fate of the Government–Debt Exception; Congress **did** enact the provision prior to adding that clause" nearly 24 years before the 2015 amendment. *Sliwa*, 2018 WL 1531913, at *6. Defendants nonetheless contend it is "wholly unsupported conjecture" that Congress would have passed the TCPA without the government-debt collection exemption, but they bear the burden of persuasion.[52] (Def.s' Mot. 26 n.13.)

### 7.    The SAC Properly Alleges Uniform Fraudulent Transfer Act Claims

Defendants argue that Plaintiffs have not adequately alleged their claims under Florida's Uniform Fraudulent Transfer Act ("UFTA") claims. (Def.s' Mot. 26-31.) Again, the FAC was sufficient but Plaintiffs seek to amend out of an abundance of caution. Defendants' arguments on the UFTA claims lack merit. Below, Plaintiffs rely on cases regarding fraudulent transfers under the Bankruptcy Code interchangeably with cases regarding Florida's UFTA law.[53]

---

[52]  *See United States v. Booker*, 543 U.S. 220, 258 (2005) (courts "must refrain from invalidating more of the statute than is necessary"; citations, punctuation omitted). "Unless it is evident that [Congress] would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987) (same). *See also United States v. Mueffelman*, 327 F. Supp. 2d 79, 91 (D. Mass. 2004). The record in *Rappa v. New Castle Cty.*, 18 F.3d 1043 (3d Cir. 1994) is entirely different: it involved a single set of regulations, not an arguably problematic amendment passed nearly 25 years after the primary statute (which had consistently passed constitutional muster prior to the amendments). *Cf. Moser*, 46 F.3d 970 (finding TCPA constitutional in 1995).

[53]  "Bankruptcy Code section 548 and Florida Statutes section 726.105 are substantially the same, and both address claims under the same legal framework." *In re McCarn's Allstate Fin., Inc.*, 326 B.R. 843, 849 (Bankr. M.D. Fla. 2005) (collecting cases). "Both provisions require the proof of substantially identical elements, and have been interpreted in the same manner." *In re Old Naples Sec., Inc.*, 343 B.R. 310, 319 (Bankr. M.D. Fla. 2006) (same). *See also Norwood Co-op. Bank v. Gibbs*, No. 10-11647, 2012 WL 4094328, *7 n.7 (D. Mass. Sept. 13, 2012) (Massachusetts UFTA updated "to be consistent with the Bankruptcy Code

Defendants' motion repeatedly claims Plaintiffs have not made any "factual allegations." (Def.s' Mot. 28, 29, 31.) While Defendants are not entirely clear, Plaintiffs infer they contend Plaintiffs must allege the specific dates and amounts of transfers. This is wrong. *See Davimos v. Halle*, No. 13-225, 2013 WL 5353005, *5 (D. Me. Sept. 24, 2013) (rejecting argument complaint did not include "'name, date, amount, circumstances, and transferee'"; declining to require "probing inquiry into the precise dates of the fraudulent transfers"; "Court will not try this case on a motion to dismiss"); *In re Payton Const. Corp.*, 399 B.R. 352, 365 (Bankr. D. Mass. 2009) (complaint stating "time frame and specify the nature of the transfers" was sufficient to state constructive fraudulent transfer claim, even without alleging "specific payments by amount, date, and manner effected"); *In re El Comandante Mgmt. Co., LLC*, 388 B.R. 469, 473 (D.P.R. 2008) (actual fraudulent transfer claim do not require "[a]llegations of date, place and time," if plaintiffs "'use alternative means of injecting precision and some measure of substantiation into their allegations of fraud'"; citation omitted).

### a.    Rule 9(b) Does Not Apply to Constructive Transfer Claims

At the outset, Defendants are wrong to suggest that Rule 9(b) applies to both Plaintiffs' constructive and actual fraudulent transfer claims. (Def.s' Mot. 26, 31.) "Rule 9(b)'s particularity requirement does not apply to claims of constructive fraud." *In re Fin. Res. Mortg., Inc.*, 454 B.R. 6, 22 (Bankr. D.N.H. 2011) (collecting cases, including *In re Bernard L. Madoff Inv. Sec. LLC*, 445 B.R. 206, 225 (Bankr. S.D.N.Y. 2011) ("heightened federal pleading standard for allegations of fraud does not apply to a complaint to avoid transfers as constructively fraudulent")); *In re Indrescom Sec. Tech. Inc.*, 559 B.R. 305, 317 (Bankr. D.P.R. 2016). *See also In re Tronox Inc.*, 429 B.R. 73, 96 (Bankr. S.D.N.Y. 2010) ("the overwhelming weight of

---

of 1978"; court "look[s] to the law of other jurisdictions that have adopted the UFTA for guidance in interpreting" Massachusetts UFTA).

authority is that the heightened pleading requirements of Rule 9(b) are inapplicable" to "constructive fraudulent conveyance" claim; collecting cases).

### b.     The SAC Alleges Constructive Fraudulent Transfer Claims

Defendants argue Plaintiffs only offer "unsupported conclusory allegations as to alleged insolvency and unlawful asset transfers." (Def.s' Mot. 31.) In fact, the FAC provided detailed allegations about Defendants' insolvency—Defendants continually incur substantial TCPA liability above and beyond their assets, Defendants are "very thinly capitalized," "creat[ing] financial problems" that include "attracting and retaining employees." (FAC ¶¶138, 140.) The FAC also alleges Defendants continue to transfer assets to their ultimate individual owners in the form of profits or return on equity. (FAC ¶136.) The function of corporate entities is to make profits—it is surely reasonable to infer that Defendants pay profits to their owners at some point after earning the profits.

But even if the FAC's allegations were not sufficient, the SAC surely is. The SAC also alleges Defendants continually incur TCPA liabilities exceeding their assets, while they pay profits to their owners at times coinciding with tax deadlines, during the class period. (SAC ¶¶152-53, 155.) The SAC also has detailed allegations about Defendants' declining revenues, their inability to compete fairly with electric utilities that generate their own power, and the resulting push by state regulators to curtail Defendants' operations and marketing. (*Id*. ¶¶157-162.) The SAC alleges the Massachusetts Attorney General has proposed eliminating the residential retail electricity market in Massachusetts completely, and Connecticut regulators have acted to stop Defendants from marketing there as well. (*Id*. ¶¶158, 160.) The SAC alleges that

> [t]hese regulatory actions threaten the continued ability of Holdings to generate
> revenue for Defendants (and indeed the viability of Liberty Power's market in
> Massachusetts). Further, any financial assets which remain in Liberty Power are
> threatened not only with depletion from the costs of running Liberty Power's

business but also by the prospect of continued regulatory action (as well as
liability for TCPA violations).

(*Id*. ¶162.) The SAC also alleges Defendants' "inadequate capitalization has created financial

problems for Liberty Power, including problems attracting and retaining employees," and further

states that a former employee alleged Defendants admitted they were "having financial problems

and [were] in need of raising capital." (*Id*.)

These allegations are sufficient for Rule 8(a): even if they "do[] not identify specific

payments by amount, date, and manner effected, [they do] give a time frame and specify the

nature of the transfers" alleged in Plaintiffs' constructive UFTA claim. *In re Payton Const.*, 399

B.R. at 365 (constructive fraudulent transfer claim for "payments made by [debtor] to [insurer]

'on or within two years before . . . on account of insurance coverage attributable to the

Affiliates'" was adequately stated).

### c.     The SAC Alleges Actual Fraudulent Transfer Claims

Defendants argue that the FAC "makes not a single factual allegation establishing 'with

particularity the circumstances constituting fraud' allegedly committed by Defendants." (Def.s'

Mot. 28.) In this Court, Rule 9(b) applies to actual fraudulent transfer claims. *De Prins v.

Michaeles*, 189 F. Supp. 3d 209, 216 (D. Mass. 2016). The SAC allegations cited above are

sufficient to state an UFTA claim for actual fraud:

> Allegations of date, place and time certainly fulfills the heightened pleading
> requirement, however, nothing in [Rule 9(b)] requires them. [*Seville Indus. Mach.
> Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)] "Plaintiffs are
> free to use alternative means of injecting precision and some measure of
> substantiation into their allegations of fraud." *Id*. Nonetheless, the particularity
> requirement of Rule 9(b) is satisfied if the fraudulent transfer claim details the
> transfers alleged to be fraudulent, the reasons the transfers are fraudulent, and the
> roles of the defendants in the transfers.

*In re El Comandante Mgmt.*, 388 B.R. at 473 (citations omitted). *See also Davimos*, 2013 WL

5353005, at *5 (rejecting argument complaint had to include "'name, date, amount, circumstances, and transferee'" to state actual fraudulent transfer claim). The SAC readily identifies the fraudulent transfers at issue, and the roles of the defendants in the transfers—Defendants' payment of profits to Defendants' owners. (SAC ¶¶152-62.) The SAC also explains why these transfers are fraudulent. Assets left in Liberty Power "are threatened not only with depletion from [business expenses] but also by the prospect of continued regulatory action (as well as liability for TCPA violations)." (SAC ¶162.) The SAC alleges "during the class period, Liberty Power has faced several significant and material class action lawsuits which have threatened its financial viability." (*Id*.) Hence, Defendants' owners "deliberately keep Liberty Power very thinly capitalized," "routinely strip out as much of Liberty Power's assets as they can," and "expressly organized and operate Corp. and Holding to convey the impression and pretense they are 'bankruptcy remote,' so that [assets transferred to Defendants' owners] are no longer available to satisfy Liberty Power's liability." (*Id*.)

These allegations tick the box for several of the Florida UFTA's statutory badges of fraud.[54] A complaint which alleges an insolvent debtor transferred assets to a family trust "because he anticipate[s] suit," after related claims had already been filed, is sufficient to state a UFTA claim for actual fraud. *W Holding Co. v. AIG Insur. Co.*, 943 F. Supp. 2d 313, 318 (D.P.R. 2013) (citing *FDIC v. Anchor Props.*, 13 F.3d 27, 32 (1st Cir. 1994) for the proposition that "identifying actual or threatened litigation, a purported transfer of all or substantially all property, insolvency or other unmanageable indebtedness, and a special relationship between debtor and transferee as badges of fraud").

---

[54]  *See* Fla. Stat. § 726.105(2)(a) ("transfer . . . to an insider"); (d) ("[b]efore the transfer was made . . . the debtor had been sued or threatened with suit"); (h) ("value of the consideration received by the debtor was [not] reasonably equivalent to the value of the asset transferred"); (i) ("debtor was insolvent or became insolvent shortly after the transfer was made").

Defendants argue the FAC makes "no factual allegations made with particularity establishing intent to defraud . . ." (Def.s' Mot. 28.) Defendants misstate the applicable standard. Rule 9(b)'s "specificity requirement extends only to the particulars of the allegedly misleading statement itself. . . .  The other elements of fraud, such as *intent and knowledge, may be averred in general terms.*" *Rodi v. S. New England Sch. of Law*, 389 F.3d 5, 15 (1st Cir. 2004) (citing Fed. R. Civ. P. 9(b); other citation omitted; italics added).[55] The SAC alleges (based on all the foregoing circumstances) "that Liberty Power and its owners intended the Transfers 'to hinder, delay, or defraud any creditor' of Liberty Power." (SAC ¶163 (citing Fla. Stat. § 726.105(1)(a)).) This is sufficient. Plaintiffs do not need to try the issue of intent in their complaint; indeed, "[i]ntent is quintessentially an issue for trial." *Holmes Grp., Inc. v. RPS Prod., Inc.*, No. 03-40146, 2010 WL 7867756, *12 (D. Mass. June 25, 2010) (quoting *Pearson v. First NH Mortg. Corp.*, 200 F.3d 30, 35 n. 2 (1st Cir. 1999) for proposition that "'[c]ertain issues such as fraud, intent, and knowledge lend themselves to trial, rather than summary judgment'").[56] Likewise, in fraudulent transfer cases, the "existence of fraudulent intent is a factual question, usually inappropriate for summary judgment." *In re Indrescom*, 559 B.R. at 318 (citation omitted).

Defendants argue the FAC makes "no factual allegations made with particularity establishing . . . the 'badges of fraud' as required under Florida law." (Def.s' Mot. 28.) In fact, Plaintiffs have alleged specific facts supporting several badges of fraud. *See infra*, n. 35. And to

---

[55] *See also Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir. 1991) ("plaintiff need not specify the circumstances or evidence from which fraudulent intent could be inferred"); *Howell v. Advantage Payroll Servs., Inc.*, No. 16-438, 2017 WL 782881, at *6 (D. Me. Feb. 28, 2017) ("plaintiff may allege the defendant's intent or knowledge generally"; citing Fed. R. Civ. P. 9(b)); *Garcia v. Carrion*, No. 09-1507, 2010 WL 3662593, *7 (D.P.R. Aug. 11, 2010) ("As for the mental state that establishes fraud, one need only allege knowledge, intent, and other mental conditions generally"; citing Rule 9(b)).

[56] *See also Davimos*, 2013 WL 5353005, at *5 ("Court will not try [fraudulent transfer] case on a motion to dismiss"); *Yaralli v. Am. Reprographics Co., LLC*, 165 So. 3d 785, 789 (Fla. Dist. Ct. App. 2015) ("issue of fraud is [typically] not a proper subject of a summary judgment"; Florida UFTA case).

the extent Defendants suggest the statutory badges of fraud are the only criteria that the Court

can consider in demonstrating fraudulent intent, they are wrong.[57]

### d.      Discovery Is Appropriate If More Details Are Required

To the extent Defendants contend Plaintiffs need to allege details in Defendants'

exclusive knowledge (like the dates, amounts, and form of specific transfers), the First Circuit

authorizes discovery where information to allege fraud with particularity under Rule 9(b) "is

likely in the exclusive control of the defendant," and it is "impossible" for the plaintiff to know

such information without discovery. *New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 290

(1st Cir. 1987). *See also U.S. ex rel. Nowak v. Medtronic, Inc.*, 806 F. Supp. 2d 310, 351 (D.

Mass. 2011) ("where facts underlying the fraud are peculiarly within the defendant's control, a

plaintiff may be excused from pleading the circumstances of the fraud with a high degree of

precision"; citations omitted). *New England* authorized discovery on RICO wire and mail fraud

predicates because "[i]n this day and age, it is difficult to perceive how the defendants would

have communicated without the use of the mail or interstate wires." *New England*, 829 F.2d at

291. Likewise, here, Defendants are a large, privately-owned, ongoing economic enterprise: it

would be unreasonable to assume that Defendants never paid profits to their owners, or that there

is no threat they will do so in the future. *Cf. In re Comprehensive Power, Inc.*, 578 B.R. 14, 31

(Bankr. D. Mass. 2017) (courts take "more liberal view when examining allegations of actual

fraud," where plaintiff's knowledge is "second-hand"; citing *Indrescom*, 559 B.R. at 317,

---

[57] "It is clear from the language of [Fla. Stat. § 726.105(2)] that in determining intent,
consideration may be given to factors other than those listed above." *In re Miller*, 188 B.R.
302, 306 (Bankr. M.D. Fla. 1995); quoting Fla. Stat. § 726.105(2) ("consideration may be
given, among other factors, to" badges of fraud listed in statute); *Gen. Elec. Co. v. Chuly
Int'l, LLC*, 118 So. 3d 325, 327 (Fla. Dist. Ct. App. 2013) ("Consideration may also be given
to factors other than those listed"; citing *Miller*)).

collecting other cases).[58] The SAC provides enough details to warrant discovery of Defendants'

financial transfers.

### 8.      Plaintiffs Do Not Have to Name Mezzi as a Defendant

Defendants argue, in effect, that Mezzi is an indispensable party under Rule 19. (Def.s'

Mot. 31-35.) From the outset, the premise of Defendants' position, that the case is proceeding

"without Mezzi," is fundamentally wrong. (Def.s' Mot. 34.) *Defendants have already sued Mezzi*

*in this case*. (ECF No. 28.) Rather, Defendants real argument seems to be that Rule 19 forces

Plaintiffs to add Mezzi as a defendant and to litigate their claims against an allegedly defunct

telemarketer based in Pakistan. Again, Defendants are wrong. This result would undercut the

rationales for vicarious liability animating the FCC's TCPA rulings:

> allowing the seller to avoid potential liability by outsourcing its telemarketing
> activities to unsupervised third parties would leave consumers in many cases
> without an effective remedy for telemarketing intrusions. This would particularly
> be so if the telemarketers were judgment proof, unidentifiable, or located outside
> the United States, as is often the case.

*In the Matter of the Joint Petition filed by DISH Network, LLC, the United States of America,*

*and the States of California, Illinois, North Carolina, and Ohio for Declaratory Ruling*

*Concerning the Telephone Consumer Protection Act (TCPA) Rules*, 28 FCC Rcd. 6574, 6588,

---

[58]  *See also In re James River Coal Co.*, 360 B.R. 139, 163 (Bankr. E.D. Va. 2007)
("disingenuous for the defendants to attempt to shield themselves from liability [on
argument] Trustee has failed to plead with sufficient particularity [when] defendants possess
knowledge regarding the subject transactions and the Trustee has limited access to such
information without discovery"; cited by *In re El Comandante Mgmt.*, 388 B.R. at 473).

> [I]t is inappropriate to focus exclusively on the fact that Rule 9(b) requires
> particularity in pleading the circumstances of fraud. This is too narrow an
> approach and fails to take account of the general simplicity and flexibility
> contemplated by the federal rules and the many cases construing them; in a sense,
> therefore, the rule regarding the pleading of fraud does not require absolute
> particularity or a recital of the evidence, especially when some matters are beyond
> the knowledge of the pleader and can only be developed through discovery.

5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1298 (3d ed.
2018).

¶37 (May 9, 2013).

The gist of Defendants' legal argument is that "Mezzi is a necessary party," because "vicarious liability cannot be adjudicated without [it] as a party." (Def.s' Mot. 34.) Rule 19 does not make joint tortfeasors (like principals and agents, or otherwise) indispensable parties.[59]

> Ordinarily, "joint tortfeasors are not considered indispensable parties under federal law." [*Austin v. Unarco Indus., Inc.*, 705 F.2d 1, 5 (1st Cir. 1983).] As explained in *Austin*, "Whatever prejudice results to [the defendant] from being forced to proceed without [a joint tortfeasor] is simply that inherent in the principle of joint and several liability." *Id*. The same principle typically adheres to the agent/principal relationship. *See Pujol v. Shearson American Exp., Inc.*, 877 F.2d 132, 136-137 (1st Cir. 1989); [*Chassen v. Fid. Nat. Fin., Inc.*, No. 09-291, 2009 WL 4508581, *4 (D.N.J. Nov. 16, 2009)] ("'like joint tortfeasors, a principal and its agent are not necessarily indispensable parties to an action even if both were allegedly involved in the wrongful acts at issue'"); 7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1623 (3rd ed. 2013) ("joinder has not been required of principals and agents") (collecting cases). The absent party in *Pujol* "was not an indispensable party because '[a]ny agent will suffer some adverse consequences when his principal is held vicariously liable on account of the agent's conduct, but this is not a sufficient interest for finding the agent indispensable under Rule 19.'" *Pujol* [], 877 F.2d at 136.

*Charest v. Fed. Nat. Mortg. Ass'n*, 9 F. Supp. 3d 114, 134 (D. Mass. 2014). Defendants do not identify any prejudice to them from Mezzi's absence. The closest Defendants come to articulating any prejudice is to suggest that the fact finder needs Mezzi's presence to adjudicate vicarious liability to determine "if Mezzi Marketing actually made the calls in question." (Def.s' Mot. 34.) But the need for evidence from Mezzi prejudices *Plaintiffs, not Defendants*. Plaintiffs have already served subpoenas to address their evidentiary needs. And even if Mezzi were "necessary witness[] in [Defendants'] defense, that does not make them indispensable parties to this action[.]" *Forum Fin. Grp. Liab. Co. v. President, Fellows of Harvard Coll.*, 173 F. Supp. 2d 72, 103 (D. Me. 2001).

---

[59]   *See Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) (reversing dismissal for failure to join "joint tortfeasors as indispensable parties under Rule 19(b)"; "It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit"; citing Fed. R. Civ. P. 19 advisory committee note for 1966 amendment, other citations omitted).

The "prejudice" to Defendants "from being forced to proceed without [Mezzi] is simply that inherent in the principle of joint and several liability." *Austin*, 705 F.2d at 5 (trial on asbestos claim could proceed pending bankruptcy of one of two manufacturer-defendants). Other courts extend the same logic to vicarious liability here: "joint tortfeasors are not required parties under Rule 19(a). This means that an agent is not a required party when the principal is to be held liable vicariously for the agent's actions." *Doe v. Exxon Mobil Corp.*, 69 F. Supp. 3d 75, 102 (D.D.C. 2014).[60] Under the principles of vicarious liability, Defendants' liability does not increase or decrease in Mezzi's presence or absence.[61]

Lastly, Defendants argue that Mezzi may be prejudiced if the case proceeds without it. (Def.s' Mot. 34.) Again, Defendants already sued Mezzi, and Mezzi has chosen not to defend itself. It cannot be prejudiced if Plaintiffs proceed with their claims against Defendants.[62] Likewise, the First Circuit has also rejected that a vicarious liability claim against a principal without the agent prejudices the absent agent. *Pujol*, 877 F.2d at 136 (quoted, followed by *Charest*, 9 F. Supp. 3d at 134). Defendants argue that subsequent litigation against "would

---

[60]  *Nottingham v. Gen. Am. Commc'ns Corp.*, 811 F.2d 873, 880 (5th Cir. 1987) ("well-established that Rule 19 does not require the joinder of joint tortfeasors" or "joinder of principal and agent" or "persons against whom [defendants] have a claim for contribution"); *Murphy v. Newport Waterfront Landing, Inc.*, 806 F. Supp. 322, 325 (D.R.I. 1992) (employee was "not an indispensable party" in "respondeat superior" suit for employee's "alleged tortious conduct"; citation omitted)

[61]  *See Charest*, 9 F. Supp. 3d at 135 ("judgment rendered in [agent's] absence does not subject [principal] to multiple liability or, as previously discussed, inconsistent obligations"); *Torres v. Nat'l Ass'n of Underwater Instructors (NAUI)*, 928 F. Supp. 134, 140 (D.P.R. 1996) ("Relief in this case can be accorded between plaintiffs and [defendant dive instructor certification organization] based upon vicarious liability. If the jury were to find that [individual dive instructor] had acted negligently, [defendant] could be liable for the full amount of plaintiffs' losses. Even if he were joined, [defendant] would be jointly and severally liable for any of his negligence").

[62]  *See Rocchigiani v. World Boxing Council, Inc.*, 139 F. Supp. 2d 440, 444-45 (S.D.N.Y. 2001) (non-party was not indispensable under Rule 19 where he knew about case, had opportunity to intervene, but chose not to do so, and his promoter already third-party defendant).

involve the exact same issues," but there will be no subsequent litigation: Plaintiffs have no

intent of suing a potentially defunct telemarketer in Pakistan. The cases cited by Defendants do

not support either the proposition that Mezzi is indispensable because it is party to a contract

with Holdings,[63] or that an agent is indispensable to a vicarious liability claim against the

principal.[64]

## III.    Conclusion

The Court should grant Plaintiffs leave to file the SAC.


Dated: October 10, 2018          By:    _____/s/Ethan Preston_____
                                        Ethan Preston

                                        David C. Parisi
                                        dcparisi@parisihavens.com
                                        Suzanne Havens Beckman
                                        shavens@parisihavens.com
                                        **PARISI & HAVENS LLP**
                                        212 Marine Street, Unit 100
                                        Santa Monica, California 90405
                                        Telephone: (818) 990-1299
                                        Facsimile: (818) 501-7852

                                        Matthew R. Mendelsohn
                                        mrm@mazieslater.com
                                        **MAZIE SLATER KATZ & FREEMAN, LLC**
                                        103 Eisenhower Parkway
                                        Roseland, New Jersey 07068
                                        Telephone: (973) 228-0391
                                        Facsimile: (973) 228-0303

                                        Yitzchak H. Lieberman

---

[63]   (*Cf.* Def.s' Mot. 33 (citing *Blacksmith Invs., LLC v. Cives Steel Co.*, 228 F.R.D. 66, 74 (D. Mass. 2005) (plaintiff sought to recover money defendant allegedly owed to third party, after plaintiffs purchased debt owed by third party; court still found it "premature to address the need to include" third party).)

[64]   (*Cf.* Def.s' Mot. 34 (citing *Watchtower Bible & Tract Soc'y of New York, Inc. v. Municipality of San Juan*, 773 F.3d 1, 14 (1st Cir. 2014) (Commonwealth defendants were not indispensable; "presence of the Commonwealth defendants is not required in order for the municipal defendants to, say, collect and distribute keys, monitor compliance, and sanction offenders").)

ylieberman@parasmoliebermanlaw.com
Grace E. Parasmo
gparasmo@parasmoliebermanlaw.com
**PARASMO LIEBERMAN LAW**
7400 Hollywood Boulevard, Suite 505
Los Angeles, California 90046
Telephone: (917) 657-6857
Facsimile: (877) 501-3346

Ethan Preston
ep@eplaw.us
**PRESTON LAW OFFICES**
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

*Attorneys for Plaintiff Plaintiffs Samuel Katz,
Alexander Braurman, and Lynne Rhodes, on their
own behalf, and behalf of all others similarly
situated*

## CERTIFICATE OF SERVICE

I, Ethan Preston, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: October 10, 2018          By: _____    /s/David C. Parisi_____
                                              David C. Parisi