

Eckert Seamans Cherin & Mellott, LLC  
1717 Pennsylvania Avenue, N.W.  
12th Floor  
Washington, D.C. 20006

TEL:  202 659 6600  
FAX:  202 659 6699

Jeffrey P. Brundage, Esq.  
Direct: 202-659-6676  
jbrundage@eckertseamans.com

May 31, 2019

**VIA ECF**

The Honorable Allison D. Burroughs  
Judge for the United States District Court for the District of Massachusetts  
Joseph Moakley United States Courthouse  
1 Courthouse Way  
Boston, Massachusetts 02210

  Re: *Samuel Katz, et al., v. Liberty Power Corp., LLC, et al.*, No. 1:18-cv-10506-ADB –  
    Joint Letter Regarding Class Discovery

Dear Judge Burroughs:

Per the Court's February 27, 2019 Order (ECF No. 125), the parties jointly write the Court stating their respective positions on class discovery in the above-captioned matter.[1]

## I.   Plaintiffs' Position

There is no further cause to stay class discovery. Defendants do not plan to move for summary judgment on all Plaintiffs' claims, and indeed have refused to offer any specifics about their planned motion at all—let alone specifics that might confirm summary judgment could eliminate class discovery. Especially given the scope of their own discovery, Defendants' stated concerns about proportionality lack merit. If discovery costs are not a valid means to pressure litigants into settlement, then delay and discovery stays should not be used for that purpose either. That said, it may preserve the resources of the Court and the parties to limit the next stage of class discovery to specific call records, and using that discovery to shape the future contours of the class litigation.

### A.   Background to this Letter

On February 27, the Court stayed class discovery, and directed to "file a joint letter stating their positions on class discovery by May 31, 2019"—that is, this letter ("Letter"). (ECF No. 125 at 8.)

On May 1, Defendants served responses to interrogatories about the basis of their summary judgment motion (such as facts included in their Local Rule 56.1 statement).

---

[1] Defendants' position is solely Defendants' position.  Defendants are not responding to Plaintiffs' position as they did not interpret the Court's Order to request briefing.  Plaintiffs, on the other hand, responded to Defendants' position.  If the Court would like Defendants to respond to Plaintiffs' position, they are happy to do so.

Defendants objected, in part, that the interrogatories "presuppose[d] a fact, that Defendants will file a motion for summary judgment," and they had "not yet written" such motion.

On May 10, Plaintiffs renewed long-standing efforts to meet and confer with Defendants about producing records for all calls to Plaintiffs—before Plaintiffs' depositions. In response to those efforts, Defendants' counsel represented in a May 14 email:

> Defendants acknowledge that it is possible they may have additional relevant call records yet to be produced . . . Defendants agree that they will not use the potential inability of the plaintiffs to identify and testify as to such alleged calls due to any relevant call records not having been produced as . . . a basis for summary judgment as to such alleged calls . . .

On May 22, Defendants' counsel emailed that Defendants would "move for summary judgment" on Katz and Rhodes's claims, based on "lack of standing and failure to establish the statutory requisites for the alleged claims." Plaintiffs asked Defendants to update their May 1 interrogatory answers per Rule 26(e) (which has not been done), and explained why the objections in Defendants' answers lacked merit.

Plaintiffs' response also advised Defendants that they had not provided "sufficient notice of the grounds of summary judgment" for Plaintiffs to draft their portion of this Letter. Plaintiffs asked Defendants to "confirm Defendants' challenge to Katz's standing arises under *Stoops*," that the "challenge to Rhodes's standing arises with respect to the calls made to her residence where Scoba Rhodes lived," and asked Defendants to "explain which 'statutory requisites'" they contend had "not been established." Defendants have not responded to these queries.

On May 29, Defendants provided a five paragraph draft of this letter ("Draft"). The Draft indicated that "Defendants are moving for summary judgment on *some* of Plaintiffs' claims," and otherwise simply speculated that orders on the motion to dismiss and/or for summary judgment would narrow discovery. On May 31, Plaintiffs provided two drafts of their portion of the Letter, and asked Defendants for their successive drafts. Defendants declined, stating: "This is a joint filing. Each side should state its position separately. . . . We are not responding to arguments in your draft. You should not be responding to arguments in our draft. We are not going to give you any further opportunity to game the system."

### B. Defendants Provide No Basis to Continue the Stay of Class Discovery

The Court's February 27 order stated that if Defendants' motion for summary judgment was not "sufficient to eliminate all class claims, the Court will likely open class discovery as to at least the class claims that will remain regardless of its summary judgment ruling" subject to the pending motion to dismiss. (ECF No. 125 at 8 n.4.) Defendants' May 29 Draft indicated Defendants are only "moving for summary judgment on *some* of Plaintiffs' claims." Under the February 27 order, the Court should lift the stay on class discovery.

The facts which support Plaintiffs' different class claims overlap substantially: even if Defendants could eliminate some claims, the discovery Plaintiffs need for the remaining claims

would remain largely the same.

Discovery "stays cannot be cavalierly dispensed: there must be good cause for their issuance; they must be reasonable in duration; and the court must ensure that competing equities are weighed and balanced." *Marquis v. FDIC*, 965 F.2d 1148, 1155 (1st Cir. 1992) (quoted by *Dicenzo v. Massachusetts Dep't of Correction*, No. 15-30152, 2016 WL 158505, *1 (D. Mass. Jan. 13, 2016) in discovery stay). The Draft simply speculates the Court's orders on the motions to dismiss and/or for summary judgment will narrow claims and therefore discovery in the case. Defendants must justify a continued stay, but they refuse to even specify the grounds for their contemplated summary judgment.[2] Defendants do not meet their burden of proof here:

> Defendants have done no more than to argue in conclusory fashion that their motions to dismiss—some of which are yet to be filed—will succeed, and that plaintiff class will not be certified. Idle speculation does not satisfy Rule 26(c)'s good cause requirement. . . .

*Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990). If Defendants' pending and contemplated motions were "sufficient to justify a stay of discovery" under the Federal Rules, then "the Rules would contain a provision to that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation." *Id*. In any event, nothing in the record supports summary judgment for Defendants on any grounds yet disclosed.

### 1. Katz Has Standing

Katz put himself on the National Do Not Call registry and did everything he could to stop Defendants' calls—including emailing requests to be placed on Defendants' Do Not Call list. (*Cf.* Katz Depo. Tr. 109:19-110:2; 133:23-135:3; 105:1-106-21 *with* ECF No. 74 at 6-7 & nn. 9-12.) With respect to standing under TCPA, the "statute marks its own boundary." *Krakauer v. Dish Network, LLC*, No. 18-1518, *20 (4th Cir. May 30, 2019). A plaintiff has standing where his or her telephone number is on the national Do Not Call list, the number was residential (rather than commercial), and the number received two telemarketing calls. *Id*. at *20-21. Defendants rely excessively on *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782 (W.D. Pa 2016): *Stoops* does not apply here. Challenging the standing of an individual who placed his telephone number on the Do Not Call list, and requested Defendants add his number to their internal Do Not Call list "nothing more than an attempt to dismember the TCPA, converting a simple remedial scheme into a fact-intensive quarrel over how long a party was on the line or how irritated it felt when the phone rang." *Krakauer*, at *14. Congress "opted instead for a more straightforward and manageable way of protecting personal privacy." *Id*.

---

[2] *See Dicenzo*, 2016 WL 158505, at *1 ("moving party bears the burden of showing good cause and reasonableness for a stay of discovery, which is akin to a protective order under [Rule] 26(c)(1)"); *Bank of Rhode Island v. Progressive Cas. Ins. Co.*, 293 F.R.D. 105, 106 (D.R.I. 2013) (denying bifurcation and stay of discovery where movant had "not met its burden of persuasion to convince this Court that a stay is necessary").

### 2. Rhodes Has Standing

Rhodes lived with her father (Scoba Rhodes) when Defendants' vendors called (508) 540-XXXX, answered Defendants' calls, and regularly used that telephone line. (Rhodes Depo. Tr. at 15:4-16:14; 33:2-33:12; 38:4-14; 110:14-113:1) This is a sufficient record for her to have standing to bring TCPA claims for calls to (508) 540-XXXX. (*See* ECF No. 74 at 3-7 & n. 4-7.)

### 3. Defendants Have No Other Grounds For Summary Judgment

Defendants' May 22 email cites lack of standing and "failure to establish the statutory requisites for the alleged claims" as the basis for any motion for summary judgment. The Draft did not provide any further information. Defendants' May 10 email agreed Defendants would not use "relevant call records not having been produced" as "a basis for summary judgment as to such alleged calls."

In any event, the record supports Plaintiffs' claims. Defendants' designated Rule 30(b)(6) witness testified—given that Plaintiffs' telephone numbers appear in Defendants' lead lists—it appears Defendants' vendors called Plaintiffs, and could not identify any reason why Plaintiffs would not have been called. (Castillo Depo. Tr. at 78:16-21; 79:12-21. *See also id.* 65:22-67:7 (contents of lead lists); 70:12-70:22 (transmission of lead lists to vendors).)[3] However, the witness could not say why Defendants withheld these lead lists from their production to Plaintiffs. (*Id.* at 72:23-73:19.) The witness also testified vendors' weekly disposition reports to Defendants should reflect calls to Plaintiffs, and did not know why Defendants did not produce those disposition reports either. (*Id.* at 101:9-103:3.)

Defendants' Rule 30(b)(6) witness testified that Defendants' vendor (Mezzi Marketing, LLC) told Defendants' employee (Josue Toussaint) called Katz, but could not explain why, several minutes later, Toussaint emailed other employees that Mezzi had *not* called Katz. (*Id.* at 103:7-105:15; 106:12-107:3) Defendants' witness also testified that, three months later, Mezzi manufactured a screen shot that falsely showed that Mezzi had not called Katz. (*Id.* at 34:21-35:16.) Defendants' sales department devised the process for manufacturing this screen shot "to keep tabs on their channels [and] vendors," but that it appears this "sales process sometimes confirm[s] calls are not made when, in fact, . . . calls are made" (*Id.* at 34:21-36:25; 107:7-109:25.)

### B. Class Discovery Is Proportionate

The Draft focuses on the argument that class discovery is not proportionate. Class discovery is proportionate to Defendants' class-wide TCPA violations. The record shows Defendants' telemarketing calls generated over 600 FTC complaints. (ECF No. 109-1.)

The Draft claims class discovery would "put[] pressure on [Defendants] to settle." Certainly, it is improper when "advocates attempt to use discovery tools as tactical weapons

rather than to expose the facts and illuminate the issues." *See* Fed. R. Civ. P. 26 advisory committee note on 1986 amendment. But any pressure class discovery places on Defendants to settle comes from the exposure of facts and illumination of the issues, not the costs of discovery. The risk that a litigant "might be embarrassed, incriminated, or exposed to litigation through dissemination of [discovery does] not, without more," warrant limits on discovery. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1136 (9th Cir. 2003) (collecting cases)

Proportionality concerns prompt the Court to "prevent use of discovery . . . as a device to coerce a party, whether financially weak or affluent." Fed. R. Civ. P. 26 advisory committee note on 2015 amendment. Defendants have not shown the same concern for proportionality in their own discovery: while Defendants focus on the number of requests for production of documents Plaintiffs served (80), Defendants have served a total of 86 RPDs on Plaintiffs (18 on Katz, 35 on Rhodes, and 33 on Braurman), and have demanded Plaintiffs produce over 300,000 pages of documents.[4] Defendants complain that they are a "small LLC," but they are surely able to bear the costs of litigation better than individual consumers like Plaintiffs: Defendants' gross revenue was $891 million in 2015, $595 million in 2016, and $335 million in 2017.

### C. **Plaintiffs Can Narrow Class Discovery**

Nonetheless, Plaintiffs will seek to sequence class discovery to efficiently address the needs of this case. Certainly, Plaintiffs do not plan to move to compel 80 RPDs all at once. Plaintiffs can sequence discovery to ensure that class discovery proceeds efficiently. Plaintiffs would start with lead lists that contain Plaintiffs' information, and call records which contain calls to Plaintiffs' telephone numbers and/or which reflect calls to those lead lists in which Plaintiffs' information appears. Plaintiffs have every expectation that these documents would outline the scope of sensible, appropriate, and proportionate class discovery in this matter. Indeed, it may make sense for Plaintiffs to proceed with multiple classes focused on specific vendors, calls in specific disposition reports or servers, or calls during specific time periods.[5]

## II. **Defendants' Position**

Defendants Liberty Power Corp., LLC and Liberty Power Holdings, LLC's (collectively, "Defendants" or "Liberty Power") position is that class discovery should remain stayed for several reasons.[6] Defendants have a motion to dismiss the second amended complaint filed and fully briefed. The Court's ruling on this motion will tailor future discovery. For example, if the Court dismisses Count III, that ruling would significantly narrow class discovery. Similarly, if

---

[4] Plaintiffs served a comprehensive set of RPDs because the Local Rules restrict litigants to "2 separate sets of requests for production" without Court order. L.R. 26.1(c).

[5] Plaintiffs previously tried to limit the scope of discovery in their June 2018 RPDs, which offered to limit production to a "selected subset or sampling of responsive documents" responsive documents. Instead of prompting negotiations, Defendants responded by objecting, and contending these offers "tacitly acknowledge[] the above objections have merit because Plaintiff, without receipt of any objections, is already willing to consider accepting a subset of data."

[6] Defendants' incorporate in full by reference their Memorandum in Support of their Motion to Bifurcate, ECF No. 67.

any claims survive Defendants' motion, Defendants will move for summary judgment on all such claims. Whether or not summary judgment is granted in total or in part will also guide future discovery. Efficiency and common sense prescribes that class discovery be stayed until the parties know what issues will be going to trial.

Class discovery at this time is inconsistent with the proportionality requirements of FED. R. CIV. P. 26(b)(1). Proportionality is not one of the factors to consider (like the issues at stake), but rather, along with relevancy, determines the precise scope of discovery. *Id.* Plaintiffs served 80 requests for production of documents (ECF No. 67-1). Liberty Power responding to 80 document requests (with Plaintiffs having the ability to propound an additional unlimited second set of document requests) would mean locating, reviewing, and producing through a document vendor hundreds of thousands (if not millions) of leads lists, do-not-call lists, key-word searched emails, etc. This volume of document discovery is not proportional to the needs of the case at this time because the above two motions will define what is discoverable. In addition, this magnitude of document production is exacerbated because class discovery begins from the date of the Court's Order authorizing it and goes back to March 16, 2014. Thus class discovery would encompass over five years of discovery. In sum, the volume of documents intensified by the temporal scope makes class discovery not proportional to the needs of this case at this time as required by Rule 26(b)(1).

Class discovery at this time is also not proportional to the needs of the case considering the parties' resources and the burden and expense of responding to 80 requests for production of documents. Liberty Power is a small LLC that supplies competitive electricity. It employs approximately 130 people. It has two in-house counsel. Liberty Power is not Dish Network. It would need to hire additional employees just to assist with responding to the 80 document requests. Liberty Power's outside counsel would need to increase staffing on the case as well, thereby increasing Liberty Power's legal bills and putting pressure on it to settle (which is not the purpose of discovery).

The Court keeping class discovery stayed pending the resolution of motions is also consistent with L.R. 26.3.[7] Efficiency mandates the "phasing and sequencing the topics which are the subject of discovery" so that the parties and the Court know the issues for trial. Lastly, Defendants have reached a settlement in principle with named Plaintiff Alexander Braurman.

/

/

/

---

[7] L.R. 26.3 provides: "In order to facilitate settlement and the efficient completion of discovery, the judicial officer has discretion to structure discovery activities by phasing and sequencing the topics which are the subject of discovery. For example, an order may be framed limiting the first phase to developing information needed for a realistic assessment of the case. If the case does not terminate, the second phase would be directed at information needed to prepare for trial."

Honorable Allison D. Burroughs<br>
May 31, 2019<br>
Page 7

  For all of the above reasons, Defendants submit class discovery should remain stayed at this time. Defendants are ready and able to brief these issues more thoroughly should the Court desire.

             Respectfully,

             /s/ Yitzchak H. Lieberman

             Yitzchak H. Lieberman

             */s/ Jeffrey Brundage*

             Jeffrey Brundage

cc: All Counsel of Record (via ECF)