# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAMUEL KATZ, ALEXANDER BRAURMAN, LYNNE RHODES, individually, and on their own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LIBERTY POWER CORP., LLC, LIBERTY POWER HOLDINGS, LLC, Delaware limited liability companies,<br><br>Defendants. | No. 1:18-cv-10506<br><br>**PLAINTIFFS' REDACTED OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

LIBERTY POWER CORP., LLC, and
LIBERTY POWER HOLDINGS, LLC,

       Third-Party Plaintiffs,

  v.

MEZZI MARKETING, LLC,

       Third-Party Defendant.

## TABLE OF CONTENTS

I.      There Is No Valid Basis for Summary Judgment ............................................................. 1

II.     Rhodes Has Standing for All Her Claims ....................................................................... 3

    A.     The Cases Limiting Article III Standing for TCPA Claims Were Overruled......... 4

    B.     Rhodes Asserts Multiple Autodialer and Prerecorded Violations .......................... 6

    C.     There Is No "Charged Call" Requirement for Rhodes's Autodialer Claim............ 6

    D.     Rhodes Has Standing for Her Prerecorded Voice and DNC Claims ...................... 8

III.    Katz Has Standing For His Claims ................................................................................ 11

    A.     The Court Cannot Discredit Katz's Testimony on Summary Judgment .............. 12

    B.     The Facts Cited by Defendants Do Not Deprive Katz of Standing ...................... 13

    C.     The Telecommunication Service Provider Cases Are Inapposite......................... 17

    D.     There Is No Viable Consent From the October 3 Call to Katz ............................. 17

IV.     Plaintiffs Plan to Structure and Stage Class Discovery Efficiently ................................. 19

V.      Conclusion .................................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abramson v. Oasis Power LLC*,
  No. 18-00479, 2018 WL 4101857 (W.D. Pa. July 31, 2018) ........................................2, 14, 15

*ACA Int'l v. Fed. Commc'ns Comm'n*,
  885 F.3d 687 (D.C. Cir. 2018) .................................................................................................9

*Breda v. Cellco P'ship*,
  No. 16-11512, 2017 WL 5586661 (D. Mass. Nov. 17, 2017) ...............................................7, 8

*Cadle Co. v. Hayes*,
  116 F.3d 957 (1st Cir. 1997) ................................................................................................1, 2

*Cellco P'ship v. Dealers Warranty, LLC*,
  No. 09-1814, 2010 WL 3946713 (D.N.J. Oct. 5, 2010) ......................................................8, 10

*Cellco P'ship v. Plaza Resorts Inc.*,
  No. 12-81238, 2013 WL 5436553 (S.D. Fla. Sept. 27, 2013) .............................................8, 10

*Cellco P'ship v. Wilcrest Health Care Mgmt. Inc.*,
  No. 09-3534, 2012 WL 1638056 (D.N.J. May 8, 2012)................................................8, 10, 17

*Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147,
  29 F. Supp. 3d 1147 (N.D. Ill. 2014) .....................................................................................18

*Cunningham v. Montes*,
  No. 16-761, 2019 WL 1978624 (W.D. Wis. May 3, 2019)....................................................16

*Cunningham v. Rapid Response Monitoring Servs., Inc.*,
  251 F. Supp. 3d 1187, 1197 (M.D. Tenn. 2017).............................................................14, 17

*Evans v. Nat'l Auto Div., LLC*,
  No. 15-8714, 2016 WL 4770033 (D.N.J. Sept. 13, 2016) ......................................................14

*Ewing v. SQM US, Inc.*,
  211 F. Supp. 3d 1289, 1293 (S.D. Cal. 2016)..........................................................................4

*Fitzhenry v. ADT Corp.*,
  No. 14-80180, 2014 WL 6663379 (S.D. Fla. Nov. 3, 2014) ..................................................16

*Gibbs v. SolarCity Corp.*,
  239 F. Supp. 3d 391, 395 (D. Mass. 2017) .....................................................................3, 5, 6, 8

*Golan v. Veritas Entm't, LLC*,
 No. 14-00069, 2017 WL 2861671 (E.D. Mo. July 5, 2017) ................................................18

*Greenley v. Laborers' Int'l Union of N. Am.*,
 271 F. Supp. 3d 1128, 1139 (D. Minn. 2017) .........................................................................14

*Hardin v. Pitney-Bowes Inc.*,
 451 U.S. 1008 (1981).................................................................................................................13

*Himes v. Client Servs. Inc.*,
 990 F. Supp. 2d 59 (D.N.H. 2014)............................................................................................18

*Hinkley v. Liberty Power Corp., LLC*,
 No. 18-00203, 2018 WL 6625140 (D. Me. Dec. 13, 2018)...............................................15, 17

*Hossfeld v. Compass Bank*,
 No. 16-2017, 2017 WL 5068752 (N.D. Ala. Nov. 3, 2017) ....................................................14

*Imhoff Inv., L.L.C. v. Alfoccino, Inc.*,
 792 F.3d 627 (6th Cir. 2015) .....................................................................................................5

*Jones v. Experian Info. Sols.*,
 No. 14-10218, 2016 WL 8679218 (D. Mass. Sept. 30, 2016) .............................................7, 8

*JT's Frames, Inc. v. Casares*,
 No. 16-2504, 2018 WL 835225 (N.D. Ill. Feb. 13, 2018) ......................................................14

*Karle v. Sw. Credit Sys.*,
 No. 14-30058, 2015 WL 5025449 (D. Mass. June 22, 2015)....................................................7

*Knutson v. Reply!, Inc.*,
 No. 10-1267, 2011 WL 291076 (S.D. Cal. Jan. 27, 2011) ...................................................7, 8

*Kopff v. World Research Grp., LLC*,
 568 F. Supp. 2d 39 (D.D.C. 2008) ......................................................................................8, 10

*Krakauer v. Dish Network, LLC*,
 925 F.3d 643 (4th Cir. 2019) ..........................................................................................*passim*

*Leyse v. Bank of Am. Nat. Ass'n*,
 804 F.3d 316 (3d Cir. 2015)..................................................................................................9, 10

*Leyse v. Bank of Am.*,
 No. 09-7654, 2010 WL 2382400 (S.D.N.Y. June 14, 2010) ...........................................8, 9, 10

*Melito v. Experian Mktg. Sols., Inc.*,
 923 F.3d 85 (2d Cir. 2019)..........................................................................................................5

*Mey v. Venture Data, LLC*,
   245 F. Supp. 3d 771, 783 (N.D.W. Va. 2017) ........................................................16

*Morris v. Unitedhealthcare Ins. Co.*,
   No. 15-0638, 2016 WL 7115973 (E.D. Tex. Nov. 9, 2016) ...............................14, 16

*Murray v. GMAC Mortg. Corp.*,
   434 F.3d 948 (7th Cir. 2006) ...............................................................................17

*Osorio v. State Farm Bank, FSB*,
   746 F.3d at 1257 ..............................................................................................7, 10

*Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*,
   781 F.3d 1245 (11th Cir. 2015) ..............................................................................5

*Parchman v. SLM Corp.*,
   896 F.3d 728 (6th Cir. 2018) ..................................................................................8

*Physician's Healthsource, Inc. v. Vertex Pharm. Inc.*,
   247 F. Supp. 3d 138, 149-50 (D. Mass. 2017) .........................................................5

*Ready v. Synchrony Bank*,
   No. 17-00434, 2018 WL 1701355 (D. Me. Apr. 6, 2018) ....................................5, 6

*Rivera-Rivera v. Medina & Medina, Inc.*,
   898 F.3d 77 (1st Cir. 2018) .....................................................................................1

*Rodriguez v. Municipality of San Juan*,
   659 F.3d 168 (1st Cir. 2011) ..................................................................................13

*In the Matter of Rules and Regulations Implementing the Telephone Consumer
   Protection Act of 1991, 2003 Report and Order*,
   FCC 03-153....................................................................................................19

*In the Matter of Rules and Regulations Implementing the Telephone Consumer
   Protection Act of 1991, 2012 Report and Order*,
   FCC 12-21.....................................................................................................19

*In the Matter of Rules and Regulations Implementing the Telephone Consumer
   Protection Act of 1991, 2015 Report and Order*,
   30 FCC Rcd. 7961 (July 10, 2015) .......................................................................8, 9

*Sandusky Wellness Ctr., LLC v. MedTox Sci., Inc.*,
   250 F. Supp. 3d 354, 358 (D. Minn. 2017)............................................................14

*Slovin v. Sunrun, Inc.*,
   No. 15-5340, 2017 WL 2902902 (N.D. Cal. July 7, 2017) ....................................16

*Smith v. Aitima Med. Equip., Inc.*,
    No. 16-00339, 2016 WL 4618780 (C.D. Cal. July 29, 2016)....................................................4

*Soppet v. Enhanced Recovery Co.*,
    LLC, 679 F.3d 637 (7th Cir. 2012)..................................................................................9, 10

*Soto-Feliciano v. Villa Cofresi Hotels, Inc.*,
    779 F.3d 19 (1st Cir. 2015)...................................................................................................13

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)....................................................................................................4, 13

*Stoops v. Wells Fargo Bank, N.A.*,
    197 F. Supp. 3d 782 (W.D. Pa. 2016).......................................................................... *passim*

*Supply Pro Sorbents, LLC v. RingCentral, Inc.*,
    No. 16-02113, 2017 WL 4685705 (N.D. Cal. July 17, 2017) ................................................4

*Susinno v. Work Out World Inc.*,
    862 F.3d 346 (3d Cir. 2017)......................................................................................5, 7, 14

*Tel. Sci. Corp. v. Asset Recovery Sols., LLC*,
    No. 15-5182, 2016 WL 4179150 (N.D. Ill. Aug. 8, 2016) ...................................................17

*Tel. Sci. Corp. v. Asset Recovery Sols., LLC*,
    No. 15-5182, 2017 WL 56634 (N.D. Ill. Jan. 5, 2017)..........................................................17

*Torres Vargas v. Santiago Cummings*,
    149 F.3d 29 (1st Cir. 1998).................................................................................................18

*Vaello-Carmona v. Siemens Med. Sols. USA, Inc.*,
    781 F.3d 1 (1st Cir. 2015)......................................................................................................8

*Van Patten v. Vertical Fitness Grp., LLC*,
    847 F.3d 1037 (9th Cir. 2017) ....................................................................................... *passim*

*In re Varrasso*,
    37 F.3d 760 (1st Cir. 1994)..................................................................................................13

*Xiaoyan Tang v. Citizens Bank, N.A.*,
    821 F.3d 206 (1st Cir. 2016).............................................................................................2, 13

*Zauderer v. Cirrus Consulting Grp. (USA), Inc.*,
    265 F. Supp. 3d 104, 108 (D. Mass. 2017) ............................................................................5

## Federal Statutes

47 U.S.C. § 227(b)(1) ....................................................................................................................7

47 U.S.C. § 227(b)(1)(A) .................................................................................................10

47 U.S.C. § 227(b)(1)(A)(iii) .....................................................................................3, 7, 8

47 U.S.C. § 227(b)(1)(A)(iii) and (b)(1)(B) .......................................................................8

47 U.S.C. § 227(b)(1)(B) ...................................................................................................8

47 U.S.C. § 227(b)(3) .....................................................................................................4, 6

47 U.S.C. § 227(c)(5) ......................................................................................3, 5, 10, 11

**State Statutes**

G.L. Chapter 190B, § 3-701 ...............................................................................................8

**Rules**

Fed. R. Civ. P. Rule 23 ....................................................................................................16

Fed. R. Civ. P. Rule 23(a)(4) ...........................................................................................16

Fed. R. Civ. P. Rule 26(a)(1) ...........................................................................................19

Fed. R. Civ. P. Rule 30(b)(6) .............................................................................................3

Fed. R. Civ. P. Rule 56(d) ..................................................................................................6

**Regulations**

47 C.F.R. § 64.1100(h) .....................................................................................................10

47 C.F.R. § 64.1200(c) ................................................................................................3, 10

47 C.F.R. § 64.1200(c)(2)(ii) ...........................................................................................18

47 C.F.R. § 64.1200(d) ...............................................................................................3, 10

47 C.F.R. § 64.1200(f)(8) .................................................................................................19

**Other Authorities**

U.S. Constitution, Article III............................................................................... *passim*

18 FCC Rcd. at 14043-44 ...........................................................................................18, 19

27 FCC Rcd. 1830 (Feb. 15, 2012) ..................................................................................19

Plaintiffs Samuel Katz and Lynne Rhodes (collectively, "Plaintiffs") hereby submit their opposition to Defendants Liberty Power Corp., LLC and Liberty Power Holdings, LLC's ("Defendants'") Motion for Summary Judgment ("Motion").

## I.      There Is No Valid Basis for Summary Judgment

Summary judgment "is only proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Rivera-Rivera v. Medina & Medina, Inc.*, 898 F.3d 77, 87 (1st Cir. 2018) (citations, punctuation omitted). "Facts are material when they have the potential to affect the outcome of the suit under the applicable law." *Id.* (same). On summary judgment, "the trial court examines the entire record in the light most flattering to the nonmovant and indulges all reasonable inferences in that party's favor." *Cadle Co. v. Hayes*, 116 F.3d 957, 959 (1st Cir. 1997) (same).

Plaintiffs dispute a few key facts in the Statement of Facts. For instance, Rhodes disputes that Defendants only called her cellular telephone once. But the crux of the parties' dispute is over the inferences to be drawn from the facts: the cases cited by the Motion that limit standing based on the number of calls to Rhodes's number are no longer good law, so this factual dispute does not "affect the outcome of the suit under the applicable law." *Rivera-Rivera*, 898 F.3d at 87. Likewise, there is no dispute that Rhodes was living with her ailing father (helping to pay his bills) when she answered Defendants' calls to the landline telephone at her home, so there is no factual dispute that she has standing under the applicable law. (*Cf.* Pl.s' SOF 5.) Under the applicable law, it does not matter whether Rhodes's father was intended recipient of Defendants' calls, or when her name appeared on the Verizon bill for her landline number. *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 657 (4th Cir. 2019).

The same applies to Katz—except Defendants ask the Court to believe the inferences

they draw from their facts over Katz's own direct testimony. Defendants argue Katz has no standing under *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016) because they believe he "proactively embraces telemarketing calls." (Def.'s Mot. 3. *See id*. 4-5.) The dispositive difference between *Stoops* and Katz is that Katz testified that he maintained his landline for emergency purposes, and that Defendants' calls were "intrusive and harassing" so he did whatever he could to stop them, including registering the numbers on the National Do Not Call Registry.[1] (*Cf.* Pl.'s SOF 18-19, 22, 28, 37, 39.) The similarities Defendants see (like having a Florida area code telephone number (albeit years after the fact for Katz)) are not material.

Assuming *Stoops* is still good law, the material question would be whether Katz procured the landline number solely to receive telemarketing calls. Courts "interpreting *Stoops* . . . have not extended [it to cases] where the phone line at issue was not **procured solely to receive telemarketing calls**." *Abramson v. Oasis Power LLC*, No. 18-00479, 2018 WL 4101857, *6 n.4 (W.D. Pa. July 31, 2018) (bold added; collecting cases, *infra* 14 n.12). On that question, Defendants ask the Court to accept their inferences from the facts, and discount both Katz's direct testimony and many other parts of the record that support competing inferences and corroborate Katz's testimony. (*See* Pl.'s SOF 18-19, 22, 26, 28, 37-39, 48-50.) But summary judgment is not used to weigh such competing inferences. *See Xiaoyan Tang v. Citizens Bank, N.A.*, 821 F.3d 206, 222 (1st Cir. 2016) ("it is not for this court on summary judgment to decide between competing inferences").[2] Katz's own direct testimony precludes summary judgment even if Defendants could explain away all the evidence corroborating his testimony.

---

[1] *Cf. Stoops,* 197 F. Supp. 3d at 800, 802 (plaintiff who "admitted [in deposition] that her only purpose in using her cell phones" or purchasing cell service was to "enable[e] her to file TCPA lawsuits" had no standing).

[2] "Only if the record, viewed [with all reasonable inferences in the nonmovant's favor] and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co.*, 116 F.3d at 959 (citations, punctuation omitted).

## II.      Rhodes Has Standing for All Her Claims

Rhodes asserts TCPA claims for (1) prerecorded voice calls under TCPA § 227(b)(1)(B) and (2) autodialer calls under TCPA § 227(b)(1)(A)(iii) to Rhodes's cellular telephone at 617-962-███ as well as (3) Do Not Call violations under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) and (d) against Rhodes's residential landline at 508-540-███.

Rhodes testified she received "several calls in 2016" to her cellular telephone which were identified via discovery. (Pl.'s SOF 2.) Rhodes's cellular telephone number appears in several of Defendants' leads lists: Defendants' Rule 30(b)(6) deponent could not identify any reason why Rhodes would not have been called since her telephone numbers appeared in Defendants' leads lists. (*Id.*) Rhodes also testified that she received another call in June 2018, which used a prerecorded voice. (Pl.'s SOF 3.) Defendants now suggest—contrary to their prior commitment to Plaintiffs' counsel—that Rhodes can only prove the June 2018 call.

The Motion relies on overruled cases for its argument that a single robocall to a cellular telephone is not enough injury for Article III standing on an autodialer claim. The prevailing consensus is that "a mere technical violation of the TCPA is, by itself, a concrete injury sufficient to confer standing." *Gibbs v. SolarCity Corp.*, 239 F. Supp. 3d 391, 395 (D. Mass. 2017) (collecting cases). In any event, there is ample record of additional actionable autodialer and prerecorded voice calls. Also, the Motion misstates the TCPA statutory text. Rhodes does not have to show *both* that Defendants called her cellular telephone number *and* that she was charged for the calls—the TCPA says "or." *Cf.* 47 U.S.C. § 227(b)(1)(A)(iii).

Turning to Rhodes's Do Not Call violations, the telephone number for the Verizon landline at the Rhodes family home was placed on the National Do Not Call List in 2008. (Pl.s' SOF 4.) In May 2017, Rhodes moved back into her family home to care for her father (who had

developed Lewy body dementia in 2016), and Verizon formally added her as a user to the landline account in June or July 2017. (Pl.s' SOF 5.) Although the landline was on the DNC List, Defendants' agents called it four and six times a week in November 2017—Rhodes answered most of these calls because her father was hospitalized after a stroke. (Pl.s' SOF 7.) Starting in the last week of November 2017, Rhodes began telling Defendants repeatedly to "Remove this number from your list." (Pl.s' SOF 8.) Defendants' agents still called Rhodes's landline at least nine more times between December 2017 and March 2018. (Pl.s' SOF 12-15.) As a matter of law, the facts above are enough for standing for calls to Rhodes's landline, *Krakauer*, 925 F.3d at 657, but the record is also clear Defendants grossly invaded Rhodes's privacy. (Pl.s' SOF 14-15, 17.) In particular, Defendants had notice that Rhodes's father had dementia no later than December 15, 2017. (Pl.s' SOF 10.)

Last, the "applicable law" has rejected Defendants' argument that Rhodes lacks standing for her landline DNC claims because she was not the "intended recipient" of Defendants' calls.

## A.     The Cases Limiting Article III Standing for TCPA Claims Were Overruled

The Motion relies on a line of cases which misapplied *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) to improperly limit Article III standing under 47 U.S.C. § 227(b)(3), based on a minimal number of calls.[3] The Ninth Circuit overruled each of these cases. "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA need not allege any additional harm beyond the one Congress has identified." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (two unwanted text messages; citation, punctuation

---

[3]     (Def.s' Opp. 15 (citing *Supply Pro Sorbents, LLC v. RingCentral, Inc.*, No. 16-02113, 2017 WL 4685705, *1 (N.D. Cal. July 17, 2017); *Smith v. Aitima Med. Equip., Inc.*, No. 16-00339, 2016 WL 4618780, *4 (C.D. Cal. July 29, 2016); *Ewing v. SQM US, Inc.*, 211 F. Supp. 3d 1289, 1293 (S.D. Cal. 2016)).)

omitted). Every court of appeals to address the issue has followed *Van Patten*. Thus, the "nuisance and invasion of privacy resulting from a single prerecorded telephone call . . . asserts the very harm that Congress sought to prevent," sufficient for standing under the TCPA. *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017) (citations, punctuation omitted). *See also Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 94 (2d Cir. 2019) ("the receipt of unwanted advertisements is itself the harm" sufficient for standing; following *Van Patten*).[4]

This judicial consensus also extends to Do Not Call claims under TCPA § 227(c)(5). A "claim under § 227(c)(5) accrues only once a telemarketer disregards the registry and actually places multiple calls," and the harm from such calls "is sufficient to confer standing." *Krakauer*, 925 F.3d at 654 (following *Susinno*, *Van Patten*). *Cf.* 47 U.S.C. § 227(c)(5) (prohibiting "more than one telephone call within any 12-month period").

Further, every case in the First Circuit to address the issue has also followed the result in *Van Patten*. "Judges in this district have found that a mere technical violation of the TCPA is, by itself, a concrete injury sufficient to confer standing." *Zauderer v. Cirrus Consulting Grp. (USA), Inc.*, 265 F. Supp. 3d 104, 108 (D. Mass. 2017) (collecting cases, citing *Physician's Healthsource, Inc. v. Vertex Pharm. Inc.*, 247 F. Supp. 3d 138, 149-50 (D. Mass. 2017); *Gibbs*, 239 F. Supp. 3d at 395-96). *Ready v. Synchrony Bank*, No. 17-00434, 2018 WL 1701355, *4 (D. Me. Apr. 6, 2018) held "[t]he First Circuit likely would adopt the better-reasoned majority approach," namely, "calls allegedly violating the TCPA inherently [mean] injury for purposes of

---

[4]   *See also Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 633 (6th Cir. 2015) ("viewing or printing a fax advertisement is not necessary to suffer a violation of the statutorily-created right [under the TCPA] to have one's phone line and fax machine free of the transmission of unsolicited advertisements," or to have Article III standing to bring TCPA claim); *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015) (single unsolicited fax's "occupation of Plaintiff's fax machine is among the injuries intended to be prevented by the [TCPA] and is sufficiently personal or particularized . . . to provide standing").

standing to pursue a TCPA claim[.]" *Id.* at *4 (citing, e.g., *Gibbs*, 239 F. Supp. 3d at 395-96).

It is perhaps surprising the Motion did not at least disclose *Van Patten* had overruled the cases it cites. It bears mention on this point that the Motion forestalled class discovery by attacking all Plaintiffs' claims, and Defendants evidently only decided to challenge Rhodes's § 227(b)(3) autodialer claims as late as May 31 (as the original complaint did not allege autodialer claims).[5] This record supports opening class discovery sooner rather than later.

### B.   Rhodes Asserts Multiple Autodialer and Prerecorded Violations

The Motion contends it is consistent with *Gibbs* to hold Rhodes lacks standing because she received only one autodialer call. (Def.s' Opp. 16.) This is not consistent with either Rhodes's cell phone number in Defendants' lead lists—or with *Gibbs*'s holding. Defendants' argument also reneges on the commitment Defendants' counsel made to Plaintiffs' counsel in a May 14, 2019 email that they would not use "the potential inability of the plaintiffs" to identify calls to their telephones as "a basis for summary judgment as to such alleged calls[.]" (Preston Rule 56(d) Decl. ¶13.) Plaintiffs relied on this commitment in part because Defendants' vendors spoofed calls—they falsified the outgoing telephone number displayed in recipients' Caller ID. (Pl.s' SOF 11.) Defendants' spoofing makes it difficult or impossible for Plaintiffs to identify every call from Defendants' vendors to Rhodes. (*Id.*) If Rhodes has to prove Defendants called a particular number of times to survive summary judgment, then Rhodes should be able to complete discovery on Defendants' calls.

### C.   There Is No "Charged Call" Requirement for Rhodes's Autodialer Claim

The Motion also argues Rhodes does not have standing for her autodialer claim unless

---

[5]   (*Cf.* ECF No. 125 at 8 n.4 ("If Defendants do not move for summary judgment sufficient to eliminate *all* class claims, the Court will likely open class discovery as to at least the class claims that will remain"); ECF No. 151 at 2, 6 (Defendants' draft of the May 31 letter on class discovery stated they "moving for summary judgment on *some* of Plaintiffs' claims").)

she was charged for Defendants' calls.[6] Defendants misread section 227(b)(1)(A)(iii), and blur

and conflate a series of incomplete quotes from cases about section 227(b)(1)(A)(iii) (but which

do not involve calls to cellular numbers) with the bad law on Article III standing above , *supra* 4-

5. TCPA section 227(b)(1)(A)(iii)'s plain statutory language is dispositive: it prohibits calls

> using any automatic telephone dialing system or an artificial or prerecorded voice
> [to call (1)] any telephone number assigned to a . . . cellular telephone service . . .
> **_or_** [(2)] any service for which the called party is charged for the call . . .

47 U.S.C. § 227(b)(1) (emphasis added). Appellate courts have recognized this statutory

language ("or") is disjunctive: the cellular call element at (1) is in the alternative to the charged

call requirement at (2), not in the addition. "Congress did not intend the phrase 'for which the

called party is charged for the call' to apply to cellular telephone services." *Osorio v. State Farm*

*Bank, FSB*, 746 F.3d at 1257 (collecting authorities). *See also Susinno*, 862 F.3d at 349 ("calls to

a cell phone . . . can implicate privacy rights that Congress intended to protect [under the TCPA],

even if the phone's owner is not charged for the call," following *Osorio*).

Defendants' cases do not support applying the charged call element to Rhodes's

autodialer claim, because Defendants called her cellular number. Some of the cases cited in the

Motion—including *Breda v. Cellco Partnership*, No. 16-11512, 2017 WL 5586661 (D. Mass.

Nov. 17, 2017)—explicitly recognize that the charged-call and cellular telephone number

elements are two different alternatives to proving an autodialer claim.[7] None of the Motion's

---

[6]   (Def.s' Opp. 13-15 (citing *Breda v. Cellco P'ship*, No. 16-11512, 2017 WL 5586661, *3 (D.
      Mass. Nov. 17, 2017); *Jones v. Experian Info. Sols.*, No. 14-10218, 2016 WL 8679218, *7
      (D. Mass. Sept. 30, 2016); *Karle v. Sw. Credit Sys.*, No. 14-30058, 2015 WL 5025449, *6 (D.
      Mass. June 22, 2015); *Knutson v. Reply!, Inc.*, No. 10-1267, 2011 WL 291076, *1 (S.D. Cal.
      Jan. 27, 2011)).)

[7]   *See Breda*, 2017 WL 5586661, Id. at *3 (elements of TCPA § 227(b)(1)(A)(iii) claim include
      call to "a cellular telephone service *or* a service for which the called party is charged on a per
      call basis"; italics added; quoting *Karle*, 2015 WL 5025449, at *6 (same)).

other cases support imposing the charged-call element to calls to cellular telephone numbers.[8]

Defendants urge the Court follow *Breda*, rather than *Gibbs*. (Def.s' Opp. 15.) But *Breda* does not

address Article III standing; instead, it construed TCPA section 227(b)(1)(A)(iii).

### D.     Rhodes Has Standing for Her Prerecorded Voice and DNC Claims

Defendants argue that Rhodes does not have standing for her Do Not Call claims because

the Verizon bills for the calls at issue only list her father's name.[9] (Def.s' Mot. 10-13.) This

argument does not address Rhodes's TCPA claims for calls to her cellular telephone. And even if

the law did not provide Rhodes standing in her own right for calls to the family residential

landline, she has independent standing as the personal representative of her father's estate.[10]

Defendants rely on cases which hold that only the "intended recipient" of a call has

standing to support their argument that the bills for the Rhodes family residential landline limit

standing to Rhodes's father. (Def.s' Mot. 11.) The Motion cites authority construing the term

"called party" in the TCPA's autodialer and prerecorded voice provisions, 47 U.S.C. §

227(b)(1)(A)(iii) and (b)(1)(B). (*Cf.* Def.s' Mot. 10 (citing *In the Matter of Rules and*

---

[8]     *Cf. Jones v. Experian Info. Sols.*, No. 14-10218, 2016 WL 8679218, *2 (D. Mass. Sept. 30, 2016) (plaintiff did not have section 227(b)(1)(A)(iii) claim for call to VOIP line where VOIP service bill shows "plaintiff paid the flat contract rate and paid nothing additional for those two calls"); *Knutson v. Reply!, Inc.*, No. 10-1267, 2011 WL 291076, *1 (S.D. Cal. Jan. 27, 2011) (plaintiff alleged "he incurred a charge for the calls" to his cellular telephone)

[9]     (Def.s' Opp. 10-13 (citing, e.g., *Cellco P'ship v. Plaza Resorts Inc.*, No. 12-81238, 2013 WL 5436553, *5 (S.D. Fla. Sept. 27, 2013); *Cellco P'ship v. Wilcrest Health Care Mgmt. Inc.*, No. 09-3534 , 2012 WL 1638056, *7 (D.N.J. May 8, 2012); *Cellco P'ship v. Dealers Warranty, LLC*, No. 09-1814, 2010 WL 3946713, *10 (D.N.J. Oct. 5, 2010); *Leyse v. Bank of Am.*, No. 09-7654, 2010 WL 2382400, *4 (S.D.N.Y. June 14, 2010); *Kopff v. World Research Grp., LLC*, 568 F. Supp. 2d 39 (D.D.C. 2008)).

[10]    *See Parchman v. SLM Corp.*, 896 F.3d 728, 741 (6th Cir. 2018) ("claims under the TCPA do survive a plaintiff's death"); *Vaello-Carmona v. Siemens Med. Sols. USA, Inc.*, 781 F.3d 1, 6 (1st Cir. 2015) ("When a cause of action arises from a federal statute, we generally apply federal law to determine whether that claim survives the plaintiff's death"). Rhodes was appointed personal representative on June 17, 2019, and her standing relates back as needed by statute. (*Cf.* Pl.s' SOF 16 with Mass. G.L. ch. 190B, § 3-701 ("powers of a personal representative relate back in time" so that authorized representative's acts "occurring prior to appointment [have] the same effect as those occurring thereafter").)

---

*Regulations Implementing the Telephone Consumer Protection Act of 1991*, *2015 Report and Order*, 30 FCC Rcd. 7961, 8000-01 ¶¶73 (July 10, 2015) ("2015 Order")).)

The cases on which the Motion relies for its "intended recipient" argument are no longer good law. The *2015 Order* specifically rejected the "intended recipient" as a definition of "called party," and instead defined it as "the non-subscriber customary user of a telephone number . . . whose privacy is interrupted by unwanted calls" because "such customary users" would reasonably have the authority to "grant[] consent to receive robocalls." *2015 Order*, ¶¶74-75, 30 FCC Rcd. at 8001. The FCC had the authority to construe "called party" this way. *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 706 (D.C. Cir. 2018). (The 2015 Order's "family plan" language appears to be limited to the TCPA's autodialer provisions: while cellular service "family plans" offer service for different cellular telephones carried by different family members, residential landline service typically only needs to cover one telephone.)

Every other Court of Appeal to consider the issue has also declined to limit TCPA standing to "intended recipients." *Cf. Soppet v. Enhanced Recovery Co.*, LLC, 679 F.3d 637, 640 (7th Cir. 2012) ("called party" means "person who answers the call" or subscriber; rejecting argument that "called party" is limited to "intended recipient"). The Third Circuit rejected *Leyse v. Bank of Am.*, No. 09-7654, 2010 WL 2382400 (S.D.N.Y. June 14, 2010) and held a TCPA plaintiff who answers a call intended for the roommate has standing. Standing under the TCPA

> encompasses more than just the intended recipients of prerecorded telemarketing calls. It is the actual recipient, intended or not, who suffers the nuisance and invasion of privacy. . . . [A] regular user of the phone line who occupies the residence being called undoubtedly has the sort of interest in privacy, peace, and quiet that Congress intended to protect.

*Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 326 (3d Cir. 2015). *See also id*. at 325 n. 13 (citing *Soppet* and other cases). The Third Circuit specifically rejected the standing analysis from

most of the cases cited in the Motion.[11] *Id.* at 325 n. 13. The Eleventh Circuit also abrogated the

result in *Plaza Resorts. Osorio*, 746 F.3d at 1251-52 (following *Soppet*, rejecting "argument that

the 'intended recipient' is the 'called party' referred to in 47 U.S.C. § 227(b)(1)(A)").

Defendants' final remaining case on this point relates to faxes, and is distinguishable.[12]

Rhodes also states DNC claims (both for calls to the residential landline she shared with

her father and her cell phone). The DNC provisions in the TCPA and its implementing

regulations do not use the term "called party." The law is clear that TCPA § 227(c)(5) affords

standing for any recipient of calls violating the DNC regulations:

> The private right of action allows suit by any "person" who "received" calls that
> were placed "in violation of" the TCPA regulations. 47 U.S.C. § 227(c)(5). . . A
> non-subscriber who receives a call can suffer a privacy intrusion just as easily as a
> subscriber can. . . . [T]he cause of action is § 227(c)(5) is not limited to telephone
> subscribers.

*Krakauer*, 925 F.3d at 656-57. The TCPA's DNC regulations are keyed to calls to "residential

telephone subscribers." 47 C.F.R. § 64.1200(c), (d). However, the Do Not Call regulations define

a "subscriber" expansively, to cover "any one of the following":

> (1) The party identified in the account records of a common carrier as responsible
> for payment of the telephone bill;
> (2) Any adult person authorized by such party to change telecommunications
> services or to charge services to the account; or
> (3) Any person . . . otherwise lawfully authorized to represent such party.

47 C.F.R. § 64.1100(h). Rhodes is a "subscriber" under § 64.1100(h): her father authorized her

to handle household bills (including the Verizon bill) after he became ill, so she is a "subscriber"

under the regulation regardless of when Verizon put her name on its bills. (Pl.s' SOF 5.)

The Motion argues Rhodes lacks standing because "she was not living [with her father] in

---

[11]  *Cf. Leyse*, 804 F.3d at 322 n.6 (citing *Wilcrest Health Care*, 2012 WL 1638056, at *7;
*Dealers Warranty*, 2010 WL 3946713, *9-10; *Leyse*, 2010 WL 2382400, at *4).

[12]  *See Kopff*, 568 F. Supp. 2d at 41-42 (staff employed at company operating fax machine does
not have standing to bring TCPA claims for faxes sent to the president of the company).

February 2008 when 508-540-█████ was registered on the do not call list." (Def.s' Mot. 12-13.)

*Krakauer* specifically rejected the argument that "the private right of action [under TCPA §

227(c)(5)] should be limited only to those who can list their numbers on the registry":

> If a wife, as the subscriber, lists a home telephone number on the Do-Not-Call
> registry, but her husband happens to be the one who receives the improper calls,
> the law has still been violated. Both the wife and the husband can suffer the harm
> that Congress sought to deter, and both are "persons" able to bring a claim under
> § 227(c)(5).

*Krakauer*, 925 F.3d at 657. There is no material difference between Rhodes's relationship and

the hypothetical cited in *Krakauer*.

## III.   Katz Has Standing For His Claims

Katz asserts TCPA claims for prerecorded voice calls and Do Not Call violations, based

on at least thirteen calls to his residential landline at 508-966-█████ (Pl.'s SOF 20.) Katz and his

spouse testified that Katz maintained this landline for emergency purposes, to ensure reliable 911

service for their residence. (Pl.'s SOF 19.) Katz testified Defendants' calls were "intrusive and

harassing," and that he is "on the National Do Not Call List for a reason," and that he never

"maintained any phone line for the purpose of receiving calls that [he] claim[s] that are in

violation of the TCPA (Pl.'s SOF 28.) Katz forwarded the landline number to his cell phone "so

that [his] wife wouldn't have to hear the annoying calls" and so he "wouldn't have to walk

across the house and pick up the phone." (Pl.'s SOF 21.) The landline number was placed on the

National Do-Not-Call List on August 16, 2003. (Pl.'s SOF 22.)

In September 2016, Katz began to receive the first of these calls from a spoofed "local"

number, 508-202-█████ (Pl.'s SOF 32.) Katz answered a call from 508-202-█████ on October 3,

2016. (Pl.'s SOF 31.) The caller initially misrepresented himself as an Eversource representative,

so Katz did not know the identity of the caller. (Pl.'s SOF 34-35.) Katz told the caller to call back

because the connection on the first call was not clear. (Pl.'s SOF 36.) The caller immediately

called back and the caller finally identified itself as Liberty Power. Katz then asked the caller to

stop calling him, but was told he "had to sign up for Liberty Power service" if he "wanted to stop

receiving calls." (Pl.'s SOF 37.) Within an hour of this October 3 call, Katz emailed Defendants

to ask them to stop calling his landline number. (Pl.'s SOF 39.) Defendants used the ██████

number's spoofing to deny that their vendors made the calls to Plaintiffs. (Pl.'s SOF 32-33.)

Defendants' vendors made at least two more calls to Katz's landline number, on October 14,

2016. (Pl.'s SOF 39.)

Defendants do not dispute (1) the landline number was a residential telephone number on

the National Do-Not-Call List since 2003; and (2) that Defendants' vendor called the landline

number eleven times without consent. (Def.'s SOF 24; Pl.'s SOF 19, 22, 24.) This is sufficient

for standing on his claims. *Cf. Krakauer*, 925 F.3d at 657. Lastly, Defendants are wrong that they

have any viable consent from the October 3 call.

### A.     The Court Cannot Discredit Katz's Testimony on Summary Judgment

Defendants urge that Katz operates a "TCPA business" and "proactively embraces

telemarketing calls," and therefore ultimately "within the professional plaintiff zone articulated

in Stoops." (Def.'s Mot. 3, 5, 7, 9.) However, Katz testified he used all his telephone numbers for

purposes other than filing TCPA lawsuit and does not run a "TCPA business." (*Cf*. Pl.s' SOF 18,

21-22, 24, 44-45 with *Stoops*, 197 F. Supp. 3d at 800, 802 (no standing where plaintiff "admitted

that her only purpose in using her cell phones [was] enabling her to file TCPA lawsuits").

Defendants ask the Court to discount Katz's direct testimony based on inferences drawn

from the facts identified in their Statement of Facts. Of course, Defendants ignore other facts in

the record which directly contradict Defendants' inferences: Katz hates telemarketing calls and

does everything in his power to stop them. (*Cf.* Pls.' SOF 21, 28, 38, 49.) Summary judgment is not a valid mechanism for discounting Katz's testimony because Defendants draw contrary inferences from the record:

> Undisputed facts do not always point unerringly to a single, inevitable conclusion. And when facts, though undisputed, are capable of supporting conflicting yet plausible inferences—inferences that are capable of leading a rational factfinder to different outcomes in a litigated matter depending on which of them the factfinder draws—then the choice between those inferences is not for the court on summary judgment. . . . So it is here.

*In re Varrasso*, 37 F.3d 760, 764 (1st Cir. 1994) (citations omitted).[13] In particular, summary judgment is typically not appropriate where it depends on a party's state of mind: "courts must be exceptionally cautious in granting [summary judgment] especially where, as here, the movant bears the devoir of persuasion as to the nonmovant's state of mind." *Id.* (same). *See also Hardin v. Pitney-Bowes Inc.*, 451 U.S. 1008, 1008 (1981) ("long . . . established that it is inappropriate to resolve issues of credibility, motive, and intent on motions for summary judgment").

### B.    The Facts Cited by Defendants Do Not Deprive Katz of Standing

*Stoops* reflects the same misapplication of *Spokeo*, 136 S. Ct. 1540 rejected by *Van Patten*, 847 F.3d 1037 and its progeny—including decisions by this Court. *See supra*, 4-5. Courts have rejected efforts to "import the elements of common law torts" into the TCPA that would require the plaintiff's harm to rise "to a level that would support a common law cause of action" as "nothing more than an attempt to dismember the TCPA, converting a simple remedial scheme into a fact-intensive quarrel over how long a party was on the line or how irritated it felt when

---

[13]    *See Xiaoyan Tang*, 821 F.3d at 222 ("summary judgment [should not] decide between competing inferences"); *Soto-Feliciano v. Villa Cofresi Hotels, Inc.*, 779 F.3d 19, 30 (1st Cir. 2015) (courts "may not supplant the jury's role by weighing the strength of . . . competing inferences" on summary judgment, and "'determinations of motive and intent . . . are questions better suited for the jury'"; citations omitted); *Rodriguez v. Municipality of San Juan*, 659 F.3d 168, 175 (1st Cir. 2011) ("ground rules for summary judgment leave no room for credibility determinations [or] the measured weighing of conflicting evidence").

the phone rang." *Krakauer*, 925 F.3d at 653, 654 (following *Susinno*, *Van Patten*). Congress

"instead opted for a more straightforward and manageable way of protecting personal privacy,

and the Constitution in no way bars it from doing so." *Id*. at 654.

In any event, every court that has discussed *Stoops* has either disagreed or limited it to its

unique" facts.[14] Defendants contend Katz is a professional plaintiff, but that would not strip him

of standing:

> Insofar as *Stoops* endorses such a result, this Court disagrees. It may be that
> Cunningham was not saddened or annoyed by the calls he received; it may even
> be that, knowing his rights under the TCPA, he is glad the calls were placed. But
> allowing that fact, even if true, to negate his right to privacy and seclusion would
> require the Court to embrace a line of reasoning that would ultimately undermine
> the rights of most, if not all, TCPA plaintiffs and plaintiffs in similar statutory
> schemes.

*Cunningham v. Rapid Response Monitoring Servs., Inc.,* 251 F. Supp. 3d 1187, 1197 (M.D.

---

[14]   *See Abramson v. Oasis Power LLC*, No. 18-00479, 2018 WL 4101857, *5-6 (W.D. Pa. July
31, 2018) (collecting cases); *JT's Frames, Inc. v. Casares*, No. 16-2504, 2018 WL 835225,
*2 (N.D. Ill. Feb. 13, 2018) (*Stoops* did not support dismissal based on defendants'
"assumption that Plaintiff must be a professional plaintiff given its participation in other
TCPA lawsuits," distinguishing *Stoops* where plaintiff "admittedly purchased cell phones
and cell phone minutes for the sole purpose of receiving calls to enable her to file TCPA
lawsuits"); *Hossfeld v. Compass Bank*, No. 16-2017, 2017 WL 5068752, *15 (N.D. Ala.
Nov. 3, 2017) (distinguishing *Stoops* where plaintiff did not "disavow[] under oath any
intrusion injury caused by Compass's alleged unlawful conduct"); *Greenley v. Laborers'
Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1139 (D. Minn. 2017) (distinguishing Stoops
where plaintiff "sought out the telemarketing calls," but instant plaintiff "attests that he did
not purchase the cellular telephone that LIUNA contacted for the sole purpose of initiating
TCPA litigation"); *Sandusky Wellness Ctr., LLC v. MedTox Sci., Inc.*, 250 F. Supp. 3d 354,
358 (D. Minn. 2017) (distinguishing *Stoops*, who "admitted that she did not use
these cell phones for any purpose except to fish for telemarketing calls," and did not suffer
injury "when she got exactly what she sought—telemarketing calls" from instant plaintiff
"did not purchase a fax machine for the sole purpose of drumming up TCPA litigation");
*Morris v. Unitedhealthcare Ins. Co.*, No. 15-0638, 2016 WL 7115973, *6 (E.D. Tex. Nov. 9,
2016) (distinguishing *Stoops* where defendant offered no evidence that plaintiff maintained
residential telephone number "purely for the purpose of filing TCPA," even where he "filed a
significant number of TCPA cases"); *Evans v. Nat'l Auto Div., LLC*, No. 15-8714, 2016 WL
4770033, *3 (D.N.J. Sept. 13, 2016) ("*Stoops* is distinguishable from this case on the grounds
that the plaintiff in that case acknowledged that she only purchased cell phones in order to
file TCPA lawsuits," where "Defendants have elicited no such acknowledgement from the
plaintiff here").

Tenn. 2017). Congress enacted the TCPA as a bounty system to encourage enforcement: it would

be a perverse result if the prospect of statutory compensation stripped plaintiffs of standing to

enforce the TCPA:

> [There is nothing] out of the ordinary or constitutionally suspect about a
> plaintiff's being motivated by the prospect of reaping a reward rather than simply
> vindicating or receiving restitution for his constitutionally sufficient injury. The
> statutory damages available under the TCPA are, in fact, specifically designed to
> appeal to plaintiffs' self-interest and to direct that self-interest toward the public
> good: "like statutory compensation for whistleblowers," they "operate as
> bounties, increasing the incentives for private enforcement of law." [Bounty-type
> systems] do not eliminate the constitutional requirement of an injury-in-fact,
> neither do they impose an additional hurdle simply because the plaintiff may have
> a motive beyond mere compensation for his injury.

*Id*. at 1195-96 (collecting cases; quoted by *Abramson*, 2018 WL 4101857, at *5 ("a citizen's

decision to aggressively enforce his rights under the TCPA should not negate otherwise valid

privacy interests simply because such citizens may be motivated to sue by the TCPA's damages

provisions"); it bears note that *Abramson* is from *Stoops*'s home court).

In any event, the record is clear that Katz is not motivated by personal financial gain.

Katz is gainfully employed at a professional day job that has nothing to do with the TCPA. (*Cf.*

Pl.s' SOF 41.) Katz's TCPA advocacy has not altered his family's standard of living in any way.

(*Cf.* Pl.s' SOF 43.) If pecuniary interests were Katz's motivation, he would have settled with

Defendants by now. Shortly after he declined to settle on this putative class action on an

individual basis, Defendants retaliated by suing him in a Florida state court. (*See* ECF No. 60-4.)

Defendants then subpoenaed Katz's spouse to take her deposition. (*See Hinkley v. Liberty Power

Corp., LLC*, No. 18-00203, 2018 WL 6625140 (D. Me. Dec. 13, 2018).) In fact, Mr. Katz

previously declined an individual offer of judgment of $100,000.00 in a different TCPA class

action so he could continue to advocate for the rights of a class of consumers who were harassed

by telemarketing calls like himself.[15] Katz seeks to do the same here: his history as a dedicated consumer advocate who subordinates his own individual pecuniary interests to protect other consumers' privacy does not strip him of standing. Notwithstanding *Stoops,* courts have found quite litigious plaintiffs to have standing to enforce the TCPA.[16]

Defendants draw analogies between Katz's efforts to track calls and identify callers and the *Stoops* plaintiff. (Def.'s Mot. 3-4, 6-7.) It is undisputed that Katz did "nothing to attract the calls" and "in fact, [his] telephone number is listed on the National Do Not Call Registry." *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783 (N.D.W. Va. 2017). Rather, Defendants' objection is that Katz has made arrangements "to record and document TCPA calls when they do occur. This does not deprive the plaintiff of standing any more than the purchase of a burglar alarm would indicate that the homeowner wanted her house to be broken into." *Id*. The fact Katz "may have created a home environment that allows him to document telemarketing calls better than most consumers" does not remove him from the "TCPA's zone of interest." *Fitzhenry v. ADT Corp.*, No. 14-80180, 2014 WL 6663379, *5 (S.D. Fla. Nov. 3, 2014).

Defendants want to have their cake and eat it, too: plaintiffs with limited records have difficulty proving their claims (especially when Defendants' vendors spoof calls), but plaintiffs

---

[15]   *See Slovin v. Sunrun, Inc.*, No. 15-5340, 2017 WL 2902902, *4 (N.D. Cal. July 7, 2017) (by declining "the $100,000 per plaintiff offer, the individual plaintiffs [including Katz] placed the interests of the putative class ahead of their personal interests, just as Rule 23 envisions [and] complied with their duty under Rule 23(a)(4) by 'fairly and adequately protect[ing] the interests of the class'").

[16]   *See, e.g.*, *Cunningham v. Montes*, No. 16-761, 2019 WL 1978624, *3-4 (W.D. Wis. May 3, 2019) (rejecting "proposition that a plaintiff lacks standing to sue if he fails to take affirmative steps to avoid injury," where plaintiff was "experienced TCPA plaintiff who has filed more than 150 lawsuits and has knowingly declined to place his phone numbers on the federal do-not-call registry": his "participation in other TCPA suits, even a large number of them, does not mean that he has suffered no real injury"); *Morris*, 2016 WL 7115973, at *6 (plaintiff who previously filed "a significant number [at least 36] of TCPA cases," thought about franchising his TCPA lawsuits, and listed himself as a Pro Se Litigant of TCPA lawsuits on his LinkedIn profile did "not yet rise to the level of 'professional plaintiff' described in those suits such that he is outside the zone of interest").

who diligently document their claims are too "professional" to have standing. "Nothing in the

Constitution . . . requires a plaintiff to be a naïf. Litigation is not college athletics: there is no

'amateurs only' rule." *Cunningham*, 251 F. Supp. 3d at 1194 (quoting *Murray v. GMAC Mortg.*

*Corp.*, 434 F.3d 948, 954 (7th Cir. 2006)).[17]

### C.     The Telecommunication Service Provider Cases Are Inapposite

Defendants quote a few cases involving telecommunication service providers who

brought TCPA claims.[18] These cases are inapposite: the calls and any injury in those cases arose

because the plaintiffs' business was providing telecommunication services.[19]

### D.     There Is No Viable Consent From the October 3 Call to Katz

Defendants assert Katz "gave consent to be called *from the telephone number 508-202-*

████ in the initial October 3, 2016 call and "never revoked this consent" (and so seek summary

judgment on the October 14, 2016 calls). (Def.s' Mot. 9.) The connection was poor on the first

October 3 call, so Katz asked if the caller (who claimed to be from *Eversource*) could call back;

this was not consent for *Liberty Power*, and certainly not prior express written consent. The

record flatly contradicts Defendants' assertion that Katz never revoked consent after the first

October 3 call: Katz's number was on the Do Not Call List, so there was no valid consent in the

first place, and Katz immediately demanded that Liberty Power stop calling him during a

---

[17]   "What the district judge did not explain, though, is why 'professional [plaintiff]' is a dirty word. It implies experience, if not expertise. The district judge did not cite a single decision supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders." *Murray*, 434 F.3d at 954 (quoted by *Cunningham*, 251 F. Supp. 3d at 1194).

[18]   (Def.s' Mot. 5 (citing, e.g., *Wilcrest*, 2012 WL 1638056, at *9; *Tel. Sci. Corp. v. Asset Recovery Sols., LLC*, No. 15-5182, 2016 WL 4179150, *15-16 (N.D. Ill. Aug. 8, 2016).)

[19]   Plaintiff who "used the [telephone numbers called] as a telecommunications service provider, rather than a 'consumer'" do not have standing. *Tel. Sci. Corp. v. Asset Recovery Sols., LLC*, No. 15-5182, 2017 WL 56634, *5 (N.D. Ill. Jan. 5, 2017) (quoting *Wilcrest*, 2012 WL 1638056 at *9 for proposition there was no standing from calls received "due to the nature of [the plaintiffs'] business, which is providing telecommunications services rather than consuming them"). *See Tel. Sci. Corp.*, 2016 WL 4179150, at *15 (same).

subsequent call and via email that same day. (Pl.s' SOF 22, 31, 34-39.) Nevertheless, Defendants called him at least two more times. (Pl.'s SOF 39.)

Defendants bear the burden of proof on consent.[20] As "the party who has the burden of proof on a dispositive issue," Defendants "cannot attain summary judgment unless the evidence that [they] provide[] on that issue is conclusive." *Torres Vargas v. Santiago Cummings*, 149 F.3d 29, 35–36 (1st Cir. 1998). It is obvious Defendants have no such evidence—and equally obvious Katz told Defendants to stop calling. As a matter of law, there could be no valid consent from the October 3 telephone call:

> [*T*]*elemarketers may not call consumers on the national do-not-call list to request their written permission to be called* unless they fall within some other exemption. [*T*]*o allow such calls would circumvent the purpose of this exemption.* Prior express permission must be obtained by some other means . . .

*Id.* ¶44, 18 FCC Rcd. at 14043-44 (italics added).[21] The DNC regulations define consent: "prior express invitation or permission . . . must be evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller," and identifies the telephone number at issue. 47 C.F.R. § 64.1200(c)(2)(ii). For prerecorded voice calls, the FCC has found that

> the telemarketer must first obtain the prior express consent of the called party in order to lawfully initiate the call. Purporting to obtain consent during the call, such as requesting that a consumer "press 1" to receive further information, does not constitute the prior consent necessary to deliver the message in the first place, as the request to "press 1" is part of the telemarketing call.

---

[20] *See Himes v. Client Servs. Inc.*, 990 F. Supp. 2d 59, 69 (D.N.H. 2014) (same; citations omitted). *See also Van Patten*, 847 F.3d at 1044 ("consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof"; collecting authority).

[21] "*Prior* express consent does not include consent during the telephone call." *Golan v. Veritas Entm't, LLC*, No. 14-00069, 2017 WL 2861671, *8 (E.D. Mo. July 5, 2017) (prerecorded voice claims; collecting authority, including *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1150 (N.D. Ill. 2014) ("Nothing [in the applicable law] suggests that a consumer's conduct during the course of a 'robocall' can substitute for prior express consent") and *2003 Order*)).

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 2003 Report and Order*, FCC 03-153, ¶142, 18 FCC Rcd. 14014, 14099 (July 3, 2003) ("*2003 Order*"). The FCC's regulation for prerecorded calls defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to [make telemarketing calls using] an artificial or prerecorded voice," and identifies the telephone number at issue. 47 C.F.R. § 64.1200(f)(8). *Cf. id*. § 64.1200(a)(2).[22]

Defendants' contention that they had consent to call Katz on October 14 from the October 3 call to Katz is not sustainable as a matter of fact or law.

## IV.   Plaintiffs Plan to Structure and Stage Class Discovery Efficiently

Some of the Court's orders may reflect concerns about the scope of class discovery in this case. Plaintiffs have a vested interest in ensuring class discovery is manageable: they plan to structure and stage class discovery to ensure it is proportionate to the case. In particular, Defendants' latest Rule 26(a)(1) disclosures identify a total of 56 vendors with relevant information. Taking discovery on every single vendor may prove to be inefficient and disproportionate. Instead, Plaintiffs plan to identify the most critical vendors, and then focus their discovery on just a few of those vendors. Although Plaintiffs have four proposed classes, the discovery mostly overlaps as the call records and lead lists should identify the class members for all the classes.

## V.   Conclusion

The Court should deny Defendants' Motion in its entirety.

---

[22]   In 2012, the FCC extended the "prior express written consent" requirement to "telephone calls using . . . a prerecorded voice to deliver a telemarketing message to . . . residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 2012 Report and Order*, FCC 12-21, ¶20, 27 FCC Rcd. 1830, 1838 (Feb. 15, 2012).

Dated: July 12, 2019   By: _____ /s/Ethan Preston _____

Ethan Preston
ep@eplaw.us
**PRESTON LAW OFFICES**
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

David C. Parisi
dcparisi@parisihavens.com
Suzanne Havens Beckman
shavens@parisihavens.com
**PARISI & HAVENS LLP**
212 Marine Street, Unit 100
Santa Monica, California 90405
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Matthew R. Mendelsohn
mrm@mazieslater.com
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: (973) 228-0391
Facsimile: (973) 228-0303

Yitzchak H. Lieberman
ylieberman@parasmoliebermanlaw.com
Grace E. Parasmo
gparasmo@parasmoliebermanlaw.com
**PARASMO LIEBERMAN LAW**
7400 Hollywood Boulevard, Suite 505
Los Angeles, California 90046
Telephone: (917) 657-6857
Facsimile: (877) 501-3346

*Attorneys for Plaintiff Plaintiffs Samuel Katz,
Alexander Braurman, and Lynne Rhodes, on their
own behalf, and behalf of all others similarly
situated*

## <u>CERTIFICATE OF SERVICE</u>

I, Ethan Preston, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: July 12, 2019   By: _____ /s/Ethan Preston _____
                                                Ethan Preston