# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

SAMUEL KATZ, ALEXANDER
BRAURMAN, LYNNE RHODES,
individually, and on their own behalf and
on behalf of all others similarly situated,

               Plaintiffs,

    v.

LIBERTY POWER CORP., LLC,
LIBERTY POWER HOLDINGS, LLC,
Delaware limited liability companies,

               Defendants.

LIBERTY POWER CORP., LLC, and
LIBERTY POWER HOLDINGS, LLC,

               Third-Party Plaintiffs,

    v.

MEZZI MARKETING, LLC,

               Third-Party Defendant.

No. 1:18-cv-10506

**PLAINTIFFS' L.R. 56.1 REDACTED
STATEMENT FOR THEIR OPPOSITION
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Index of Exhibits for L.R. 56.1 Statement……………………………………………………1

Plaintiffs' L.R. 56.1 Statement of Facts Related to Lynne Rhodes …………………………….2

Plaintiffs' L.R. 56.1 Statement of Facts Related to Samuel Katz…………………………….7

Plaintiffs' L.R. 56.1 Statement of Disputed Facts for Lynne Rhodes…………………………11

Plaintiffs' L.R. 56.1 Statement of Disputed Facts for Samuel Katz …………………………..18

Plaintiffs Samuel Katz and Lynne Rhodes (collectively, "Plaintiffs") submit their L.R. 56.1 statement for their opposition to Defendants Liberty Power Corp., LLC and Liberty Power Holdings, LLC's ("Defendants'") Motion for Summary Judgment ("Motion").

## Index of Exhibits for L.R. 56.1 Statement:

**Exhibit 1:**    Email confirmation of August 12, 2006 Do Not Call registration for Rhodes's cellular telephone number, 617-962-███ KATZ 308004)

**Exhibit 2:**    Portions of May 14, 2019 Deposition Transcript of Lynne Rhodes

**Exhibit 3:**    Portions of May 8, 2019 Deposition Transcript of Michelle Castillo

**Exhibit 4:**    Exhibit 9 to Deposition of Michelle Castillo (LP_001245-57)

**Exhibit 5:**    Exhibit 10 to Deposition of Michelle Castillo (LP_003528)

**Exhibit 6:**    Email confirmation of February 4, 2008 Do Not Call registration for Rhodes's landline, 508-540-███ (KATZ 308005)

**Exhibit 7:**    Portions of Massachusetts Department of Public Utilities records reflecting Rhodes's complaints concerning Defendants (KATZ 307682-86)

**Exhibit 8:**    Calibrus production of audio recording of November 27, 2017 call to Rhodes with native file name "211351573020171127.wav" (KATZ 307690)

**Exhibit 9:**    Exhibit 19 to Deposition of Michelle Castillo (LP _002515-1 to -11) with "Telesales Channel Phone Number Log 2016-2017 2.2.17.xlsx" metadata

**Exhibit 10:**    Exhibit 20 to Deposition of Michelle Castillo (LP _002367)

**Exhibit 11:**    Portions of Verizon telephone call records for Rhodes's residential landline (KATZ 307761-62, KATZ 307802)

**Exhibit 12:**    Recording of Mezzi Marketing, LLC's ("Mezzi") December 6, 2017 call to the Rhodes landline (KATZ 309210)

**Exhibit 13:**    Recording of Mezzi's January 8, 2019 call to the Rhodes landline (KATZ 309216)

**Exhibit 14:**    June 17, 2019 court order from the probate court in Barnstable county appointing Rhodes as the personal representative of her father's estate (KATZ 379618-19)

**Exhibit 15:**   June 26, 2017 Deposition Transcript of Samuel Katz in *Slovin, et al., v. Sunrun Inc.,* et al., 4:15-cv-05340-YGR (N.D. Cal.)

**Exhibit 16:**   May 16, 2019 Deposition Transcript of Samuel Katz

**Exhibit 17:**   December 18, 2018 Deposition Transcript of Shelby Hinkley

**Exhibit 18:**   Email confirmation of August 16, 2003 Do Not Call Registration for Katz's landline, 508-966-████ (KATZ 007611)

**Exhibit 19**:   Verizon email call records reflecting Mezzi's calls to Katz's landline from 508-202-████ (KATZ 000001-14)

**Exhibit 20:**   Recording of first October 3, 2016 call from 508-202-████ to Samuel Katz (KATZ 379616)

**Exhibit 21:**   Recording of second October 3, 2016 from Mezzi to Samuel Katz (KATZ 000185)

**Exhibit 22:**   Defendants' First Amended Objections to Rhodes's First Set of Interrogatories

## Plaintiffs' L.R. 56.1 Statement of Facts (cited as "Pl.s' SOF)

### FACTS RELATED TO LYNNE RHODES

| **1** | Rhodes's cellular telephone number 617-962-XXXX has been registered on the do not call list since August 12, 2006. (KATZ 308004.) |
|---|---|
| **2** | Rhodes testified she had "several calls in 2016" from Defendants or their vendors to her cellular telephone, which were identified via discovery. (Rhodes Depo. Tr. 131:2-14.) <br><br> Rhodes's cellular telephone number appears in several of Defendants' leads lists sent to Mezzi Marketing, LLC ("Mezzi"): Defendants' Rule 30(b)(6) deponent could not identify any reason why Rhodes would not have been called since her telephone numbers appeared in Defendants' leads lists. (Castillo Depo. Tr. 78:16-21; 79:12-21. *See also* Castillo Depo. Tr. 65:22-67:7 (contents of lead lists); 70:12-70:22 (transmission of lead lists to vendors); Exhibit 9 to Castillo Depo. (LP_001245); Exhibit 10 to Castillo Depo. (LP_003528-2).) |

**Plaintiffs' L.R. 56.1 Statement of Facts (cited as "Pl.s' SOF)**

| | |
|---|---|
| **3** | Rhodes testified that, in June 2018, she received another call to her cellular telephone using a prerecorded voice, and that when she did speak to a live representative, the live representative indicated he was calling from Liberty Power. (Rhodes Depo. Tr. 127:17-132:24.)  Rhodes received a telephone call on her cellular telephone on June 20, 2018. (KATZ 307758.) |
| **4** | Rhodes registered her residential landline on the Do Not Call list on February 2008 with her father. (KATZ 308005; Rhodes Depo. Tr. 32:18-33:16 ("I, sitting in my father's living room, did this with him on my computer").) |
| **5** | Rhodes testified that, in May 2017, Rhodes moved back into her family home to care for her father (who had developed Lewy body dementia in 2016) "to help him financially, as well as help him get himself more organized in the handling of the regular life activities." (Rhodes Depo. Tr. 18:6-8; 45:20-46:16.) Rhodes testified that Verizon formally added her as a user to the landline account in June or July 2017. (Rhodes Depo. Tr. 45:20-46:16; 111:3-113:24.) Rhodes testified Verizon recognized her authority over the account:<br><br>I called [Verizon] and asked repeatedly, and I was assured that my calling in and I had access to do anything with the account, but the bill name would not change. (Rhodes Depo. Tr. 35:3-19. *See also* Rhodes Depo. Tr. 17:16-18:8; 21:23-22:16 (Rhodes began paying Eversource bill by July 2017).)) |
| **6** | Records from the Massachusetts Department of Public Utilities indicate that Rhodes's father terminated Defendants' service on September 15, 2017. (KATZ 307684.) |
| **7** | Rhodes testified Defendants' agents called the residential landline four and six times a week in November 2017—and that she answered most of these calls because her father had been hospitalized after a stroke. (Rhodes Depo. Tr. 37:15-38:19; 45:20-46:16.) |
| **8** | Rhodes testified, starting in the last week of November 2017, she began to tell Defendants repeatedly to "Remove this number from your list." (Rhodes Depo. Tr. 41:21-44:6; 48:14-49:23.)<br><br>Defendants' third-party verifier, Calibrus, produced a partial recording of a November 27, 2017 call from Liberty Power's telemarketers to Rhodes. (KATZ 307690.) (Calibrus produced KATZ 307690 with its native file name "2113515730<u>20171127</u>.wav," reflecting a November 27, 2017 date. Each of the five other audio files Calibrus produced had analogous date notations in the native format file name.) This recording terminates with Rhodes asking the Calibrus representative: "So, so, you're telling me this is being changed? From what?" |

**Plaintiffs' L.R. 56.1 Statement of Facts (cited as "Pl.s' SOF)**

| | |
|---|---|
| **9** | In the Massachusetts DPU records, Defendants assert they enrolled Rhodes's father again on December 6, 2017, but concede they cancelled enrollment on December 15, 2017. (KATZ 307684.) However, Defendants' agents continued to call Rhodes's landline number in December 2017, January 2018, and March 2018. (Rhodes Depo. Tr. 63:7-65:9.) |

| | |
|---|---|
| **10** | Rhodes testified that in some of Defendants' calls, she told the caller that her father "had dementia and that they were taking advantage of him." (Rhodes Depo. Tr. 47:6-10.) |
| | The DPU records indicate that the DPU alerted Defendants that Rhodes's father had Alzheimer's no later than December 15, 2017. (KATZ 307686.) However, Defendants did not inform the DPU that Rhodes was on their internal Do Not Call List under January 9, 2016. (KATZ 307685-86.) |

| | |
|---|---|
| **11** | Defendants' vendors spoofed calls—they falsified the outgoing telephone number displayed in recipients' Caller ID. (Castillo Depo. Tr. at 122:1-128:8; Exhibit 19 to Castillo Depo. (LP _002515-1 to -11); Exhibit 20 to Castillo Depo. (LP_002367).) This spoofing has made it more difficult to gather evidence that attributes calls to Defendants. (*See* Rhodes Depo. Tr. 65:10-17; KATZ 307802 (record of spoofed December 6, 2017 call from Defendants with inaccurate originating number).) |

| | |
|---|---|
| **12** | Mezzi provided access to seven recordings of Mezzi's calls to Rhodes's landline number. Consistent with the Calibrus productions, the native audio file names indicate calls seven calls to Rhodes's landline number on December 6 and 7, 2017, and January 6 and 8, 2019. (KATZ 309210-16.) |

| | |
|---|---|
| **13** | The Mezzi recordings include a complete recording of the December 6, 2017 call answered by Rhodes's father. (KATZ 309210.) In the call, the caller identified himself as "Jacob Miller, . . . calling you from your current electric supplier company on your Eversource electric bill," and does not disclose he is calling for Liberty Power until he has obtained various information from Rhodes's father. (KATZ 309210 at 0:51, 4:22.) |
| | At the end of the call, Rhodes's father asks if he can put someone else's name on the account, and says he wants to add his daughter (Lynne) to the account. (KATZ 309210 at 15:30, 16:38.) |

**Plaintiffs' L.R. 56.1 Statement of Facts (cited as "Pl.s' SOF)**

**14**    Mezzi's January 8, 2018 call to Rhodes contains the following exchange:

RHODES: "Hello?"

MEZZI: "Can I speak with Scoba Rhodes?"

RHODES: "May I ask whose callings?"

MEZZI: "Yes, please. My name is James and I'm calling from Liberty Power. That is your supplier for your Eversource electricity bill, alright?"

RHODES: "No, its not. You guys—"

MEZZI: "Why not?"

RHODES: "Need to stop . . . Oh my God, how can you keep calling?"

MEZZI: "What happened, ma'am?"

RHODES: "We don't want your services . . ."

(KATZ 309216 at 0:19-0:46.) Plaintiffs submit KATZ 309216 for aural review. The audible tone of the exchange in KATZ 309216 is admissible evidence of Rhodes's annoyance and invasion of privacy.

**Plaintiffs' L.R. 56.1 Statement of Facts (cited as "Pl.s' SOF)**

---

**15**    Rhodes has contemporaneous records of other calls from Liberty Power during January 2019, in the form of her complaints to the Massachusetts DPU. (KATZ 307682-86.) In an email dated January 9, 2018 to the DPU, Rhodes stated: "I have received 3 more calls from this Liberty power insisting I am their customer and I've even screamed at them to stop calling and to remove my number from their system." (KATZ 307685.) In a January 15 email, Rhodes stated:

> I just got off the phone with Liberty Power again. They said they will not stop calling me until I tell them who I have my power source from and what my rate is. I told them it was none of their business and to stop calling me. He said not going to happen. I said it was against the law what he is doing. . . . He said he was calling from Eversource and not Liberty Power until I pressed him. The phone number came up as an alias number. He said he'll just continue to call until I changed it or told him who I had.

(*Id.*) In a January 27 email, Rhodes stated:

> Liberty Power has called 4 times that I have documented. . . . They call and say they are calling from Eversource and my father believes them and he wants to make sure his account is current. Thankfully, I hope, I've told him not to pay anything over the phone and to ask for a paper bill before he pays. They have told me they were from Eversource and when I told him he was lying, he told me I needed to die. When I asked who he was calling from, he wouldn't tell me. Until I asked if he was from Liberty Power.

(KATZ 307685.)

---

**16**    On June 17, 2019, the probate court in Barnstable county appointed Rhodes as the personal representative of her father's estate. (KATZ 379618-19.) This appointment expires in September 2019, but Rhodes intends to extend the appointment and/or seek permanent appointment.

---

**17**    Rhodes testified she brought this lawsuit because

> I repeatedly asked to be removed from the call list. I . . . continued to be called, and people were giving misinformation to my father to gain business, and he was not of the capacity to independently verify the incorrect statements that were given to him. That's an abuse of somebody who is elderly, has dementia issues, and I am livid that occurred.

(Rhodes Depo. Tr. 31:7-23.) Rhodes further testified her Liberty's exploitation of her father's condition was "secondary" to her intent to enforce the Do Not Call List laws:

> His sole — his illness is secondary to the fact that he was getting repeated phone calls and we told them to not call, so his illness was of concern to me and added pressure to me. Regardless of whether — the reason, "do not call" means "do not call," and that was not adhered to.

(Rhodes Depo. Tr. 47:15-20.)

---

**FACTS RELATED TO SAMUEL KATZ**

**18**  Katz previously testified that he has never "maintained any phone line for the purpose of receiving calls that [he] claim[s] that are in violation of the TCPA." (Katz Sunrun Depo. Tr. 130:3-6.)

**19**  Katz and his spouse testified that Katz maintained 508-966-███ landline for emergency purposes, to ensure reliable 911 service for their residence. (Katz Depo. Tr. 75:1-18; Hinkley Depo. Tr. 35:21-36:24.)

**20**  Katz alleges TCPA claims for at least thirteen unsolicited calls by or on behalf of Liberty Power calls to his residential landline at 508-966-███ using a prerecorded voice and in violation of the TCPA's Do Not Call regulations. (ECF No. 109 ¶107.)

**21**  Katz testified he arranged to forward calls through his Google number to his cellular telephone, which meant calls to the Katz's numbers would ring to his cellular telephone. (Katz Depo. Tr. 80:23-81:1.) Katz testified he made this arrangement "so that [his] wife wouldn't have to hear the annoying calls" and so he "wouldn't have to walk across the house and pick up the phone." (Katz Depo. Tr. 139:13-19.) Katz's wife had asked Katz to "mute" the ███ landline "[b]ecause it was annoying." (Hinkley Depo. Tr. 47:2-19.)

**22**  All of Katz's telephone numbers are listed on the National Do Not Call Registry. (Katz Sunrun Depo Tr. 199:15-17; 199:20-22; 200:1-3; Katz Depo Tr. 31:1-2; 33:2-7; 48:16-17.) Mr. Katz's ███ number has been registered on the National do not call list since August 16, 2003. (KATZ 007611.)

**23**  Katz testified that he did not stop calls to the ███ ringing on his cellular telephone (and thereby potentially miss wanted calls) because "he is under no obligation to accommodate the needs of telemarketers who habitually violate the law." (Katz Depo. Tr. 139:22-24.)

**24**  Katz also testified that "the [Google] number was a phone number [he] had for a very long time, so [this arrangement] helped [him] with screening the calls." (Katz Depo. Tr. 80:23-81:1.) Katz testified that this number was "a number [he] historically used" and that he didn't want people to lose contact with him "when [he] got a new phone number." (Katz Sunrun Depo. Tr. 119:10-15.)

**25**  Katz testified that the functionality of creating email records when a telephone number receives a call is a feature that "Verizon offers to all of its customers." (Katz Sunrun Depo. Tr. 328:4-9.)

**26**  Katz previously testified he began to keep records of telephone calls he received when he "realized that if I was going—if I had a dispute with a company like that that they weren't going to take my concerns seriously unless I had actual records of what happened." (Katz Sunrun Depo. Tr. 93:4-17.)

**27**    Katz was asked "so the ▮▮▮ number did not ring in September 2016, correct? Katz testified that "[i]t did ring." (Katz Depo. Tr. 74:7-14).

**28**    Katz testified Defendants' calls were "intrusive and harassing," and that he is "on the National Do Not Call List for a reason." (Katz Depo. Tr. 138:16-24.)

**29**    At the time of the calls alleged Katz testified that the ▮▮▮ number rang on his cellphone. (Katz Depo. Tr. 74 7:14.)

**30**    In September 2016, Mr. Katz began receiving calls to his ▮▮▮ residential landline number from 508-202-1270. (Katz Depo. Tr. 134:16-23; KATZ 000001-000011; Def.s' First Amended Objs. to Rhodes' First Set of Interrogatories, Response No. 1 at 3.)

**31**    Katz answered a call from 508-202-1270 on October 3, 2016. (Katz Depo. Tr. 109:13-16; 113:3-7 *See also* Katz Depo. Tr. 114:8-115:18; 117:11-23; KATZ 379616.)

**32**    508-202-1270 is a spoofed number used by Mezzi, one of the telemarketers that Defendants used to call Katz. (Castillo Depo. Tr. at 122:1-128:8.)

**33**    Defendants used the fact that Mezzi 1270 number's spoofing to deny that their vendors made the calls to Plaintiffs. (Castillo Depo. Tr. at 122:1- 128:8.)

**34**    This call began with a prerecorded message. (KATZ 379616.) Mr. Katz had been receiving prerecorded spoofed calls claiming affiliation with Eversource for months prior to these calls. (Katz Depo. Tr. 173:7-17.)

**35**    The caller initially misrepresented himself as an Eversource representative, so Katz did not know the identity of the caller. (Katz Depo. Tr. 119:12-20; 116:13-14; 140:14-141:9; 172:8-173:17; KATZ 379616 at 0:02-0:07; 0:30-0:35.)

**36**    During the call, Mr. Katz stated "You have a very bad connection, I can barely hear you." The caller continued to speak and Mr. Katz said to the "Eversource" caller "can you just give me a call back, I can barely hear you." (KATZ 379616 at 0:49-0:55; 1:16-1:20.)

**37**    The caller immediately called back from an "anonymous" number and the caller finally identified itself as Liberty Power. Katz then asked the caller to stop calling Katz, but was told he "had to sign up for Liberty Power service" if he "wanted to stop receiving calls." (Katz Depo. Tr. 113:3-23; 114:14-16; KATZ 000185 at 24:21-25:14; KATZ 000011.)

**38**    Mr. Katz testified that he specifically recalls his frustration with the calls on October 3, 2016. "My memories are particularly around the frustration of the 10/3 call." (Katz Depo. Tr. 119:3-20.)

**39**   Within an hour of this October 3 call, Katz emailed Defendants to ask them to stop calling his landline number. (Katz Depo. Tr. 141:23-142:4; 170:13-171:10; KATZ 000013-14.) Defendants' vendors made at least two more calls to Katz's landline number, on October 14, 2016. (Katz Depo. Tr. 109:13-16; 133:4-135:12.)

**40**   Defendants produced contemporaneous communications with its vendor, Mezzi which indicate that Mezzi called Katz's residential landline at 508-966-███ in October 2016. (Castillo Dep. Tr. 103:4-105:15.) Defendants admit that Mezzi called Katz's ███ number ten times from the telephone number 508-202-1270. (Def.s' First Amended Objs. to Rhodes' First Set of Interrogatories, Response No. 1 at 3.)

**41**   Mr. Katz is gainfully employed with a full-time position at a data company (and held this position at the time of the calls). (Hinkley Depo. Tr. 77:13-21; 81:4-5; Katz Depo. Tr. 18:19-19:16.)

**42**   Mr. Katz has a family with three young children at home. (Hinkley Depo. Tr. 81:4-5; 82:7-18.)

**43**   Mr. Katz's family's standard of living has not changed in any way since Mr. Katz began enforcing his consumer rights under the TCPA. (Hinkley Depo. Tr. 59:21-60:23.)

**44**   Mr. Katz testified as to why he maintained each phone line at different periods of time. At the time of the calls alleged in the complaint Katz testified that he had four residential numbers. (Katz Depo. Tr. 85:4-6.)

His ███ Google voice number was "a number [he] historically used" and that he didn't want people to lose contact with him "when [he] got a new phone number." (Katz Sunrun Depo. Tr. 119:10-15.)

Mr. Katz maintained a personal cellphone number. (Katz Depo. Tr. 31:3-4; Katz Sunrun Depo. Tr. 104: 17-18.)

Katz obtained the ███ telephone number because "initially intended to have a business line at my house when I got a new job [but] ultimately, [he] did not end up using it for that purpose." (Katz Depo. Tr. 75:8-18. *Cf.* Katz Depo. Tr. 80:10-22.)

Katz maintained 508-966-███ landline for his family for emergency purposes, to ensure reliable 911 service for their Massachusetts residence. (Katz Depo. Tr. 75:1-18; Hinkley Depo. Tr. 35:21-36:24.) Katz no longer uses these Massachusetts numbers. (*Cf.* Katz Depo. Tr. 30:20-31:2.). The Katz family no longer maintained the 508-966-███ landline number after August 2017 when he and his family moved to Maine. (Hinkley Depo. Tr. 48:23- 49:2.)

**45**   As of May 2019, Mr. Katz and his family maintain 5 residential lines.

The 857 line is his wife's recent previous cellphone number which she changed for a Maine number but kept so people can still contact her on that number. (Katz Depo. Tr. 47:19- 48:5; Hinkley Depo Tr. 45:14-20.)

The 207 number Katz and his wife "originally had tried to set up [the last number [207] as a landline in the house," in Maine but was frustrated when he was "unable to get a dial tone" for it, because he "wanted a landline in my house . . . [f]or emergency calls." (Katz Depo. Tr. 45:1-13; Hinkley Depo. Tr. 49: 3-15.)

Katz testified that he purchased the 305 number for privacy reasons to provide a party when he doesn't have "confidence that they would be able to handle my information in a secure and professional manner." (Katz Depo. Tr. 62:13-21.)

**46**   Katz testified that "as a result of some situations that have occurred in the past" he provides the 305 number to people he doesn't know, and to certain businesses, and uses this number if he were to provide a contact number on a document. (Katz Depo. Tr.61:1-7:63:1-10).

**47**   Katz testified that "when he had previously made a DNC request companies started calling [him] on th[e] number [provided]." (Katz Depo. Tr. 175:1-5.)

**48**   Mr. Katz has sent letters to telemarketers to request information about how a company obtained his information and sometimes requests monetary compensation so that a company pays attention and doesn't ignore him. (Katz Sunrun Depo. Tr. 61:14-62:6; 63:8-64:1).

**49**   Where, as here, Mr. Katz has been harmed by illegal telemarketing calls, Mr. Katz endeavors "to enforce the TCPA as effectively as possible, and the way that Congress intended, which would include class actions." (Katz Depo. Tr.157:4-13.)

**50**   Although Katz was offered "a large sum which would have significantly impacted his family's life," Katz turned down a $100,000 individual settlement offer in another case. (*See Slovin v. Sunrun Inc.,* No. 15-05340, Declaration of Samuel Katz (N.D. Cal. Apr. 5, 2019), ECF No. 205-8 ¶¶14; 16.)

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Rhodes**

| | | |
|---|---|---|
| **1** | The telephone number that Lynne Rhodes alleges she received telephone calls from or on behalf of Liberty Power, 508-540-███ was, at all times of the alleged calls, in the name of her father, Scoba Rhodes. Exhibit 5, May 14, 2019 transcript of Lynne Rhodes' deposition ("Rhodes Dep.") 34:17-35:8;113:2-12; Exhibit 6, June 16, 2018 Verizon Telephone Bill for Scoba Rhodes and Exhibit 4 to Lynne Rhodes's deposition (impounded); Exhibit 7, Scoba Rhodes' Verizon Account Payment History and Exhibit 13 to Lynne Rhodes' deposition (impounded). | Objection. Irrelevant to the TCPA claims at issue here and therefore immaterial.

Rhodes disputes any inference that she does not have standing because of Verizon account was in her father's name. The TCPA's "private right of action allows suit by any 'person' who 'received' calls that were placed 'in violation of' the TCPA regulations. . . . [T]he cause of action is § 227(c)(5) is not limited to telephone subscribers." *Krakauer*, 925 F.3d at 656-57 (quoting 47 U.S.C. § 227(c)(5)). The TCPA defines "subscriber" for the purposes of the DNC regulations as "[a]ny adult person authorized by [the party identified in the account records as responsible for payment] to change telecommunications services or to charge services to the account; or [a]ny person . . . otherwise lawfully authorized to represent such party." 47 C.F.R. § 64.1100(h).

In May 2017, Rhodes moved back into her family home to care for her father (who had developed Lewy body dementia in 2016) "to help him financially, as well as help him get himself more organized in the handling of the regular life activities." (Rhodes Depo. Tr. 18:6-8; 45:20-46:16.) Verizon formally added her as a user to the landline account in June or July 2017. (Rhodes Depo. Tr. 45:20-46:16; 111:3-113:24.) Verizon recognized her authority over the account:

> I called [Verizon] and asked repeatedly, and I was assured that my calling in and I had access to do anything with the account, but the bill name would not change.

(Rhodes Depo. Tr. 35:3-19. *See also* Rhodes Depo. Tr. 17:16-18:8; 21:23-22:16 (Rhodes began paying Eversource bill by July 2017).)) |

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

| Defendants' Statement of Facts for Rhodes | |
| --- | --- |
| **2**      The telephone number 508-540-█████ is associated with the address ████ ████████ Falmouth, MA. Rhodes Dep. 33:2-4. | This fact is undisputed. |
| **3**      Ms. Rhodes was not living at ████ ████████ in February 2008 when 508-540-████ was registered on the do not call list. Rhodes Dep. 33:13-16. | Objection. Irrelevant to the TCPA claims at issue here and therefore immaterial. Rhodes disputes any inference that she does not have standing based on whether she registered the landline number on the Do Not Call List. *Krakauer* specifically rejected the argument that "the private right of action [under TCPA § 227(c)(5)] should be limited only to those who can list their numbers on the registry": If a wife, as the subscriber, lists a home telephone number on the Do-Not-Call registry, but her husband happens to be the one who receives the improper calls, the law has still been violated. Both the wife and the husband can suffer the harm that Congress sought to deter, and both are "persons" able to bring a claim under § 227(c)(5). *Krakauer*, 925 F.3d at 657. |

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Rhodes**

| | | |
|---|---|---|
| **4** | Ms. Rhodes' name was not on the account for 508-540-■■■ in February 2008. Rhodes Dep. 33:24-34:2. | Objection. Irrelevant to the TCPA claims at issue here and therefore immaterial. |

Rhodes disputes any inference that she does not have standing based on whether she registered the landline number on the Do Not Call List.

*Krakauer* specifically rejected the argument that "the private right of action [under TCPA § 227(c)(5)] should be limited only to those who can list their numbers on the registry":

> If a wife, as the subscriber, lists a home telephone number on the Do-Not-Call registry, but her husband happens to be the one who receives the improper calls, the law has still been violated. Both the wife and the husband can suffer the harm that Congress sought to deter, and both are "persons" able to bring a claim under § 227(c)(5).

*Krakauer*, 925 F.3d at 657.

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Rhodes**

| 5 | 508-540-███ was Scoba Rhodes' residential telephone number through at least June 16, 2018. Exhibit 6. | Objection. Irrelevant to the TCPA claims at issue here and therefore immaterial. |
|---|---|---|

Rhodes disputes any inference that she does not have standing because of Verizon account was in her father's name. The TCPA's "private right of action allows suit by any 'person' who 'received' calls that were placed 'in violation of' the TCPA regulations. . . . [T]he cause of action is § 227(c)(5) is not limited to telephone subscribers." *Krakauer*, 925 F.3d at 656-57 (quoting 47 U.S.C. § 227(c)(5)). The TCPA defines "subscriber" for the purposes of the DNC regulations as "[a]ny adult person authorized by [the party identified in the account records as responsible for payment] to change telecommunications services or to charge services to the account; or [a]ny person . . . otherwise lawfully authorized to represent such party." 47 C.F.R. § 64.1100(h).

In May 2017, Rhodes moved back into her family home to care for her father. (Rhodes Depo. Tr. 18:6-8; 45:20-46:16.) Verizon formally added her as a user to the landline account in June or July 2017. (Rhodes Depo. Tr. 45:20-46:16; 111:3-113:24.) Verizon recognized her authority over the account:

> I called [Verizon] and asked repeatedly, and I was assured that my calling in and I had access to do anything with the account, but the bill name would not change.

(Rhodes Depo. Tr. 35:3-19.)

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Rhodes**

| | | |
|---|---|---|
| <u>6</u> | When Scoba Rhodes passed away and the telephone number became Ms. Rhodes' residential telephone number, Verizon assigned it a different account number. Rhodes Dep. 22:17-23:5. | This fact is undisputed. |
| <u>7</u> | Ms. Rhodes received one telephone call on her cellular telephone which lasted between 2-3 minutes. Rhodes Dep. 132:1-9. | Rhodes disputes the contention Defendants' agents only called her cellular telephone number once. (Rhodes notes she has different TCPA claims arising from Defendants' calls to her landline and Defendants' calls to her cellular telephone.)<br><br>Rhodes had "several calls in 2016" from Defendants or their vendors to her cellular telephone, which were identified via discovery. (Rhodes Depo. Tr. 131:2-14.)<br><br>Rhodes's cellular telephone number appears in several of Defendants' leads lists sent to Mezzi Marketing, LLC ("Mezzi"): Defendants' Rule 30(b)(6) deponent could not identify any reason why Rhodes would not have been called since her telephone numbers appeared in Defendants' leads lists. (Castillo Depo. Tr. 78:16-21; 79:12-21. *See also* Castillo Depo. Tr. 65:22-67:7 (contents of lead lists); 70:12-70:22 (transmission of lead lists to vendors); Exhibit 9 to Castillo Depo. (LP_001245); Exhibit 10 to Castillo Depo. (LP_003528-2).) |

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Rhodes**

| | | |
|---|---|---|
| **8** | Lynn Rhodes was not charged for the single telephone call she allegedly received on her cellular phone.<br><br>Rhodes Dep. 133:5-10. | Objection. Irrelevant to the TCPA claims at issue here and therefore immaterial.<br><br>The TCPA's autodialer provision is disjunctive. It prohibits calls<br><br>using any automatic telephone dialing system or an artificial or prerecorded voice [to call (1)] any telephone number assigned to a . . . cellular telephone service . . . *or* [(2)] any service for which the called party is charged for the call . . .<br><br>47 U.S.C. § 227(b)(1) (emphasis added). The cellular call element at (1) is in the alternative to the charged call requirement at (2), not in the addition. "Congress did not intend the phrase 'for which the called party is charged for the call' to apply to cellular telephone services." *Osorio v. State Farm Bank, FSB*, 746 F.3d at 1257 (collecting authorities). |
| **9** | Ms. Rhodes did not receive more telephone calls after she told the caller to "take me off your list."<br><br>Rhodes Dep. 129:19. | Rhodes disputes the contention Defendants' did not receive any more calls to her cellular telephone from Defendants after June 2018.<br><br>Rhodes identified calls from Defendants that were not found in her complaint as "calls that we found as we've been going along and researching at this time. I expect to find more calls as we identify the calls listed."<br><br>Rhodes disputes any inference that she would not have standing because of Defendants only called her cellular telephone once: "a mere technical violation of the TCPA is, by itself, a concrete injury sufficient to confer standing." *Gibbs v. SolarCity Corp.*, 239 F. Supp. 3d 391, 395 (D. Mass. 2017) (collecting cases). |

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Rhodes**

| | | |
|---|---|---|
| **10** | Lynne Rhodes moved into her father's home approximately Memorial Day 2017 and answered some inbound telephone calls while she temporarily lived there. Rhodes Dep. 16:2-4; 38:4-21. | This fact is undisputed. |

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Katz**

| | | |
|---|---|---|
| **1** | At the time of the alleged telephone calls, Mr. Katz had his 508-966-███ telephone number set to create email and text message records when it received a call. Exhibit 1, Unredacted May 16, 2019 deposition transcript of Samuel Katz ("Katz Dep.") 1 (impounded) 70:24-71:13; 80:10-22; 72:23-73:2. | Objection. Irrelevant to the TCPA claims at issue here and therefore immaterial.<br><br>Katz testified that the email feature is a feature that "Verizon offers to all of its customers." (Katz Sunrun Depo. Tr. 328:4-9.) Katz and his spouse testified that the Katz's maintained this landline for emergency purposes, to ensure reliable 911 service for their residence. (Katz Depo. Tr. 75:1-18; Hinkley Depo. Tr. 35:21-36:24.) This testimony contradicts any inference that Katz maintained this phone line solely to file TCPA lawsuits.<br><br>Katz disputes that keeping records of calls that were made to him have any effect on his standing. *See Krakauer v. Dish Network, LLC*, 925 F.3d 643, 657 (4th Cir. 2019); *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783 (N.D.W. Va. 2017). |

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Katz**

| | | |
|---|---|---|
| **2** | At the time of the alleged telephone calls, Mr. Katz's 508-966-███ telephone number was set by Mr. Katz to forward to his google voice telephone number and then forward again to his cellular telephone number. Katz Dep. 82:18-3. [sic] | Objection. Irrelevant to the TCPA claims at issue here and therefore, immaterial.<br><br>Katz disputes any inference that Katz maintains telephone numbers solely to file TCPA lawsuits, or that he did not suffer nuisance or invasion of privacy.<br><br>Katz testified Defendants' calls were "intrusive and harassing," and that he is "on the National Do Not Call List for a reason," and that he never "maintained any phone line for the purpose of receiving calls that [he] claim[s] that are in violation of the TCPA." (Katz Depo. Tr. 138:16-24; Katz Sunrun Depo. Tr. 130:3-6.)<br><br>Katz asserts TCPA claims for prerecorded voice calls and Do Not Call violations, based on at least thirteen calls to his residential landline. (ECF No. 109 ¶107.)<br><br>Katz arranged to forward calls through his Google number to his cellular telephone, which meant calls to Katz's landline number would ring to his cellular telephone. (Katz Depo. Tr. 80:23-81:1.)<br><br>Katz also testified that "the [Google] number was a phone number [he] had for a very long time, so [this arrangement] helped [him] with screening the calls." (*Id.*) Katz testified that this number was "a number [he] historically used" and that he didn't want people to lose contact with him "when [he] got a new phone number." (Katz Sunrun Depo. Tr. 119:10-15.) |

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Katz**

| **2** | At the time of the alleged telephone calls, Mr. Katz's 508-966-███ telephone number was set by Mr. Katz to forward to his google voice telephone number and then forward again to his cellular telephone number. Katz Dep. 82:18-3. [sic] | **CONTINUED**<br><br>Katz testified he made this arrangement "so that [his] wife wouldn't have to hear the annoying calls" and so he "wouldn't have to walk across the house and pick up the phone." (Katz Depo. Tr. 139:13-19.) Katz's wife had asked Katz to "mute" the family's landline "[b]ecause it was annoying." (Hinkley Depo. Tr. 47:2-19.) |
|---|---|---|
| **3** | At the time of the alleged telephone calls, Mr. Katz had another telephone number which also had automatic forwarding, first to his google voice number and then to his personal cellular telephone. Katz Dep. 80:10-22. | Objection. Irrelevant to the TCPA claims at issue here and therefore, immaterial. Katz disputes any inference that Katz maintains telephone numbers solely to file TCPA lawsuits, or that he did not suffer nuisance or invasion of privacy. (<br><br>Katz obtained the ███ telephone number at issue because "initially intended to have a business line at my house when I got a new job [but] ultimately, [he] did not end up using it for that purpose." (Katz Depo. Tr. 75:8-18. *Cf.* Katz Depo. Tr. 80:10-22.) Katz no longer has this Massachusetts number. (*Cf.* Katz Depo. Tr. 30:20-31:2.) |

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Katz**

| | | |
|---|---|---|
| **4** | In September and October 2016, when either one of Mr. Katz's 508-966 telephone numbers was called, it would forward to his google voice number and then forward to his cell phone. Katz Dep. 73:14-74:2. | Objection. Irrelevant to the TCPA claims at issue here and therefore, immaterial. This statement is duplicative of Def.s' SOF 3 for Katz.<br><br>At the time of the calls Mr. Katz had two numbers forwarding to his google voice and then to his cellphone. (Katz Depo. Tr. 73:14-74:2.)<br><br>Katz disputes any inference that Katz maintains telephone numbers solely to file TCPA lawsuits, or that he did not suffer nuisance or invasion of privacy. (*See* Pl.s' SOF 18, 28, 38.) |

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Katz**

| **5** | As of May 16, 2019, Mr. Katz had five residential telephone numbers. Katz Dep. 30:20-31-2; 85:9-13; 31:11-21; 35:8-10. [sic] | Objection. This fact is irrelevant and therefore immaterial to the TCPA claims alleging calls from Liberty Power in 2016.

The Katz family stopped maintaining the 508-966-███ landline number after August 2017 when he and his family moved to Maine. (Hinkley Depo. Tr. 48:23- 49:2.) Katz does not assert any claims against Defendants for calls to any of the telephone numbers referenced in Def.s' SOF 5. (ECF No. 109 ¶57.)

Katz disputes any inference that Katz maintains telephone numbers solely to file TCPA lawsuits as that contradicts his direct testimony. (*See* Pl.s' SOF 18.) All of Katz's telephone numbers are listed on the National Do Not Call Registry. (Katz Sunrun Depo Tr. 199:15-17; 199:20-22; 200:1-3; Katz Depo Tr. 31:1-2; 33:2-7; 48:16-17.) The number ending in 6565 is Katz's residential cellular telephone number. (Katz Depo. Tr. 31:3-4.)

Katz's ███ number was his wife's "previous cell phone number" (that she had replaced with "a Maine phone number") which Katz and his wife "retain[ed] that number so that if anybody had that number, they would still be able to contact us, or if anybody texted that number, I would be able to direct them to her new number." (Katz Depo. Tr. 47:19-48:5. Hinkley Depo. Tr. 45:14-20.) |

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Katz**

| **5** | As of May 16, 2019, Mr. Katz had five residential telephone numbers. Katz Dep. 30:20-31-2; 85:9-13; 31:11-21; 35:8-10. [sic] | **CONTINUED**

Katz also has had his [■■■■■] Google number for a long time. (*See* Pl.s' SOF 24.) Katz used the 305 number to "give out . . . to parties [he did not] trust" and/or "was not comfortable and did not know" the parties. (Katz Depo. Tr. 62:13-63:10; 67:24-68:9.)

Katz testified that this number was "a number [he] historically used" and that he didn't want people to lose contact with him "when [he] got a new phone number." (Katz Sunrun Depo. Tr. 119:10-15.)

The 207 number Katz and his wife "originally had tried to set up [the last number [207]] as a landline in the house," but was frustrated when he was "unable to get a dial tone" for it, because he "wanted a landline in my house . . . [f]or emergency calls." (Katz Depo. Tr. 45:1-13.) |

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Katz**

| | | |
|---|---|---|
| **6** | At least 75% of the telephone calls he receives on these telephone numbers are unwanted and unsolicited phone calls.<br><br>Katz Dep. 33:8-16. | Objection. This fact is irrelevant and immaterial to the TCPA claims alleging calls from Liberty Power in 2016. The Katz family no longer maintained the 508-966-█ landline number after August 2017 when he and his family moved to Maine. (Hinkley Depo. Tr. 48: 23- 49:2)<br><br>Katz is not bringing claims for calls by Liberty Power to any phone numbers other than to his landline █ number. (ECF No. 109 ¶57.)<br><br>Katz disputes any inference that Katz maintains telephone numbers solely to file TCPA lawsuits as that contradicts his direct testimony. (*See* Pl.s' SOF 18.)<br><br>Katz contends that this fact supports his testimony that he does not maintain his phone lines solely for purposes of filing TCPA lawsuits as 25% of calls are wanted and solicited.<br><br>Katz does not dispute that many calls are "unwanted and unsolicited." Katz disputes any inference that he does anything to encourage these calls. To the contrary, Katz testified Defendants' calls were "intrusive and harassing," and that he is "on the National Do Not Call List for a reason," and that he never "maintained any phone line for the purpose of receiving calls that [he] claim[s] that are in violation of the TCPA." (Katz Depo. Tr. 138:16-24; Katz Sunrun Depo. Tr. 130:3-6.)<br><br>Katz disputes that this fact can lend itself to any inferences as Defendants do not put forth any evidence showing that many Americans do not share the same experience, namely that a majority of calls to their residence are "unwanted and unsolicited." |

## Plaintiffs' L.R. 56.1 Statement of Disputed Facts

**Defendants' Statement of Facts for Katz**

| | | |
|---|---|---|
| **7** | Mr. Katz voluntarily selected a Florida 305 area code for one of his five current residential telephone numbers. Katz Dep. 62:1-4. | Objection. This fact is irrelevant and immaterial to the TCPA claims alleging calls from Liberty Power in 2016. The Katz family no longer maintained the residential landline called in October 2016, after he and his family moved to Maine in the summer of 2017. (Hinkley Depo. Tr. 48:23- 49:2). Katz is not bringing claims for calls by Liberty Power to any other phone line. (ECF NO. 109 ¶ 57.)

Katz disputes any inference Katz used this number in the same way as the plaintiff in *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016). The *Stoops* plaintiff selected at least 35 phones in locations in Florida which she knew to be economically depressed where people would be defaulting on their loans or credit cards in the hopes of receiving calls to phones which no longer belonged to their previous owners who owed the debt. *Id.* at 788-89. Here, Katz chose the 305 area code based on a "rap song" he enjoyed titled "305 Till I Die." (Katz. Depo. Tr. 62:3-7).

Katz disputes any inference that the 305 area code (which includes, e.g., Palm Beach) is in a depressed area of Florida. |

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Katz**

| | | |
|---|---|---|
| **7** | Mr. Katz voluntarily selected a Florida 305 area code for one of his five current residential telephone numbers. Katz Dep. 62:1-4. | **CONTINUED**<br><br>Katz disputes any inference that Katz maintains telephone numbers solely to file TCPA lawsuits as that contradicts his direct testimony. (*See* Pl.s' SOF 18.)<br><br>Katz testified that he purchased the 305 number to provide a party when he doesn't have "confidence that they would be able to handle my information in a secure and professional manner." (Katz Depo. Tr. 62:13-21.)<br><br>Katz disputes any inference that he has done anything to encourage telemarketing calls. Katz testified Defendants' calls were "intrusive and harassing," and that he is "on the National Do Not Call List for a reason," and that he never "maintained any phone line for the purpose of receiving calls that [he] claim[s] that are in violation of the TCPA." (Katz Depo. Tr. 138:16-24; Katz Sunrun Depo. Tr. 130:3-6.) |
| **8** | Mr. Katz's 305 telephone number is a telephone number that forwards telephone calls to his cellular phone and does not ring in his residence. Katz Dep. 31:11-12; 31:22-32:8. | Objection. This fact is irrelevant and immaterial to the TCPA claims alleging calls from Liberty Power in 2016.<br><br>Katz is not bringing claims for calls by Liberty Power to the 305 phone number. (ECF NO. 109 ¶ 57.)<br><br>Katz disputes that the 305 telephone number doesn't ring in his residence. The phone rings on his cellphone. (Katz Depo. Tr.43:6-8.) |

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Katz**

| | | |
|---|---|---|
| **9** | When the 305 telephone number forwards to Mr. Katz's cell phone, he cannot identify who has called the 305 number. Katz Dep. 35:1-7. | Objection. This fact is irrelevant and therefore immaterial to the TCPA claims alleging calls from Liberty Power in 2016. Katz is not bringing claims for calls by Liberty Power to the 305 phone number. (ECF NO. 109 ¶ 57.) |
| **10** | Mr. Katz communicates on his 305 number with "Defendants, but not -- sorry, not defendants. A party who I had corresponded with about allegations of TCPA violations" and "Illegal telemarketers." Katz Dep. 32:16-22. | Objection. This fact is irrelevant and immaterial to the TCPA claims alleging calls from Liberty Power in 2016. Katz is not bringing claims for calls by Liberty Power to the 305 phone number. (ECF NO. 109 ¶ 57.) Katz disputes any inference that Katz maintains telephone numbers solely to file TCPA lawsuits as that contradicts his direct testimony. (*See* Pl.s' SOF 18.) Katz testified that he purchased the 305 number to provide a party when he doesn't have "confidence that they would be able to handle my information in a secure and professional manner." (Katz Depo. Tr. 62:13-21.) Katz testified that "as a result of some situations that have occurred in the past" he provides this number to people he doesn't know, and to certain businesses, and uses this number if he were to provide a contact number on a document. (Katz Depo. Tr. 61:1-7; 63:1-10.) |

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Katz**

| | | |
|---|---|---|
| <u>11</u> | The majority of the telephone calls Mr. Katz receives on his 305 number are telemarketing calls. Katz Dep. 33:8-11. | Objection. This fact is irrelevant and immaterial to the TCPA claims alleging calls from Liberty Power in 2016. Katz is not bringing claims for calls by Liberty Power to the 305 telephone number. (ECF No. 109 ¶ 57; Katz Depo Tr. 65:3-5.)<br><br>Katz disputes any inference that he has done anything to encourage telemarketing calls. Katz testified Defendants' calls were "intrusive and harassing," and that he is "on the National Do Not Call List for a reason," and that he never "maintained any phone line for the purpose of receiving calls that [he] claim[s] that are in violation of the TCPA." (Katz Depo. Tr. 138:16-24; 119:3-10; Katz Sunrun Depo. Tr. 130:3-6.) |
| <u>12</u> | Mr. Katz does not make any outgoing calls on the 305 telephone number. Katz Dep. 42:19-21. | Objection. This fact is irrelevant and immaterial to the TCPA claims alleging calls from Liberty Power in 2016.<br><br>Katz is not bringing claims for calls by Liberty Power to the 305 telephone number. (ECF NO. 109 ¶ 57.)<br><br>Katz disputes any inference that he has done anything to encourage telemarketing calls. Katz testified Defendants' calls were "intrusive and harassing," and that he is "on the National Do Not Call List for a reason," and that he never "maintained any phone line for the purpose of receiving calls that [he] claim[s] that are in violation of the TCPA." (Katz Depo. Tr. 138:16-24; 119:3-10; Katz Sunrun Depo. Tr. 130:3-6.) |

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Katz**

| | | |
|---|---|---|
| **13** | Incoming telephone calls to Mr. Katz's 207 telephone number also do not ring at his residence and also forward to his cellular telephone. Katz Dep. 35:22-36:8 | Objection. This fact is irrelevant and immaterial to the TCPA claims alleging calls from Liberty Power in 2016.

Katz is not bringing claims for calls by Liberty Power to the 207 telephone number. (ECF NO. 109 ¶ 57.)

Katz disputes any inference that Katz maintains telephone numbers solely to file TCPA lawsuits as that contradicts his direct testimony. (*See* Pl.s' SOF 18.) The 207 number Katz and his wife "originally had tried to set up [the last number [207]] as a landline in the house," but was frustrated when he was "unable to get a dial tone" for it, because he "wanted a landline in my house . . . [f]or emergency calls." (Katz Depo. Tr. 45:1-13.; Hinkley Depo. Tr.49:7-15.) Katz testified that he "wanted a Maine phone number." (Katz Depo. Tr. 62:10-12.)

Katz disputes that the 207 telephone number doesn't ring in his residence. The phone rings on his cellphone. (Katz Depo. Tr. 32:7-8.) |
| **14** | Mr. Katz also cannot identify who has called the 207 telephone number when it forwards to his cellular telephone. Katz Dep. 36:9-16. | Objection. This fact is irrelevant and immaterial to the TCPA claims alleging calls from Liberty Power in 2016.

Katz is not bringing claims for calls by Liberty Power to the 207 phone number. (ECF No. 109 ¶ 57; Katz Depo. Tr. 65:6-13.) |

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Katz**

| | | |
|---|---|---|
| <u>15</u> | For both the 305 number and the 207 telephone number, Mr. Katz "retain[s] records of the [all] calls beyond the regular retention policy by copying and pasting exported CSV files into an Excel spreadsheet" in a document called a "call archive." Katz Dep. 38:17-39:13. | Objection. This fact is irrelevant and immaterial to the TCPA claims alleging calls from Liberty Power in 2016.<br><br>Katz is not bringing claims for calls by Liberty Power to the 305 or 207 telephone number. (ECF No. 109 ¶ 57; Katz Depo. Tr. 65:3-13.)<br><br>Katz disputes that keeping records of calls that were made to him have any effect on his standing. *See Krakauer v. Dish Network, LLC*, 925 F.3d 643, 657 (4th Cir. 2019); *see also Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783 (N.D.W. Va. 2017). |
| <u>16</u> | Mr. Katz keeps a "call archive" based in part on his experience from "past litigation" so that he has increased access to call records. Katz Dep. 39:14-24. | Objection. This fact is irrelevant and immaterial to the TCPA claims alleging calls from Liberty Power in 2016.<br><br>Katz is not bringing claims for calls by Defendants to these other telephone numbers. (ECF NO. 109 ¶ 57).<br><br>Mr. Katz began to keep records when he "realized that if I was going—if I had a dispute with a company like that that they weren't going to take my concerns seriously unless I had actual records of what happened." (Katz Sunrun Depo. Tr. 93:4-17.)<br><br>Katz disputes that keeping or maintaining records of calls that were made to him have any effect on his standing. *See Krakauer v. Dish Network, LLC*, 925 F.3d 643, 657 (4th Cir. 2019); *see also Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783 (N.D.W. Va. 2017). |

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Katz**

| | | |
|---|---|---|
| <u>17</u> | Mr. Katz updates this call archive manually once a month by exporting data from his VoIP provider NumberBarn. Katz Dep. 46:14-24; 35:8-14; 35:20-21. | Objection. This fact is irrelevant and immaterial to the TCPA claims alleging calls from Liberty Power in 2016. The Katz family no longer maintained the 508-966-█ landline number after summer 2017 when he and his family moved to Maine. (Hinkley Depo. Tr. 48:23- 49:2.) Katz is not bringing claims for calls by Liberty Power to these telephone numbers. (ECF No. 109 ¶ 57.)<br><br>Katz disputes that keeping or maintaining records of calls that were made to him have any effect on his standing. *See Krakauer v. Dish Network, LLC*, 925 F.3d 643, 657 (4th Cir. 2019); *see also Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783 (N.D.W. Va. 2017). |
| <u>18</u> | If Mr. Katz disabled the call forwarding to his cell phone on his 207 and 305 numbers, incoming telephone calls go to voicemail. Katz Dep. 44:12-16; 59:10-23; 60:9-17. | Objection. This fact is irrelevant and immaterial to the TCPA claims alleging calls from Liberty Power in 2016. The Katz family no longer maintained the 508-966-█ landline number after summer 2017 when he and his family moved to Maine. (Hinkley Depo. Tr. 48:23- 49:2.) Katz is not bringing claims for calls by Liberty Power to these telephone numbers. (ECF No. 109 ¶ 57; Katz Depo. Tr. 65: 3-13.) |
| <u>19</u> | Mr. Katz set up the call forwarding on his 305 number less than a week after obtaining the telephone number. Katz Dep. 44:17-21. | Objection. This fact is irrelevant to the TCPA and immaterial to the TCPA claims alleging calls from Liberty Power in 2016. (ECF No. 109 ¶ 57.) |

## Plaintiffs' L.R. 56.1 Statement of Disputed Facts

**Defendants' Statement of Facts for Katz**

| | | |
|---|---|---|
| <u>20</u> | Mr. Katz has (and pays for) the 305 number because he is "no longer comfortable giving out my direct phone number to some -- particularly some TCPA defendants or TC -- potential TCPA violators." Katz Dep. 61:1-7. | Objection. This fact is irrelevant and therefore immaterial to the TCPA claims alleging calls from Liberty Power in 2016.<br><br>Katz testified that "when he had previously made a DNC request companies started calling [him] on that number. (Katz Depo. Tr. 175:1-5.) |
| <u>21</u> | The 508-966-███ which allegedly received telephone calls on behalf of the Defendants did not audibly ring when dialed. Katz Dep. 74:9-24 | Objection. This fact is disputed. This fact is also irrelevant to the TCPA claims and therefore immaterial.<br><br>Katz was asked "so the ███ number did not ring in September 2016, correct? Katz testified that "[i]t did ring." (Katz Depo. Tr. 74: 7-14; Hinkley Depo. Tr. 47:7-8.) At the time of the calls alleged, Katz testified that it rang on his cellphone. (Katz Depo. Tr. 74 7:14.) |
| <u>22</u> | Mr. Katz's fourth telephone number, 508-966-███ also did not audibly ring when dialed. Katz Dep. 78:8-10. | Objection. This fact is irrelevant to the TCPA and to the claims here. The calls alleged in the complaint were made to Katz's landline phone ending in ███ (Katz Depo. Tr. 71:22-72:4.) |
| <u>23</u> | "In September of 2016 if someone called ███ ███ or ███ the number that was displayed on [Mr. Katz's] cell phone was the ███ number." Katz Dep. 82:24-83:3. | Objection. This fact is irrelevant to any TCPA claims and therefore immaterial. (*See* Def.'s SOF 1.) |

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Katz**

| | | |
|---|---|---|
| **24** | In September 2016, Mr. Katz had four residential telephone numbers. Katz Dep. 85:4-6 | This fact supports Plaintiff Katz claims. It is illegal to call a residential line for telemarketing purposes without consent and to call a number more than once that is registered on the National Do Not Call List.<br><br>Defendants concede that Katz's landline ███ number is a residential line. (Def.s' SOF 24.)<br><br>Mr. Katz's ███ number was registered on the do not call list since August 16, 2003. (KATZ 007611.) |
| **25** | As of May 16, 2019, Mr. Katz had five residential telephone numbers; three of those telephone numbers he did not have in September 2016. Katz Dep. 85:9-13; 70:24-71:3; 30:20-31:2. | Objection. This fact is irrelevant to any TCPA claims and therefore immaterial.<br><br>Katz disputes any inference that Katz maintains telephone numbers solely to file TCPA lawsuits as that contradicts his direct testimony. (*See* Pl.s' SOF 18.)<br><br>Katz testified why he has these numbers. (Pl.s' SOF 44, 45.)<br><br>The 857 line is Katz's wife's recent previous cellphone number which she changed for a Maine number but kept so people can still contact her on that number. (*See* Pl.s' SOF 28 (Katz Depo. Tr. 47:19-48:5; Hinkley Depo Tr. 45:14-20.) |

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Katz**

| 26 | In 2015 Mr. Katz decided he wanted to fight back against telemarketers and began creating documents to do so. Katz Dep. 90:1-7. | Objection. This fact is irrelevant to any TCPA claims and therefore immaterial. <br><br> Katz testified Mr. Katz began to keep records when he "realized that if I was going—if I had a dispute with a company like that that they weren't going to take my concerns seriously unless I had actual records of what happened." (Katz Sunrun Depo. Tr. 93:4-17.) <br><br> Katz disputes that keeping or maintaining records of calls that were made to him have any effect on his standing. *See Krakauer v. Dish Network, LLC*, 925 F.3d 643, 657 (4th Cir. 2019); *see also Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783 (N.D.W. Va 2017). |
|---|---|---|
| 27 | As of June 26, 2017, Mr. Katz had a call log with approximately 2000-2400 rows of separate calls that be began keeping in November 2015. Exhibit 3, Confidential June 26, 2017 deposition transcript of Samuel Katz in the case *Lynn Slovin, et al., v. Sunrun Inc., et al.*, 4:15-cv-05340-YGR (N.D. Cal.) (impounded) 92:3-18. | Objection. This fact is irrelevant to any TCPA claims and therefore immaterial. <br><br> Katz testified Mr. Katz began to keep records when he "realized that if I was going—if I had a dispute with a company like that that they weren't going to take my concerns seriously unless I had actual records of what happened." (Katz Sunrun Depo. Tr. 93:4-17.) *See also Slovin, et al., v. Sunrun Inc., et al.*, 4:15-cv-05340-YGR (N.D. Cal.) (ECF No. 205-8, ¶12.) <br><br> Katz disputes that keeping or maintaining records of calls that were made to him have any effect on his standing. *See Krakauer v. Dish Network, LLC*, 925 F.3d 643, 657 (4th Cir. 2019); *see also Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783 (N.D.W. Va 2017). |

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Katz**

| | | |
|---|---|---|
| **28** | Mr. Katz uses fake names when speaking with telemarketers for the purpose of "trying to track the flow of my information through the various lead generation databases, and so on and so forth." Katz Dep. 137:12-24. | Objection. This fact is irrelevant to any TCPA claims and therefore immaterial.<br><br>Katz disputes this fact to the extent that Defendants imply this is a practice or that a called party is under obligation to supply their personal information to illegal, unknown, telemarketers upon request.<br><br>Katz testified that "[t]here are times when on illegal telemarketing calls, I've either gone along with a name that was read to me, or I have provided a false name in an effort to determine who was calling me". (Katz Sunrun Depo. Tr. 19:3-11.) |
| **29** | Mr. Katz declined to turn off the ringer on his phone and instead forwarded his calls so he could track them via email and "hold the parties accountable who are responsible for those calls." Katz Dep. 139:20-140:13 | This fact is irrelevant to any TCPA claims and therefore immaterial.<br><br>Defendants take this statement out of context.<br><br>Mr. Katz testified that the reason the phone rang is that he set up call forwarding so his wife "wouldn't have to hear the annoying calls." And that he "wouldn't have to walk across the house" and pick up the phone. (Katz Depo. Tr. 139:13-19.)<br><br>Mr. Katz testified that he "was on the Do Not Call list for a reason". (Katz Depo. Tr. 138:19-23.)<br><br>Mr. Katz testified that he forwarded the calls to google voice prior to it ringing on his cellphone to keep a record and "hold the parties accountable who are responsible for those calls." (Katz Dep. Tr. 139:20-140:13.) |

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Katz**

| | | |
|---|---|---|
| **30** | Mr. Katz has sent at least 25 TCPA demand letters. Katz Dep. 156:4-10. | Objection. This is irrelevant and therefore immaterial. |
| | | Katz disputes any inference that Katz maintains telephone numbers solely to file TCPA lawsuits, or that he did not suffer nuisance or invasion of privacy. Katz further disputes any inference that he runs a "TCPA business". |
| | | Katz testified Defendants' calls were "intrusive and harassing," and that he is "on the National Do Not Call List for a reason," and that he never "maintained any phone line for the purpose of receiving calls that [he] claim[s] that are in violation of the TCPA." (Katz Depo. Tr. 138:16-24; Katz Sunrun Depo. Tr. 130:3-6.) |
| | | Mr. Katz is gainfully employed with a full-time position at a data company (and held this position at the time of the calls.) (Hinkley Depo. Tr. 77:13-21; 81:4-5; Katz Liberty Depo 18:19-19:16.) |
| | | Mr. Katz has a family with three young children at home. (Hinkley Depo, 81:4-5; 82:7-18). Mr. Katz's family's standard of living has not changed in any way since Mr. Katz began enforcing his consumer rights under the TCPA. (Hinkley Depo. Tr. 59:21-60:23.) |
| | | Mr. Katz has sent letters to telemarketers to request information about how a company obtained his information and sometimes requests monetary compensation so that a company pays attention and doesn't ignore him. (Katz Sunrun Depo. Tr. 61:14-62:6; 63:8-64:1.) |

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Katz**

| | | |
|---|---|---|
| **30** | Mr. Katz has sent at least 25 TCPA demand letters. Katz Dep. 156:4-10. | **CONTINUED**<br><br>Shortly after he declined to settle on this putative class action on an individual basis, Defendants retaliated by suing him in a Florida state court. (See ECF No. 60-4.)<br><br>Defendants then subpoenaed Katz's spouse to take her deposition. (*See Hinkley v. Liberty Power Corp., LLC*, No. 18-00203, 2018 WL 6625140 (D. Me. Dec. 13, 2018).) |
| **31.** | Mr. Katz has been a Plaintiff in at least nine TCPA lawsuits. Katz Dep. 156:11-21 | Objection. This fact is irrelevant and therefore immaterial.<br><br>Mr. Katz disputes that this fact has any effect on his standing *See, e.g., Cunningham v. Montes,* No. 16-761, 2019 WL 1978624, *3-4 (W.D. Wis. May 3, 2019) (rejecting "proposition that a plaintiff lacks standing to sue if he fails to take affirmative steps to avoid injury," where plaintiff was "experienced TCPA plaintiff who has filed more than 150 lawsuits and has knowingly declined to place his phone numbers on the federal do-not-call registry": his "participation in other TCPA suits, even a large number of them, does not mean that he has suffered no real injury"); *Morris*, 2016 WL 7115973, at *6 (plaintiff who previously filed "a significant number [at least 36] of TCPA cases," thought about franchising his TCPA lawsuits, and listed himself as a Pro Se Litigant of TCPA lawsuits on his LinkedIn profile did "not yet rise to the level of 'professional plaintiff' described in those suits such that he is outside the zone of interest"). *See also Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006). |

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Katz**

| | | |
|---|---|---|
| <u>**32**</u> | When Mr. Katz asks companies not to contact him, he does not provide all his telephone numbers. Katz Dep. 169:24-170:12; 171:1-17. | Objection. This is irrelevant to Katz's TCPA claims and therefore immaterial and the statement is unsupported by the record.<br><br>Katz disputes any inference that Katz maintains telephone numbers solely to file TCPA lawsuits, or that he did not suffer nuisance or invasion of privacy.<br><br>Katz testified Defendants' calls were "intrusive and harassing," and that he is "on the National Do Not Call List for a reason," and that he never "maintained any phone line for the purpose of receiving calls that [he] claim[s] that are in violation of the TCPA." (Katz Depo. Tr. 138:16-24; Sunrun Depo. 130:3-6.)<br><br>Katz disputes any inference that Mr. Katz "casts bait" to companies by not giving them all his numbers. (Def.s' Mot. 12.) This inference is also unreasonable as all of Mr. Katz's numbers are already on the National Do Not Call Registry. (Katz Sunrun Depo Tr. 199:15-17; 199:20-22; 200:1-3; Katz Depo Tr. 31:1-2; 33:2-7; 48:16-17; KATZ 007611.) Katz testified his numbers are "on the National Do Not Call List for a reason" and that he "tried to avoid these calls to begin with." (Katz Depo. Tr. 138:22-23.)<br><br>Further, Mr. Katz testified that on one occasion (to which Defendants refer) that a company in which he provided only one of his numbers was because he stopped doing business with the company and didn't want to be bothered with re-enrollment calls. "[I]t's reasonable to conclude that if they were going to call me, they would be calling me with the phone number that was already linked to my account". (Katz Depo. Tr. 169:11- 170:3-12.) |

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Katz**

| <u>32</u> | When Mr. Katz asks companies not to contact him, he does not provide all his telephone numbers. Katz Dep. 169:24-170:12; 171:1-17. | **CONTINUED**<br><br>Katz also testified that "when he had previously made a DNC request, companies started calling [him] on that number." (Katz Depo. Tr. 175:1-5.) |
| --- | --- | --- |
| <u>33</u> | Mr. Katz is seeking a "kicker" or service award of $40,000 for being a named Plaintiff in a recent TCPA lawsuit. Katz Dep. 158:9-15; Lynn Slovin, et al., v. Sunrun Inc., et al., 4:15-cv-05340-YGR (N.D. Cal. April 5, 2019), Plaintiffs' Notice of Motion and Motion for Attorneys' Fees and Costs and Class Representative Service Awards, ECF No. 205-1 at 8, 29. | Objection. This statement is disputed. The statement is also irrelevant and therefore immaterial.<br><br>Mr. Katz turned down a $100,000 offer in the *Sunrun* case. *Slovin, et al., v. Sunrun Inc.,* et al., 4:15-cv-05340-YGR (N.D. Cal.) (ECF No. 205-8 ¶ 14.)<br><br>Mr. Katz is not seeking $40,000 as a service award. Rather, Mr. Katz is seeking a service award that the court "deems fair". *Slovin, et al., v. Sunrun Inc.,* et al., 4:15-cv-05340-YGR (N.D. Cal.) (ECF No. 205-8, ¶ 18.)<br><br>Defendants' use of the word "kicker" is vague and ambiguous and improper, to the extent it suggests any meaning other than a class representative incentive award that will  or will not be approved by the *Slovin* court. |

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Katz**

| **34** | On October 3, 2016, at approximately 1:17 pm, Mr. Katz gave consent to be called from the telephone number 508-202-█ Katz Dep. 193:13-194:20. | Plaintiff Katz disputes  Def.s' SOF 34 for Katz. Plaintiff Katz also disputes the term "gave consent" as this is a legal conclusion and not a fact.<br><br>The █ landline number was placed on the National Do-Not-Call List on August 16, 2003. (KATZ 007611.)<br><br>In September 2016, Mr. Katz began receiving calls to his █ residential landline number from 508-202-█ (Katz Depo Tr.134:16-23; KATZ 000001-11.)<br><br>Katz answered a call from 508-202-█ on October 3, 2016. (Katz Depo. Tr. 109:13-16; 113:3-7 *See also* Katz Depo. Tr. 114:8-115:18; 117:11-23; KATZ 379616.)<br><br>508-202-█ is a spoofed number that Mezzi (one of Liberty Power's telemarketers) used to call Katz. (Castillo Depo. Tr. at 122:1-128:8.)<br><br>Defendants used the spoofing to deny that their vendors made the calls to Plaintiffs. (Castillo Depo. Tr. at 122:1- 128:8; KATZ 000147.) This call began with a prerecorded message. (KATZ 379616.)<br><br>The caller initially misrepresented himself as an Eversource representative, so Katz did not know the identity of the caller. (Katz Depo. Tr. 119:12-20; 116:13-14; 140:14-141:9; 172:8-173:17; KATZ 379616.) |

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Katz**

| | | |
|---|---|---|
| **34** | On October 3, 2016, at approximately 1:17 pm, Mr. Katz gave consent to be called from the telephone number 508-202-███. Katz Dep. 193:13-194:20. | **CONTINUED**<br><br>During the call, Mr. Katz stated "You have a very bad connection, I can barely hear you." The caller continued to speak and Mr. Katz said to the "Eversource" caller "can you just give me a call back, I can barely hear you." (KATZ 379616 at 0:49-0:55; 1:16-1:20.)<br><br>The caller immediately called back from an "anonymous" number and the caller finally identified itself as Liberty Power. Katz then asked the caller to stop calling Katz, but was told he "had to sign up for Liberty Power service" if he "wanted to stop receiving calls." (Katz Depo. Tr. 113:3-23; 114:14-16; KATZ 000185 at 24:21-25:14; KATZ 000011.)<br><br>Within an hour of this October 3 call, Katz emailed Defendants to ask them to stop calling his landline ███ number. (Katz Depo. Tr. 141:23-142:4; 170:13-171:10; KATZ 000013-14.)<br><br>Mr. Katz testified that he specifically recalls his frustration with the calls on October 3, 2016. "My memories are particularly around the frustration of the 10/3 call." (Katz Depo. Tr. 119:3-20.)<br><br>Defendants' vendors made at least two more calls to Katz's landline number, on October 14, 2016. (Katz Depo. Tr. 109:13-16; 133:4-135:12.) |

**Plaintiffs' L.R. 56.1 Statement of Disputed Facts**

**Defendants' Statement of Facts for Katz**

| | | |
|---|---|---|
| <u>35</u> | On October 3, 2016, the same day Mr. Katz contacted Liberty Power regarding the telephone calls alleged in the Complaint, he sent three emails and received one email from his attorney John Fink, who, at that time, had represented him in at least six TCPA lawsuits. Katz Dep. 196:18-197:6. Exhibit 4, Samuel Katz's Objections and Responses to Defendants' Interrogatory No. 14 at 53-54; Plaintiffs' First Amended Privilege Log, ECF No. 139-2 at 2. | Objection. This fact is irrelevant and immaterial to the TCPA claims. |
| <u>36</u> | Mr. Katz has "continual ongoing conversations with counsel" because he "speak[s] with them about illegal telemarketing activities." Katz Dep. 28:8-13. | Objection. This fact is irrelevant and immaterial to the TCPA claims.<br><br>Katz testified that he "continuously communicated with my attorneys throughout the [*Slovin v. Sunrun* class action] case, asking for updates and following each happening in the case closely." *Slovin v. Sunrun Inc.*, No. 15-05340, Declaration of Samuel Katz (N.D. Cal. Apr. 5, 2019), ECF No. 205-8 ¶12.) |

Dated: July 12, 2019   By: _____ s/Ethan Preston _____
David C. Parisi
dcparisi@parisihavens.com
Suzanne Havens Beckman

shavens@parisihavens.com
**PARISI & HAVENS LLP**
212 Marine Street, Unit 100
Santa Monica, California 90405
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Matthew R. Mendelsohn
mrm@mazieslater.com
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: (973) 228-0391
Facsimile: (973) 228-0303

Yitzchak H. Lieberman
ylieberman@parasmoliebermanlaw.com
Grace E. Parasmo
gparasmo@parasmoliebermanlaw.com
**PARASMO LIEBERMAN LAW**
7400 Hollywood Boulevard, Suite 505
Los Angeles, California 90046
Telephone: (917) 657-6857
Facsimile: (877) 501-3346

Ethan Preston
ep@eplaw.us
**PRESTON LAW OFFICES**
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

*Attorneys for Plaintiff Plaintiffs Samuel Katz,
Alexander Braurman, and Lynne Rhodes, on their
own behalf, and behalf of all others similarly
situated*

## <u>CERTIFICATE OF SERVICE</u>

I, Ethan Preston, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: July 12, 2019   By:              s/Ethan Preston
                                   Ethan Preston