# Exhibit 3: Portions of May 8, 2019 Deposition Transcript of Michelle Castillo

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2                DISTRICT OF MASSACHUSETTS
 3
    SAMUEL KATZ, ALEXANDER BRAURMAN,        No. 1:18-CV-10506
 4  LYNNE RHODES, individually, and
    on their own behalf and on behalf
 5  of all others similarly situated
 6           Plaintiffs,
    -vs-
 7
    LIBERTY POWER CORP., LLC,
 8  LIBERTY POWER HOLDINGS, LLC,
    Delaware limited liability companies,
 9
             Defendants.
10  _____/
    LIBERTY POWER CORP., LLC, and
11  LIBERTY POWER HOLDINGS, LLC,
12           Third-Party Plaintiffs,
    -vs-
13
    MEZZI MARKETING, LLC,
14
             Third-party Defendant.
15  _____/
16          **CONTAINS CONFIDENTIAL PORTIONS**
17               **PAGES 82, 104, & 136**
18                **BOUND SEPARATELY**
19          DEPOSITION OF MICHELLE CASTILLO
20             Wednesday, May 8, 2019
21              10:36 a.m. - 5:07 p.m.
22            110 East Broward Boulevard
                      Suite 1700
23           Fort Lauderdale, Florida 33301
24  Stenographically Reported By
    Pamela J. Pelino, RPR, FPR, CLR
25  Notary Public, State of Florida         JOB # 160216
```

Page 65

1              M. CASTILLO
2  able to pull and capture the 30 days --
3       A.   I believe that was part of whenever his
4  computer was stored.
5       Q.   Okay.  Do you know why J.T. set his Skype to
6  delete after 24 hours?
7       A.   I didn't even know it was an option.
8       Q.   Do you know if anybody else working for
9  Liberty Power has set their chat logs to delete?
10      A.   No.
11           MR. BRUNDAGE:  You have to let him finish the
12      question.
13           THE WITNESS:  Sorry.
14 BY MR. PRESTON:
15      Q.   The question was done.
16      A.   No.
17           MR. PRESTON:  That's it.  We can reconvene.
18           THE WITNESS:  Okay.
19           (A luncheon recess was taken from 12:02 p.m.
20 until 12:57 p.m.)
21 BY MR. PRESTON:
22      Q.   So we're resuming.  I want to go back to
23 Exhibit 1, paragraph -- but 1 is just the calls made,
24 but then paragraph 2 talks about lead data containing
25 plaintiffs' personal information.  Do you understand

Contains Confidential Portions
**Page 82, 104, & 136**

Page 66

1      M. CASTILLO
2  what that means?
3      A.    I believe so.
4      Q.    Okay.  What does that mean?
5      A.    Their phone numbers.
6      Q.    Yes.  But what documents contain that data?
7      A.    The leads lists.
8      Q.    The lead list.  Okay.  So are lead lists
9  provided to the vendors?
10     A.    I believe they come from both.  The vendors
11 will provide us a list, and we scrub it.
12     Q.    Okay.
13     A.    Actually I'm not sure if we provide a leads
14 list.  I don't know that, off the top of my head.
15     Q.    There's a document I want to show you.
16         MR. BRUNDAGE:  Thank you.  Are we marking
17     this?
18         MR. PRESTON:  Yeah.  I have Exhibit 8 as the
19     last exhibit.  Okay.  We're marking this Exhibit 9.
20         (Plaintiff's Exhibit 9 was marked for
21 identification.)
22 BY MR. PRESTON:
23     Q.    All right.  So this is an email chain that
24 was produced to us.  Do you recognize this document?
25     A.    I may have seen this, but I don't remember it

Page 67

1                     M. CASTILLO
2  all.
3        Q.    Okay.
4        A.    Yeah.  I mean...
5        Q.    Let's talk about 1242.  There's a screen shot
6  of DNC number research for an 809 [sic] number.  Do you
7  see that?  I'm sorry.  A 908 number.  Do you see that?
8        A.    Yes.
9        Q.    Do you know where that screen shot is from?
10       A.    It looks like we scrubbed it.  Is that a
11 New Jersey number?
12       Q.    Let me clarify.  The screen shot itself,
13 that's not the text of the email?
14       A.    Right.
15       Q.    Somebody took a screen shot of a --
16       A.    I'm not --
17             (Reporter requests discontinuation of
18 simultaneous conversation.)
19 BY MR. PRESTON:
20       Q.    Somebody took a screen shot of some system,
21 and I'm asking:  Do you know the system from which that
22 screen shot was obtained?
23       A.    I'm not certain the name of the system.  I
24 believe it's called Possible Now.
25       Q.    Okay.  Does Possible Now store lead data?

Contains Confidential Portions
**Page 82, 104, & 136**

Page 70

1                    M. CASTILLO
2    1244, that looks like enrollment.libertypowercorp.com.
3    Is that kind of where deal capture lives?
4         A.    Yes.
5         Q.    Let's go back to 1243.  There's a column that
6    says "Customer Date."
7         A.    Okay.
8         Q.    Do you know what that column means?
9         A.    I believe that's the date they -- I believe
10   that is the day that they asked to be placed on -- I
11   can't answer for sure.  I'm not sure.  I'm not certain.
12        Q.    All right.  So on 1242 it says this 908
13   number was scrubbed on August 3rd, 2016, and
14   September -- excuse me -- was scrubbed on August 30th,
15   2016, and September 30th, 2016.  So that meant that it
16   was in a -- that 908 number was in a lead list that was
17   passed on to vendors to call; correct?
18        A.    I don't know if that leads list was actually
19   passed on, but it would have been on a leads list to be
20   checked, if that makes sense.
21        Q.    Well, it was checked because it was scrubbed;
22   correct?
23        A.    Right.
24        Q.    So it would have been sent out -- I mean, it
25   was prepared for transmission --

Page 78

1                     M. CASTILLO
2  CSV file name, that starts -- it doesn't start.  It says
3  Honduras Winbacks.  Okay?  And then there's a column
4  that is a 508-540 number; correct?
5       A.    Yes.
6       Q.    And then there's a call center outbound?
7       A.    Yes.
8       Q.    And then there's a date?
9       A.    Yes.
10      Q.    And you don't know what that is?
11      A.    I don't know what that signifies, no.
12      Q.    Okay.  And then there is a MA1; correct?
13      A.    Yes.
14      Q.    And you don't know what that is?
15      A.    Right.
16      Q.    Does it appear based on those, the data in
17  the CSV file, that these telephone numbers were called
18  by defendants or Mezzi?
19            MR. BRUNDAGE:  Objection.
20            You can answer.
21            THE WITNESS:  It appears that way, yes.
22  BY MR. PRESTON:
23      Q.    Okay.  But you don't know where this came
24  from?  And by "this" I mean Exhibit 10.
25      A.    I do not.

Page 79

1                     M. CASTILLO

2     Q.   And you don't know what Mr. Milenkov was
3  searching?
4     A.   I do not.
5          MR. BRUNDAGE:  Is Matt still on the phone?
6          MR. PRESTON:  I think they both are.  They
7     may have stepped away but...
8          MR. BRUNDAGE:  Matt and Shaun?
9          MR. PRESTON:  Yeah.
10         MR. BRUNDAGE:  Okay.  Thanks.
11 BY MR. PRESTON:
12    Q.   Is there any reason why those numbers -- if
13 they're in those lists why they would not have been
14 called?
15         MR. BRUNDAGE:  Objection.
16         You can answer.
17         THE WITNESS:  Why they would not have been
18    called?
19 BY MR. PRESTON:
20    Q.   Right.
21    A.   No.
22    Q.   Okay. So we have them -- clients appearing
23 in lead lists.  We have lead lists that contain our
24 clients' numbers that were not produced to us; correct?
25    A.   It appears that way, yes.

Contains Confidential Portions
\*\*Page 82, 104, & 136\*\*

Page 103

1              M. CASTILLO
2         THE WITNESS: I don't know the reason why
3    that would happen.
4         (Plaintiff's Exhibit 13 was marked for
5    identification.)
6    BY MR. PRESTON:
7    Q.   This is labeled 13 and this is LP58. Is it
8    fair for me to characterize this as an email from Mezzi
9    to J.T., indicating that Mezzi called (508)966-
10
11
12   (CONFIDENTIAL PORTIONS CONTINUE ON NEXT PAGE)
13
14
15
16
17
18
19
20
21
22
23
24
25

Contains Confidential Portions
**Page 82, 104, & 136**

Page 104

1  M. CASTILLO
2  (CONFIDENTIAL PORTION)
3  ▮.
4
5
6
7
8
9
10 (NON-CONFIDENTIAL PORTIONS CONTINUE ON NEXT PAGE)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 105

1           M. CASTILLO
2  BY MR. PRESTON:
3      Q.   And, again those four digits, last four
4  digits, are confidential.
5           -- on October 3rd, 2016.
6      A.   Yes.
7      Q.   So by October 17th, 2016, defendants knew
8  that Mr. Katz had complained; correct?
9           MR. BRUNDAGE:  Objection.
10          You can answer.
11          THE WITNESS:  Yes.
12 BY MR. PRESTON:
13     Q.   And with this email, defendants knew that
14 Mezzi had called Mr. Katz; correct?
15     A.   Yes.
16     Q.   Why did defendants not seek Mezzi's call
17 records at this time?
18     A.   I don't know that that wasn't done.
19     Q.   Okay.  So there could be call records that
20 defendants could have received from Mezzi in October of
21 2016?
22     A.   I don't know.
23     Q.   Okay.  Do you have any basis to believe that
24 they did preserve call records from Mezzi at that point?
25     A.   That Mezzi preserved call records?

Page 122

1              M. CASTILLO
2         (Discussion held off the record.)
3         (A brief recess was taken from 2:57 until
4    3:05 p.m.)
5              MR. PRESTON:  I am marking Plaintiff's 19.
6         (Plaintiff's Exhibit 19 was marked for
7    identification.)
8    BY MR. PRESTON:
9         Q.   So, again, this is what we get when we reduce
10   native to different formats.  You get itty-bitty
11   numbers.
12        A.   Right.
13        Q.   Is it fair to say these are the outgoing
14   telephone numbers used by certain vendors?
15        A.   Yes.
16        Q.   Okay.  And if you look at the second page,
17   ID, the third and fourth column down, do you see
18   outgoing numbers used by Mezzi?
19        A.   So I see the MEZ.
20        Q.   Yes.
21        A.   And I see the format of numbers.
22        Q.   Yes.
23        A.   But I can't make those numbers out.
24             MR. PRESTON:  Jeff, can you make out those
25        numbers?

Page 123

1    M. CASTILLO
2        MR. BRUNDAGE: I can.
3        MR. PRESTON: Okay. I hope Jeff will correct
4    me if I misstate those numbers, but I'm going to
5    read them off.
6        THE WITNESS: Sure.
7  BY MR. PRESTON:
8    Q.   The third row says MEZ (508)523-6101. So
9  that's one of the numbers identified as Mezzi's outgoing
10 numbers; correct?
11   A.   I believe so. If I could just refer back.
12   Q.   Please do. I think you're looking
13 for -- it's going to be an email.
14   A.   Can you repeat the number?
15   Q.   It is (508)523-6101. So it's not in the
16 interrogatory response?
17   A.   No.
18   Q.   But is that Mezzi's number?
19   A.   A number they dialed from?
20   Q.   Right.
21   A.   Yes.
22   Q.   Or they used in their caller ID?
23   A.   Yes.
24   Q.   Do you know if you call these numbers if you
25 can reach Mezzi?

Contains Confidential Portions
\*\*Page 82, 104, & 136\*\*

Page 124

1    M. CASTILLO
2         MR. BRUNDAGE: Objection.
3         You can answer.
4         THE WITNESS: I don't know if these
5    numbers...
6  BY MR. PRESTON:
7     Q.   Go anywhere?
8     A.   Yeah. I don't know.
9     Q.   Do you know why defendants permit their
10 vendors to use numbers that do not connect to anything?
11        MR. BRUNDAGE: Objection.
12        You can answer.
13        THE WITNESS: I don't know that they know
14    that at the time until after the fact of a
15    complaint or something to that effect.
16 BY MR. PRESTON:
17    Q.   So what's the date on this email?
18    A.   Monday, February 27th, 2017.
19    Q.   Okay. And I've looked at the metadata for
20 the attached spreadsheet, and it shows that this
21 document was created on June -- in June 2016. So they
22 had a version of this spreadsheet in June of 2016 prior
23 to the calls to my clients.
24    A.   Okay.
25    Q.   So my question again is: Why would

Contains Confidential Portions
\*\*Page 82, 104, & 136\*\*

Page 125

1  M. CASTILLO
2  defendants permit their telemarketers to use spoofed
3  numbers?
4      MR. BRUNDAGE: Objection.
5      You can answer.
6      THE WITNESS: Are these confirmed spoofed
7  numbers?
8  BY MR. PRESTON:
9      Q. So let's do this. We're going to mark
10 Exhibit 20, and Exhibit 20 is LP2367.
11     (Plaintiff's Exhibit 20 was marked for
12 identification.)
13 BY MR. PRESTON:
14     Q. So this is an email from Complaints. Do you
15 know who is responsible for sending emails from
16 Complaints?
17     A. In 2016?
18     Q. Uh-huh.
19     A. In 2016 it could have been Jackie, or it
20 could have been Sharee Brown.
21     Q. So QA?
22     A. Yes, QA.
23     (Reporter clarifies.)
24     THE WITNESS: Sharee, S-H -- I believe it's
25 E-R-E-E Brown.

Contains Confidential Portions
\*\*Page 82, 104, & 136\*\*

Page 126

1          M. CASTILLO

2   BY MR. PRESTON:

3       Q.    Could it be S-H-A-R-E-E?

4       A.    It could be.

5       Q.    So the third paragraph up from "Thank you,"

6   can you read that paragraph out loud?

7       A.    "Please note that we had

8   received -- previously received similar allegations from

9   consumers and upon conducting a google search with the

10  phone number reflected upon the caller ID, the result

11  confirmed 'spoof' calls were made to other consumers."

12      Q.    Okay.  So do you know why QA is telling

13  Mr. Katz that it's not responsible for these calls when

14  it has a list of outgoing numbers used by Mezzi that

15  includes the (508)202-1270 number that Mr. Katz is

16  complaining about?

17      A.    I do not.  I don't know.

18      Q.    Do the vendors' practice of using spoofed

19  numbers allow Liberty Power to avoid accountability for

20  their calls?

21          MR. BRUNDAGE:  Objection.

22          You can answer.

23          THE WITNESS:  I would say no.

24  BY MR. PRESTON:

25      Q.    Well, is it fair to characterize this QA

Page 127

1             M. CASTILLO

2  email as denying responsibility based on Mezzi's use of

3  a spoofed number?

4       A.    I'm just reading this whole...

5       Q.    Please do.

6       A.    Can you repeat your question, please?

7       Q.    Is it fair to characterize this email from QA

8  as denying responsibility based on Mezzi's use of a

9  spoofed telephone number?

10      A.    I don't know that they're denying

11 responsibility.  They seem to be requesting additional

12 information.

13      Q.    Look at the third paragraph.  Can you read

14 that paragraph aloud?

15      A.    "Upon receipt of your email, your contact

16 information was added to our internal" --

17      Q.    Sorry.  I'm going to cut you off because

18 that's not what I meant by the third email.  I

19 apologize.

20      A.    Oh, the third email.

21      Q.    Can you read the -- I'm sorry, the third

22 paragraph.  Can you read the paragraph starting "An

23 investigation"?

24      A.    "An investigation was conducted and our

25 findings have confirmed that no calls were made to you

Contains Confidential Portions
\*\*Page 82, 104, & 136\*\*

Page 128

1  M. CASTILLO
2  at any of the phone numbers you provided below."
3  Q.  Is it fair to say that that sentence denies
4  responsibility for the calls to Mr. Katz based on
5  Mezzi's use of the spoofed number?
6  MR. BRUNDAGE:  Objection.
7  You can answer.
8  THE WITNESS:  Yes.
9  MR. PRESTON:  What is the basis for your
10  objection?
11  MR. BRUNDAGE:  This is way outside of
12  30(b)(6).
13  MR. PRESTON:  I disagree.
14  MR. BRUNDAGE:  You're asking for a legal
15  conclusion.
16  MR. PRESTON:  I'm asking about the calls that
17  were made to my client.
18  MR. BRUNDAGE:  You're not asking about the
19  calls though.  You're applying legal principles and
20  asking her for legal conclusions about liability.
21  MR. PRESTON:  So I'm going to mark
22  Plaintiff's Exhibit 21, and this is LP2341.
23  (Plaintiff's Exhibit 21 was marked for
24  identification.)
25