# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAMUEL KATZ and LYNNE RHODES, individually, and on their own behalf and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br> v.<br><br>LIBERTY POWER CORP., LLC, LIBERTY POWER HOLDINGS, LLC, Delaware limited liability companies,<br><br>   Defendants. | No. 1:18-cv-10506<br><br>**PLAINTIFFS' MEMORANDUM SUPPORTING THEIR MOTION TO COMPEL INITIAL CLASS DISCOVERY AND FOR OTHER DISCOVERY RELIEF** |
| LIBERTY POWER CORP., LLC, and LIBERTY POWER HOLDINGS, LLC,<br><br>   Third-Party Plaintiffs,<br> v.<br><br>MEZZI MARKETING, LLC,<br><br>   Third-Party Defendant. | |

Plaintiffs Samuel Katz and Lynne Rhodes (collectively, "Plaintiffs") hereby submit their Motion for an order under Federal Rules 34 and 37 compelling Defendants Liberty Power Corp., LLC and Liberty Power Holdings, LLC ("Defendants") to serve amended responses and produce responsive documents for certain of Plaintiffs' Requests for Production of Documents ("RPDs").

## I.     Plaintiffs Seek Class Discovery and Other Related Discovery

Plaintiffs seek to compel Defendants to produce call records for calls that Defendants' telemarketers made on behalf of Defendants (RPD 1); lead lists Defendants' provided to their telemarketers (RPD 2); all documents concerning communications with Defendants' telemarketers about Defendants' lead lists (RPD 3), Plaintiffs' subpoenas (RPD 12), this case (RPD 13), and requests for call records (RPD 38); communications with Mezzi Marketing, LLC ("Mezzi") about TCPA compliance (RPD 14); and documents concerning incidents where Defendants lost access to "any document which would be or would have been responsive to these Requests" (RPD 11).[1] The Court denied Defendants' dispositive motions, and call records are now proper discovery. (*Cf.* ECF No. 125 at 8 n.4; ECF No. 195 *with Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 288 (N.D. Cal. 2015) ("call detail records are relevant to [class TCPA] claims").) The other RPDs serve to, e.g., verify the integrity of class discovery.[2]

Defendants objected to RPDs 1 to 3, 11 to 14, and 38 on various grounds. None of these objections carries force, particularly where Plaintiffs have taken steps to narrow the initial tranche of class discovery to Defendants' interactions with Mezzi. Defendants should endeavor to obtain documents from their telemarketers, and their production (under RPDs 11 to 14) should

---

[1] Plaintiffs rely on the RPDs' original wording; the summary above is for the Court's convenience. (*See* Pl.s' L.R. 34.1(b)(4) Appendix.) In particular, Plaintiffs' RPDs defined the term "concerning" consistent with the definition in L.R. 26.5(c)(7) ("term 'concerning' means referring to, describing, evidencing, or constituting"). (*Cf.* Ex. 1 to Preston Decl. at 1.)

[2] *Cf.* Fed. R. Civ. P. 26 advisory committee's notes for 2015 amendment (discovery encompasses "existence, description, nature, custody, condition, and location of any documents [relevant to any other] discoverable matter").

demonstrate those efforts. *Exp.-Imp. Bank of United States v. Asia Pulp & Paper Co., Ltd.*, 233 F.R.D. 338, 342 (S.D.N.Y. 2005). Defendants' RPD responses violate Rule 34: they obscure what documents Defendants withheld. Defendants' position here has often reflected the adage "admit what you cannot deny, deny what you cannot admit," even in filings where the existence of documents is at issue. (*See* ECF No. 113, *passim*; ECF No. 188 at 5-11.) Defendants should amend their answers to comply with Rule 34(b)(2), at a minimum for RPDs 1 to 3, 11 to 14, and 38, so the parties can have an informed discussion about planning the rest of discovery. Plaintiffs expect Defendants to produce certain documents, like Mezzi's disposition reports, as well as communications with telemarketers about preserving documents. However, Plaintiffs have cause for concern about Defendants' prior document productions, and Defendants' efforts to preserve documents—especially their compliance with the Court's September 2018 order. *Katz v. Liberty Power Corp., LLC*, No. 18-10506, 2018 WL 4398256, *1 (D. Mass. Sept. 14, 2018) ("*Katz I*").

To the extent Defendants have a compelling explanation that responsive documents are no longer available, they should produce documents corroborating that explanation (which are responsive, at least, to RPD 11). Without adequate corroboration, Defendants may be subject to an adverse inference in favor of class certification—although the scope of such inference will not necessarily be clear until Defendants' opposition or production subsequent to this motion.

## II.     Defendants' Objections Lack Merit

Plaintiffs served the RPDs in June 2018, and Defendants served their responses in July 2018. (Preston Decl. ¶2.) These objections lack merit. Plaintiffs have unsuccessfully met and conferred with Defendants on these issues since August 1, 2018. (*See id.* ¶3; ECF No. 110.) On October 8, 2019, Plaintiffs sent Defendants a meet and confer letter: Defendants did not substantively respond or agree to meet and confer; there was no meet and confer within the 21-

day deadline under L.R. 37.1 for the October letter. (Preston Decl. ¶4.) The parties met and conferred again on November 1 and 7, 2019. Notwithstanding the record, Defendants' counsel was not able to commit to providing Plaintiffs with any of the relief sought herein. (*Id*. ¶6.)

**Bifurcation:** Defendants have objected to RPDs 1 to 3, 13 to 14, and 38 on the basis of their "pending motion to bifurcate individual and class discovery." Bifurcation is the *only* basis for Defendants' objection to RPDs 13 and 14. Bifurcation is no longer a valid basis for withholding documents. *See Katz v. Liberty Power Corp., LLC*, No. 18-10506, 2019 WL 4645524 (D. Mass. Sept. 24, 2019) ("*Katz II*"). The Court should require Defendants to produce all documents where their only objection was based on bifurcation—including RPDs 13 and 14.[3]

Defendants may not interpose new objections now: "any objections not asserted in the initial response to a discovery request but raised in response to a motion to compel will be deemed waived." *Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, 297 F.R.D. 611, 614-15 (D. Kan. 2014) (citing *Cardenas v. Dorel Juvenile Group, Inc.*, 230 F.R.D. 611, 621 (D. Kan. 2005)). *See also West v. Bell Helicopter Textron, Inc.*, No. 10-214, 2011 WL 6371791, *7 (D.N.H. Dec. 20, 2011) (citing case law where "defendant had waived [objection] by omitting it from other objections raised in its initial response to the discovery requests"). *See Safeco Ins. Co. of America v. Rawstrom*, 183 F.R.D. 668, 671 (C.D. Cal. 1998) ("[o]bjections not interposed in a timely initial response may not be held in reserve and interposed [afterwards]").[4]

---

[3] Defendants objected to RPDs 1 to 9, 11, 13 to 23, 25 to 45, 52 to 55, 57 to 78, and 80 on the basis of bifurcation; bifurcation was Defendants' *only* objection as to RPDs 13 to 14, 17 to 23, 25, 54 to 55, 57 to 58, and 60.

[4] Allowing a party to present [discovery] objections . . . serially would be inefficient. [I]f a party were permitted to interpose [serial] objections . . . *the party who propounded the discovery requests could be strung along indefinitely*. The result would be unacceptable delay in the completion of discovery, the unnecessary expense of serial meetings between counsel, and the unnecessary burden of serial motions to compel.

**Control:** Defendants have objected to RPDs 1 to 3 on the basis that these RPDs seek documents outside their control. (This issue is pervasive, however, because Defendants' responses to RPDs 12 to 14 violate Rule 34 by limiting Defendants' production to "documents in their possession, custody, or control." *See infra*, at 7-8.) This objection is no longer sustainable. The Court has recognized "Liberty Power exercises significant control over the manner of its agents' telemarketing campaigns . . ." *Katz II*, 2019 WL 4645524, at *3. Defendants routinely obtain call records and records related to TCPA compliance from their telemarketers, and their deponent testified that none of Defendants' telemarketers had ever refused a request for call records. (Castillo Depo Tr. 99:10-18; Preston Decl. ¶7.) If Defendants "can secure documents . . . to meet [their] own business needs and documents helpful for use in litigation," then they cannot "deny control for purposes of discovery by an opposing party." *Addamax Corp. v. Open Software Found., Inc.*, 148 F.R.D. 462, 465 (D. Mass. 1993) (citation omitted).

**Burden:** Defendants have objected to RPDs 1 to 3 and 38 on the basis that such discovery is not "ripe," "proportional to the needs of the case at this time," and/or "the burden and expense of responding to the Request outweighs its likely benefit at this time." Again, bifurcation cannot justify Defendants' objections any longer.

Plaintiffs proposed staging class discovery to address any legitimate burden objection. Plaintiffs proposed Defendants limit their production on RPDs 1 to 3 to responsive documents that contain any of the telephone numbers in the list of roughly 165,000 telephone numbers which Plaintiffs provided to Defendants: Plaintiffs later proposed simply limiting initial

---

*Safeco*, 183 F.R.D. at 671 (italics added). *Safeco* has achieved widespread acceptance. *See Ashley v. Lake County*, No. 06-360, 2008 WL 2954975, 4 (N.D. Ind. July 29, 2008) ("[w]aiver is more commonly found when a party, after providing a response or more generalized objection, subsequently attempts . . . to make another objection in order to delay the proceedings"); *Ayers v. Continental Cas. Co.*, 240 F.R.D. 216, 222 (N.D. W.Va. 2007); *Fonville v. District of Columbia*, 230 F.R.D. 38, 42 (D.D.C. 2005). *See also Keith H. v. Long Beach Unified School Dist.*, 228 F.R.D. 652, 657 (C.D. Cal. 2005).

production to every communication (email, Skype, etc.) with Mezzi. (Preston Decl. ¶¶5-6.) Plaintiffs also asked Defendants to produce all disposition reports it received from Mezzi Marketing. As to RPD 38, Plaintiffs proposed Defendants limit their production to responsive documents where Mezzi was the relevant telemarketer. (*Id.*) As to RPD 11, Plaintiffs proposed Defendants limit production to responsive documents implicated by this motion. (*Id.*) Defendants have not committed to any of these proposals.

Defendants may object to the burden of RPDs 1 to 3, 11, and 38 beyond bifurcation: they contend production of responsive documents "would require tens if not hundreds of hours of Defendants' employee internal time (burden) and outside counsel time (expense)." The record does not appear to support this estimate. (Castillo Depo Tr. 144:10-149:12; 156:20-161:8.) As the "party resisting discovery," Defendants bear "'the burden of showing some sufficient reason why discovery should not be allowed.'" *Flag Fables, Inc. v. Jean Ann's Country Flags and Crafts, Inc.*, 730 F. Supp. 1165, 1186 (D. Mass. 1989) (quoting *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D. Mass. 1976); collecting other citations). Most or all of the responsive records are electronic that can be reproduced automatically via computer, and most of the documents in Plaintiffs' proposal are in Defendants' communications with Mezzi. To the extent Defendants claim locating these records is burdensome, the fault lies with Defendants' recording-keeping systems rather than unduly burdensome discovery. "Courts have been loathe to reward (and possibly encourage) poor record keeping by shielding companies with inefficient recording methods from discovery." *Briddell v. Saint Gobain Abrasives Inc.*, 233 F.R.D. 57, 61 (D. Mass. 2005) (collecting cases).

> Merely because compliance with a "Request for Production" would be costly or time-consuming is not ordinarily sufficient reason to grant a protective order where the requested material is relevant and necessary to the discovery of evidence. [Where] the plaintiff has a demonstrable need for the documents, the

> defendant undisputedly has possession of them, and the plaintiff has no other access to them . . . the defendant has a duty pursuant to Rule 34 . . . to produce [responsive documents]. . . . The defendant may not excuse itself from compliance with Rule 34 . . . by utilizing a system of record-keeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of the documents an excessively burdensome and costly expedition. To allow a defendant whose business generates massive records to frustrate discovery by creating an inadequate filing system, and then claiming undue burden, would defeat the purposes of the discovery rules.

*Kozlowski*, 73 F.R.D. at 76 (cited, followed in *Flag Fables*, 730 F. Supp. at 1186). Defendants' boilerplate citations to Rule 26's proportionality requirements do not alter this analysis.[5]

**Privilege:** Defendants objected to RPD 12 on the basis of attorney-client privilege and work product. RPD 12 covers documents concerning communications about this case with anyone who received a subpoena. Outside communications between Defendants and their counsel, the scope of privilege and work product is sharply limited. Certainly, Defendants' communications with Mezzi and the other telemarketers are not privileged or work product because they are not confidential. *See Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 25 (1st Cir. 2011) (privilege does not cover information "acquired from non-client sources"); *Dahl v. Bain Capital Partners, LLC*, 714 F. Supp. 2d 225, 227-28 (D. Mass. 2010). Likewise, communications with Defendants' in-house counsel are not presumptively privileged: "internal investigation of suspicious activity within a corporation by in-house counsel does not necessarily fall under the privilege of the work product doctrine or the attorney-client privilege." *Freedman & Gersten, LLP v. Bank of Am., N.A.*, No. 09-5351, 2010 WL 5139874, *6 (D.N.J. Dec. 8, 2010) (collecting cases). Rather, Defendants must show their in-house counsel sought "information

---

[5] The 2015 advisory committee notes expressly reflect that the restoring proportionality as a consideration to Rule 26(b)(1) did "not place on the party seeking discovery the burden of addressing all proportionality considerations." Fed. R. Civ. P. 26(b) advisory committee's notes for 2015 amendment (quoted and followed by *Salazar v. McDonald's Corp.*, No. 14-02096, 2016 WL 736213, *2 (N.D. Cal. Feb. 25, 2016)). *See also Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 468, 469 (N.D. Tex. 2015).

necessary to the rendering of legal advice" to Defendants. *Guzzino v. Felterman*, 174 F.R.D. 59, 61 (W.D. La. 1997). "[I]f the actions of in-house counsel were simply to . . . conduct an investigation to remedy the allegations, then the privilege does not apply." *Freedman*, 2010 WL 5139874, at *6 (collecting cases). Communications with in-house counsel for no "purpose other than keeping counsel informed" about an investigation are not privileged. *Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 489 (D. Kan. 1997). Here, Defendants have offered no basis to conclude any investigation by in-house counsel was genuinely part of an effort to obtain or give legal advice, and have not excluded any the other, non-privileged possibilities. At the very minimum, there is good cause to require Defendants to provide a privilege log for any documents they have withheld.[6]

### III. Defendants' Responses Violate Rule 34

Almost all Defendants' RPD responses violate Rule 34 in one way or another. RPD responses "must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). Most of Defendants' RPD responses violate Rule 34(b)(2)(C) by failing to disclose whether Defendants withheld documents under a specific objections, so that Plaintiffs cannot tell whether responsive documents exist or not.[7] Defendants

---

[6] (*Cf*. ECF No. 139 at 5-8 (explaining deficiencies of Defendants' privilege logs); ECF No. 140 (declining to "order *in camera* review of documents or to compel Defendants to log post-March 2018 communications with their in-house attorneys" at *that* "stage of this litigation").)

[7] Rule 34 is meant to "'end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections.' This is the very confusion that has arisen here." *Guarriello v. Family Endowment Partners, LP*, No. 14-13351, 2015 WL 12953233, *2 (D. Mass. Dec. 21, 2015) (quoting Fed. R. Civ. P. 34 advisory committee notes for 2015 amendment). "If Defendants have withheld any responsive information on the basis of an objection, Plaintiffs are entitled to know that . . ." *Id*. Under Rule 34(b)(2)(C), a "proper written response should also provide sufficient information for the requesting party, and the court, to be satisfied that the responding party conducted an adequate investigation for responsive materials." *In re Rivera*, No. 16-4676, 2017 WL 5163695, *3 (C.D. Cal. Apr. 14, 2017).

exacerbate this situation because their deposition and their filings do not clarify whether Defendants have withheld responsive documents or not, even when that is at issue in the filing. (*See* ECF No. 113, *passim*; ECF No. 188 at 5-11; Castillo Depo Tr. 144:10-149:12; 156:20-161:8.) Conversely, most of Defendants' RPD responses promise to producing "responsive, non-privileged documents in their possession, custody, or control related to named Plaintiff Samuel Katz, if any," including RPDs 2 and 12 to 14. (L.R. 34.1(b)(4) Appendix at 3, 5-6.) Defendants separately violate Rule 34(b)(2)(B) by qualifying their production *without* objecting, evading Rule 34(b)(C)'s disclosure safeguards. Fed. R. Civ. P. 34(b)(2)(B) ("response must either state that inspection . . . will be permitted as requested or" make objection).[8]

### IV.     The Court Should Grant Effective Relief

Plaintiffs ask the Court to order Defendants to produce documents responsive to RPDs 1 to 3, 11 to 14, and 38, consistent with Plaintiffs' proposals to stage discovery. Fed. R. Civ. P. 37(a)(3)(C). (*See* Preston Decl. ¶12.) Plaintiffs also ask the Court to order Defendants to serve amended responses that comply with Rule 34(b)(2) for all Plaintiffs' RPDs, but especially for RPDs 1 to 3, 12 to 14, and 38. "Each response with an objection must indicate whether any responsive materials are being withheld on the basis of that objection," *R. Fellen, Inc. v. Rehabcare Grp., Inc.*, No. 14-2081, 2016 WL 1224064, *3 (E.D. Cal. Mar. 29, 2016), and "identify explicitly the nature of [Defendants'] search for . . . each request." *Moore v. Pflug*

---

[8] Defendants "may not unilaterally withhold [responsive] documents" by qualifying the scope of production to documents which they claim are (1) privileged; (2) in their control; or (3) related to Plaintiffs. *Johnson v. Kraft Foods N. Am.*, 236 F.R.D. 535, 541 (D. Kan. 2006). "If a party intends to withhold information or documents responsive to a discovery request based on" an objection, that objection "must be lodged" in its RPD responses. *Id. See also Bryant v. Mattel, Inc.*, No. 04-09049, 2007 WL 5430893, *5 (C.D. Cal. May 18, 2007) (RPD "responses are inadequate to the extent [party] has restricted its production [and such] restrictions suggest that [party] might be excluding documents that are responsive to the request based upon its unilateral determination" of what documents are discoverable).

*Packaging & Fulfillment, Inc.*, No. 17-05823, 2018 WL 1938557, *3 (N.D. Cal. Apr. 25, 2018).[9]

Defendants need to produce or otherwise account for specific documents. Defendants have admitted their telemarketers called Plaintiffs, and Plaintiffs have cause to believe Mezzi called all (or almost all) of the numbers contained in their proposed list of 165,000 telephone numbers. (ECF No. 176-40 at 3-4; Preston Decl. ¶5.) Defendants received call records (called disposition reports) from their telemarketers on a weekly basis. (Castillo Depo Tr. 101:4-25; Preston Decl. ¶¶7, 27.) These documents are responsive to RPDs 1 and 38. Defendants re-engaged Mezzi between April 17, 2018 and May 4, 2018, but have not produced any documents reflecting Mezzi's work or its second termination by Defendants. (*See id*. ¶19.) Defendants have not produced any of their Skype messages with Mezzi (or the emails reflected in those messages), the emails between Mezzi and regulatorycompliance@libertypowercorp.com as late as June 2018, or the email sent one minute before the May 23, 2018 calendar invite for Defendants' conference with Mezzi (which conference Defendants' counsel attended), or any of the other documents flagged in Plaintiffs' November 2018 discovery dispute letter to the Court. (*See id*. ¶¶20-33. *Cf*. ECF No. 110.) These documents are responsive because they are Defendants' communications with their telemarketers about Plaintiffs' subpoenas (RPD 12) or this case (RPD 13), and/or communications with Mezzi about TCPA compliance (RPD 14),

Defendants promised in open court to "produce documents responsive to" RPD 12 without referencing its objection (ECF No. 61 at 8): the Court held Defendants' commitment "to produce documents that are responsive to Plaintiffs' request for communications with third

---

[9] "Plaintiffs are not required to go through the exercise of a deposition to get [responsive] information . . . Nor are Plaintiffs required to accept Defendants' counsel's assertions in their opposition papers to the motion to compel regarding the scope of the objections or the completeness of the responses." *Guarriello*, 2015 WL 12953233, at *2. *Cf. Moore*, 2018 WL 1938557, at *2 (not sufficient to indicate what has been produced); *Kilmon v. Saulsbury Indus., Inc.*, No. 17-99, 2018 WL 5800757, *6 (W.D. Tex. Feb. 28, 2018) (same).

parties about the outstanding subpoenas" mooted Plaintiffs' prior motion. *Katz I*, 2018 WL 4398256, at *2. In fact, it became clear at Defendants' deposition that Defendants nonetheless continued to withhold documents responsive to RPD 12. (Castillo Depo. Tr. 153:25-154:8.) Defendants' position now is "that the document response [for RPD 12] indicates documents would be produced subject to the stated objection." (ECF No. 188 at 10 (italics).) Of course, *neither Defendants' prior filing nor the Court's order made any qualification on Defendants' production on RPD 12*. Rule 37(b) authorizes relief either under the Court's order or because Defendants reneged on their prior promise in open court.[10] At a minimum, assuming their promise to produce responsive documents did not wholly waive privilege, Defendants need to provide privilege logs for any communications that are not exclusively with outside counsel.

In September 2018, the Court ordered Defendants to "implement the preservation measures discussed in *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004) with respect to relevant documents in the possession of their vendors." *Katz I*, 2018 WL 4398256, at *1. Defendants appear to have violated the Court's order: they sent preservation letters, but never took any steps to ensure their telemarketers actually preserved any documents.[11] Defendants' preservation letters and any correspondence that followed are responsive to RPDs 12, 13, and 38

---

[10]  The "promise in open court to produce certain documents [can be] treated as the equivalent of an order for Rule 37(b) purposes." *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 472 (7th Cir. 1984) (citation, punctuation omitted).

[11]  (*See* Castillo Depo. Tr. 42:11-47:18 ("Was any step taken to ensure that the vendors actually complied with the litigation hold? . . . I don't believe so, no"). *Cf.* Preston Decl. ¶¶7, 19 (deponent designated on this topic).)
> *A party's discovery obligations do not end with the implementation of a "litigation hold"—to the contrary, that's only the beginning. Counsel must oversee compliance with the litigation hold, monitoring the party's efforts to retain and produce the relevant documents.* Proper communication between a party and her lawyer will ensure (1) that all relevant information (or at least all sources of relevant information) is discovered, [and] (2) that relevant information is retained on a continuing basis . . .

*Zubulake*, 229 F.R.D. at 432 (italics added).

(documents concerning communications about Plaintiffs' subpoenas, this case, and requests for call records). Any documents which corroborate the loss of otherwise responsive documents are responsive to RPD 11, and should also be produced.

Defendants must demonstrate they have "exhaust[ed] the practical means at [their] disposal to obtain [responsive] documents from" their telemarketers, and their production (under RPDs 11 to 14, and 38) should document those efforts. *Exp.-Imp. Bank*, 233 F.R.D. at 342. Defendants' ability to procure records from their telemarketers rebuts their disclaimers of control over documents in their telemarketers' hands. *Cf. Kozlowski*, 73 F.R.D. at 76. Defendants have a wide leverage over telemarketers' compensation and personnel to compel their current telemarketers to comply with Plaintiffs' discovery. (Preston Decl. ¶7.)[12]

The prospect of issue sanctions may serve to deter underproduction. If Defendants contend they are unable to collect responsive documents, the Court's 2018 preservation order expressly held it was "without prejudice to Plaintiffs later raising spoliation or other claims related to the preservation of third-party vendor documents." *Katz I*, 2018 WL 4398256, at *1. Rule 37(e) authorizes relief for the loss of electronic documents when (1) "relevant evidence has been lost and cannot be replaced" which (2) "should have been preserved" and "was not preserved because [Defendants] failed to take reasonable steps to preserve it." *Postle v. SilkRoad Tech., Inc.*, No. 18-224, 2019 WL 692944, *1 (D.N.H. Feb. 19, 2019). In particular, Defendants are responsible for permitting responsive documents to pass out of their control, including documents handled by Mezzi.[13] Defendants' duty to preserve commenced months or years

---

[12]   *Cf. In re Folding Carton Antitrust Litig.*, 76 F.R.D. 420, 423 (N.D. Ill. 1977) ("[w]hile the right to withhold payment . . . does not ipso facto mean that defendants will be able to procure the documents, it is clearly an indicia of control"; cited in *Exp.-Imp. Bank of United States*, 233 F.R.D. at 342).

[13]   *Cf. In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 197 (S.D.N.Y. 2007) (party which permitted documents to leave its control "without itself preserving (or insuring that [third party] would

before, from prior TCPA class actions and FTC complaints about telemarketing calls from the same number that called Plaintiffs. (Preston Decl. ¶10.)[14] At the latest, Defendants' duty to preserve started on October 19, 2016, when Defendants concluded an "investigation" of Katz's "allegations of calls received from Liberty Power."[15] (*Id.*)

Alternatively, Rule 37(e) relief arises where Defendants "acted with the intent to deprive [Plaintiffs] of use of [evidence] in this litigation." *Postle*, 2019 WL 692944, at *1. It is reasonable to infer such intent from the Skype messages Plaintiffs did obtain from Mezzi, as well as Defendants' complicity in their telemarketers' manufacture of false screen shots and spoofed calls, and their total concealment of the Skype messages in discovery. (*See* Preston Decl. ¶¶20-26; Castillo Depo Tr. at 34:21-36:25; 57:16-59:2l; 107:7-109:25; 122:1-128:8.) "The proponent of a 'missing document' inference need not offer direct evidence of a coverup to set the stage for the adverse inference. Circumstantial evidence will suffice." *Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1148, 1159 (1st Cir. 1996) (evidence that defendant knew of claim and document's relevance at time of document's destruction supported inference of "ulterior reason"). In

---

preserve) such information for possible production in this litigation . . . failed in its obligation to preserve relevant material"); *Cyntegra, Inc. v. Idexx Labs., Inc.*, No. 06-4170, 2007 WL 5193736, *5 (C.D. Cal. Sept. 21, 2007), *aff'd*, 322 F. App'x 569 (9th Cir. 2009) (where party "could have anticipated the possibility of litigation" before documents were deleted, "it had an affirmative duty to make payments [to third party to] preserve the evidence" stored in third-party servers).

[14] *See Williams v. BASF Catalysts LLC*, No. 11-1754, 2016 WL 1367375, *6 (D.N.J. Apr. 5, 2016) (duty to preserve evidence relevant to prior lawsuit attaches "where it was reasonably foreseeable that the evidence would be relevant to anticipated lawsuits of nearly identical subject matter and similarly situated adversaries"); *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 288 (N.D. Cal. 2015) (citing *Montoya v. Orange Cnty. Sheriff's Dep't*, No. 11-1922, 2013 WL 6705992 (C.D. Cal. Dec. 18, 2013) for proposition that "duty to preserve documents can arise from similar prior litigation"); *M & T Mortg. Corp. v. Miller*, No. 2002-5410, 2007 WL 2403565, *5 (E.D.N.Y. Aug. 17, 2007) (duty to preserve triggered by complaint with "allegations . . . strikingly similar to the allegations" in instant complaint).

[15] *Cf. Testa v. Wal-Mart Stores, Inc.*, 144 F.3d 173, 177 (1st Cir. 1998) (duty to preserve evidence related to accident began when defendant investigated accident and "completed an internal accident report"); *Kelley v. United Airlines, Inc.*, 176 F.R.D. 422, 428 (D. Mass. 1997) (plaintiff's correspondence about claim constituted notice of possible litigation).

particular, the content of the available Skype messages indicates Defendants use Skype to issue directives to their telemarketers, but email to create a record for litigation.  It is a "commonsense observation that a party who . . . permits [a document] to be destroyed . . . when facing litigation, knowing the document's relevancy to issues in the case, may well do so out of a sense that the document's contents hurt his position." *Booker v. Mass. Dep't of Pub. Health*, 612 F.3d 34, 45 (1st Cir. 2010) (applied by *Wai Feng Trading Co. Ltd v. Quick Fitting, Inc.*, No. 13-33, 2019 WL 118412, *12 (D.R.I. Jan. 7, 2019) to relief under Rule 37(e)).[16]

Defendants have lead lists that they provided to their telemarketers. To the extent that Defendants assert they are unable to provide call records showing their telemarketers actually called the telephone numbers on the lead lists, the Court may "fill[] this evidentiary gap by drawing an inference from" the absence of the telemarketers' call records. (*Cf.* Castillo Depo. Tr. at 74:-5-79:21 (no reason "if [telephone numbers are] in [lead] lists why they would not have been called") *with Nation-Wide Check Corp. v. Forest Hills Distributors, Inc.*, 692 F.2d 214, 217 (1st Cir. 1982) (adverse inference serves to deter parties from spoliating evidence). *See also Small v. Univ. Med. Ctr. of S. Nev.*, No. 13-00298, 2014 WL 4079507, *31-37 & n.121 (D. Nev. Aug. 18, 2014) (adverse inference favoring class certification as spoliation sanction).) It may not be possible to determine the scope of this adverse inference until Defendants react to this motion.

In sum, the Court should require Defendants to produce documents responsive to RPDs 1 to 3, 11 to 14, and 38, and serve amended responses that comply with Rule 34(b)(2).

---

[16] *See also Blinzler*, 81 F.3d at 1159 ("When the evidence indicates that a party is aware of circumstances that are likely to give rise to future litigation and yet destroys potentially relevant records without particularized inquiry, a factfinder may reasonably infer that the party probably did so because the records would harm its case"; citations omitted); *TLS Mgmt. & Mktg. Servs. LLC v. Rodriguez-Toledo*, No. 15-2121, 2017 WL 1155743, *2 (D.P.R. Mar. 27, 2017) (inferring defendant who "discarded the laptop without making any attempt whatsoever to preserve all the potential ESI within" after plaintiff informed him to preserve ESI intended to deprive plaintiff of evidence).

Dated: November 7, 2019    By:    s/Ethan Preston
              David C. Parisi
              dcparisi@parisihavens.com
              Suzanne Havens Beckman
              shavens@parisihavens.com
              **PARISI & HAVENS LLP**
              212 Marine Street, Unit 100
              Santa Monica, California 90405
              Telephone: (818) 990-1299
              Facsimile: (818) 501-7852

              Yitzchak H. Lieberman
              ylieberman@parasmoliebermanlaw.com
              Grace E. Parasmo
              gparasmo@parasmoliebermanlaw.com
              **PARASMO LIEBERMAN LAW**
              7400 Hollywood Boulevard, Suite 505
              Los Angeles, California 90046
              Telephone: (917) 657-6857
              Facsimile: (877) 501-3346

              Ethan Preston
              ep@eplaw.us
              **PRESTON LAW OFFICES**
              4054 McKinney Avenue, Suite 310
              Dallas, Texas 75204
              Telephone: (972) 564-8340
              Facsimile: (866) 509-1197

              *Attorneys for Plaintiff Plaintiffs Samuel Katz and Lynne Rhodes, on their own behalf, and behalf of all others similarly situated*

## CERTIFICATE OF SERVICE

I, Ethan Preston, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: November 7, 2019    By:    s/Ethan Preston
              Ethan Preston