UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAMUEL KATZ and LYNNE RHODES individually, and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>LIBERTY POWER CORP., LLC AND LIBERTY POWER HOLDINGS, LLC,<br><br>    Defendants. | Civil Action No. 18-cv-10506-ADB |

# MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO STAY AND FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL

BURROUGHS, D.J.

Samuel Katz ("Katz") and Lynn Rhodes ("Rhodes," and together with Katz, "Plaintiffs"), on behalf of four putative classes, allege that Liberty Power Corp., LLC and Liberty Power Holdings, LLC (together, "Liberty Power") or their agents placed calls in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227 *et seq.* On September 24, 2019, the Court issued a memorandum and order denying Liberty Power's motion for summary judgment and granting in part Liberty Power's motion to dismiss ("Order"). [ECF No. 195]. The Court found the TCPA's debt-collection exception unconstitutional as a content-based restriction on speech that did not serve a compelling government interest. [Id. at 13–16]. Because the Court found "little doubt" that the debt-collection exception is severable, however, it found that the claims were unaffected by the exception's unconstitutionality. [Id. at 16–17].

Presently before the Court are Liberty Power's motion for certification of an interlocutory appeal [ECF No. 199] and motion to stay these proceedings pending the resolution of that

interlocutory appeal [ECF No. 200]. For the reasons set forth below, Liberty Power's motion for certification of an interlocutory appeal [ECF No. 199] is <u>DENIED</u> and its motion to stay [ECF No. 200] is <u>DENIED</u> as moot.

## I.     BACKGROUND

### A.     Procedural History

Katz first filed his complaint on March 16, 2018. [ECF No. 1]. On June 25, 2018, Liberty Power answered and brought a third-party complaint against its vendor, Mezzi Marketing LLC. [ECF No. 28]. Plaintiffs filed the operative second amended complaint on November 14, 2018. [ECF No. 109]. On February 27, 2019, the Court bifurcated discovery and stayed class discovery pending summary judgment motions on facts specific to the named plaintiffs. [ECF No. 125].

Liberty Power filed its motion to dismiss on January 9, 2019. [ECF No. 118]. Plaintiffs opposed on February 13, 2019, [ECF No. 124], and Liberty Power responded on March 15, 2019, [ECF No. 130]. Because Liberty Power argued that the TCPA is unconstitutional, the government intervened and filed a brief advocating for the TCPA's constitutionality on May 9, 2019. [ECF Nos. 141, 143, 144]. Liberty Power responded to the government on June 21, 2019. [ECF Nos. 166, 167].

Liberty Power then filed its motion for summary judgment on June 21, 2019, in which it argued that Katz and Rhodes lacked standing. [ECF No. 163]. Plaintiffs opposed on July 12, 2019, [ECF No. 175], and Liberty Power responded on August 1, 2019, [ECF No. 184].

The Court issued its Order on September 24, 2019, which denied Liberty Power's motion for summary judgment and granted its motion to dismiss in part, finding that Plaintiffs failed to state a claim under Florida's Uniform Fraudulent Transfer Act. [ECF No. 195]. Though the

2

Court found the TCPA's debt-collection exception unconstitutional, it allowed Plaintiffs' TCPA claims to go forward because it found the debt-collection exception severable. [Id. at 13–17].

On October 24, 2019, Liberty Power filed its motion for a certificate of appealability [ECF No. 199] and its motion to stay the proceedings pending resolution of that interlocutory appeal [ECF No. 200]. Plaintiffs opposed on October 25, 2019. [ECF No. 201]. The government likewise opposed on November 7, 2019, and argued that there is no substantial ground for difference of opinion on the debt-collection exception's severability. [ECF No. 205].

**B.       September 24, 2019, Motion to Dismiss Order**

The Court presumes familiarity with the underlying facts alleged in the complaint, which were summarized in the Court's Order granting in part and denying in part Liberty Power's motion to dismiss. See [ECF No. 195 at 2–8]. Below, the Court summarizes the portions of the Order that are relevant to Liberty Power's request for an interlocutory appeal.

The Order began by addressing Liberty Power's argument that the second amended complaint failed to state a claim. [Id. at 10–11]. The Court found that the second amended complaint adequately addressed what acts each defendant committed such that Plaintiffs were plausibly entitled to relief. [Id.]

The Court next considered Liberty Power's argument that the TCPA was unconstitutional as a content-based restriction on speech. [Id. at 11–17]. The Court found that the TCPA is a content-based restriction on speech, because, under the TCPA, the legality of a phone call depends entirely on the call's subject matter. [Id. at 14–15]. "[A] private debt collector could make two nearly identical automated calls to the same cell phone using prohibited technology, with the sole distinction being that the first call relates to a loan guaranteed by the federal government, while the second call concerns a commercial loan with no government guarantee."

3

[Id. at 14 (quoting Am. Ass'n of Political Consultants, 923 F.3d 159, 166 (4th Cir. 2019))]. The Court found that the TCPA was not narrowly tailored to serve a compelling government interest. [Id. at 15–16]. Though the government argued that the debt-collection exception is justified because it protects the "well-being, tranquility, and privacy" of citizens' homes, the Court found the argument unpersuasive. [Id. at 15]. The Court therefore found the debt-collection exception unconstitutional. [Id. at 16].

Because the debt-collection exception is severable from the TCPA, however, the Court found that Plaintiffs' claims were unaffected by the exception's unconstitutionality. [Id. at 16–17]. Courts are to give effect to "the valid portion of a partially unconstitutional statute so long as [1] it remains fully operative as a law, and . . . [2] it is not evident from the statutory text and context that Congress would have preferred no statute at all." [Id. at 16 (quoting Exec. Benefits Ins. Agency v. Arkison, 573 U.S. 25, 37 (2014) (quotation marks and citations omitted))].

First, it was clear that severing the debt-collection exception would not make the TCPA inoperable, as the statute had been "fully operative" for more than twenty years before Congress added the debt-collection exception. [Id. at 17]. Second, Chapter 5 of Title 47, which includes the TCPA, includes a "Separability" provision stating that "[i]f any provision of this chapter or the application thereof to any person or circumstances is held invalid, the remainder of the chapter and the application of such provision to other persons or circumstances shall not be affected thereby." [Id. at 16–17 (quoting 47 U.S.C. § 608)]. The fact that the provision speaks directly to severability "creates a presumption of severability absent 'strong evidence that Congress intended otherwise.'" Duguid v. Facebook, Inc., 926 F.3d 1146, 1156 (9th Cir. 2019) (quoting Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 686 (1987)). In finding the debt-collection exception severable, the Court adopted the reasoning of the Fourth and Ninth Circuits.

4

[ECF No. 195 at 17 (first citing Duguid, 926 F.3d at 1156–57, and then citing Am. Ass'n of Political Consultants, 923 F.3d at 170–71)].

## II. LEGAL STANDARD

A district court may certify an interlocutory appeal in a written order when issuing an otherwise not-appealable civil order if it is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The First Circuit has "repeatedly emphasized that 'interlocutory certification under 28 U.S.C. § 1292(b) should be used sparingly and only in exceptional circumstances, and where the proposed intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority.'" Caraballo-Seda v. Municipality of Hormigueros, 395 F.3d 7, 9 (1st Cir. 2005) (quoting Palandjian v. Pahlavi, 782 F.2d 313, 314 (1st Cir. 1986)).

"As a general rule, [the First Circuit does] not grant interlocutory appeals from a denial of a motion to dismiss." Id. (citing McGillicuddy v. Clements, 746 F.2d 76, 76 n.1 (1st Cir. 1984)). "This reflects [the First Circuit's] policy preference against piecemeal litigation as well as prudential concerns about mootness, ripeness, and lengthy appellate proceedings." Id. (citation omitted). In addition, the First Circuit has recognized that "the 'fact that appreciable trial time may be saved is not determinative,' and neither is the fact that the case has 'tremendous implications' . . . ." Id. (citations omitted) (first quoting Palandjian, 782 F.2d at 314, and then quoting Slade v. Shearson, Hammill & Co., 517 F.2d 398, 400 (2d Cir. 1974)).

5

## III. DISCUSSION

Congress enacted the TCPA in 1991 in response to concerns over intrusive and unwanted telephone calls from telemarketers. Pub. L. No. 102-243, 105 Stat. 2394. Congress sought "to protect residential telephone subscriber privacy rights by restricting certain commercial solicitation and advertising uses of the telephone and related telecommunications equipment." H. R. Rep. No. 102-317, at 5 (1991). The TCPA therefore prohibits any person within the United States from using an automated telephone dialing system to make a non-emergency call without the recipient's express consent. 47 U.S.C. § 227(b)(1).

In 2015, Congress amended the TCPA and created an exception for calls "made solely to collect a debt owed to or guaranteed by the United States." Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301(a), 129 Stat 584 (2015). The permissibility of a phone call therefore depends on the content of the call, specifically whether the call is seeking to collect on a loan guaranteed by the federal government. The Court therefore found the debt-collection exception unconstitutional, but severable from the TCPA. Liberty Power requests certification of an interlocutory appeal to allow the First Circuit to consider the provision's constitutionality and severability.

### A. The Severability of the Debt-Collection Exception Is Not a Controlling Question of Law as to Which There Is Substantial Ground for Difference of Opinion

There is not a substantial ground for a difference of opinion regarding the debt-collection exception's severability. Liberty Power predominantly relies on a Third Circuit case which held that "the proper remedy for content discrimination generally cannot be to sever the statute so that it restricts more speech than it did before—at least absent quite specific evidence of a legislative preference for elimination of the exception." Rappa v. New Castle Cty., 18 F.3d 1043, 1073 (3d

Cir. 1994). In this case, the Court found that there was "specific evidence of a legislative preference" for severing the debt-collection exception. See id.; [ECF No. 195 at 16–17]. The separability provision, codified at 47 U.S.C. § 608 makes clear that Congress intended that any unconstitutional provisions, including the debt-collection exception, be severed from the TCPA, rather than having the entire statute deemed unconstitutional. 47 U.S.C. § 608 ("If any provision of this chapter or the application thereof to any person or circumstances is held invalid, the remainder of the chapter and the application of such provision to other persons or circumstances shall not be affected thereby.")

Every court that has considered the constitutionality of the TCPA's debt-collection exception has distinguished or ignored Rappa v. New Castle Cty., 18 F.3d 1043, 1073 (3d Cir. 1994), and found that Congress was explicit in its intent that the debt-collection exception be severable. See, e.g., Duguid, 926 F.3d at 1157 (quoting Rappa and finding "specific evidence of" Congress' preference that the debt-collection exception be severed); Am. Ass'n of Political Consultants, Inc., 923 F.3d at 171 ("[S]everance of the debt-collection exemption from the balance of the automated call ban *will comply with the explicit directive of Congress* and with controlling Supreme Court precedent." (emphasis added)); Smith v. Truman Road Dev., LLC, No. 4:18-cv-00670, 2019 WL 5654352, at *16 (W.D. Mo. Oct. 31, 2019) ("Given the general presumption in favor of severability, the apparent Congressional intent that the unconstitutional provision be severed, and the TCPA's demonstrated ability to be fully operative without the severed provision, the Court finds the government-debt exception is severable."); Perrong v. Liberty Power Corp., No. 18-cv-00712, 2019 WL 4751936, at *7 (D. Del. Sept. 30, 2019) ("The Court is not persuaded that removing [the debt-collection exception] amendment would somehow render unconstitutional a statute that had been repeatedly upheld as constitutional in its

7

previous form."); Parker v. Portfolio Recovery Assocs., LLC, No. 18-cv-02103, 2019 WL 4149436, at *2 (C.D. Cal. July 11, 2019) ("[S]pecific evidence of the legislature's preference for retaining the valid TCPA provision is provided."); Wijesinha v. Bluegreen Vacations Unlimited, Inc., No. 19-cv-20073, 2019 WL 3409487, at *5 (S.D. Fla. Apr. 3, 2019) ("[S]pecific evidence of Congress's legislative preference for elimination of the exception is shown by the fact that Congress enacted the TCPA without the government-debt exception . . . ."); Sliwa v. Bright House Networks, LLC, No. 16-cv-00235, 2018 WL 2296779, at *3 (M.D. Fla. May 21, 2018) (finding specific evidence of Congress' intent to sever the debt-collection exception under Rappa); Woods v. Santander Consumer USA Inc., No. 2:14-cv-02104, 2017 WL 1178003, at *3 n.6 (N.D. Ala. Mar. 30, 2017) ("[T]here is no evidence that Congress would not have enacted the TCPA without the exception for government debt. To the contrary, Congress did enact the TCPA without the exception for government debt, the version of the TCPA without the exception has been upheld as a valid time, place, or manner restriction by several courts throughout the country.").

Liberty Power has therefore failed to demonstrate that there is a substantial ground for a difference of opinion regarding the debt-collection exception's severability, as required for an interlocutory certification under 28 U.S.C. § 1292(b).

### B. An Immediate Appeal Would Not Materially Advance the Ultimate Termination of the Case

In addition, certification of an interlocutory appeal is not warranted because any appeal would not materially advance the ultimate termination of the case. The fact that an interlocutory appeal might save the parties from appreciable trial time is insufficient to justify certifying an interlocutory appeal. Caraballo-Seda, 395 F.3d at 9. The Court therefore gives little weight to Liberty Power's argument that an appellate decision would avoid protracted and expensive

discovery, another round of summary judgment, class certification, and trial. [ECF No. 199 at 8–9]. See Lauo Lines s.r.l. v. Chasser, 490 U.S. 495, 499 (1989) (noting that the Supreme Court has "declined to find the costs associated with unnecessary litigation to be enough to warrant allowing the immediate appeal of a pretrial order").

Further, Liberty Power's argument that an interlocutory appeal would advance the termination of this case rests on the assumption that the First Circuit would find that the debt-collection exception was unconstitutional and also could not be severed from the TCPA. Given that every court to have considered this issue to date has found that the debt-collection exception is severable, as discussed above, such a conjectural claim is insufficient to demonstrate that an interlocutory appeal would advance the ultimate termination of the litigation. See, e.g., In re Zofran (Ondansetron) Prods. Liab. Litig., 235 F. Supp. 3d 317, 320 (D. Mass. 2017) (declining to certify an interlocutory appeal when party's claim that the appellate court would remand the claim to state court was conjectural); Johnson v. Watts Regulator Co., No. 92-cv-00508, 1994 WL 421112, at *2 (D.N.H. Aug. 11, 1994) (finding that party's "claim that an interlocutory appeal would advance the ultimate termination of the litigation is conjecture").

If there was an interlocutory appeal and the First Circuit agreed with the Court that the debt-collection exception is severable, which seems likely, then the case would almost certainly be remanded back to this Court. Once the Court considered any summary judgment motions or held a trial (or both), Liberty Power could once again appeal to the First Circuit. "[F]or an already overburdened court of appeals[,] judicial economy will be better achieved if only one appeal is taken in this case." Johnson, 1994 WL 421112, at *2. Liberty Power has therefore failed to demonstrate that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until the entry of final judgment." S. Orange Chiropractic Center,

LLC v. Cayan LLC, No. 15-cv-13069, 2016 WL 3064054, at *1 (D. Mass. May 31, 2016) (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 475 (1978)).

## IV. CONCLUSION

Accordingly, Liberty Power's motion for certification of an interlocutory appeal [ECF No. 199] is DENIED, and Liberty Power's motion to stay these proceedings pending the results of that appeal [ECF No. 200] is DENIED as moot.

**SO ORDERED.**

November 15, 2019 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE