UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SAMUEL KATZ and LYNNE RHODES individually, and on behalf of all others similarly situated, | * * * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 18-cv-10506-ADB |
| LIBERTY POWER CORP., LLC AND LIBERTY POWER HOLDINGS, LLC, | * * * | |
| Defendants. | * * | |

**OMNIBUS MEMORANDUM AND ORDER ON PARTIES' DISCOVERY MOTIONS**

BURROUGHS, D.J.

Samuel Katz ("Katz") and Lynn Rhodes ("Rhodes," and together with Katz, "Plaintiffs"),

on behalf of four putative classes, allege that Liberty Power Corp., LLC and Liberty Power

Holdings, LLC (together, "Defendants" or "Liberty Power") or their agents placed calls in

violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*  [ECF

No. 34 at 1].  On September 24, 2019, the Court issued a memorandum and order denying

Liberty Power's motion for summary judgment and granting in part Liberty Power's motion to

dismiss.  [ECF No. 195].

Presently before the Court are Plaintiffs' motions to compel compliance with requests for

production ("RFPs"), [ECF No. 206], and to compel discovery of Defendants' financial records,

[ECF No. 214], as well as Defendants' motion to quash a subpoena seeking information related

to a number of email addresses associated with one of their employees and a dialing service used

when making calls on behalf of the Defendants, [ECF No. 219].  As more fully explained below,

the motions to compel compliance with requests for production, [ECF No. 206], and to release

certain financial records, [ECF No. 214], are <u>GRANTED</u> in part and <u>DENIED</u> in part and the

motion to quash the subpoenas, [ECF No. 219], is <u>DENIED</u> because Defendants lack standing to

challenge the subpoenas.

## I.      LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 26(b), parties are entitled to discovery

"regarding any nonprivileged matter that is relevant to any party's claim or defense and

proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26 is "construed broadly to

encompass any matter that bears on, or that reasonably could lead to other matters that could

bear on, any issue that is or may be in the case." <u>Energy Power (Shenzhen) Co. v. Wang</u>, No.

13-cv-11348, 2014 WL 4687784, at *2 (D. Mass. Sept. 17, 2014) (quoting <u>Oppenheimer Fund,

Inc. v. Sanders</u>, 437 U.S. 340, 351 (1978)). "District courts exercise broad discretion to manage

discovery matters," <u>Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd.</u>, 333 F.3d 38, 41 (1st

Cir. 2003), and "to tailor discovery narrowly," <u>Cutter v. HealthMarkets, Inc.</u>, No. 10-cv-11488,

2011 WL 613703, at *2 (D. Mass. Feb. 10, 2011) (quoting <u>Crawford-El v. Britton</u>, 523 U.S. 574,

598 (1998)). When exercising this discretion, courts are mindful of the proportionality

considerations articulated in Rule 26(b)(1). Fed. R. Civ. P. 26(b)(1).

"A court must limit discovery if it determines that the discovery sought is (1)

unreasonably cumulative or duplicative, or is obtainable from some other source that is more

convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample

opportunity by discovery in the action to obtain the information sought; or (3) the burden or

expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

the case, the amount in controversy, the parties' resources, the importance of the issues at stake

in the litigation, and the importance of the projected discovery in resolving the issues." In re

New England Compounding Pharmacy, Inc. Prods. Liab. Litig., No. 13-cv-02419, 2014 WL

12814933, at *2 (D. Mass. Feb. 7, 2014); see also Fed. R. Civ. P. 26(b)(2)(C).

As the party resisting discovery, Defendants bear "the burden of showing some sufficient

reason why discovery should not be allowed." Flag Fables, Inc. v. Jean Ann's Country Flags and

Crafts, Inc., 730 F. Supp. 1165, 1186 (D. Mass. 1989) (citation and internal quotation marks

omitted).

> Merely because compliance with a "Request for Production" would be costly or
> time-consuming is not ordinarily sufficient reason to grant a protective order where
> the requested material is relevant and necessary to the discovery of evidence. . . .
> [Where] the plaintiff has a demonstrable need for the documents, the defendant
> undisputedly has possession of them, and the plaintiff has no other access to them
> . . . . the defendant has a duty pursuant to Rule 34 to produce [responsive
> documents]..

Kozlowski v. Sears, Roebuck & Co., 73 F.R.D. 73, 76 (D. Mass. 1976) (internal citations

omitted).

Further, any objection that the Defendants did not raise in their initial response is deemed

waived. West v. Bell Helicopter Textron, Inc., No. 10-cv-00214, 2011 WL 6371791, at *7

(D.N.H. Dec. 20, 2011) (noting that "defendant had waived [objection] by omitting it from other

objections raised in its initial response to the discovery requests . . . . .").

## II.      DISCUSSION

### A.      Plaintiffs' Motion to Compel Initial Class Discovery

Plaintiffs moved to compel Defendants to produce documents responsive to RFPs 1, 2, 3,

11, 14, and 38.  [ECF No. 206].  Plaintiffs first served the requests on June 20, 2018, and

Defendants responded and noted their objections on July 27, 2018.  [ECF No. 215-2 at 1–2].

Plaintiffs seek call records for all of the calls made by telemarketers on behalf of the Defendants

(RFP 1), lead lists that Defendants provided to telemarketers (RFP 2), all documents concerning

communications with Defendants' telemarketers about the lead lists (RFP 3), communications with telemarketers about Plaintiffs' subpoenas (RFP 12), communication with telemarketers about this case (RFP 13), and communications with telemarketers about requests for call records (RFP 38); communications with Mezzi Marketing, LLC, ("Mezzi") a vendor used by Defendants to make calls on Defendants' behalf, about TCPA compliance (RFP 14); and documents concerning incidents where Defendants lost access to any document which would have been responsive to Plaintiffs' requests (RFP 11).  See [ECF No. 210 at 4–10 (listing RFPs)].

As a preliminary matter, Defendants argue that the motion to compel should be denied because the parties failed to meet and confer before Plaintiffs filed this motion.  [ECF No. 210 at 3].  A court may deny a motion to compel if the parties failed to meet and confer regarding the discovery dispute.  Gouin v. Gouin, 230 F.R.D. 246, 247 (D. Mass. 2005).

The parties had a teleconference on November 7, 2019 to discuss discovery disputes identified by Plaintiffs in a letter to Defendants.  [ECF No. 210 at 2; ECF No. 210-3 at 2].  Defendants allege that it quickly became obvious that Plaintiffs were using the call to address other case issues, rather than the discovery disputes raised in the letter.  [ECF No. 210 at 2].  Plaintiffs ultimately agreed to organize a second call to discuss the discovery issues, but instead filed the instant motion.  [Id.].  Therefore, for some of the requests, the Court orders that the parties meet and confer to determine the scope of requests and relevant production.

     1.    Request Nos. 13 and 14

On February 27, 2019, the Court granted Defendants' request to bifurcate discovery and stayed class discovery while the Court considered the motion for summary judgment on facts that were specific to the representative Plaintiffs.  [ECF No. 125].

Defendants' only objections to RFPs 13 and 14 stem from their motion to bifurcate discovery.  [ECF No. 210-4 at 14–16].  Because the Court has considered and denied the motion for summary judgment, [ECF No. 195], bifurcation is no longer a legitimate objection to producing the relevant documents.  Therefore, considering RFP 13, Defendants are ordered to provide all documents concerning any communication regarding the instant case between Defendants and their Telesales Channels, if Defendants have not already produced such documents or if they are otherwise privileged.

Regarding RFP 14, Defendants represent that they "ha[ve] agreed to conduct a search regarding Mezzi Marketing, and there is no basis for this being subject to a Motion to Compel." [ECF No. 210 at 7].  To the extent that they have not already done so,  Defendants are ordered to provide all documents relating to communications between Liberty Power and Mezzi Marketing, LLC since September 8, 2016, concerning Liberty Power disciplining or terminating Mezzi Marketing, LLC, or discussing training and compliance with the TCPA.

     2.    Request No. 1

RFP 1 seeks "all records and/or call detail records for calls made by Liberty Power's Telesales Channels to Liberty Power's potential and/or prospective residential customers during the class period."  [ECF No. 210-4 at 5].  Although Defendants maintain that this request is "exceptionally broad," [ECF No. 210 at 4], they do not contest that the records are electronic, which suggests a less burdensome production.  See [ECF No. 207 at 6]. Further, Defendants have

themselves previously served subpoenas on third parties in this case seeking "all contracts, inbound and outbound phone call and fax logs, billing statements, features, and payment histories" for telephone lines that were allegedly illegally called.  [ECF No. 125 at 6].  Though the Court understands that production may be burdensome, courts often order production of these kinds of documents, which Defendants themselves have previously requested.  "Courts often permit discovery of records related to the telephone numbers at issue in TCPA cases."  Katz v. Liberty Power Corp., LLC, No. 18-cv-10506, 2019 WL 957129, at *4 (D. Mass. Feb. 27, 2019).  Given the availability of Defendants' call records, and the fact that such call records are relevant to Plaintiffs' claim that Defendants violated the TCPA, the Defendants are ordered to provide all records of calls made by Liberty Power's Telesales Channels to potential and prospective customers during the class period.  Recognizing that this may in fact be overly broad and burdensome, however, the Court will consider limiting the production if Defendants make a more detailed showing of burdensomeness or have a viable alternative proposal that allow Plaintiffs to identify potential class members and/or assess damages which the court assumes is the purpose of this request.

3.    Request No. 2

RFP 2 seeks "[a]ll documents containing lists of any contact information for customers or potential residential customers which were provided to the Telesales Channels in the class period."  [ECF No. 210-4 at 4].  Defendants objected to RFP 2 on the basis that they lack control over the relevant documents.  [Id. at 5].  Plaintiff agreed that "[s]ubject to demonstration with specific detail of burden of producing responsive documents and capabilities of Liberty Power's information systems, Plaintiff may consider accepting a selected subset or sampling of responsive documents based on specific criterial [sic] . . . to which Plaintiff may agree . . . ."  [Id.

at 4–5].  The parties may not have had the opportunity to discuss less burdensome ways for the Defendants to respond to the request as Plaintiffs seemingly filed this motion without first discussing whether they would begin with a subset of such contact-information lists.  See [ECF No. 210 at 2].

The parties are therefore ordered to meet and confer to determine whether such a representative sample is appropriate, given the Defendants' claimed difficulty in providing all documents and communications with Telesales Channels regarding customer contact information.  The Court understands that the Defendants may be burdened by providing every requested document and communication, but the Court has previously found that "Liberty Power exercises significant control over the manner of its agents' telemarketing campaigns . . . ."  [ECF No. 195 at 6].  Therefore, an agreed-upon representative sample seems entirely reasonable.  The parties should take this finding into consideration when meeting and conferring on this issue.

4.    Request No. 3

RFP 3 seeks "[a]ll communications with the Telesales Channels concerning . . . contact information for customers or potential residential customers to the Telesales Channels during the class period."  [ECF No. 210 at 5].  Defendants objected to RFP 3 on the basis that Defendants lack control over the relevant communications.  [Id.]

The Court notes that Defendants' argument that it somehow lacks control over communications that they had with their Telesales Channels, assuming that such communications exist, is dubious at best.  As with RFP 2, however, Plaintiffs agreed that "[s]ubject to demonstration with specific detail of burden of producing responsive documents and capabilities of Liberty Power's information systems, Plaintiff may consider accepting a selected subset or sampling of responsive documents based on specific criterial [sic] . . . to which

Plaintiff may agree . . . ."  [ECF No. 210-4 at 7].  Given Plaintiffs' position and the fact that

Defendants cannot reasonably contest whether they had control over their communications with

their own Telesales Channels, the parties are ordered to meet and confer to determine whether

such a representative sample of communications with Defendants' Telesales Channels

concerning customer contact information would be appropriate.

    5.    Request No. 11

    RFP 11 seeks "[a]ll documents concerning any incident or event in which any document

which . . . would have been responsive to these Requests was destroyed, delinked, dereferenced,

deleted, and/or access to such document was lost . . . ."  [ECF No. 210-4 at 13].  In opposing,

Defendants claim that "[w]hile it is unclear that an expansive search would require a large

burden in time and expense in fees, it is uncertain what documents, or what types of documents,

would be discovered."  [ECF No. 210 at 8].

    Because Defendants do not argue that they would be unduly burdened or that records of

possibly destroyed documents would be irrelevant, Defendants are ordered to provide any and all

documents concerning incidents in which any documents that would have otherwise have been

responsive to Plaintiffs' requests was destroyed, deleted, or otherwise made inaccessible.

    6.    Request No. 12

    RFP 12 seeks "[a]ll documents concerning any communication regarding the case

captioned above between Liberty Power and another person who received or receives a subpoena

issued by any of the parties in this case . . . ."  [ECF No. 210-4 at 13].  Defendants objected,

claiming attorney-client privilege and work product.  [ECF No. 210-4 at 14].  Defendants now

state that they "agreed to produce responsive documents."  [ECF No. 210 at 6].

To the extent that Defendants have not already done so, they are ordered to provide all

communication between Liberty Power and any person who received a subpoena in this case,

insofar as such communications are not protected by attorney-client privilege and are not work

product.

7.     Request No. 38

RFP 38 seeks "[a]ll documents concerning Liberty Power's requests for call records from

its Telesales Channels, including by way of example but without limitation Liberty Power's

requests themselves, the telesales responses (including any call records), and any further

communication about the requests."  [ECF No. 210-4 at 33].  Defendants claim that they did not

have an opportunity to meet and confer regarding the potential scope of the request.  [ECF No.

210 at 7].  Because the Court finds that Defendants' requests for call records from its Telesales

Channels would plainly be relevant in determining whether the Defendants violated the TCPA,

the Court orders that the parties meet and discuss limiting the scope of this request, including

perhaps limiting the time period to the class period.

**B.     Plaintiffs' Motion to Compel Financial Discovery**

Plaintiffs have also filed a motion to compel financial discovery requested in RFPs 67 to

78, [ECF No. 214], which seek information pertaining to Defendants' current net worth,

financial statements, credit applications, tax filings, and payments to Defendants' owners during

the class period.  [ECF No. 210-4 at 47–53].  Defendants object, claiming that the documents are

irrelevant and that securing the documents would be unduly burdensome and disproportionate to

their use in this litigation.  [Id.].  The Court has previously found that "because [Plaintiffs']

Complaint alleges that financial strain motivated the allegedly less than scrupulous marketing

practices at issue here, some discovery into Liberty Power's capitalization, earnings, and financial conduct may still be appropriate."  [ECF No. 195 at 19].

       1.      <u>Request Nos. 67 and 73</u>

RFP 67 seeks "[a]ll documents necessary to determine Liberty Power Corp., LLC's current net worth, including monthly statements for all depository accounts."  [ECF No. 210-4 at 47].  RFP 73 seeks the same information from Liberty Power Holdings, LLC.  [ECF No. 210-4 at 50].  Plaintiffs claim that they are entitled to the information because they are seeking punitive damages and Defendants' ability to pay any potential judgment is therefore relevant.  [ECF No. 215 at 4–5].  Defendants maintain the request was unduly burdensome and irrelevant.  [ECF No. 210-4 at 50].

"Generally, district courts do not allow prejudgment discovery regarding a defendant's ability to satisfy a judgment, aside from the initial disclosures required by Rule 26(a)(1)(A)(iv)." <u>New England Compounding Pharmacy</u>, 2014 WL 12814933, at *3.  When plaintiffs seek punitive damages, however, "a majority of federal courts permit pretrial discovery of financial information about the defendant without requiring plaintiff to establish a *prima facie* case on the issue of punitive damages."  <u>CEH, Inc. v. FV Seafarer</u>, 153 F.R.D. 491, 498 (D.R.I. 1994) (citation omitted); <u>see also</u> <u>Oakes v. Halvorsen Marine Ltd.</u>, 179 F.R.D. 281, 284 (C.D. Cal. 1998) ("[T]here is no dispute that information concerning the counterdefendants' finances is relevant regarding the issue of punitive damages."); <u>St. Joseph Hosp. v. INA Underwriters Ins. Co.</u>, 117 F.R.D. 24, 25–26 (D. Me. 1987) (finding that copies of a defendant's financial statements and statements filed with the state and federal government were relevant because plaintiff sought punitive damages).  For example, this Court recently allowed an interrogatory that sought the identity of "real property, bank accounts, trusts, or other assets in which [a party]

had a legal or beneficial interest" when considering a case in which the plaintiff sought punitive damages. <u>Boniface, et al. v. Viliena</u>, No. 17-cv-10477, [ECF No. 107] (April 1, 2020).

In this case, if Defendants are found to have violated the TCPA, the Court will have the discretion to order punitive damages. <u>See</u> 47 U.S.C. § 227(b)(3), (c)(5) (providing that a court may increase the amount of an award and order treble damages "[i]f the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection"). Defendants' finances are all the more relevant where the Court will eventually consider whether to certify the proposed classes in this case. <u>See</u> <u>In re New England Mut. Life Ins. Co. Sales Practices Litig.</u>, 183 F.R.D. 33, 42 (D. Mass. 1998) (explaining that certification under Federal Rule of Civil Procedure 23(b)(1)(B) "is used most frequently for certification of a class where insufficient funds are available to satisfy for all class members their judgments against the defendant"). Therefore, documents concerning the Defendants' finances are sufficiently relevant to warrant discovery.

Defendants have not made any showing that it would be burdensome to provide documents that would establish their net worth, and instead rely on a general claim that "the burden and expense of responding to the Request outweighs its likely benefit at this time." [ECF No. 210-4 at 47, 50]. Boilerplate language that discovery is "overbroad and unduly burdensome" is insufficient to meet the "burden of showing by affidavit or otherwise that [discovery] would be unduly burdensome." <u>Cooper v. Charter Commc'ns, Inc.</u>, No. 12-cv-10530, 2016 WL 128099, at *2 (D. Mass. Jan. 12, 2016). "The mere statement by a party that [a] request for production was overly broad, burdensome, oppressive, and irrelevant is not adequate to voice a successful objection. On the contrary, the party resisting discovery must show specifically how each [request for production] is not relevant or how each question is

overly broad, burdensome or oppressive."  Brenford Envtl. Sys., L.P. v. Pipeliners of Puero Rico, Inc., 269 F.R.D. 143, 147 (D.P.R. 2010) (citations and internal quotation marks omitted).

Having determined that the information is relevant, the Court likewise finds that the requests are not unduly burdensome.  Still, in the interest of preserving Defendants' interest in their protected financial statements, the Court will not order the production of "[a]ll documents necessary to determine" Defendants' net worth, "including monthly statements for all depository accounts."  [ECF No. 210-4 at 47, 50].  Instead, the parties are ordered to meet and confer so that Defendants may provide an honest and accurate representation of their current net worth in the least intrusive means available, with the goal of determining the plausibility of punitive and class-action damages.

2.      Request Nos. 68 and 74

RFP 68 seeks "Liberty Power Corp., LLC's annual financial statements, annual financial reports, credit applications, and profit and loss statements for fiscal year . . . 2018, and tax years 2017 and 2016."  [ECF No. 210-4 at 47].  RFP 74 seeks the same information from Liberty Power Holdings, LLC.  [Id. at 50].  Defendants objected because they believed the request was unduly burdensome and irrelevant.  [Id. at 47, 50].  The Court agrees.  Though the Defendants' financial records are relevant given the possibility of punitive damages, the Plaintiffs will have an otherwise adequate means of determining Defendants' financial status given the records that will be provided in response to RFPs 67 and 73.  See, e.g., Love v. Lord Nathan Rest Home, Inc., No. 06-cv-30021, 2007 WL 9799830, at *1 (D. Mass. April 3, 2007) (finding that, though tax documents would generally be relevant because the plaintiff sought punitive damages, the plaintiff would have adequate means of discovering the necessary financial information because

the defendants were otherwise providing statements of their financial worth).  The motion to compel is therefore <u>DENIED</u> as to RFPs 68 and 74.

        3.      <u>Request Nos. 69 and 75</u>

RFP 69 seeks "Liberty Power Corp., LLC's tax filing[s] for tax years 2016 and 2017." [ECF No. 210-4 at 47].  RFP 75 seeks the same information from Liberty Power Holdings, LLC. [ECF No. 210-4 at 51].  The Defendants objected on the basis that the request is unduly burdensome and irrelevant.  [<u>Id.</u> at 48, 51].  Courts have previously allowed discovery of a defendant's tax records when a plaintiff seeks punitive damages.  <u>See, e.g.</u>, <u>Lopez v. Mauisun Comp. Sys. Inc.</u>, No. 12-cv-00414, 2015 WL 13766312, at *2 (D. Az. May 6, 2015) ("Plaintiffs have alleged facts that, if true, could give rise to an award of punitive damages. . . .  Because of Defendant's alleged lack of any financial records, Defendant's federal income tax returns are all the more relevant.").  Here, because the Defendants will be disclosing their financial net worth in response to the other requests considered in this Order, the Court finds that the Plaintiffs will have adequate alternative sources for the information sought in RFPs 69 and 75.  <u>See, e.g.</u>, <u>Love</u>, 2007 WL 9799830, at *1.  The motion to compel is therefore <u>DENIED</u> as to RFPs 69 and 75.

        4.      <u>Request Nos. 70 and 76</u>

RFP 70 seeks "[a]ll documents concerning any payment . . . that Liberty Power Corp., LLC has made during the class period to any manager, member, insider, affiliate, subsidiary, parent, or related corporation, partnership, limited liability company, or other entity of Liberty Power Corp., LLC . . . ."  [ECF No. 210-4 at 48].  RFP 76 seeks the same information from Liberty Power Holdings, LLC.  [ECF No. 210-4 at 51].  Defendants objected claiming the request was unduly burdensome.  [<u>Id.</u> at 48, 52].

Because payment to managers, members, insiders, and affiliates, among other parties, could be relevant in the Court's determination concerning punitive damages, the Court finds that records of such payments would be relevant.  Further, Defendants have failed to demonstrate that the request is unduly burdensome and instead rely on boilerplate language that "[i]t would take Defendants ten if not hundreds of hours (burden) to identify all payments . . . [and] would take outside counsel tens of hours to review these documents for relevancy and privilege (expense)." [ECF No. 210-4 at 48].   Because such boilerplate language is insufficient to show that the requested discovery would be unduly burdensome, Cooper, 2016 WL 128099, at *2, the motion to compel is GRANTED as to RFPs 70 and 76.

     5.    Request Nos. 71 and 77

RFP 71 seeks "[a]ll documents concerning any lien, obligation, or debt Liberty Power Corp., LLC has incurred in favor of any manager, member, insider, affiliate, subsidiary, parent, or related corporation, partnership, limited liability company, or other entity of Liberty Power Corp., LLC at any time during the class period . . . ."  [ECF No. 210-4 at 49].  RFP 77 seeks the same information from Liberty Power Holdings, LLC.  [Id. at 52].  Defendants objected claiming the request was unduly burdensome.  [Id. at 49, 52].  The Court may eventually need to consider Defendants' finances when determining whether statutory damages would be appropriate, such that Defendants' liens, obligations, or debts would be relevant.  Because Defendants rely on the same insufficient boilerplate language to argue that the requests are unduly burdensome, the motion to compel is GRANTED as to RFPs 71 and 77.

     6.    Request Nos. 72 and 78

RFP 72 seeks "[a]ll documents concerning any release Liberty Power Corp., LLC has executed in favor of any manager, member, insider, affiliate, subsidiary, parent, or related

corporation, partnership, limited liability company, or other entity of Liberty Power Corp., LLC

at any time during the class period . . . ."  [ECF No. 210-4 at 49].  RFP 78 seeks the same

information from Liberty Power Holdings, LLC.  [Id. at 52–53].  Defendants objected, claiming

that the request was burdensome.  [Id. at 50, 53].  Such releases would plainly be relevant for

considering whether the Defendants' knowingly and willfully violated the TCPA.  Because

Defendants rely on the same boilerplate claim of burden, the motion to compel is GRANTED as

to RFPs 72 and 78.

      **C.**      **Defendants' Motion to Quash and/or for a Protective Order**

      Finally, the Defendants have moved to quash subpoenas served on Google LLC

("Google") and Oath Holdings, Inc. ("Yahoo"), or for a protective order.  [ECF No. 219 at 1].

The Yahoo subpoena seeks every email sent from the personal email accounts of one of

Defendants' employees, Josue Toussaint ("Toussaint"), [ECF No. 220-1 at 23–24], while the

Google subpoena seeks the same information for forty-six email addresses associated with

dialer360.com, a web-based telephony provider that Mezzi used to make telephone calls on

Defendants' behalf, [ECF No. 220-1 at 11–12; ECF No. 225 at 2].  Plaintiffs have not yet served

the Google subpoena.  [ECF No. 225 at 2].  Yahoo produced the responsive records in January

2020.  [Id.].  Plaintiffs have not reviewed the records, but instead alerted Defendants to Yahoo's

response.  [Id.].  Defendants challenge both subpoenas as being overbroad and argue that, as to

the Yahoo subpoena, Toussaint has a privacy interest in the email from his personal email

account.  [ECF No. 220 at 1].

      The Stored Communications Act ("SCA") requires that "a person or entity providing an

electronic communication service to the public shall not knowingly divulge to any person or

entity the contents of a communication while in electronic storage by that service . . . ."  18

U.S.C. § 2702(a)(1).  Though the statute explicitly includes eight exceptions to the prohibition, it

does not exclude responding to a civil subpoena.  See 18 U.S.C. 2702(b)(1–8 ).  "Faced with this

statutory language, courts have repeatedly held that providers such as Yahoo! and Google may

not produce emails in response to civil discovery subpoenas."  Bower v. Bower, 808 F. Supp.

348, 350 (D. Mass. 2011).  Therefore, the Court previously granted a motion for a protective

order concerning the content and attachments of Plaintiff Katz's emails from Google.  [ECF No.

125 at 6].

The subpoenas at issue, however, request only metadata, not the content of the emails

themselves.  Specifically, Plaintiffs seek:

> All documents sufficient and necessary to identify the following information with
> respect to every email sent to or from [Toussant's address] since March 17, 2014,
> including email header files: the date and time each such email was sent; the date
> and time each such email was deleted from Google; the Internet Protocol
> address(es) from which such email were deleted from Google; the recipient(s) of
> each such email; the sender of each such email; routing data; the Message-ID of
> each such email; the DKIM-Signature of each such email; the size of each such
> email (in bytes); [and] any hash value of each such email and/or other non-content
> value used to uniquely identify each such email.

[ECF No. 220-1 at 23–24].  Other courts have allowed the discovery of the to and from lines of

an email, and the dates that emails were sent, but have prohibited the discovery of email subject

lines under the SCA.  See Xie v. Lai, No. 19-mc-80287, 2019 WL 7020340, at *5 (N.D. Cal.

Dec. 20, 2019) ("[T]o the extent that Applicants seek discovery of the subject lines of

[defendant's] emails, this Court finds that the subject lines are content protected by the SCA and

cannot be discovered.  Applicants may, however, seek the [sender and recipient information], as

well as the dates associated with the emails." (internal citation omitted)); Sys. Prods. and

Solutions, Inc. v. Scramlin, No. 13-cv-14947, 2014 WL 3894385, at *8 (E.D. Mich. Aug. 8,

2014) ("Emails stored by a service provider are subject to the SCA . . . .  Metadata associated

with electronic communications, however, are not considered to be content protected by the SCA."); Chevron Corp. v. Donziger, No. 12-mc-80237, 2013 WL 4536808, at *6 (N.D. Cal. Aug. 22, 2013) (finding that, though the SCA prohibited a service provider from providing the content of a subscriber's emails, the SCA permitted discovery of a provider's records of associated email metadata).

Defendants argue that they have an interest in the Yahoo subpoena, which seeks information related to an employee's personal email account, because the emails are "records that were produced by an employee," and that they have an interest in the Google subpoena because the emails were created "on [Defendants'] behalf."  [ECF No. 220 at 6].  "A party has standing to move to quash a non-party subpoena if the information sought by the subpoena implicates a personal right or privilege of the party."  Ponder v. Ocwen Loan Servicing, LLC, No. 19-mc-91215, 2019 WL 2249675, at *2 (D. Mass. May 24, 2019).  "The personal right or privilege claimed need not be weighty: parties need only have '*some* personal right or privilege in the information sought' to have standing to challenge a subpoena to a third party."  S.E.C. v. Navellier & Assocs., Inc., No. 17-cv-11633, 2019 WL 688164, at *2 (D. Mass. Feb. 19, 2019) (quoting Degrandis v. Children's Hosp. Bos., 203 F. Supp. 3d 193, 198 (D. Mass. 2016)).

Here, Defendants lack standing to challenge the Yahoo subpoena.  "The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought."  U.S. Bank Nat'l Ass'n v. James, 264 F.R.D. 17, 18–19 (D. Me. 2010) (citation omitted).  As an example, district courts in this circuit have previously found that individual internet subscribers did not have standing to challenge a subpoena served against their internet service providers.  Liberty Media Holdings, LLC v. Swarm Sharing Hash File, 821 F. Supp. 2d 444, 450 (D. Mass. 2011) ("[T]he subpoenas at issue

were served on the ISPs, not Doe 15 and Doe 2.  As such, Doe 15 and Doe 2 lack standing to raise procedural objections.").  Defendants' argument that they have an interest in their employees' personal emails simply because they "were produced by an employee" is far too broad.  Though Defendants employed Toussaint, they have made no argument as to how that creates a sufficient interest in his personal emails to have standing to quash the subpoena, and the Court will not find as a matter of law that employers have such an interest.

Even if the subpoena implicates Toussaint's own privacy interests such that he could assert those interests as a third party, see, e.g., Chasten v. Franklin, No. 10-cv-80205, 2010 WL 4065606, at *1–2 (N.D. Cal. Oct. 14, 2010) (finding that a subscriber has a sufficient personal interest to provide standing to move to quash a subpoena seeking details from personal email accounts from third parties), Defendants lack standing to assert that privacy interest on his behalf, see, e.g., United States ex rel. Ortiz v. Mount Sinai Hosp., 169 F. Supp. 3d 538, 545 (S.D.N.Y. 2016) (finding that a hospital lacked standing to move to quash a subpoena based on its patients' privacy interests because "[d]efendants cite[d] no authority for the proposition that a party may move to quash a nonparty subpoena in order to protect the privacy interests of other non-parties").

Further, Defendants lack standing to challenge the Google subpoena as unduly burdensome because they have not demonstrated that they otherwise have a privilege relating to the emails.  See In re Stone & Webster, Inc. Secs. Litig., No. 00-cv-10874, 2006 WL 2818489, at *2 (D. Mass. 2006) ("In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness." (citations omitted)).  "A party does not have standing to quash a subpoena on the basis that the non-party recipient of the subpoena would be subjected to an undue burden when the non-party has failed to object."

Finley v. Pulcrano, No. 08-cv-00248, 2008 WL 4500862, at *1 (N.D. Cal. Oct. 6, 2008); see also

London-Sire Records, Inc. v. Doe 1, No. 04-cv-12434, 2019 WL 10728828, at *5 (D. Mass. Jan.

9, 2009) ("Whether [a defendant] may even raise another party's burden in its motion to quash is

doubtful.").  Because the Defendants have not asserted a right or privilege as to the email

addresses referenced in the Google subpoena, they are without standing to seek to quash that

subpoena.

Therefore, because Defendants lack standing to challenge both the Yahoo and Google

subpoenas, the motion to quash, [ECF No. 219], is DENIED.

**III.     CONCLUSION**

Accordingly, the motions to compel compliance with requests for production, [ECF No.

206], and to release certain financial records, [ECF No. 214], are GRANTED in part and

DENIED in part.  Because Defendants lack standing to challenge the Google and Yahoo

subpoenas, the motion to quash the subpoenas, [ECF No. 219], is DENIED.

**SO ORDERED.**

June 26, 2020                                              /s/ Allison D. Burroughs
                                                          ALLISON D. BURROUGHS
                                                          U.S. DISTRICT JUDGE