**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SAMUEL KATZ and LYNNE RHODES, individually, and on their own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>LIBERTY POWER CORP., LLC, LIBERTY POWER HOLDINGS, LLC, Delaware limited liability companies,<br><br>Defendants. | No. 1:18-cv-10506<br><br>**PLAINTIFFS' MEMORANDUM SUPPORTING THEIR MOTION TO COMPEL FINANCIAL DISCOVERY** |
| LIBERTY POWER CORP., LLC, and LIBERTY POWER HOLDINGS, LLC,<br><br>Third-Party Plaintiffs,<br>v.<br><br>MEZZI MARKETING, LLC,<br><br>Third-Party Defendant. | |

Plaintiffs Samuel Katz and Lynne Rhodes (collectively, "Plaintiffs") hereby submit their Motion for an order enforcing the Court's June 26, 2020 order compelling Defendants Liberty Power Corp., LLC ("Corp.") and Liberty Power Holdings, LLC ("Holdings") (collectively, "Defendants") to produce financial discovery under Federal Rule 37(b).

## I. The Court Ordered Defendants to Produce Financial Transaction Discovery

In 2018, Plaintiffs served their first set of Requests for Production of Documents ("RPDs") on Defendants. (Preston Decl. ¶2.) On June 26, 2020, the Court entered an order (the "Order") which granted Plaintiffs' motion to compel as to documents concerning transactions with Defendants' insiders and affiliates (RPDs 70-72 and 77-78). (ECF No. 234 at 14-15.) The Order did not outright compel net worth documentation (RPDs 67 and 73), but instead required the parties to "meet and confer so that Defendants may provide an honest and accurate representation of their current net worth[.]" (*Id.* at 12.) Defendants' production of its financial transaction discovery has been slow, incomplete, and—worst of all—unreliable. (*See* Preston Decl. ¶¶7-34.) Plaintiffs need financial transaction discovery to amend their complaint, ideally before their March 12, 2021 class certification deadline. (*See* ECF No. 239.) The absence of reliably complete financial transaction discovery also prejudices Plaintiffs' ability to challenge—or even effectively negotiate—Defendants' net worth discovery.

Plaintiffs seek a complete, unredacted production of the financial transaction discovery covered by the Order. Plaintiffs seek remedies sufficient to verify that such production is indeed complete. The Court should require Defendants to pay for an independent vendor to collect and produce responsive documents, under conditions which impose clear transparency and accountability. Alternatively, Defendants should file a detailed accounting that provides transparency on what needs to be done to ensure future productions are complete, including

identifying and eliminating any causes behind the existing problems. On this record, certification by Defendants' counsel alone is not sufficient relief. Plaintiffs further reserve the right to seek monetary compensation for the time spent cajoling Defendants to comply with the Order, and with ultimately taking this matter up with the Court.

## II. Defendants Failed to Comply with the Order

On July 7, 2020, Plaintiffs asked Defendants to commit to completing Defendants financial document production by a specific, reasonable date. (Preston Decl. ¶5.) Defendants responded that they were "not aware of any responsive, non-privileged documents" showing payments to affiliates and insiders (RPDs 70 and 76). (Preston Decl. ¶7.) In other words, Defendants took the position that they did not know if there were any documents showing any sort of payments to their owners or affiliates. Three months later, however, after an extensive meet and confer process, Defendants produced Management Services Agreements (MSAs), which revealed records of the management fees and other expenses that Holdings has paid to Corp. (*Id.* ¶30.) These records are plainly responsive to RPD 70:

> All *documents concerning any payment* (including by way of example but without limitation any distribution, dividend, profit, or compensation (including by way of example but without limitation salary, wages, bonus, loan, loan or debt forgiveness, deferred compensation, incentive payment, stock grant, stock award, stock options, stock appreciation right, contribution to any retirement plan, insurance benefit, or perquisite)) *that Liberty Power Corp., LLC has made* during the class period to any manager, member, insider, *affiliate*, subsidiary, parent, *or related* corporation, partnership, *limited liability company*, or other entity of Liberty Power Corp., LLC, including by way of example communications concerning such payment, corporate minutes or corporate resolution which evidence authorization for such payment, and/or financial records evidencing such payment.

(Preston Decl. ¶2 (italics added). *Cf.* ECF No. 234 at 14 ("the motion to compel is GRANTED as

to RFPs 70 and 76").)[1] Plaintiffs first asked Defendants to produce these expense records on November 5, and again on November 18. (*Id.* ¶32-33.) Defendants refuse to even meet and confer on the expense records, because (they claim) Plaintiffs' meet and confer emails raised too many issues. (*Id.* ¶34.) Plaintiffs raised production of financial discovery in July, and raised these specific documents in November 5—so Defendants had enough time to resolve this issue without the Court if they planned to do so. (*Cf.* L.R. 37.1(a) ("Failure of opposing counsel to respond to a request for a discovery conference within 7 days of the request shall be grounds for sanctions, which may include automatic allowance of the motion").)

Defendants have also dragged out production of other financial transaction discovery. Again, Plaintiff asked Defendants to commit to a date for completing the financial discovery production back on July 7. (Preston Decl. ¶5.) On August 26, Defendants produced promissory notes reflecting loans their owners made to Holdings, which references a contemporaneous "Mezzanine Loan Agreement." (*Id.* ¶13.) On August 31, Plaintiffs asked Defendants to produce the Mezzanine Loan Agreement. (*Id.* ¶15.) Defendants initially refused to produce Mezzanine Loan Agreement, asserting "the Court denied Plaintiffs' RPDs on this type of document." (*Id.* ¶16.) Defendants did not produce the Mezzanine Loan Agreement until September 24, 2020. (*Id.* ¶19.) Even then, Defendants produced a redacted version of the Mezzanine Loan Agreement, concealing the name of one of lenders. (*Id.* ¶20.) The Mezzanine Loan Agreement also refers to several other documents:

- the Intercreditor Agreement (referenced at LP_089288, 290, 292, 294, 306);
- the First Lien Documents involving Boston Energy Trading and Marketing LLC

[1] Corp. is an affiliate of Holdings. Plaintiffs' RPDs defined the term "affiliate" to have "the same meaning as it does under Fla. Stat. § 726.102(1) and/or 12 C.F.R. § 225.2(a)." 12 C.F.R. § 225.2(a) defines an affiliate as "any company that controls, is controlled by, or is under common control with, another company." Corp. and Holdings are under common control, because they have the same managers. (Preston Decl. ¶38.)

(referenced at LP_089287, 290, 292, 293, 294, 295); and

- the Third Lien Documents involving Shell Energy North America (US), LP (referenced at LP_089289, 294, 295).

On October 2 and again on October 23, Plaintiffs asked Defendants to produce an unredacted version of the Mezzanine Loan Agreement, the Intercreditor Agreement, the First Lien Documents, and the Third Lien Documents. (Preston Decl. ¶¶23, 25.) Defendants delayed responding until November 4—when they refused to produce any of these documents. (*Id.* ¶29.)

Defendants have no valid basis to redact the Mezzanine Loan Agreement. The Order already adjudicated all Defendants' objections to production of the Mezzanine Loan Agreement, and nothing in the Order permits Defendants to unilaterally redact that production.[2]

> Rule 34 talks about production of 'documents,' as opposed to the relevant information contained in those documents. . . . Certainly, a party that seeks to "inspect" a document would anticipate being able to inspect the entire document. . . . There is no express or implied support for the insertion of another step in the process (with its attendant expense and delay) in which a party would scrub responsive documents of non-responsive information.

*Orion Power Midwest, L.P. v. Am. Coal Sales Co.*, No. 05-555, 2008 WL 4462301, *2 (W.D. Pa. Sept. 30, 2008). Likewise, it is "inappropriate [to] exclud[e] alleged irrelevant information from documents that are otherwise responsive to a discovery request. It is a rare document that contains only relevant information. And irrelevant information . . . may be highly useful to providing context for the relevant information." *Bartholomew v. Avalon Capital Group, Inc.*, 278

---

[2] *See Blake Assocs., Inc. v. Omni Spectra, Inc.*, 118 F.R.D. 283, 288 (D. Mass. 1988) (sanctions where litigant took position "that regardless of what the Court orders, [it] will not obey the Court's orders unless [other side] produces its documents first" while Court's orders "contained no provision that plaintiff need not comply until [other side] first produced some discovery . . . plaintiff had no license to add this provision on its own"; "situation in which Court orders may be frustrated by unilateral action of one party" is "intolerable"). (*See* ECF No. 234 at 3 ("any objection that the Defendants did not raise in their initial response is deemed waived"; quoting *West v. Bell Helicopter Textron, Inc.*, No. 10-00214, 2011 WL 6371791, *7 (D.N.H. Dec. 20, 2011) ("defendant had waived [objection] by omitting it from other objections raised in its initial response to the discovery requests").)

F.R.D. 441, 451 (D. Minn. 2011). Defendants' insistence on redaction violates the Order.

Also, the Intercreditor Agreement, the First Lien Documents, and the Third Lien Documents are all responsive to RPD 77:

> All documents concerning any . . . debt Liberty Power Holdings, LLC has incurred in favor of any manager, member, insider, affiliate, subsidiary, parent, or related corporation, partnership, limited liability company, or other entity of Liberty Power Holdings, LLC at any time during the class period . . .

(Preston Decl. ¶2.) RPD 77 encompasses "documents concerning" Holdings' debt to its owner reflected in the promissory note. Plaintiffs' RPD defined "concerning" broadly: "relating to, referring to, describing, evidencing, or constituting." *Cf.* L.R. 26.5(c)(7) (same definition). The Mezzanine Loan Agreement incorporates the Intercreditor Agreement, the First Lien Documents, and the Third Lien Documents into its terms. (Preston Decl. ¶¶19-20.) These documents help define the Mezzanine Loan Agreement's terms, including what interest is paid under the loan, when the loan is funded, what liens and property transfers are permitted, and when Holdings defaults on the loan. (*See id.*; LP_089289, 290, 292, 294, 295, 306.) These documents are responsive to RPD 77; they relate and describe Holdings' debt to its owner reflected in the promissory note.

## III. Plaintiffs Need Financial Transaction Discovery

Plaintiffs seek to amend their complaint to allege Uniform Fraudulent Transfer Act (UFTA) claims against a variety of Defendants, and they need financial transaction discovery to do so.[3] From a case management standpoint, it would be best for the parties and the Court if

---

[3] The Court previously dismissed Plaintiffs' UFTA claims without prejudice for failure to plead with particularity, and prepared the grounds for Plaintiffs to take discovery on Defendants' finances. (*See* ECF No. 195 at 19 (Plaintiffs' "claims under the UFTA must therefore be dismissed . . . without prejudice, and because the Second Amended Complaint alleges that financial strain motivated the allegedly less than scrupulous marketing practices at issue here, some discovery into Liberty Power's capitalization, earnings, and financial conduct may still be appropriate").)

Plaintiffs had the necessary discovery to amend their complaint before their March 12, 2021 deadline to move for class certification. (*See* ECF No. 239.)

Defendants' failure to complete the financial transaction production also exacerbates problems with its net worth discovery. Again, the Order did not grant Plaintiffs' motion to compel net worth documentation (RPDs 67 and 73), but instead required the parties to "meet and confer so that Defendants may provide an honest and accurate representation of their current net worth[.]" (ECF No. 234 at 12.) In July, Defendants produced a three page pdf file (LP_18712) which Defendants represented as "a summary of [their] audited income statements and balance sheets" for 2017 and 2018, and "2019 (unaudited) actuals, and a 2020 forecast," which Defendants "prepared . . . for Plaintiffs for this litigation." (Preston Decl. ¶10.) Defendants then took the position that "LP_018712 complies with the Court Order and [made] the issue moot," and refused to meet and confer further. (*Id.* ¶14.)

It is difficult to assess Defendants' financial condition, as LP_018712 provides little relevant detail.[4] These anomalies are highlighted by the parties' November 2020 call, where Defendants' counsel took care to qualify that LP_18712 was an "honest and accurate" statement of Defendants' net worth "***at the time***" it was prepared. (*Id.* ¶29.) Nonetheless, as late as October 2019, Defendants claimed even a $1.5 million settlement would "have a material, negative effect on Liberty Power's balance sheet." (*Id.* ¶36.) One might expect such a financially unstable business would struggle to attract financing. However, on July 13, 2020, Defendants issued a press release on "a restructuring of its capital structure and . . . an infusion of fresh capital" from Boston Energy Trading and Marketing LLC which provided "long-term stability" and left Defendants "well-positioned to continue to grow." (*Id.* ¶6.) Defendants also received a Paycheck

[4] For instance, "selling, general and administrative" (SG&A) expenses might reflect management fees paid to off-balance sheet affiliates, in the same way Holdings pays Corp. under the MSAs.

Protection Program loan in April 2020—which at least indicates a substantial business with over hundred employees. (*Id*. ¶37.)

Plaintiffs have questions about Defendants' net worth which LP_018712 does not answer. Plaintiffs are ill-positioned, however, to put those questions to Defendant, or to seek relief from the Court as to RPDs 67 and 73, until they have a complete production of the financial transaction discovery (RPDs 70-72 and 77-78). The Order contemplated Defendants' production on RPDs 67 and 73 would provide Plaintiffs an adequate substitute for other financial discovery.[5] This exacerbates the prejudice from Defendants' scant net worth production.

## IV. Plaintiffs Seek Relief from the Court

Rule 37(b) provides that "[i]f a party . . . fails to obey an order to provide or permit discovery," the Court "may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). This language requires two "conditions precedent" before "engaging the gears of the rule's sanction machinery: a court order must be in effect, and then must be violated, before the enumerated sanctions can be imposed." *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 248 F.3d 29, 33 (1st Cir. 2001) (citation, punctuation omitted). Both conditions are met here. The First Circuit have provided a "non-exhaustive list" of considerations that may apply when assessing sanctions under Rule 37, including "the severity of the discovery violations, legitimacy of the party's excuse for failing to comply, repetition of violations, deliberateness of

[5] The Order denied Plaintiffs' motion to compel as to RPDs 68, 69, 74, and 75 (financial reports and tax returns), contemplating that Plaintiffs would receive sufficient substitute information via the production under RPDs 67 and 73. (ECF No. 234 at 12-13.) For the financial reports, the Court held "[t]hough the Defendants' financial records are relevant given the possibility of punitive damages, the Plaintiffs will have an otherwise adequate means of determining Defendants' financial status given the records that will be provided in response to RFPs 67 and 73." (*Id*. at 12.) For the tax returns, the Court held "because the Defendants will be disclosing their financial net worth in response to the other requests considered in this Order, the Court finds that the Plaintiffs will have adequate alternative sources for the information sought in RFPs 69 and 75." (*Id*. at 13.)

the misconduct, mitigating excuses, prejudice to the other party and to the operations of the court, and adequacy of lesser sanctions." *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 429, 435 (1st Cir. 2015) (citation omitted).

Rule 37(b) lists a "compendium of remedies," including adverse inferences and factual findings, "striking pleadings," "staying further proceedings until the order is obeyed," dismissal and default, or treating the failure to obey an order as "contempt of court." *Velez v. Awning Windows, Inc.*, 375 F.3d 35, 42 (1st Cir. 2004). *Cf.* Fed. R. Civ. P. 37(b)(2)(A). *See also Blake Assocs., Inc. v. Omni Spectra, Inc.*, 118 F.R.D. 283, 288 (D. Mass. 1988) (contempt sanctions for violating discovery order). "In fact, the remedies listed under Rule 37(b)(2) are not exhaustive." *Jaen v. Coca-Cola Co.*, 157 F.R.D. 146, 149 (D.P.R. 1994) (citation omitted). "[A]s long as the sanction is 'just' the Federal Rules of Civil Procedure 'place virtually no limits on judicial creativity.'" *Id.* (quoting *Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 394 (1st Cir.1990)).

> Sanctions . . . serve dual purposes of deterrence and compensation. . . . As a deterrent, sanctions speak largely to systemic concerns. Courts cannot function smoothly if parties, and counsel, ignore the rules, overlook due dates, or flout court orders. . . . As compensation, sanctions recognize that a litigant's failure to abide court orders . . . harm not only the system but the other participants in the process. Sanctions, then, can have a contrapuntal effect, adjusting the scales so that the extra time, effort, and expense to party "A" which occurs in consequence of the dereliction of party "B" can be repaid in some equitable fashion.

*Anderson*, 900 F.2d at 395. Here, Plaintiffs' goal in deterrence is to ensure Defendants have incentive to comply with the Order which outweighs the natural disincentives to producing financial discovery. Plaintiffs' goal for compensation at this point is to minimize the costs of obtaining the discovery they have already won in the Order (but they reserve their right to seek compensation for expenses and fees later).

### A. Defendants Should Produce All Financial Transaction Documents

To start, Defendants should produce all documents responsive to RPDs 70-72 and 77-78.

Defendants must produce these documents in short order (fourteen days). Defendants have had over five months: if they were going to produce without Court intervention, they would have done so. Conversely, Plaintiffs have a class certification deadline, and it behooves Plaintiffs to amend their complaint before then. Given the pace of Defendants' discovery, discretion cautions Plaintiffs to act sooner rather than later: early discovery delays can create knock-on delays to later discovery. Courts have recognized that delaying discovery necessarily prejudices the innocent party with respect to case management deadlines. *See In re Seroquel Products Liab. Litig.*, 244 F.R.D. 650, 664-65 (M.D. Fla. 2007) ("[g]iven . . . tight schedule [defendant's conduct] that resulted in . . . sluggishness [in discovery] appears to have benefitted [defendant] by limiting the time available to Plaintiffs to review information and to follow up"). *Cf. Chuang Invs. v. Eagle Inns, Inc.*, 81 F.3d 13, 14 (1st Cir. 1996) ("[P]rejudice to the court is inherent in needless delays and postponements") *with DeLaventura v. Columbia Acorn Trust*, 417 F. Supp. 2d 147, 154-55 (D. Mass. 2006) (describing inherent prejudice from delay of trial to plaintiffs).

### B. Defendants' Search for Financial Transaction Documents Was Unreliable

Defendants failed to search for, collect, and/or produce financial discovery required by the Order—and specifically the unredacted Mezzanine Loan Agreement, the MSA expense reports, and the Intercreditor Agreement, the First Lien Documents, and the Third Lien Documents. (*Cf.* Preston Decl. ¶7 (July 23 letter).) Defendants had "a duty pursuant to Rule 34, Fed.R.Civ.P., to produce" those documents. *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D. Mass. 1976).[6] Defendants also had a concurrent duty to obey the Order. *See Blake*, 118

[6] "Rule 34 also imposed on Defendants an affirmative duty to seek information . . . subject to their control." *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 626 (D. Colo. 2007) (quoting *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 929 (1st Cir. 1988) ("Once a proper discovery request has been seasonably propounded, we will not allow a party sentiently to avoid its obligations . . . by failing to examine records within its control")). *See FDIC v. McCaffree*, 289 F.R.D. 331, 338 (D. Kan. 2012) (litigant producing discovery has

F.R.D. at 288 (contempt sanctions for violation of discovery order).[7] Defendants have been at best remiss with respect to the Order: this record does not afford them the benefit of the doubt. (*Cf*. Preston Decl. ¶31 (Defendants produced only 115 pages of financial discovery) *with Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*, No. CV 05-1516, 2007 WL 2758571, *7 (C.D. Cal. Sept. 18, 2007) (court entered sanctions for failure to produce responsive "audit documents," after plaintiff's officer testified early on "'[we] know from experience in this case and other cases that it's not going to be a third of a box. It can't possibly be.'"))

While Defendants certainly had an obligation to comply with the Order, Defendants' counsel *also* had a duty to ensure that Defendants conducted a reasonable search for responsive documents. *See Legault v. Zambarano*, 105 F.3d 24, 28 (1st Cir. 1997) ("certifying lawyer must make 'a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand,'" quoting Fed. R. Civ. P. 26(g) advisory committee's notes for 1983 amendment).[8] Rule 26(g) requires counsel to communicate discovery requests to the party:

> [A party's] reasonable inquiry into the factual basis of its discovery responses . . . would have required, at a minimum, a reasonable procedure to distribute discovery requests to all employees and agents of the defendant potentially possessing responsive information, and to account for the collection and subsequent production of the information to plaintiffs.

*National Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 556 (N.D. Cal. 1987) (quoted and followed by, e.g., *Metropolitan Opera Ass'n, Inc. v. Local 100, Hotel Employees &*

---

"duty to conduct a reasonable search for responsive documents and information"); *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) (litigant producing documents in discovery "must conduct a diligent search, which involves developing a reasonably comprehensive search strategy").

7 *See also Penfield Co. of Cal. v. SEC*, 330 U.S. 585, 587-95 (1947) (contempt sanctions, including incarceration, for violation of discovery order).

8 Defendants' counsel signed the July 21, 2020 letter denying that Defendants were aware of any documents responsive to RPDs 70 and 76: it, "therefore, constitutes a 'certification' pursuant to Rule 26(g)(2)." *Phinney v. Paulshock*, 181 F.R.D. 185, 204 (D.N.H. 1998).

*Restaurant Employees Int'l Union*, 212 F.R.D. 178, 221 (S.D.N.Y. 2003)). Rule 26(g) also requires counsel to explain what documents are responsive to which discovery requests:

> Counsel had a duty to explain to their client what types of information would be relevant and responsive to discovery requests and ask how and where relevant documents may be maintained. The client is charged with knowledge of what documents it possesses. . . . [But] the burden does not fall on plaintiff to learn whether, how and where defendant keeps relevant documents.

*Metropolitan Opera*, 212 F.R.D. at 221 (quoting *Tarlton v. Cumberland County Correctional Facility*, 192 F.R.D. 165 (D.N.J. 2000)). Further, Rule 26(g) requires counsel to "exercise some degree of oversight to ensure that [its] client's employees are acting competently, diligently and ethically in order to fulfill their responsibility to the Court," and to formulate a plan "which will ensure full and fair compliance with [pending discovery]." *Bratka v. Anheuser-Busch Co., Inc.*, 164 F.R.D. 448, 461 (S.D. Ohio 1995) (plan should include identifying and interviewing individuals with relevant knowledge about documents within scope of discovery, and ensuring such documents are produced).[9]

### C. The Court Should Remedy Defendants' Discovery Deficiencies

Defendants' claim they were not aware of transaction documents showing payments to affiliates—together with their failure to produce the MSA expense reports—raises serious questions about Defendants' representations about their search for responsive documents: "like the thirteenth chime of the clock, [it] casts doubt on that which went before." *NLRB v. Sheraton Puerto Rico Corp.*, 651 F.2d 49, 54 (1st Cir. 1981). The Court's remedy should address Plaintiffs' central problem: while they have identified *some* missing documents, there is no

[9] *See Treppel*, 233 F.R.D. at 374 ("diligent search and "reasonably comprehensive search strategy" may "include identifying key employees and reviewing any of their files that are likely to be relevant to the claims in the litigation"); *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) ("Proper communication between a party and her lawyer will ensure (1) that all relevant information (or at least all sources of relevant information) is discovered, (2) that relevant information is retained on a continuing basis; and (3) that relevant non-privileged material is produced to the opposing party").

guarantee they would be able to identify *all* such documents on their own.[10]

The most direct and straightforward remedy to remedy this problem is to appoint an independent expert to search for, collect, and produce responsive records, where there is no "confidence that ordering [a litigant] to conduct a good faith search for electronically stored information will be productive." *Carrillo v. Schneider Logistics, Inc.*, No. 11-8557, 2012 WL 4791614, *10 (C.D. Cal. Oct. 5, 2012). This protocol requires Defendants to pay for an "outside vendor [jointly selected by both parties] to collect responsive documents," who is "granted access" to the litigant's information repositories to "collect [documents] within the scope of . . . the Court's discovery Order." *Id.* at *11 (citing, following *Wingnut*, 2007 WL 2758571, at *18-19 (same protocol)). Defendants can review collected document for "privilege and confidentiality," and prepare a privilege log for any withheld documents, while the vendor prepares "a log of all collected documents so that plaintiffs can confirm that all such documents are either produced or logged." *Id.*[11] The expert can also determine why Defendants failed to comply with the Order to date. *Id.* (vendor should "determine whether any potentially responsive documents have been permanently deleted").

Courts have employed other variants of this protocol: the Court is in the best position to decide the details of this remedy on this record.[12]

---

10 "Based upon defendant's conduct in this litigation, the court must presume that these particular documents, obtained by plaintiffs despite the defendant's noncompliance, represent but a fraction of the responsive materials which defendant controls but has not produced." *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 556 (N.D. Cal. 1987).

11 *See In re Delta/Airtran Baggage Fee Antitrust Litig.*, No. 09-2089, 2015 WL 4635729, *5 (N.D. Ga. Aug. 3, 2015) (discovery order directed plaintiffs' to hire expert at defendants' cost, defendants directed to give expert "virtually unfettered access to its files, e-mails, databases, or other data sources")

12 *See Radiation Survivors*, 115 F.R.D. at 559-61 (requiring designation of government agency counsel to certify they are familiar with "all documents and files . . . which may contain discoverable material in this action," to propose "plan to insure the proper and orderly circulation of and compliance with future discovery requests, the maintenance of a record of

Conversely, the Court may decide that Defendants should remedy these issues on their own. This starts with a reasonable search for responsive documents, which requires "at a minimum, a reasonable procedure to distribute discovery requests to all employees and agents of the defendant potentially possessing responsive information, and to account for the collection and subsequent production of the information to plaintiffs." *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 556 (N.D. Cal. 1987).[13] The Court should then require Defendants to file detailed declarations regarding their responses to RPDs 70-72 and 77-78, which provide enough transparency to assure Plaintiffs and the Court that the next production is complete:

> [T]he Court will require [the defendant] to conduct a "reasonable inquiry," as described in *National Ass'n of Radiation Survivors*, and make a supplemental production of documents to plaintiff. . . . Further, to assure that [the defendant] actually makes a "reasonable inquiry," the Court will order him to provide plaintiff with declarations or affidavits detailing the nature of his "reasonable inquiry" to locate responsive documents, and such declarations must address the inquiry he made on a request-by-request basis.

*A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 190 (C.D. Cal. 2006) (quoting *Radiation Survivors*, 115 F.R.D. at 554-56; other citation, quotations omitted). Courts have often mandated additional transparency on document productions in related contexts.[14] Here, Defendants'

---

discovery and documents provided, and the establishment of a system to supervise the response of employees who are asked to obtain or compile discovery," and appointing special master to monitor "defendant's compliance with its internal plan for meeting discovery requests" and "periodic reports of internal compliance with the plan and notify the court of any material violations," at defendants' cost).

13 *See Treppel*, 233 F.R.D. at 374 (a "diligent search" requires "developing a reasonably comprehensive search strategy" which may "include identifying key employees and reviewing any of their files that are likely to be relevant to the claims in the litigation").

14
> A party must make a reasonable inquiry to determine whether responsive documents exist, and if they do not, the party should so *state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence*. . . . [The responding party] must do more than merely assert that the search was conducted with due diligence; rather, [it] must . . . *describe the search to allow the Court to determine whether it was reasonable*.

declarations should state:

(a) whether Defendants knew the Order required production of documents responsive to RPDs 70-72 and 77-78;

(b) whether Defendants knew that documents concerning transactions with Defendants' insiders and affiliates were responsive to RPDs 70-72 and 77-78;

(c) whether Defendants knew that the Order required production of the MSA expense records at the time of Defendants' July 21, 2020 letter;

(d) whether Defendants knew that the Order required production of the unredacted version of the Mezzanine Loan Agreement, the Intercreditor Agreement, the First Lien Documents, and the Third Lien Documents at the time of the parties' November 5, 2020 email;

(e) how, when, and where Defendants searched for documents responsive to RPDs 70-72 and 77-78, identifying specific repositories and keywords or other search criteria;

(f) whether Defendants found responsive documents;

(g) why Defendants did not produce the MSA expense records, the unredacted version of the Mezzanine Loan Agreement, the Intercreditor Agreement, the First Lien Documents, or the Third Lien Documents, or any other document responsive to RPDs 70-72 and 77-78; and

(h) what documents Defendants provided to their counsel.

Defendants' senior management (not counsel) should sign these declarations, and introduce sufficient evidence to "support a finding that" they have "personal knowledge of the matter." Fed. R. Evid. 602.[15]

---

*Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012) (citations, punctuation omitted; emphasis added). *See also Colon v.* Blades, 268 F.R.D. 129, 132-33 (D.P.R. 2010) ("[w]hen a party claims that [all] requested documents have already been produced, it must indicate that fact under oath in response to the request"; citing *Rayman v. American Charter Federal Sav. & Loan Ass'n*, 148 F.R.D. 647, 651 (D. Neb. 1993)); *Alexander v. FBI*, 194 F.R.D. 299, 302 (D.D.C. 2000) (compelling supplemental response that "explain[s] in detail the search that was performed, including the locations searched" for responsive documents).

[15] *See Navedo v. Nalco Chem., Inc.*, 848 F. Supp.2d 171, 179 (D.P.R. 2012) (striking "assertions that do not indicate his basis of knowledge for that alleged fact" in declaration; "bare assertion that a statement is based on the affiant's personal knowledge will not suffice;

The declarations should provide clear and detailed explanations why Defendants did not comply with the Order previously, and explicitly allocate responsibility for the failure to produce responsive documents between Defendants and/or their counsel are responsible. This information is critical to allocating responsibility for any monetary sanctions the Court may enter later. "Where there has been an unrevealed failure to make discovery" on relevant evidence, "salient" discovery about the cause of that failure may "yield[] results highly pertinent to a reasoned decision" on the appropriate remedy. *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 930 (1st Cir. 1988) (motion for new trial). Where a litigant asserts documents are missing from a production, the litigant is entitled to discovery on the search used to create that production. *Cf. Barnes v. District of Columbia*, 289 F.R.D. 1, 25 (D.D.C. 2012) (finding plaintiffs had not met burden of proving "any missing records to be produced" because defendant's search "query—key to understanding how [defendant] analyzed its data—ha[d] not been produced" and "compel[ling] immediate production of the query used" by defendant).

To the extent that Defendants simply concluded that they need not produce the MSA expense reports or other documents based on their interpretation of the Order, they necessarily assumed the risk of contempt in case they were wrong. *See FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 393 (1965) (fair "to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line"; citation, punctuation omitted).[16] Defendants should not read either the Order or RPDs 70-72 and 77-78 "hypertechnically; rather, a party should attempt to comply with discovery demands in good faith." *Werbungs Und Commerz Union Austalt v. Collectors Guild, Ltd.*, 728 F. Supp. 975, 982

rather, the affidavit must be factually specific and explain the basis for that knowledge"; citing *Perez v. Volvo Car Corp.*, 247 F.3d 303, 316 (1st Cir. 2001)).

[16] *AMF Inc. v. Jewett*, 711 F.2d 1096, 1107 (1st Cir. 1983) (contemnor "clearly had an obligation to do more than show how close it could come with safety to" violating court order; same).

(S.D.N.Y.1989), *rev'd in part on other grounds*, 930 F.2d 1020 (2d Cir.1991)) (attempt to avoid discovery by hypertechnical construction "smacks of the type of gamesmanship that the Federal Rules were designed to avoid").[17] *See also Ruiz v. McCotter*, 661 F. Supp. 112, 144 (S.D. Tex. 1986) ("party's compliance with a court order cannot be avoided by a 'literal or hypertechnical reading of an order. . . . It is the spirit and purpose of [the order], not merely its precise words, that must be obeyed'"; quoting *Nat'l Research Bureau, Inc. v. Kucker*, 481 F.Supp. 612, 615 (S.D.N.Y.1979)).[18]

### D. Plaintiffs Reserve the Right to Seek Monetary Sanctions

Rule 37(b) provides "the court *must* order the disobedient party" or its counsel, "or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (italics added). "Absent the finding that the opposing party's position was 'substantially justified,' an award is mandatory." *Notice v. DuBois*, 187 F.R.D. 19, 20 (D. Mass. 1999) (citing *Metrocorps, Inc. v. Eastern Mass. Junior Drum & Bugle Corps Ass'n*, 912 F.2d 1, 2 (1st Cir. 1990)).[19] The record shows that Defendants' production has been piecemeal and

---

17 *See Steir v. Girl Scouts of the USA*, 383 F.3d 7, 14 (1st Cir. 2004) ("spirit of the Civil Rules requires that a party be responsive, complete, and forthcoming in its [discovery responses]").

18 Evasive misconstruction of discovery was not consistent with "good faith duty to comply with discovery requests[,] smack[ed] of gamesmanship[,] and is contrary to the purposes of modern discovery provisions to promote the fair and efficient resolution of disputes." *Saltzman v. Fullerton Metals Co.*, 661 F.2d 647, 651 n.4 (7th Cir. 1981). *See also Independent Living Ctr. of S. Cal. v. City of Los Angeles*, 296 F.R.D. 632, 635 (C.D. Cal. 2013) (granting motion to compel where defendants "deliberately misconstrue[ed] plaintiffs' discovery requests"); *Hunter v. International Sys. & Controls Corp.*, 56 F.R.D. 617, 624 (W.D.Mo.1972) ("deliberate misconstruction of [discovery] constitute[d] a failure to make discovery without substantial justification and [would] be considered . . . as a basis for possible sanctions").

19 "Rule 37(a) . . . was designed to protect courts and opposing parties from delaying or harassing tactics during the discovery process." *Cunningham v. Hamilton County*, 527 U.S. 198, 208 (1999). In 1970, Rule 37 was amended to "require[] that expenses be awarded unless the conduct of the losing party or person is found to have been substantially justified."

riddled with delay, to Plaintiffs' detriment in advance of their class certification deadline. Sanctions would be appropriate here.

> Courts have recognized that piecemeal, less than complete, and slow [discovery] production takes a toll and inflicts a disadvantage on the requesting party [and] is wearing, counterproductive, wholly unacceptable and sanctionable. Prejudice thus is not simply the evidentiary disadvantage that lack of discovery imposes in proving or defending specific claims. [A] sanction can be imposed beyond attorney's fees even if the requested discovery was largely, ultimately provided, and the resulting prejudice is therefore predominantly procedural.

*Paice, LLC v. Hyundai Motor Co.*, No. 12-0499, 2014 WL 3819204, *17 (D. Md. June 27, 2014). *Cf. Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 506 (D. Md. 2000) (discovery sanctions based on, e.g., "comparative resources of the plaintiff and defendant, and the inescapable conclusion that [defendant's] stonewalling on discovery played on that disparity").

However, the Court should defer addressing monetary sanctions at this juncture. Litigation over monetary sanctions can risk exacerbating conflicts that distract from the real issues, and make it less efficient to resolve the case—not more. (*Cf*. ECF No. 76 at 5 (Defendants sought "attorneys' fees . . . pursuant to Fed. R. Civ. P. 37(a)(5)(A) for Plaintiffs' blatant and unjustified refusal to comply with the Federal Rules of Civil Procedure").

Still, Plaintiffs reserve the right to the expenses incurred on this motion, especially in the event they are forced to seek monetary relief on some other issue at a later date. Plaintiffs seek transparency in the remedies above, in part, to allocate responsibility for monetary sanctions between Defendants and their counsel. Again, the Court does not yet need to address monetary sanctions now. But if and when that time comes, the Court should have an adequate record to allocate responsibility between Defendants and their counsel. "Rule 26(g) is designed to curb

---

Fed. R. Civ. P. 37(a)(4) advisory committee's notes for 1970 amendment. The amendment was intended to eliminate courts' reluctance to "utilize the most important available sanction to deter abusive [discovery practices,]" *id.*, and "signaled a shift in presumption about the appropriateness of sanctions for discovery abuses." *Cunningham*, 527 U.S. at 208 n.5.

discovery abuse by explicitly encouraging the imposition of sanctions." *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 576 (1st Cir. 1989) (quoting Fed. R. Civ. P. 26(g) advisory committee's note for 1983 amendment). As with Rule 37, violations of Rule 26(g) trigger mandatory sanctions. Absent substantial justification, "Rule 26(g)(3) requires the imposition of 'an appropriate sanction'" against Rule 26(g)(2) violations. *Gonsalves v. City of New Bedford*, 168 F.R.D. 102, 114 (D. Mass. 1996).[20] Counsel violates Rule 26(g) when it represents its client has made a complete response to discovery but has "no basis" for doing so. *Phinney v. Paulshock*, 181 F.R.D. 185, 204 (D.N.H. 1998).[21] *Cf. Wingnut*, 2007 WL 2758571, at *7 (court declined to order lesser remedies earlier on because it "in retrospect unwisely accepted the representation of [defendant's] counsel" that all responsive documents had been produced). Willful blindness—where counsel chooses "not to look in the correct locations for the correct documents, to accept . . . unsubstantiated assurances [the client's] search was sufficient, to ignore the warning signs that the document search and production were inadequate, [and] not to press [the client's] employees for the truth"—also violates Rule 26(g). *Qualcomm Inc. v. Broadcom Corp.*, No. 05-1958, 2008 WL 66932, *11 (S.D. Cal. Jan. 7, 2008), *modified*, 2010 WL 1336937 (S.D. Cal. Apr. 2, 2010). Here, the MSAs and the Mezzanine Loan Agreement should have rung an alarm bell that more documents responsive to RPDs 70-72 and 77-78 existed, and had not been produced. *Bratka*, 164 F.R.D. at 461 ("documents [produced by] the client should be reviewed by counsel *to see whether they indicate the existence of other documents not retrieved*"; emphasis added).

---

[20] *See also Chambers v. NASCO, Inc.*, 501 U.S. 32, 51 (1991) (Rule 26(g) is "cast in mandatory terms," courts "must impose sanctions" under Rule 26(g)(3)).

[21] *See also Metropolitan Opera*, 212 F.R.D. at 221-22 ("representations that all responsive documents had been produced . . . made without any real reflection or concern for [counsel's] obligations under [Federal Rules] and, in the absence of an adequate search for responsive documents, without a reasonable basis" violate Rule 26(g)).

## IV. Conclusion

The Court ordered Defendants to produce documents responsive to the financial transaction discovery (RPDs 70-72 and 77-78). After extensive meeting and conferring, Defendants still refuse to produce the unredacted Mezzanine Loan Agreement, the MSA expense reports, and the Intercreditor Agreement, the First Lien Documents, and the Third Lien Documents. On this record, it is likely Defendants have withheld other responsive documents—especially documents showing payments from Defendants to affiliates and insiders (RPDs 70 and 76). The Court should either appoint an independent expert to collect these documents, or require Defendants to provide declarations which both provide transparency on its previous failure to comply with the Order and confirm its compliance prospectively. Plaintiffs reserve the right to seek monetary sanctions in the future, if it otherwise becomes necessary.

Dated: December 7, 2020 By: s/Ethan Preston

David C. Parisi
dcparisi@parisihavens.com
Suzanne Havens Beckman
shavens@parisihavens.com
**PARISI & HAVENS LLP**
212 Marine Street, Unit 100
Santa Monica, California 90405
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Yitzchak H. Lieberman
ylieberman@parasmoliebermanlaw.com
Grace E. Parasmo
gparasmo@parasmoliebermanlaw.com
**PARASMO LIEBERMAN LAW**
7400 Hollywood Boulevard, Suite 505
Los Angeles, California 90046
Telephone: (917) 657-6857
Facsimile: (877) 501-3346

Ethan Preston
ep@eplaw.us

**PRESTON LAW OFFICES**
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

*Attorneys for Plaintiff Plaintiffs Samuel Katz and Lynne Rhodes, on their own behalf, and behalf of all others similarly situated*

## CERTIFICATE OF SERVICE

I, Ethan Preston, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: December 7, 2020 By: s/Ethan Preston
Ethan Preston