**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SAMUEL KATZ, *et al.*, individuals, on their own behalf and on behalf of all others similarly situated,<br>    *Plaintiffs*,<br><br>v.<br><br>LIBERTY POWER CORP., LLC, *et al.*,<br><br>    *Defendants*. | Case No. 1:18-cv-10506-ADB-DLC<br><br>Leave to File Granted on March 3, 2021 |

**DEFENDANTS LIBERTY POWER CORP., LLC'S AND LIBERTY POWER HOLDINGS, LLC'S REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Defendants Liberty Power Corp., LLC and Liberty Power Holdings, LLC (collectively, "Liberty Power"), by and through counsel, pursuant to L.R. 56.1, file this Reply Brief in Support of Defendants' Motion to Dismiss the Second Amended Complaint and state as follows.

I. **Introduction and Summary**

In the *AAPC* case, a majority of the Supreme Court found the TCPA's government-debt-collection to be unconstitutional. To rectify this constitutional infirmity, the Court invalidated and excised the debt-collection exception. *AAPC* makes clear that the TCPA's calling restrictions will apply equally to all callers on a going-forward basis, including those making calls to collect government-backed debt. However, *AAPC* was a pre-enforcement facial challenge seeking only prospective relief. Thus, its holding did not extend the severance of the debt-collection exception retroactively.

Plaintiffs' Opposition to Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 279) ("Opp'n" or "Opposition") is flawed first because it misstates the holding and facts of several cases. With respect to *AAPC*, Plaintiffs assert without support that the Supreme Court intended its severance to apply retroactively. Opp'n at 8. In fact, despite Plaintiffs' claims to the contrary, none of the cases relied on by Plaintiffs appropriately resolved the issue of whether severance of the government debt exemption applies retroactively.

Although *AAPC* did not directly address the retroactive effect of its severance, the guidance it does provide makes clear that the severance of the government-debt exception cannot be applied retroactively. A majority of the Supreme Court's justices indicated that the severance cannot be applied retroactively to those calling parties who had relied on the now severed exception, and a majority of the Supreme Court held that unequal treatment of calls based on

their content violates the First Amendment. As further detailed below, there is no way to enforce *AAPC*'s severance retroactively without violating one of those two mandates.

## II. Plaintiffs Misstate the Holding of *AAPC*

In the Opposition, the Plaintiffs state: "There was never any question whether severance applies retroactively. That is, in fact, AAPC's holding." Opp'n at 8. This statement is wrong. The Supreme Court's holding in *AAPC* (*Barr v. Am. Ass'n of Political Consultants, Inc*, 140 S. Ct. 2335 (2020)) did not address the effect of its severance holding on cases currently pending for past alleged violations, because it could not. The issue was not before the Court. The Petitioners in *AAPC* filed a pre-enforcement challenge seeking a declaration that 47 U.S.C. § 227, the Telephone Consumer Protection Act ("TCPA"), violated the First Amendment and a permanent injunction blocking its enforcement against them. *See American Association of Political Consultants, Inc. v. Lynch*, Case No. 5:16-cv-00252-JCD, Complaint, ECF No. 1 (E.D.N.C. May 12, 2016). The *AAPC* case was thus only about prospective relief for calls not yet made, and did not address potential liability for ATDS calls that had already been made.[1] In fact, the Court specifically indicated that it believed that the district court would enter final judgment in the case upon remand as there were no remaining issues in the case.[2]

Similarly, the Plaintiffs' Opposition incorrectly suggests that the Ninth Circuit's ruling in the *Duguid* case impliedly supports the retroactive application of the Supreme Court's severance of the government-debt exception. *See* Opp'n at 11 (citing *Duguid v. Facebook, Inc.*, 926 F.3d

---

[1] Likewise, the Fourth Circuit could not have addressed anything other than prospective relief in the *AAPC* case. *See Am. Ass'n of Political Consultants, Inc. v. Fed. Commc'ns Comm'n*, 923 F.3d 159 (4th Cir. 2019*), cert. granted sub nom. Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 812 (2020), and aff'd sub nom. *Barr v. Am. Ass'n of Political Consultants, Inc*, 140 S. Ct. 2335 (2020).
[2] *AAPC*, 140 S. Ct. at 2355 n.12 ("…although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and **before the entry of final judgment by the District Court on remand** in this case…")(emphasis added).

2

1146 (9th Cir. 2019)).  However, although Ninth Circuit did find the TCPA unconstitutional in the *Duguid* case and did note that it believed it could remedy the TCPA's flaws by severing the government-debt exception, the Ninth Circuit could not have addressed the effect of the severance on pending claims.  The court had no such claim for relief before it.

The *Duguid* case is a putative class action in which the Plaintiff alleges he received texts from Facebook in violation of the TCPA.  However, all of the alleged texts in question "predate[d] the debt-collection exception." *Duguid*, 926 F.3d at 1153.  The Ninth Circuit has nonetheless allowed the Constitutional challenge to go forward because the plaintiff also seeks to represent a class that would include alleged violations that occurred in part after the 2015 amendment and is requesting an injunction to prevent future ATDS calls from Facebook. *Id*.  Thus, after finding the TCPA unconstitutional and severing the government-debt exception, the Ninth Circuit then remanded the case for further proceedings without addressing whether or not it intended its severance to apply retroactively.  The Ninth Circuit had no need to address retroactivity because all of the TCPA violations alleged by the named Plaintiff occurred prior to the 2015 amendments and no class had yet been certified involving alleged violations after the 2015 amendment..

The Opposition's assertion that the *Duguid* case addressed the retroactivity issue is further undermined by the language of the Ninth Circuit's decision in *Gallion*, a companion case argued the same day as *Duguid* and heard by the same panel. *See Gallion v. United States*, 772 F. App'x 604 (9th Cir. 2019). *Gallion* presented the same sort of First Amendment claim as *Duguid*, and the appellants in *Gallion* specifically addressed the retroactivity issue. *Id*. at 605. But while the *Gallion* panel resolved the First Amendment claim by relying on its opinion in *Duguid*, it refused to address the retroactivity argument altogether. *Id*. at 606 ("We do not reach Charter's argument that severing the unconstitutional portion of the TCPA raises retroactivity concerns because

3

Charter raised this argument for the first time in its Reply Brief and later in a Rule 28(j) letter."). This approach makes no sense if the panel believed it had already resolved the retroactivity issue in *Duguid*.

### III. The Opposition Encourages the Court to Revive the TCPA's Constitutional Infirmity

The Opposition also mistakenly asserts that traditional rules of severance dictate, "an unconstitutional statutory amendment 'is a nullity' and 'void.'"[3] Opp'n at 3. This is incorrect for several reasons. Plaintiffs are essentially arguing that the Court should treat the government debt exception as though it never existed. In other words, in Plaintiffs' world, the pre-amendment version of the TCPA would be in effect and its prohibitions would apply to all calls including those made to collect government-backed debt. However, the imposition of liability for calls made on behalf of debt collectors at a time when those calls were expressly authorized by Congress represents a clear due process violation. *See PHH Corp. v. Consumer Fin. Prot. Bureau*, 839 F.3d 1, 46 (D.C. Cir. 2016) (Kavanaugh, J.) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994)), reinstating Panel decision on due process point *en banc*, 881 F.3d 75, 83 (D.C. Cir. 2018)("individuals should have an opportunity to know what the law is and to conform their conduct accordingly.").[4] Indeed, this is precisely what a majority of the Justices on

---

[3] In making this argument, Plaintiffs rely on Justice Kavanaugh's reference to the Supreme Court's decision in *Frost v. Corp. Commission of Okla.*, 278 U.S. 515, 528 (1929). *See* Opp'n at 10 (citing *AAPC*, 140 S. Ct. at 2353). In the *Frost* case, the Court invalidated a statutory exemption from a general licensing requirement for companies operating a cotton gin, and canceled a license issued pursuant to the exemption. However, the issues in *Frost* did not involve the imposition of retroactive criminal or civil liability for conduct expressly authorized by a congressional statute that was later invalidated and severed. In his plurality decision, Justice Kavanaugh did rely on *Frost* in other respects. However, Justice Kavanaugh also specifically cautioned that the 2015 government-debt exception would still protect government-debt collectors from incurring liability for calls made between 2015 and 2020. *AAPC*, 140 S. Ct. at 2353 & 2355 n.12. Thus, the plurality cited *Frost* for the general notion that an unconstitutional amendment can be severed from a statute rather than the notion that Courts must treat an unconstitutional amendment as though it never existed regardless what additional constitutional issues would result.
[4] *See also Rogers v. Tennessee*, 532 U.S. 451, 457 (2001) (noting that "[d]eprivation of the right to fair warning" can result from "an unforeseeable and retroactive judicial expansion of statutory language"); Ruth B. Ginsburg, *Some Thoughts on Judicial Authority to Repair Unconstitutional Legislation*, 28 Clev. St. L. Rev. 301, 307-08 (1979)

4

the Supreme Court cautioned against. All five Justices who addressed this issue specifically warned that the severability holding could not apply retroactively to government-backed debt. *See AAPC*, 140 S. Ct. at 2355 & n.12 (Kavanaugh, J., joined by Roberts, C.J., and Alito, J.); *id*. at 2366 (Gorsuch, J., joined by Thomas, J.).

Thus, the only way that the severance in *AAPC* could be applied retroactively without raising these due process concerns would be to only apply the severance for calls that would not have fallen into the government-debt collection exemption. However, this would create the exact same distinction between callers that the Supreme Court has already found to be unconstitutional. *Id*. at 2366 (Gorsuch, J., joined by Thomas, J.)("a holding that shields only government-debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate.").

Although the fractured nature of the *AAPC* decision has generated much debate, two things are clear. One, a majority of the Court concluded "that Congress has impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment." *Id*. at 2343. Two, a majority of the Court concluded callers should not be "held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception" and before the issuance of the Supreme Court's decision in *Barr*. *See AAPC*, 140 S. Ct. at 2355 & n.12; *id*. at 2366. Thus, the severance in *AAPC* cannot be applied retroactively without ignoring an express directive from the majority of the Supreme Court. At some point in the future, the Supreme Court may fashion a form of relief that threads the needle between the due process and equal protection concerns that would be created by any

---

(discussing "due process related concepts of reliance and fair notice" that limit the retroactive effect of invalidating a statutory benefit).

5

retroactive enforcement of the severance in *AAPC*. However, at present, lower courts are bound to follow the guidance provided by a majority of the Justices.

## IV. The Opposition Fails to Distinguish Binding Precedent

The Opposition argues that none of the precedent cited by the Motion to Dismiss deals "with an unconstitutional amendment to a pre-existing law" and is "therefore not on point for this reason alone." Opp'n at 9. However, despite the Opposition's claims to the contrary, it is quite clear that the general rule is that "the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) (citation omitted); *see also Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2208 (2020)(noting that a subpoena issued under a previously unconstitutional regime could not be enforced despite the court's curing of the constitutional infirmity through severance); *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1699 n.24. (2017)("a defendant convicted under a law classifying on an impermissible basis may assail his conviction without regard to the manner in which the legislature might subsequently cure the infirmity."); *United States v. Booker*, 543 U.S. 220, 243-44 (2005)(after severing a statutory provision, the Court rejected the notion that its prospective severance "fix" somehow cured the criminal sentences that had been handed down under the previously unconstitutional regime); *Grayned v. City of Rockford*, 408 U.S. 104, 107, n.2 (1972)("'This amendment and deletion has, of course, no effect on Appellant's personal situation.' … Necessarily, we must consider the facial constitutionality of the ordinance in effect when appellant was arrested and convicted."). Thus, because the Supreme Court found the TCPA unconstitutional between November 2, 2015 and July 6, 2020, liability cannot be imposed for any telephone calls made during that period.

The Plaintiffs have cited no binding authority that there is some sort of exception to the above for a constitutional infirmity that arises because of a statutory amendment. Moreover, the Plaintiffs never explain why that distinction should matter and there is no logical reason to believe it should. In the *Grayned* case, that a legislative amendment later cured the constitutional issue in question had "no effect" on the Court's analysis. *Grayned*, 408 U.S. at 107 n.2. The Supreme Court thus granted retrospective relief in *Grayned* because the ordinance in question was unconstitutional during the relevant period. *Id*. Nothing in the *Grayned* Court's reasoning indicates that it would it have made any difference if the challenged ordinance had enjoyed a past period of constitutionality, which was interrupted by the addition of an unconstitutional amendment as is the case with the TCPA.

V.   **This Court Should Grant Defendants' Motion to Dismiss**

Plaintiffs' Opposition asserts that Defendants' Motion to Dismiss is "a disguised motion for reconsideration." Opp'n at 1. It is not. Defendants' Motion is Dismiss is dedicated almost entirely to an examination of how the Supreme Court's decision in *AAPC* should be applied to this case. *AAPC* was released by the Supreme Court almost a year after this Court addressed the constitutionality of the TCPA. *See* Opp'n at 1 (citing *Katz v. Liberty Power Corp. LLC*, No. 18-10506, 2019 WL 4645524 *8 (D. Mass. Sept. 24, 2019)("*Katz I*"), certificate of appealability denied, 2019 WL 6051442 (D. Mass Nov. 15, 2019)("*Katz II*")). Almost all of the additional case law discussed in the Motion to Dismiss was developed in the summer or late fall of 2020. To the extent the Motion to Dismiss does cite to cases released prior to 2020, such cases are presented to the Court to provide context for the *AAPC* decision and other recent decisions. *See Id*. at 9. (citing *Grayned*, 408 U.S. at 107 n.2). Thus, Defendants did not and could not have raised the specific arguments addressed by the Motion to Dismiss in its previous filings with the

7

Court as the Motion to Dismiss primarily relies on the language and reasoning found in the *AAPC* decision.

In fact, in its most recent filing in this proceeding, the Government specifically recognizes that the arguments presented in the Motion to Dismiss are new:

> On January 16, 2021, Defendants filed a motion to dismiss Plaintiffs' Second Amended Complaint. ECF No. 277. **In its motion, Defendants raise a new argument** implicating the constitutionality of the autodialer restriction as it applies in this case. Defendants argue that in light of *AAPC*, the autodialer restriction— what they call the "automated-call ban"—"has been unconstitutional, and thus entirely unenforceable, from the enactment of the government debt exception in 2015 until the Court severed it in *APPC*." *Id*. at 1.

*See* United States' Motion for Time to Determine Whether to Respond to Defendants' Motion to Dismiss, ECF No. 282, ¶ 6 (emphasis added). The Government is correct that the specific arguments raised by the Motion to Dismiss were not (and could not have been) previously raised by the parties to this proceeding. Similarly, the issues presented by the Motion to Dismiss were not previously discussed by this Court. As such, the Court should disregard Plaintiffs' attempt to mischaracterize Defendants' Motion to Dismiss.

## VI. Conclusion

Regardless of how the Motion to Dismiss is characterized, it should be granted. This Court has discretion to consider the arguments presented in the Motion to Dismiss under any potentially applicable standard.[5] As noted above, since the decisions of this Court cited by the Opposition, the Supreme Court released the *AAPC* decision, which unquestionably represents an "intervening change" in the applicable law. *See Davis*, 89 F. Supp. 2d at 147 (internal citation

---

[5] "A federal district court has the discretion to reconsider interlocutory orders and revise or amend them at any time prior to final judgment." *Davis v. Lehane*, 89 F. Supp. 2d 142, 147 (D. Mass. 2000); *see* Fed. R. Civ. P. 54(b); *see also Miranda v. Deloitte LLP*, 962 F. Supp. 379, 382 (D.P.R. 2013).

omitted).  As such, Defendants respectfully request that the implications of the *AAPC* decision be examined by this Court and the present Motion to Dismiss be considered fully and granted.

**WHEREFORE**, for the above reasons, Defendants respectfully request that the Motion to Dismiss be granted in its entirety.

    Respectfully submitted,

    **LIBERTY POWER CORP., LLC,**
    **LIBERTY POWER HOLDINGS, LLC,**

    By their attorneys,

    */s/ Jeffrey Brundage*
    Charles A. Zdebski (*pro hac vice*)
    Robert J. Gastner (*pro hac vice*)
    Jeffrey P. Brundage (*pro hac vice*)
    ECKERT SEAMANS CHERIN &
        MELLOTT, LLC
    1717 Pennsylvania Avenue, N.W.,
    12th Floor
    Washington, DC  20006
    Telephone:  202-659-6676
    Facsimile:  202-659-6699
    Email: czdebski@eckertseamans.com
    Email: rgastner@eckertseamans.com
    Email:  jbrundage@eckertseamans.com

    Craig R. Waksler (B.B.O. # 566087)
    ECKERT SEAMANS CHERIN &
        MELLOTT, LLC
    Two International Place, 16th Floor
    Boston, MA  02110-2602
    Telephone: 617-342-6800
    Facsimile: 617-342-6899
    Email: cwaksler@eckertseamans.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2021, the foregoing document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the NEF:

John L. Fink, Esq.
Sims and Sims LLP
53 Arling St.
Brockton, MA 02301
*Co-Counsel for Plaintiff*

David C. Parisi, *Pro Hac Vice*
Suzanne Havens Beckman, *Pro Hac Vice*
Parisi & Havens LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
*Co-Counsel for Plaintiff*

Yitzchak H. Lieberman, *Pro Hac Vice*
Grace E. Parasmo, *Pro Hac Vice*
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd., Suite 505
Los Angeles, CA  90046
*Co-Counsel for Plaintiff*

Ethan M. Preston, *Pro Hac Vice*
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, TX 75204
*Co-Counsel for Plaintiff*

Matthew R Mendelsohn, *Pro Hac Vice*
Mazie Slater Katz & Freeman, LLC
103 Eisenhower Parkway
Roseland, NJ 07068
*Co-Counsel for Plaintiff*

Susan M. Poswistilo, Esq.
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
*Counsel for the United States*

> */s/ Jeffrey Brundage*
> Jeffrey Brundage