**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SAMUEL KATZ and LYNNE RHODES, individually, and on their own behalf and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>      v.<br><br>LIBERTY POWER CORP., LLC and LIBERTY POWER HOLDINGS, LLC,<br><br>    Defendants. | No. 18-cv-10506-ADB |

**ORDER ON MOTION TO STAY**

Cabell, U.S.M.J.

The plaintiffs allege that Liberty Power Corp., LLC (LP

Corporation) and Liberty Power Holdings, LLC (LP Holdings)

placed telephone calls to them in violation of the Telephone

Consumer Protection Act (TCPA), 47 U.S.C. §§ 227 *et seq.*  In

April 2021, the case was automatically stayed under 11 U.S.C. §

362(a) as to LP Holdings after it filed for Chapter 11

bankruptcy in Florida.  *See In re Liberty Power Holdings, LLC*,

No. 21-13797-PDR (Bankr. S.D. Fla. filed Apr. 20, 2021)

(*Bankruptcy*).  LP Corporation did not declare bankruptcy but

moves to stay proceedings against it as well under this court's

discretionary authority.[1]  (D. 340).  For the reasons stated

below, the motion will be <u>allowed</u>.

### RELEVANT BACKGROUND

LP Corporation owns non-defendant Liberty Power Super

Holdings, LCC (Super Holdings), which in turn owns LP Holdings,

the entity for whom the case has been stayed.

LP Holdings purchases electricity wholesale from one of

five organized wholesale energy markets and sells it retail to

residential, commercial, and industrial clients in several

states.  LP Holdings does not really have its own workforce;

rather, LP Corporation employed approximately 80 people to

provide business services to LP Holdings, including managing

customer accounts, dealing with regulatory matters, and

performing business operation functions.  In turn, LP Holdings

would provide funds to LP Corporation on a weekly basis to cover

business expenses such as salary and rent.

In alleging a violation of the TCPA, the operative

complaint raises the same claims against each defendant, based

on the same facts and theory of liability.  (D. 109).  In

particular, the plaintiffs allege that the defendants are part

---

[1] LP Corporation initially argued that it was entitled to have LP Holdings'
automatic stay extended to it under 11 U.S.C. § 362(a)(2), but conceded at
oral argument that an extension of the automatic stay was not mandated under
the statute or First Circuit law.

of a joint enterprise operating under common branding and a shared trademark in connection with their "common retail electric service business."  (*Id.* ¶ 7).  They also allege that the arrangement by which LP Corporation secures telemarketers to work on LP Holdings' behalf "reflects how [LP Corporation's and LP Holding's] business and operations are generally intertwined and interrelated," and allege further that their operations are "so intertwined that it is often impossible to definitively attribute the acts of their personnel to Corp. or Holdings." (*Id.* ¶ 11).

LP Holdings reportedly encountered financial problems when Texas experienced unprecedented and severe cold weather in February 2021.  The wholesale energy price in the Texas market skyrocketed and LP Holdings consequently could not pay the wholesale charges or its subsequent debts.

On March 31, 2021, Boston Energy Trading and Marketing, LLC (BETM), which had a secured credit agreement with LP Holdings to provide credit assurances required by wholesale operators, issued LP Holdings a notice of default.  On April 15, 2021, BETM took control of LP Holdings and reconstituted its Board of Directors.  Three days later, LP Corporation terminated virtually all its employees.  On April 20, 2021, LP Holdings filed for bankruptcy.

3

LP Holdings continues to operate under BETM's control. While LP Corporation ultimately retained a few employees, it instituted an action on May 19, 2021, in Florida state court to assign its assets to Philip Von Kahle under Fla. Stat. §§ 727.101-116, a law providing for an assignment for the benefit of creditors (ABC).  *Von Kahle v. Liberty Power Corp., LLC*, No. CACE21010056 (Fla. 17th Jud. Cir. filed May 19, 2021) (*Assignment*).

On June 10, 2021, the plaintiffs filed a motion in the Florida action to undo LP Corporation's assignment of its assets, but the motion at present has not been decided or scheduled for a hearing.  *See* Motion for Relief from the Assignment, *Assignment* (filed June 10, 2021).  The plaintiffs also moved to stay LP Holdings' Chapter 11 bankruptcy proceeding but the motion was denied without prejudice on June 25, 2021. *See Bankruptcy* D. 159, 222.

### DISCUSSION

#### A. Legal Framework

The First Circuit has recognized that in cases where an action has been stayed against a debtor defendant under 11 U.S.C. § 362, a discretionary stay may also be warranted as to a non-debtor co-defendant, under certain circumstances.  *See, e.g., Austin v. Unarco Indus., Inc.,* 705 F.2d 1, 5 (1st Cir.

4

1983).   These circumstances exist where "(i) the non-debtor and
debtor enjoy such an "identity of interests" that the suit of
the non-debtor is essentially a suit against the debtor; or (ii)
the third-party action will have an adverse impact on the
debtor's ability to accomplish reorganization."   *In re Slabicki*,
466 B.R. 572, 580 (1st Cir. BAP 2012) (emphasis added); *see also*
*Bankhart v. Ho,* 60 F. Supp. 2d 242, 246 (D. Mass. 2014).

The party seeking the discretionary stay bears the burden
of demonstrating that the stay is warranted.   *Bankart*, 60 F.
Supp. 3d at 246-47.   The First Circuit apparently has not
determined the applicable legal standard for evaluating a
request for a discretionary stay, and caselaw on this point is
rather sparse, but one court in this session has indicated that
the level of "'proof required to extend the stay is not as
rigorous as that normally required for injunctions,'" *see id.* at
247 (quoting *In re Adelphia Commc'ns*, 298 B.R. 49, 54 (Bankr.
S.D.N.Y. 2003)), while another has required the moving party to
demonstrate its entitlement to a stay by clear and convincing
evidence.   *See Raudonis as trustee for Walter J. Raudonis 2016*
*Revocable Trust v. RealtyShares, Inc.*, 507 F. Supp. 3d 378, 371
(D. Mass. 2020).   This court applies the "clear and convincing
evidence" standard here.

5

## B. **Application**

The parties dispute whether, consistent with *Slabicki*, LP
Corporation shares such an identity of interests with LP
Holdings as to warrant a discretionary stay.  LP Corporation
argues that entities share an identity of interests when the
claims against the debtor and non-debtor are so inextricably
interwoven that their liability is based on the same facts and
difficult to discern independently, and allowing the case to
proceed against the non-debtor in one forum while the debtor
proceeds in another might thus result in inconsistent rulings or
duplicative actions.  In arguing that it shares such an
intertwined relationship with LP Holdings, LP Corporation notes
that the plaintiffs themselves have pursued LP Corporation and
LP Holdings as a single entity, and the court itself has
similarly remarked on their intertwined relationship, commenting
that the "defendants are affiliated entities with overlapping
operations, including common marketing, offices, website, email
servers, telephone numbers, and management."  *See* D. 195, Mem.
and Order, at 11.  LP Corporation argues that, given the
defendants' intertwined relationship, LP Holdings' interests
would necessarily be affected by any court ruling were the case
against LP Corporation permitted to continue, in violation of
the automatic stay presently in place.  As such, the two

entities share an identity of interests entitling LP Corporation
to a discretionary stay.

In opposition, the plaintiffs argue that entities do not
share an identity of interests merely because they are related.
They point out that courts of this circuit have rejected
granting stays to a non-debtor merely because the entity shares
some relationship to the debtor, such as that of surety,
guarantor, or co-obligor, *see, e.g., In re R & G Fin. Corp.*, 441
B.R. 401, 410 (Bankr. P.R. 2010), or as one of its officers,
directors, or shareholders.  *See Slabicki*, 446 B.R. at 580.
Rather, the entities must in essence be the same entity, meaning
that the non-debtor party seeking the stay must be the alter ego
of or essentially the same entity as the debtor.

The plaintiffs argue that LP Corporation and LP Holdings
are demonstrably not the same entity here because they are
actually at odds in LP Holdings' bankruptcy proceedings, and LP
Corporation moreover has stated that its business operating
model is designed to allow one subsidiary to continue to operate
financially even if something were to befall LP Corporation or
another subsidiary.  As such, the plaintiffs argue that the
defendants do not share an identity of interests and extending a
discretionary stay to LP Corporation would therefore be
unwarranted.

In the court's view, it is appropriate to extend the stay in the case to include LP Corporation.  Even presuming that LP Corporation and LP Holdings are not literally corporate alter egos of one another, courts have not required that a debtor and non-debtor share such a close and specific relationship, but rather have granted discretionary stays upon a showing that the entities are "inextricably intertwined" for purposes of the lawsuit.  For example, in *Villafañe-Colon v. B. Open Enters., Inc.*, 932 F. Supp. 2d 274 (D.P.R. 2013), the court found that the non-debtor entities shared an identity of interests with the debtor where the plaintiff alleged that the defendants were commonly owned and managed, and their business operations were "interrelated, intertwined, and intermingled."  *Id.* at 281.  The court found based on the allegations that the suit against the moving non-debtor defendants was essentially a suit against defendant debtor and for that reason found it appropriate to grant a discretionary stay.  *Id.*  Similarly, another court in this session found it appropriate to grant a stay to a non-debtor subsidiary and two individual defendants where the plaintiffs raised the same claims against all defendants and "the alleged liability of these two [business] entities appears to be intertwined."  *Raudonis*, 507 F. Supp. 3d at 382.  The court found a stay to be particularly appropriate where the "the

8

pleadings in this case make it difficult to disentangle" the
parties' respective liability.  *Id.*

That is the case here.  As noted above, the court has
already determined that LP Holdings and LP Corporation overlap
in many respects, including through their management, shared
offices, and marketing efforts.  Further, and as also noted
above, the plaintiffs themselves allege that LP Corporation and
LP Holdings are part of a joint enterprise with operations so
intertwined that it is often "impossible" to state whether
actions were taken by one entity or the other.  As such, it is
highly probable that any meaningful actions or court rulings
affecting LP Corporation would equally affect LP Holdings'
interests.

In light of the foregoing, the court finds by clear and
convincing evidence that it is appropriate to extend the stay of
proceedings to include LP Corporation.  The fact that the
defendants may not share the same position in the separate
bankruptcy proceeding is immaterial where it does not affect the
intertwined nature of the defendants' relationship in this
matter.  Similarly, the fact that the defendants may have
incorporated a business model that would financially permit one
defendant to continue operating even should another related
entity cease to operate is not pertinent where it does not bear

9

on the close nature of the defendants' relationship or alter the
fact that actions taken against LP Corporation, were the case
permitted to continue, would almost certainly affect the
interests of LP Holdings.

To be sure, the plaintiffs argue that they will be
prejudiced if this action is stayed against LP Corporation.
They note that the case has been pending for three years and the
loss of evidence is a significant concern where LP Corporation
has expressed concern that its assets are potentially being
taken or misappropriated.  The court acknowledges this concern
but notes that LP Corporation's assets are now in the hands of
the assignee and the plaintiffs have objected to the assignee's
request to sell LP Corporation's computer equipment.  *See*
*Assignment*, Objection (filed Sept. 22, 2021); Re-Notice of
Hearing (filed Sept. 22, 2021).  Further, while not dispositive,
it bears noting that the bankruptcy court in Florida apparently
rejected the same arguments the plaintiffs raise here in denying
the plaintiffs' motion for relief from the automatic stay
applying to LP Holdings.

**CONCLUSION**

For the foregoing reasons, Liberty Power Corp., LLC's Motion to Stay is GRANTED.  Consequently, this matter is hereby Ordered stayed in its entirety until the Bankruptcy Court lifts the automatic stay applicable to Liberty Power Holdings, LLC, in *In re Liberty Power Holdings, LLC*, No. 21-13797-PDR (Bankr. S.D. Fla. filed Apr. 20, 2021).  Further, all pending motions in this case will be held in abeyance while this case is stayed.  The parties are hereby Ordered to notify the court when the Bankruptcy Court has lifted the automatic stay.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  September 29, 2021

11