```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

| | |
|---|---|
| SAMUEL KATZ and LYNNE RHODES, individually, and on their own behalf and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>LIBERTY POWER CORP., LLC and LIBERTY POWER HOLDINGS, LLC,<br><br>      Defendants. | No. 18-cv-10506-ADB |

## ORDER ON PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

CABELL, U.S.M.J.

### I. INTRODUCTION

Plaintiffs Samuel Katz and Lynne Rhodes are suing defendants Liberty Power Corp., LLC, ("Corp") and Liberty Power Holdings, LLC, ("Holdings") (collectively, "defendants" or "Liberty Power") on behalf of themselves and all others similarly situated for alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Amid a stay occasioned by Holdings' pending Chapter 11 bankruptcy, the plaintiffs seek leave to file a third amended complaint ("TAC") to add as a defendant David Hernandez ("Hernandez"), an owner and former Chief Executive Officer of both Corp and Holdings. Hernandez opposes the motion

*inter alia* on the ground that the court lacks personal jurisdiction over him.  (Dkt Nos. 369; 376).  For the reasons that follow, the court agrees and thus denies motion to amend.

## II. <u>LEGAL STANDARD</u>

When a party has already amended its pleading at least once, that party may only further amend the pleading "with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  The standard for amendment is not burdensome, as "[t]he court should freely give leave when justice so requires."  *Id.*  However, the court should deny leave to amend when the proposed amendment "would be futile, or reward, *inter alia*, undue or intended delay."  *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004) (internal quotation marks omitted); *see also Debreceni v. Bru-Jell Leasing Corp.*, 710 F. Supp. 15, 19 (D. Mass. 1989) ("For a court to grant a motion to amend, only to turn around and dismiss the claims upon the filing of a properly interposed motion to dismiss, would be a waste of time for both the court and counsel.").

One way in which an amendment can be futile is if it purports to add a claim against a defendant over whom the court lacks personal jurisdiction.  *In re TelexFree Secs. Litig.*, Civil Action No. 4:14-md-02566-TSH, 2021 WL 5771730, at *8 (D. Mass. Dec. 6, 2021); *see Crocker v. Hilton Int'l Barbados, Ltd.*, 976 F.3d 797, 801 (1st Cir. 1992); *CR Assoc. L.P. v. Sparefoot, Inc.*, Civil

2

Action No. 17-10551-LTS, 2018 WL 988056, at *1 (D. Mass. Feb. 20, 2018); *Theodore v. Hacker Boat Co.*, Civil Action No. 09-10831-GAO, 2010 WL 1930063, at *2 (D. Mass. May 12, 2010). Where, as here, the court evaluates whether a (proposed) complaint adequately establishes personal jurisdiction without conducting an evidentiary hearing, "the court applies the *prima facie* standard and takes the specific facts affirmatively alleged by the plaintiff[s] as true, regardless of whether these facts have been disputed, and construes them in the light most favorable to the plaintiff[s]." *Hamilton v. Young Mgmt., LLC*, --- F. Supp. 3d ---, 2022 WL 17736915, at *2 (D. Mass. 2022) (citing *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994)). The plaintiffs "cannot, however, rely on 'unsupported allegations' in [their proposed] complaint but 'must put forward evidence of specific facts to demonstrate that jurisdiction exists.'" *Id.* (quoting *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016)). Any additional "facts put forward by the defendant 'become part of the mix only to the extent that they are uncontradicted'" by the plaintiffs. *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 8 (1st Cir. 2009) (quoting *Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2007)).

### III. RELEVANT BACKGROUND

The following facts are drawn from the proposed TAC, *see Hamilton*, 2022 WL 17736915, at *2, and from Hernandez's declaration

3

(Dkt. No. 376-1) to the extent the declaration does not conflict with the allegations in the TAC, see *Astro-Med*, 591 F.3d at 8. The facts are presented "in the light most favorable to the plaintiff." *Hamilton*, 2022 WL 17736915, at *2.

As its name suggests, Liberty Power is a retail electric provider servicing customers in Massachusetts and elsewhere. (Dkt. No. 369-1, proposed TAC, ¶ 8). Specifically, Holdings is licensed as a retail electric provider in Massachusetts and Corp funds Holdings and runs its day-to-day business. (*Id.* at ¶¶ 8-10). Hernandez is an owner and former Chief Executive Officer of both Corp and Holdings. (Dkt. No. 376-1, ¶¶ 2-3). Corp and Holdings are both limited liability companies "duly organized under the laws of the State of Delaware" with a principal place of business in Fort Lauderdale, Florida. (Dkt. No. 369-1, ¶¶ 4-5). Hernandez currently resides in Florida, where he has lived for 20 years. (Dkt. No. 376-1, ¶ 13).

Liberty Power uses third-party telemarketers to solicit potential customers in several states, including Massachusetts. (Dkt. No. 369-1, ¶¶ 12, 32). These telemarketers allegedly violated the TCPA by, *inter alia*, using pre-recorded and artificial voices to make calls to consumers, making "repeated and unwanted" calls to numbers listed on the National Do Not Call Registry and Liberty Power's own internal Do Not Call List, and using "spoofed" phone numbers when making unsolicited calls. (*Id.* at ¶¶ 33-40).

4

Liberty Power "controls the manner and method of [these] telemarketing campaigns," in part by providing the telemarketers with "lead lists" of prospective customers to call and a set of instructions and requirements for making calls. (*Id.* at ¶¶ 42-52). According to the plaintiffs, Liberty Power knew or should have known that the telemarketers were violating the TCPA on its behalf, both because it had the ability to monitor the telemarketers and because it received complaints to that effect. (*Id.* at ¶¶ 53-61). Instead of stopping the telemarketers' conduct, Liberty Power ignored or even ratified it. (*Id.* at ¶¶ 62-63).

In his role as CEO of Corp and Holdings, Hernandez was personally involved in Liberty Power's telemarketing campaign. He "knew which telemarketers Liberty Power used, was personally involved in the management of those telemarketers, and knew that the telemarketers were making telephone calls to residents of Massachusetts (and Liberty Power's other markets) to secure more customers for Liberty Power."[1] (*Id.* at ¶ 12). Specifically, Hernandez was involved in formulating compensation plans for the telemarketers, approving the payment of commissions, managing Liberty Power's relationships with the telemarketers, and developing telemarketing scripts, analytics, and lead recording

---

[1] The proposed TAC also asserts that Hernandez "knew that these telemarketing practices were tortious." (Dkt. No. 369-1, ¶ 12). This is the sort of unsupported, conclusory allegation that does not help to establish jurisdiction. *See Hamilton*, 2022 WL 17736915, at *2.

5

systems. (*Id.* at ¶ 13). Hernandez also regularly sought and reviewed reporting on the telemarketers' activity and sales performance. (*Id.* at ¶¶ 13-15). The plaintiffs further assert, based on information allegedly relayed by Liberty Power's in-house counsel, that Liberty Power's revenues flow directly to Hernandez as an owner. (*Id.* at ¶ 81).

Hernandez has never resided in or owned any real estate in Massachusetts, nor has he ever maintained an office or a bank account here. (Dkt. No. 376-1, ¶¶ 14-17). He traveled to Massachusetts twice during Liberty Power's alleged TCPA violations, both times for personal reasons. (*Id.* at ¶ 18). Hernandez avers that he did not personally make or direct anyone else to make any allegedly unlawful calls to the plaintiffs. (*Id.* at ¶¶ 20-21). Indeed, Hernandez never made any calls to consumers personally. (*Id.* at ¶ 19). Hernandez denies directly supervising the day-to-day operations of the telemarketers or the Liberty Power Sales Managers assigned to the telemarketers. (*Id.* at ¶¶ 22-23).

**IV. DISCUSSION**

    **A. Jurisdictional Framework**

The proposed TAC invokes the court's federal question jurisdiction where it alleges that Hernandez violated the TCPA. *See* 28 U.S.C. § 1331. In federal question cases, "the constitutional limits of the court's personal jurisdiction are fixed, in the first instance, not by the Fourteenth Amendment but

6

by the Due Process Clause of the Fifth Amendment." *United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1085 (1st Cir. 1992). "In such circumstances, the Constitution requires only that the defendant have the requisite 'minimum contacts' with the United States, rather than with the particular forum state (as would be required in a diversity case)." *Id.*

Before a federal court may exercise personal jurisdiction over a defendant, however, the defendant must be subject to service of process. *Pike v. Clinton Fishpacking, Inc.*, 143 F. Supp. 2d 162, 166 (D. Mass. 2001). Federal Rule of Civil Procedure 4 "constitutes the principal mechanism for service of process in the federal courts," and provides that service or waiver of process establishes personal jurisdiction over a defendant who among other things "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located (4(k)(1)(A)) [here, Massachusetts]," or "when authorized by a federal statute (4(k)(1)(C))." *See United Elec. Radio & Mach. Workers of Am.*, 960 F.3d at 1085–86; Fed. R. Civ. P. 4(k)(1)(A) and (C).[2]

Because the TCPA does not authorize nationwide service of process in private actions, *see* 47 U.S.C. § 227(b)(3), Rule

---

[2] Federal Rule of Civil Procedure 4(k)(1)(B) provides an additional mechanism for establishing personal jurisdiction over "a party joined under Rule 14 or 19," which does not apply to Hernandez.

4(k)(1)(A) applies here and "imposes 'the same long-arm statute plus minimum contacts with the forum state analysis that applies to cases in state courts or diversity cases in federal courts.'" *Tassinari v. Salvation Army Nat'l Corp.*, 610 F. Supp. 3d 343, 352 (D. Mass. 2022) (quoting *Nahigian v. Leonard*, 233 F. Supp. 2d 151, 158 (D. Mass. 2002)); *see also Waters v. Day & Zimmerman NPS, Inc.*, 23 F.4th 84, 94 (1st Cir. 2022) ("To be sure, Rule 4(k)(1)(A) does make the due process standard of the Fourteenth Amendment applicable to federal-question claims in federal court when a plaintiff relies on a state long-arm statute for service of the summons."). As such, to satisfy Rule 4(k)(1)(A), exercising jurisdiction over Hernandez must comport with both the Massachusetts long-arm statute, M.G.L. c. 223A, § 3, and the Due Process Clause of the Fourteenth Amendment.[3] Following the guidance of the Massachusetts Supreme Judicial Court, this court considers the applicability of the long-arm statute first. *See SCVNGR, Inc. v. Punchh, Inc.*, 85 N.E.3d 50, 52 (Mass. 2017) ("a determination under the long-arm statute is to precede consideration of the constitutional question").

---

[3] Hernandez was previously named as a defendant in the original complaint as to certain non-TCPA claims before being voluntarily dismissed. (Dkt. No. 1; Dkt. No. 25). Before his dismissal, Hernandez executed a waiver of service. (Dkt. No. 13). That waiver did not satisfy Rule 4(k)(1)(A) (and thus need not detain us here) because, as discussed below, Hernandez's contacts with Massachusetts have been tenuous at all times relevant to this suit.

### B. Massachusetts Long-Arm Statute

The proposed TAC asserts that the court can exercise personal jurisdiction over the defendants (including Hernandez) "because they do business in the Commonwealth of Massachusetts . . . and because the wrongful acts alleged in this Complaint were committed in and/or caused injury in the Commonwealth of Massachusetts." (Dkt. No. 369-1, ¶ 24). This assertion tracks certain subsections of the Massachusetts long-arm statute, as follows:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
>
> (a) transacting any business in this commonwealth;
>
> . . .
>
> (c) causing tortious injury by an act or omission in this commonwealth; [or]
>
> (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth[.]

M.G.L. c. 223A, § 3(a), (c)-(d). Unfortunately, the proposed TAC does not specify which subsections purportedly apply to Hernandez specifically. The court thus considers each of them.

Beginning with subsection (a), the proposed TAC does not allege that Hernandez personally transacted any business in Massachusetts. To be sure, Holdings transacted business in Massachusetts, and Hernandez was the CEO of Holdings during the

9

relevant period. However, "it is axiomatic that jurisdiction over the individual officers of a corporation may not be based on jurisdiction over the corporation." *M-R Logistics, LLC v. Riverside Rail, LLC*, 537 F. Supp. 2d 269, 279 (D. Mass. 2008) (internal quotation marks omitted); *see also Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually."). Although a corporate officer's official acts are relevant to personal jurisdiction, something "more than mere participation in the corporation's affairs is required." *M-R Logistics*, 537 F. Supp. 2d at 280. The appropriate "inquiry considers whether the individual was a 'primary participant' in the alleged wrongdoing as it relates to the forum." *Sensitech Inc. v. LimeStone FZE*, 548 F. Supp. 3d 244, 254 (D. Mass. 2021) (quoting *Calder*, 465 U.S. at 790). There are no allegations in the proposed TAC suggesting that Hernandez was a "primary participant" in any business Holdings or Corp transacted in Massachusetts, so this subsection does not apply.

Similarly, nothing in the proposed TAC suggests that Hernandez committed an act or made an omission within Massachusetts that caused a tortious injury. Hernandez asserts, and the plaintiffs do not dispute, that he has only traveled to Massachusetts for personal reasons wholly unrelated to this case. Consequently, anything he may have done in Massachusetts is unrelated to any tortious injury alleged here, meaning the

plaintiffs' "cause of action" does not "aris[e] from" Hernandez's in-forum activity. *See* M.G.L. c. 223A, § 3.

This leaves the possibility that Hernandez "caus[ed] tortious injury in [Massachusetts] by an act or omission outside [Massachusetts]." M.G.L. c. 223A, § 3(d). There is certainly no allegation that Hernandez did so "directly," but the long-arm statute also covers acts "by an agent." M.G.L. c. 223A, § 3. Reading the proposed TAC in the light most favorable to the plaintiffs, it plausibly alleges that the third-party telemarketers caused tortious injury in Massachusetts by making unsolicited calls to plaintiffs from other states. It also plausibly sets out an agency relationship between the telemarketers and Liberty Power. There is much more room for doubt whether the proposed TAC sets out an agency relationship between the telemarketers and Hernandez individually. Ultimately, though, the court need not decide this issue because subsection (d) does not cover Hernandez in any case.

In addition to the causing tortious injury requirement, subsection (d) (unlike subsection (c)) only allows the court to exercise personal jurisdiction over a person "if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in [Massachusetts]." M.G.L. c. 223A, § 3(d). This is akin to general jurisdiction, which applies when a

11

defendant is "at home" in the forum state. *See Krua v. Sirleaf*, Civil Action No. 18-10574-DJC, 2019 WL 1936733, at *4 (D. Mass. May 1, 2019) ("general jurisdiction . . . is necessary for jurisdiction under [M.G.L. c. 223A,] § 3(d)"); *Pettengill v. Curtis*, 584 F. Supp. 2d 348, 357 (D. Mass. 2008) ("§ 3(d) would only apply if general jurisdiction existed over the Individual Defendants"); *Conn. Nat'l Bank v. Hoover Treated Wood Prods., Inc.*, 638 N.E.2d 942, 944 n.6 (Mass. App. Ct. 1994) ("[M.G.L.] c. 223A, § 3(d) is predicated on general jurisdiction.").

As discussed, there is no dispute that Hernandez does not regularly conduct or solicit business in Massachusetts, nor does he engage in any persistent course of conduct here. The closest the proposed TAC comes to establishing that Hernandez derives substantial revenue from goods used or services rendered in Massachusetts is the allegation that "every dollar that goes into Liberty Power goes into [Hernandez's] wallet[]." (Dkt. No. 369-1, ¶ 81). This is hardly sufficient to overcome the "strong presumption of corporate separateness" that exists under Massachusetts law and attribute all of Liberty Power's Massachusetts-derived revenue to Hernandez. *Hamilton*, 2022 WL 17736915, at *4; *see Evans v. Multicon Constr. Corp.*, 574 N.E.2d 395, 398 (Mass. App. Ct. 1991) (citing *Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc.*, 754 F.2d 10, 14-16 (1st Cir. 1985)) (setting forth 12 factors to analyze in determining whether to pierce the

12

corporate veil). Such an attribution would be especially inapt here, in the personal jurisdiction context, given the lack of any indication that Hernandez personally and directly participated in the sale of goods or rendition of services in Massachusetts. *See Sensitech*, 548 F. Supp. 3d at 254; *see also M-R Logistics*, 537 F. Supp. 2d at 280 ("more than mere participation in the corporation's affairs is required"). Accordingly, subsection (d) does not confer jurisdiction over Hernandez.

In sum, the plaintiffs have not identified any provision of the Massachusetts long-arm statute that establishes personal jurisdiction over Hernandez based on the facts alleged in the proposed TAC. Because "the Massachusetts long-arm statute imposes limits upon the exercise of jurisdiction [that are] more restrictive than the demands of constitutional due process," *Azumi LLC v. Lott & Fischer, PL*, 621 F. Supp. 3d 219, 223 (D. Mass. 2022) (citing *SCVNGR, Inc.*, 85 N.E.3d at 52), the court need not and thus does not go on to consider whether exercising personal jurisdiction would comport with due process under the Fourteenth Amendment. *See Azumi LLC*, 621 F. Supp. 3d at 223 ("Only if the statutory requirements are satisfied should the court consider whether its exercise of [personal] jurisdiction is permitted by the Constitution.").

Because no provision of the Massachusetts long-arm statute applies to Hernandez, he is not "subject to the jurisdiction of a

13

court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). This, in turn, means that this court cannot exercise jurisdiction over him. *See Waters*, 23 F.4th at 96 ("serving a summons in accordance with state or federal law is necessary to establish jurisdiction over a defendant in the first instance"); *Tassinari*, 610 F. Supp. 3d at 357 (dismissing all claims against defendant in federal question suit due to plaintiffs' failure to "establish personal jurisdiction . . . under the Massachusetts long-arm statute or the Fourteenth Amendment standard"). This lack of jurisdiction renders the proposed TAC futile and thus warrants a denial of the motion for leave to amend. *See In re TelexFree*, 2021 WL 5771730, at \*8.

## V. CONCLUSION

For the foregoing reasons, the plaintiffs' motion for leave to file a third amended complaint (Dkt. No. 369) is DENIED.[4]

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED: September 22, 2023

---

[4] This order will not disturb the stay that is in place since the denial of the motion to amend leaves the status quo intact. The court notes the plaintiffs' contention in the parties' most recent status report that the stay should now be lifted based on recent activity in Holdings' bankruptcy proceeding. (Dkt. No. 389). If the plaintiffs believe that the court should lift the stay at this time, they may file a motion to that effect so that the court can decide the issue with the benefit of briefing from all parties.